## AUCTION SERVICING AGREEMENT

This Auction Servicing Agreement (hereinafter referred to as the "Agreement") is made this 17ᵗʰ day of December, 2013 by and between Automotive Finance Corporation, an Indiana corporation (hereinafter referred to as "AFC") and Druien, Inc. dba Lawton Cache Auto Auction, an Oklahoma corporation (hereinafter referred to as "Auction").

### RECITALS:

**WHEREAS,** Auction owns and operates an auto auction facility or facilities (hereinafter collectively referred to as "Auction Facility").

**WHEREAS,** AFC desires to assist its customers who are licensed motor vehicle dealers (hereinafter individually referred to as "Dealer" and collectively referred to as "Dealers") in financing their used vehicle purchases made at Auction Facility.

**WHEREAS,** AFC and Auction have agreed that AFC will facilitate the purchase at Auction Facility of used vehicles by certain Dealers pursuant to a line of credit extended to Dealers by AFC (hereinafter referred to as "Credit").

**NOW, THEREFORE,** in consideration of mutual covenants and agreements set forth herein, the parties hereto agree as follows:

1. **Plan Administration**.

    (a) In granting Credit to the Dealer, AFC shall have sole discretion as to the terms and conditions of such Credit. Only a Dealer, and such representatives of the Dealer for which Auction has received written authorization from such Dealer, shall be permitted by Auction to purchase vehicles at Auction Facility with Credit.

    (b) No later than one (1) hour prior to the start of the auction sale, AFC will advise Auction, by email, by posting onto AFC's website, by facsimile transmission, via Auction ACCESS®, or by any other method mutually agreed to in writing by the President of AFC and the chief executive officer of Auction, or their authorized representatives, of the amount of Credit available to Dealers that wish to use Credit to purchase vehicles at such auction sale ("Original Credit"). AFC's liability to Auction for each such Dealer's Original Credit shall remain in effect until 11:59 p.m. on the day that such Original Credit information is originally posted on AFC's website or sent to Auction by AFC. AFC further agrees to advise Auction by email, by posting onto AFC's website, by facsimile transmission, or by any other method mutually agreed to in writing by the President of AFC and the chief executive officer of Auction, or their authorized representatives, of any withdrawal or reduction of any Dealer's Original Credit. In the event AFC advises Auction of the withdrawal or reduction of any Dealer's Original Credit during an auction sale, Auction shall use commercially reasonable efforts to notify the affected Dealer of such withdrawal or reduction and shall not issue gate passes to such Dealer for any vehicle purchased where the aggregate purchases for such Dealer exceed the amount of Credit available to such Dealer at that time. Notwithstanding Auction's failure to notify any Dealer of such withdrawal or reduction of any such Dealer's Original Credit or Auction's inadvertent issuance of a gate pass, AFC shall remain liable to Auction for purchases by such Dealer up to an amount equal to such Dealer's Original Credit. Notwithstanding anything to the contrary herein, under no circumstance shall AFC be liable to Auction with respect to purchases made by any Dealer for any amount in excess of such Dealer's Original Credit. In the event the Auction does not receive the Original Credit information for any Dealer, Auction shall not allow such Dealer or Dealers to purchase with Credit and AFC shall not be liable to Auction for any such purchases.

    (c) Within one business day after the conclusion of each auction sale, Auction shall, by email, by facsimile transmission, or by any other method mutually agreed to in writing by the President of AFC

AFC
OFFICER                                                                                   Auction    Auction

Auction Agreement_non_NAAA_ 01_09_13

and the chief executive officer of Auction, or their authorized representatives, provide AFC with documentation for vehicles purchased by any Dealer with Credit, specifying for each such vehicle (i) the year, make, model, color, body style, and vehicle identification number; (ii) the name and address of the purchasing Dealer; (iii) the actual sale price; and (iv) the buyer's fee due to Auction; (v) the mileage listed on the odometer; (vi) whether or not such vehicle was purchased during an auction sale on the auction block or off of the auction block; and (vii) whether or not such vehicle was on site at the Auction Facility at the time of such sale. Regardless of the amount of a Dealer's available Credit, Auction shall not place any vehicle purchase on a Dealer's AFC floor plan without the Dealer's express authorization.

(d) Subject to paragraph 1(b), provided that an Event of Default by Auction does not exist and Auction is in compliance with all the terms of this Agreement, AFC shall pay to Auction the reasonable sale price, and the buyer's fee due to Auction for each vehicle identified in paragraph 1(c) within one business day of AFC's receipt of the original Title, properly endorsed or assigned by the applicable seller, along with the completed odometer disclosure statement, the original sales invoice or consignor ticket which lists the name and address of the seller and the buyer's fee due to Auction, as a separate item from the purchase price, and any additional documentation required by State regulation to transfer title to the vehicle. Each such payment by AFC shall be made via check (delivered via overnight courier or hand delivery) or Automated Clearing House ("ACH") transfer to the account designated by Auction in writing to AFC in accordance with ACH policies and procedures.

(e) If a payment is made in error or an overpayment is made by AFC to Auction via ACH, AFC shall have the right to debit the amount of such payment or overpayment from the Auction's account via ACH.

2. **Representations and Warranties**. Auction represents and warrants that all information provided in any documentation sent to AFC pursuant to this Agreement is accurate and complete in all respects and that such documentation is sufficient to transfer marketable title to the subject vehicle(s).

3. **Confidentiality**.

(a) AFC acknowledges that AFC may gain access to information about Auction, the disclosure of which could substantially harm Auction's business and AFC agrees not to disclose such information to any third party except under order of a court of competent jurisdiction.

(b) Auction acknowledges that Auction may gain access to information about AFC, the disclosure of which could substantially harm the business of AFC and Auction agrees not to disclose such information to any third party except under order of a court of competent jurisdiction.

4. **Events of Default**. Each of the following events shall constitute an Event of Default:

(a) the default in payment or performance of any obligation under this Agreement; and

(b) a party reasonably determining that any covenant, warranty, representation, or statement made by the other party in connection with this Agreement has been breached or is false or misleading.

5. **Remedies**. Upon the occurrence of an Event of Default, the parties shall have the right to pursue any of their respective rights and remedies separately, successively or concurrently, and the exercise of any right or remedy shall not preclude its exercise at a later time or the exercise of other rights or remedies not specifically identified herein.

(a) The parties may (i) demand, receive, AND sue for and collect any moneys due or to become due under this Agreement, including without limitation monies paid in reliance upon a misrepresentation by the other party and (ii) assent to any or all extensions or postponements of time of payment.

      (b)    AFC may (i) discontinue providing Credit information; and (ii) upon the continuance of an Event of Default by Auction set-off any amounts owed to Auction by AFC against any amounts owed by Auction to AFC.

6.    **Termination**.  This Agreement may be terminated

      (a)    immediately in the case of fraud committed by a party;

      (b)    immediately by mutual agreement of the parties; or

      (c)    by either party giving thirty (30) days prior written notice to the other party.

Notwithstanding the foregoing, the parties' rights and obligations with respect to confidentiality and with respect to the transactions consummated prior to termination, shall survive termination.

7.    **Miscellaneous Provisions**.

      (a)    Auction acknowledges AFC's security interest in vehicles owned by Dealers and the proceeds thereof, if and only if, Auction has also received Credit advice with respect to such Dealer as provided in section 1 above.  By acknowledging AFC's security interest, Auction does NOT incur any obligations to act at AFC's direction with respect to such vehicles or the proceeds thereof except as provided herein.

      (b)    Upon receipt of good funds from AFC, for each vehicle purchased by any Dealer pursuant to the terms of this Agreement, Auction sells and assigns without representation or warranty all of Auction's interest in each such vehicle, including without limitation any security interest or lien that Auction may have in such vehicle, to AFC.

      (c)    With respect to the subject matter hereof, this Agreement embodies the entire agreement and understanding between the parties and amends and restates any prior agreements and understandings between them.  Notwithstanding the above, the parties acknowledge that it may be necessary to amend the procedures as enumerated in this Agreement.  The parties agree that such procedures may be amended by mutual letter agreement signed by both parties.

      (d)    Unless otherwise provided for in this Agreement, all notices and other official communications given under this Agreement shall be in writing and shall be delivered in person, by certified mail - return receipt requested and postage prepaid, overnight courier or by confirmed facsimile transmission.  All notices to a party will be sent to the addresses set forth below or to such other addresses or persons as such party may designate by notice to the other party hereunder

| TO AFC: | TO AUCTION: |
|---|---|
| AUTOMOTIVE FINANCE CORPORATION | DRUIEN, INC. |
| 13085 Hamilton Crossing Blvd. | DBA LAWTON CACHE AUTO AUCTION |
| Suite 300 | 9 SW 112th Street |
| Carmel, IN  46032 | Lawton, OK 73505 |
| Attn.:  Legal Department | Attn:  Emmett Druien, President |
| Phone:  317-815-9645 | Lisa Druien, Vice President; Treasurer |
| Fax:  866-929-3430 | Phone:  580-536-4645 |
| | Fax:  580-536-4649 |

      (e)    This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall be deemed one and the same instrument.

AFC OFFICER        Auction    Auction

Auction Agreement_non_NAAA__01_09_13

(f) If any provision of this Agreement is invalid, illegal or unenforceable under any applicable statute or rule of law, the remaining provisions hereof shall remain in full force and effect.

(g) AUCTION AND AFC EACH ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED. THEREFORE, EACH PARTY, AFTER CONSULTING, OR HAVING HAD THE OPPORTUNITY TO CONSULT, WITH COUNSEL OF THEIR CHOICE, HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY, FOR THEIR MUTUAL BENEFIT, WAIVES ANY RIGHT TO TRIAL BY JURY IN RESPECT TO ANY LITIGATION ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT AND RELATED AGREEMENT(S), INSTRUMENTS OR TRANSACTIONS, OR ANY ASPECT OF THE PAST, PRESENT, OR FUTURE RELATIONSHIP OF THE PARTIES. THIS PROVISION IS A MATERIAL INDUCEMENT FOR AFC ENTERING INTO THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

(h) Any action initiated by Auction against AFC relating to this Agreement shall be filed and conducted in the Circuit or Superior Courts of Hamilton County or Marion County, State of Indiana. AFC may bring any action against Auction relating to this Agreement in any court of competent jurisdiction, and Auction hereby consents to AFC's choice of forum. This Agreement shall be governed by the substantive laws of the State of Indiana without resort to principles of conflicts of laws. AUCTION AND AFC AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN THE CLAIMANT'S INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING OR AS A NAMED OR UNNAMED MEMBER IN A CLASS, CONSOLIDATED, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

**Witness:**

By: *Frances C. York*
Print Name: FRANCES C YORK

**AUTOMOTIVE FINANCE CORPORATION**

By: *Joe G-B Keadle*
Print Name: Joe G-B Keadle
Title: Vice President - Operations

**Witness:**

By: *Matt R.*
Print Name: Matthew Ramsey

**DRUIEN, INC.**
**DBA LAWTON CACHE AUTO AUCTION**

By: *Emmett Druien*
Print Name: Emmett Druien
Its: President

**Witness:**

By: _____
Print Name: _____

By: *Lisa Druien*
Print Name: Lisa Druien
Its: Vice President; Treasurer

Auction Agreement_non_NAAA_01_09_13