**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**(FORT WORTH DIVISION)**

| | |
|---|---|
| NEXTGEAR CAPITAL, INC. AND AUTOMOTIVE FINANCE CORPORATION,<br><br>         Plaintiffs,<br><br>  v.<br><br>DRUIEN, INC. D/B/A LAWTON AUTO AUCTION A/K/A LAWTON CACHE AUTO AUCTION, LISA DRUIEN, MICHAEL VERNON GARRISON D/B/A ROCK HILL USED CARS, AND EMMETT DRUIEN,<br><br>         Defendants. | Civil Action No. 4:20-cv-00959-BJ |

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

Plaintiffs, NextGear Capital, Inc. and Automotive Finance Corporation (collectively, the "Plaintiffs"), by and through their undersigned counsel, file this their Second Amended Complaint (the "Complaint") against Druien, Inc. d/b/a Lawton Auto Auction a/k/a Lawton Cache Auto Auction, Lisa Druien, Michael Vernon Garrison d/b/a Rock Hill Used Cars, and Emmett Druien (collectively, the "Defendants") pursuant to the Order of this Court [Doc. # 6] entered on September 21, 2020, and complain as follows:

**I.**
**JURISDICTION AND VENUE**

1.       The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and is between citizens of different states.  Neither Plaintiff is a citizen of a state in which any Defendant is a citizen.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3).[1]  Defendant Druien, Inc. d/b/a Lawton Auto Auction a/k/a Lawton Cache Auto Auction ("LAA") is a Texas corporation whose registered office is located at 4944 Whisper Win, Wichita Falls, Texas 76310, which is located within the Northern District of Texas.  Pursuant to 28 U.S.C. § 1391(c)(2), an entity such as LAA is deemed to reside in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question.  Thus, defendant LAA resides in the Northern District of Texas, although LAA's principal place of business is located in Oklahoma.

3.      LAA also had a checking account at the First National Bank located in Wichita Falls, Texas, from which LAA conducted business for several years and, pursuant to defendant Lisa Druien's written authorization, authorized floor plan lenders such as NextGear to initiate electronic credit or debit entries.  Additionally, defendant Michael Vernon Garrison d/b/a Rock Hill Used Cars ("M. Garrison") executed agreements with Plaintiffs whereby M. Garrison expressly agreed and consented to Plaintiffs' choice of forum as long as the court handling the case was a court of competent jurisdiction.  Specifically, the forum selection clause in NextGear Capital, Inc.'s contracts with M. Garrison read as follows:

> Borrower acknowledges and agrees that Lender [NextGear] reserves the right to initiate and prosecute any action against Borrower in any court of competent jurisdiction, **and Borrower consents to such forum as Lender may elect.**[2]

Likewise, Automotive Finance Corporation's forum selection clause with defendant M. Garrison provides as follows:

---

[1] Section 1391(b)(1) of the venue statute is not applicable because one of the defendants, Lisa Druien, resides in Oklahoma.  Had defendant Lisa Druien lived anywhere in Texas, then venue would be proper in the Northern District under § 1391(b)(1).

[2] *See* Exhibit A, para. 21; Exhibit F, para. 21 (emphasis added).

> Lender may bring any suit against Dealer in any court of
> competent jurisdiction, and **Dealer hereby consents to Lender's
> choice in forum**.[3]

Accordingly, M. Garrison waived his venue rights by expressly consenting to Plaintiffs' choice

of venue.[4]  LAA also expressly waived its right to choose venue by entering into an agreement

with AFC that allows AFC to choose venue.  Specifically, the auction agreement between LAA

and AFC reads in relevant part as follows:

> AFC may bring any action against Auction [LAA] relating to this
> Agreement in any court of competent jurisdiction, and **Auction
> hereby consents to AFC's choice of forum**.[5]

4.     In addition to the foregoing, the advances that are the subject of this Second

Amended Complaint were tendered by Plaintiffs under floor plan financing agreements on behalf

of defendant M. Garrison was paid to LAA either at First National Bank in Wichita Falls or other

financial institutions located in Oklahoma.   The vehicles that are the subject of this First

Amended Complaint were all sold at the LAA's principal place of business in Oklahoma, and the

various fraudulent transactions that are the subject of this First Amended Complaint involving all

Defendants occurred in Oklahoma.   Additionally, the floor plan finance agreement NextGear

Capital, Inc. has with defendants M. Garrison reference 1320 City Center Drive, Suite 100,

Carmel, Indiana 46032 as the place of performance for tendering payments.   Likewise, AFC's

floor plan financing agreement references the place of performance for tendering payments as

AFC's principal office located in Indiana.

5.     Accordingly, 28 U.S.C. § 1391(b)(2) is inapplicable because a substantial part of

the events or omissions giving rise to Plaintiffs' claims against the Defendants arose in

---

[3] *See* Exhibit H, para. 9.11 (emphasis added).
[4] *City of New Orleans v. Municipal Administrative Services, Inc.*, 376 F.3d 501, 504 (5th Cir. 2017) ("A party may waive its rights by explicitly stating that it is doing so, **by allowing the other party the right to choose venue**, or by establishing an exclusive venue within the contract.") (emphasis added).
[5] *See* Exhibit M, pp. 4 (emphasis added).

Oklahoma as a result of Defendants' concerted action to fraudulently sell and/or purchase and finance vehicles at LAA's auction located in Oklahoma. Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b)(3) and pursuant to the express consent of all defendants LAA and M. Garrison. Moreover, if venue is proper in one division of a district, then venue is proper in another division within that same district. *Martinez v. City of Fort Worth, Texas*, 2003 WL 21289654, *1 (N.D. Tex. 2003).

      6.     This Court has personal jurisdiction over all Defendants because LAA is a Texas corporation whose registered agent, Emmett Druien, has LAA's registered office located in Texas. LAA also had a checking account at the First National Bank located in Wichita Falls, Texas, from which LAA conducted business for several years and, pursuant to defendant Lisa Druien's written authorization, authorized floor plan lenders such as NextGear to initiate electronic credit or debit entries. Additionally, defendant Lisa Druien notarized at least one assignment of title of a NextGear-financed 2005 Chevrolet Silverado from Emmett Druien, as seller, to Texas dealer, M. Garrison, as buyer. Lisa Druien also had contacts and relationships with individuals operating Texas motor vehicle dealerships such as M. Garrison. Likewise, the Court has personal jurisdiction over Emmett Druien because LAA's invoices show that Emmett Druien, as seller, sold to M. Garrison at least two motor vehicles which were financed by Plaintiffs consisting of a 2001 HDAB Trailer and 1995 Great Dane Trailer. Moreover, defendant M. Garrison is an individual residing in Texas and conducts business in Texas. Therefore, this Court has personal jurisdiction over all named defendants.

## II.
## PARTIES

      7.     Plaintiff NextGear is a Delaware corporation with its principal office located in Indiana.

8.      Plaintiff AFC is an Indiana corporation with its principal office located in Indiana.

9.      Defendant LAA is a Texas corporation who has been served by and through its registered agent, Emmett Druien, and has entered an appearance in this case.

10.      Defendant Lisa Druien is an individual residing in Oklahoma who was properly served with process and has entered an appearance in this case.

11.      Defendant Michael Vernon Garrison d/b/a Rock Hill Used Cars ("M. Garrison") is an individual who resides in Texas, was properly served with process, and entered an appearance in this case.

12.      Defendant Austin Michael Garrison a/k/a Mike Garrison d/b/a Austin Financial Services ("A. Garrison") is an individual who resides in Texas, was properly served with process, and has entered an appearance in this case.

13.      Defendant Emmett Druien is an individual residing in Oklahoma who may be served with process at his last known address of 8802 NW Cache Rd., Apartment # 803, Lawton, Oklahoma 73505, or his business address at #9 SW 112th St. Lawton, Oklahoma 73505, or wherever he may be found.

## III.
## CLAIMS OF NEXTGEAR AGAINST DEFENDANTS AND FACTUAL BACKGROUND

### Facts Relevant to M. Garrison

14.      At all times relevant to these proceedings, M. Garrison operated a retail motor vehicle dealership located at 519 Interstate Highway 30 E, Sulphur Springs, Texas 75482.

15.      On or about May 6, 2015, NextGear and M. Garrison entered into a floor plan financing agreement whereby M. Garrison executed a Demand Promissory Note and Loan and Security Agreement (the "M. Garrison NextGear Note") and whereby NextGear, as Lender, agreed to make Advances, as defined in paragraph (2) of Appendix A of the M. Garrison

5

NextGear Note, in its sole discretion, to M. Garrison. A true and correct copy of the M. Garrison NextGear Note with attached Appendix A, Advanced Schedule, and Power of Attorney thereto is attached hereto and incorporated by reference for all purposes as Exhibit "A."

16.     Under §4(f) the M. Garrison NextGear Note, M. Garrison is obligated "[t]o hold all amounts received from the sale of any Unit of Lender Financed Inventory in the form as received in trust for the sole benefit of and for Lender, and to remit such funds satisfying all amounts due Lender and owing by Borrower for and in connection with such Receivable, in each case within twenty-four (24) hours of Borrower's receipt of such funds (or receipt of such funds by any Affiliate of Borrower)."

17.     Pursuant to ¶ 2 of the M. Garrison NextGear Note, M. Garrison granted to NextGear a security interest in the Lender Financed Inventory and the Titles thereto (as defined in the M. Garrison NextGear Note) and also granted to NextGear a security interest in all of M. Garrison's other Collateral (as defined in ¶ 2(a) the M. Garrison NextGear Note).

18.     NextGear perfected its security interests against M. Garrison's Collateral by filing a UCC-1 Financing Statement with the Texas Secretary of State as to M. Garrison, as debtor, on May 11, 2015, which was assigned filing # 15-0014536196.   NextGear timely filed a continuation statement to its UCC-1 Financing Statement with the Texas Secretary of State on December 24, 2019.

19.     True and correct copies of the UCC-1 Financing Statement and continuation statement filed by NextGear on M. Garrison are collectively attached hereto and incorporated by reference for all purposes as Exhibit "B."  The foregoing UCC-1 Financing Statement was duly filed in full compliance with the filing provisions of Tex. Bus. & Comm. Code §9.101 *et seq.*

20.     In conjunction with the execution of the M. Garrison NextGear Note, and to ensure payment of the indebtedness thereunder, M. Garrison signed and executed an Individual Guaranty (the "M. Garrison Guaranty") on or about May 6, 2015, whereby M. Garrison voluntarily, unconditionally, and absolutely guaranteed full and prompt payment when due, whether by acceleration or otherwise, of all Liabilities as defined in paragraph 1(b) of the M. Garrison Guaranty.

21.     A true and correct copy of the M. Garrison Guaranty is attached hereto and incorporated herein by reference for all purposes as Exhibit "C."

22.     NextGear advanced funds to M. Garrison and to certain third parties on M. Garrison's behalf in order to finance motor vehicle inventory as Collateral pursuant to the terms of the M. Garrison NextGear Note.

23.     The funds advanced by NextGear to M. Garrison and to certain third parties on M. Garrison's behalf have not been fully repaid as agreed.  Specifically, M. Garrison is indebted to NextGear for fifty-five (55) motor vehicles for which NextGear provided advances under the M. Garrison NextGear Note.  The fifty-five (55) vehicles (hereinafter, the "Rock Hill NextGear Vehicles") are identified by vehicle identification number, NextGear stock number, year, make, model and color in NextGear's Receivable Detail Report for M. Garrison (the "Rock Hill RDR") dated May 1, 2020.

24.     A true and correct copy of the Rock Hill RDR is attached hereto as Exhibit "D" and incorporated herein by reference for all purposes.

25.     M. Garrison defaulted under the M. Garrison NextGear Note by, *inter alia*, failing to make payments of the principal and/or interest due thereunder.

26.     NextGear conducted an audit of M. Garrison's sales lot, and based on the results of the lot audit, NextGear determined that M. Garrison sold at least five (5) of the Rock Hill NextGear Vehicles to third parties without timely remitting to NextGear the sales proceeds as required by paragraph 4(f) of the M. Garrison NextGear Note.

27.     A list of the five (5) Rock Hill NextGear Vehicles sold out of trust by M. Garrison (collectively referred to herein as the "SOT Vehicles") is attached hereto as Exhibit "E" and identifies for each SOT Vehicle the year, make, model, full vehicle identification number, and remaining principal balance due for each such SOT Vehicle.  As set forth in Exhibit "E," M. Garrison failed to pay back any portion of the original principal amount advanced for the SOT Vehicles, and the total principal amount due for the SOT Vehicles is $115,810.00.  Subsequent to the Exhibit "E" SOT report date of May 1, 2020, NextGear was able to recover three (3) of the five (5) SOT Vehicles as follows:

| Year | Make | Model | VIN # |
|------|------|-------|-------|
| 2015 | RAM | 3500 | 3C63RRHLXFG642243 |
| 2000 | FORD | MUSTANG | 1FAFP4446YF239383 |
| 2008 | FORD | F550 4X4 EX | 1FDAX57R18ED86326 |

However, NextGear was unable to locate, recover or sell the remaining two (2) SOT Vehicles identified in the Exhibit "E" SOT Report (the "Unrecovered SOT Vehicles"), whose combined total payoff equals $52,138.81.  In addition to the foregoing, NextGear was able to repossess and secure the remaining Rock Hill NextGear Vehicles listed in the Exhibit "D" Rock Hill RDR.

28.     M. Garrison has disposed of the proceeds from the sale of the SOT Vehicles in direct contravention to NextGear's perfected, first-priority security interest in those proceeds. With respect to the two SOT Vehicles NextGear was unable to locate or recover, those SOT Vehicles have been sold presumably free and clear of NextGear's security interest, and NextGear

8

no longer has collateral securing that portion of the indebtedness owed by M. Garrison under the M. Garrison NextGear Note.

29.     As a result of the occurrence and continuance of the several Events of Default, as that term is defined in the M. Garrison NextGear Note, NextGear declared the entire indebtedness due under the M. Garrison NextGear Note immediately due and payable.

30.     NextGear has exercised its default remedies with respect to forty-eight (48) of the following repossessed vehicles from M. Garrison and sold them at a public auction to the highest bidder for the following amounts (the "NG Sold Vehicles"):

| Year | Make | Model | VIN # | Floored Amount | Gross Sales Proceeds | Net Sales |
|------|------|-------|-------|----------------|----------------------|-----------|
| 2004 | CHEVROLET | AVALANCHE 4X2 CR | 3GNEC12T04G171303 | $11,230 | $2,200 | $1,869.40 |
| 2013 | LEXUS | ES 350 | JTHBK1GG6D2020256 | $15,280 | $8,500 | $8,315.00 |
| 2008 | FORD | F550 4X4 RG | 1FDAF57R48EB34427 | $28,990 | $8,250 | $8,170.00 |
| 1999 | DODGE | RAM 2500 | 1B7KF2368XJ512080 | $9,702 | $1,700 | $1,355.40 |
| 2003 | GMC | C5500 | 1GDJ5C1114F500844 | $34,470 | $1,000 | $815.00 |
| 2013 | FORD | F-150 | 1FTFW1ET7DFB02285 | $17,500 | $9,900 | $9,795.00 |
| 2004 | MITSUBISHI | FE639 | JL6AAE1H44K000734 | $29,490 | $1,250 | $1,070.00 |
| 2004 | FORD | 350 SRW 4X4 CR | 1FTSW31P04EA21086 | $16,780 | $3,500 | $2,969.80 |
| 2007 | DODGE | RAM3500 4X4 QD | 3D7MX48CX7G723854 | $19,320 | $4,000 | $3,685.40 |
| 2004 | GMC TRUCK | C7500 | 1GDM7C1384F512353 | $34,325 | $5,500 | $4,596.30 |
| 2006 | CHEVROLET | 3500 4X4 CR | 1GCJK33D46F252242 | $21,940 | $9,500 | $ 9,315.00 |
| 2011 | RAM | 2500 4X4 CR | 3D7TT2CT2BG511932 | $22,940 | $15,300 | $15,010.40 |
| 2015 | FORD | F250 4X4 CR | 1FT7W2BTXFEC10911 | $26,970 | $15,100 | $14,866.00 |
| 2011 | GMC TRUCK | SIERA 35 4X4 EX | 1GT523C81BZ265964 | $27,125 | $5,200 | $4,893.40 |
| 2009 | DODGE | RAM 2500 4X2 6C | 3D7KR28L39G535332 | $20,625 | $4,500 | $4,115.40 |
| 1996 | FORD | F250 4X4 REG | 1FTHF26H2TEB02756 | $10,000 | $600 | $401.00 |
| 1996 | FORD | WINDSTAR FWD | 2FMDA5148TBB47033 | $8,190 | $300 | $115.00 |
| 2016 | RAM | 3500 4X4 CR | 3C7WRTCL9GG178005 | $26,470 | $13,700 | $13,515.00 |
| 2014 | FORD | EXPEDITN EL 4X4 | 1FMJK1J57EEF15145 | $23,440 | $8,500 | $8,297.00 |

9

| 2002 | FORD | F250 4X4 CR | 1FTNW21F42EA89984 | $23,940 | $7,250 | $7,065.00 |
| 2012 | FORD | 350 DRW 4X4 C/C | 1FD8W3HT5CEC10971 | $24,125 | $11,500 | $11,119.00 |
| 1994 | FORD | F150 4X2 EXT | 1FTEX15N9RKA15724 | $8,990 | $700 | $360.40 |
| 1989 | FORD | MED HVY CONVNTN | 1FDXK84A3KVA37099 | $25,100 | $5,500 | $ 4,900.00 |
| 2015 | RAM | 3500 | 3C63RRGL4FG702552 | $23,940 | $8,000 | $7,895.00 |
| 2008 | FORD | F550 4X4 EX | 1FDAX57R18ED86326 | $28,675 | $4,000 | $3,805.00 |
| 2009 | FORD | F250SD | 1FTSX20R19EA01706 | $16,280 | $1,150 | $986.00 |
| 2007 | INTNL | L SEMI | 2HSCNSCR97C389008 | $27,480 | $3,200 | $3,015.00 |
| 2014 | FORD | F350SD | 1FT8W3DT0EEB34184 | $30,450 | $7,200 | $6,895.00 |
| 2007 | INTNL | 7000 | 1HTWBAAR67J461931 | $35,070 | $7,900 | $7,574.00 |
| 2006 | NISSAN | MAXIMA | 1N4BA41E46C810994 | $7,180 | $1,000 | $786.00 |
| 2015 | FORD | F350SD | 1FT8W3DT0FEA26911 | $23,500 | $6,400 | $5,892.43 |
| 2011 | CHEVROLET | TAHOE | 1GNSCDFJ5BR260679 | $26,940 | $9,900 | $9,561.00 |
| 2007 | DODGE | RAM | 3D6WH46A27G712729 | $28,990 | $3,500 | $2,663.90 |
| 2007 | DODGE | RAM | 3D6WG36A67G817092 | $26,470 | $2,800 | $2,627.00 |
| 2014 | FORD | F350 | 1FD8W3GT5EEA25582 | $26,970 | $6,750 | $6,307.40 |
| 2014 | FORD | F350 | 1FD8W3GT7EEA25583 | $29,000 | $11,300 | $11,053.00 |
| 2002 | DODGE | RAM | 3B7KC23C92M236518 | $15,170 | $2,250 | $2,016.00 |
| 2006 | CHEVROLET | SILV | 1GCJK33245F935684 | $21,940 | $10,250 | $9,864.80 |
| 2011 | FORD | F350 | 1FT7X3B64BEB25540 | $17,725 | $2,250 | $2,051.00 |
| 2005 | DODGE | RAM | 3D7KS28C05G751217 | $16,725 | $4,000 | $3,723.40 |
| 2015 | RAM | 3500 | 3C63RRHLXFG642243 | $27,125 | $10,500 | $9,320.57 |
| 2000 | INTER | DUMP | 1HTSDAAN2YH314391 | $26,100 | $2,500 | $2,350.00 |
| 1982 | GMC | DUMP | 1GDG6H1J6NJ501295 | $19,100 | $600 | $450.00 |
| 2005 | DODGE | RAM | 3D7KR28C65G706682 | $14,270 | $4,400 | $4,050.40 |
| 2009 | FORD | F350 | 1FTWW33R09EA44875 | $19,820 | $2,500 | $2,150.40 |
| 2007 | FORD | F750 | 3FRXF75S95V156426 | $29,990 | $4,500 | $4,350.00 |
| 2000 | FORD | MUSTANG | 1FAFP4446YF239383 | $10,285 | $850 | $686.00 |
| 2015 | FORD | COMM | 1FDXE4FSXFDA07194 | $25,440 | $8,500 | $8,089.00 |

31.   The net proceeds received by NextGear from the sale of all the NG Sold Vehicles totals **$256,913.80**.  All of the NG Sold Vehicles were sold "as is," although several NG Sold Vehicles exhibited structural damage and were in poor condition.  For all NG Sold Vehicles, the gross sales proceeds were significantly below the stated sales price in the Exhibit "E" LAA auction invoices for the same NG Sold Vehicles, which is referenced below in additional detail.

32.     As of the date of filing this Original Complaint, NextGear has not yet sold the remaining Rock Hill NextGear Vehicles which were not otherwise included in the NG Sold Vehicles or sold out of trust by M. Garrison.  Two of the remaining, unsold units recovered by NextGear have missing vehicle identification plates, so the units cannot be sold.  The process for obtaining the necessary vehicle identification reassignment by the Texas Department of Motor Vehicles can potentially take several months, and based on the poor condition of the unsold vehicles, the cost and expense of obtaining a VIN reassignment may exceed any net proceeds that can be recovered by NextGear.  The other units can only run through auction that is specifically tailored for heavy truck sales that generally take place once per month.  Accordingly, the timeframe to liquidate these units may take several additional months.  To the extent NextGear sells any additional Rock Hill NextGear Vehicles, NextGear will credit such net sales proceeds to the amount due and owing by M. Garrison.

33.     After consideration of the net sales proceeds from the sale of the NG Sold Vehicles, in addition to all other lawful offsets, credits, and payments by M. Garrison, the remaining balance due and owing under the M. Garrison NextGear Note is **$936,999.94**, exclusive of attorneys' fees and costs.

34.     As a result of M. Garrison's default, NextGear has incurred additional expenses under the M. Garrison NextGear Note, including, without limitation, attorneys' fees and court costs, all of which NextGear is entitled to recover as holder of the M. Garrison NextGear Note.

### Facts Relevant To Lawton Auto Auction

35.     NextGear, previously doing business as Dealer Services Corporation, entered into a Universal Funding Agreement with LAA dated September 27, 2010 (the "Funding Agreement").

11

36.     LAA is a dealer-only auction that caters to the sale of motor vehicles by wholesale and retail motor vehicle dealers who have General Distinguishing Numbers and are authorized and licensed to sell such vehicles by the Texas Department of Motor Vehicles.

37.     Pursuant to paragraph five (5) of the Funding Agreement, LAA represented and warranted (with emphasis added):

> …that with respect to each purchase of a Vehicle by a Dealer with Credit through Auction for which Auction requests the Auction Payment be funded by DSC to Auction that: (a) such Vehicle actually exists; **(b) Such Vehicle was the subject of an "across the block" sale at one of Auction's regularly scheduled sales, and such sale was conducted by Auction in the ordinary course of Auction's business**; (c) Such Vehicle is available immediately for the purchasing Dealer's actual possession; (d) The certificate of title for such Vehicle is valid and is under the control of Auction on the day of funding; **(e) the Bill of Sale for such Vehicle accurately reflects** (i) the name, address and phone number for the buying Dealer and the seller; (ii) the signature of the buying Dealer and seller; (iii) the make, model, year, color, mileage and the entire vehicle identification number for the subject Vehicle; **(iv) the sale date for the Subject Vehicle**; (v) the sale price for the subject Vehicle; and (vi) each Auction charge for which Auction has requested to be funded in the subject Auction Payment.

38.     A true and correct copy of the Funding Agreement is attached hereto as Exhibit "F" and is incorporated herein by reference for all purposes.

39.     NextGear relied upon the written representations and warranties made by LAA when deciding whether to approve Credit (as defined in the Funding Agreement) or Auction Payments (as defined in the Funding Agreement) to LAA for the sale of any specific Vehicle (as defined in the Funding Agreement).  Accordingly, the Funding Agreement required LAA to run all Vehicles through a live, competitive and public auction during LAA's regularly scheduled auctions, which generally occurred every Wednesday each week.

40.     LAA knowingly failed to run the following twenty-two (22) Rock Hill NextGear Vehicles through a live, competitive auction on the dates specified in the auction bills of sale (hereinafter referred to as the "NG Fraud Vehicles"):

| Unit Year | Unit Make | Unit Model | VIN | Financed Amount | Reassignment Date | Auction Sale Date |
|-----------|-----------|------------|-----|-----------------|-------------------|-------------------|
| 2004 | Chevrolet | Avalanche | 3GNEC12T04G171303 | $11,230.00 | 6/8/2019 | 8/14/2019 |
| 2008 | FORD | SUPER DUTY | 1FDAF57R48EB34427 | $28,990.00 | 4/15/2019 | 10/16/2019 |
| 2004 | GMC | C5C | 1GDJ5C1114F500844 | $34,470.00 | | 10/16/2019 |
| 2009 | Ford | F250SD | 1FTSX20R19EA01706 | $16,280.00 | 5/3/2019 | 10/16/2019 |
| 2011 | Chevrolet | Tahoe | 1GNSCDFJ5BR260679 | $25,940.00 | 6/17/2019 | 10/30/2019 |
| 2004 | Ford | F350SD | 1FTSW31P04EA21086 | $16,780.00 | 8/29/2018 | 11/20/2019 |
| 2001 | HDAB | 53' | 1H9CE53311A263507 | $27,480.00 | 5/21/2019 | 11/20/2019 |
| 1995 | GDAN | 1GR | 1GRAA922XSB029801 | $16,280.00 | 12/11/2018 | 11/27/2019 |
| 2007 | Dodge | Ram 3500 | 3D7MX48CX7G723854 | $19,320.00 | 11/22/2019 | 12/4/2019 |
| 2015 | Ford | F350SD | 1FT8W3DT0FEA26911 | $23,500.00 | 6/28/2019 | 12/18/2019 |
| 2002 | Dodge | Ram 2500 | 3B7KC23C92M236518 | $15,170.00 | 12/31/2019 | 1/3/2020 |
| 2006 | Chevrolet | Silverado 3500 | 1GCJK33D46F252242 | $21,940.00 | 12/3/2019 | 1/8/2020 |
| 2011 | Ram | 2500 | 3D7TT2CT2BG511932 | $22,940.00 | 12/23/2019 | 1/8/2020 |
| 2015 | Ford | F250SD | 1FT7W2BTXFEC10911 | $26,970.00 | 12/20/2019 | 1/22/2020 |
| 2005 | Dodge | Ram 2500 | 3D7KR28C65G706682 | $14,270.00 | 1/15/2020 | 1/22/2020 |
| 1996 | Ford | Windstar Vans | 2FMDA5148TBB47033 | $8,190.00 | 7/12/2019 | 1/29/2020 |
| 2006 | Nissan | Maxima | 1N4BA41E46C810994 | $7,180.00 | 7/12/2019 | 1/29/2020 |
| 2009 | Ford | F350SD | 1FTWW33R09EA44875 | $19,820.00 | 7/25/2019 | 1/29/2020 |
| 2005 | FORD | F750 | 3FRXF75S95V156426 | $29,990.00 | 8/6/2019 | 2/19/2020 |

| 2002 | Ford | F250SD | 1FTNW21F42EA89984 | $23,940.00 | 2/20/2020 | 2/26/2020 |
| 1994 | Ford | F150 | 1FTEX15N9RKA15724 | $8,990.00 | 2/21/2020 | 3/4/2020 |
| 2015 | Ford | Commercial Vans | 1FDXE4FSXFDA07194 | $25,440.00 | 3/10/2020 | 3/11/2020 |

41.     True and correct copies of the Certificates of Title and Lawton Auction invoices for the twenty-two (22) NG Fraud Vehicles are collectively attached hereto as Exhibit "G" and incorporated herein by reference.  The amount NextGear tendered to LAA for each NG Fraud Vehicle identified in the above table is listed under the column "Financed Amount" pursuant to the amounts listed in the Exhibit "G" auction invoices generated by LAA for each NG Fraud Vehicle.  Pursuant to the Exhibit "D" Rock Hill RDR, the total payoff for all NG Fraud Vehicles is **$422,269.70**.

42.     Additionally, the reassignment date reflected on each of the NG Fraud Vehicles' certificate of title that discloses the assignment of each NG Fraud Vehicle from the seller to M. Garrison, as buyer, is identified under the column "Reassignment Date."

43.     Meanwhile, the "Auction Sale Date" in the above table reflects the purported date each NG Fraud Vehicle was sold by LAA according to the invoices and other documents generated by LAA, which were provided to NextGear by LAA.

44.     For most of the NG Fraud Vehicles, the title reassignment date on the back of such vehicles' respective certificates of title as set forth in Exhibit "G" reveals that the NG Fraud Vehicles were actually sold to M. Garrison days, and in some cases *months*, prior to their stated sale date at LAA, when compared to the corresponding Exhibit "G" invoices generated by LAA reflecting different dates of sale at auction.

45.     With respect to the alleged auction sale of NG Fraud Vehicles, LAA did not run any of the NG Fraud Vehicles through a live, competitive auction as reflected on their invoices, as required by the Funding Agreement.

46.     Instead, the times and dates as stated in the LAA invoices provided to NextGear for purposes of facilitating an Auction Payment were deliberately fabricated LAA and/or Lisa Druien.

47.     Further, the sale dates reflected in the reassignments to the NG Fraud Vehicles do not correspond to the normal public auction dates and times for LAA and instead generally fall on days other than a Wednesday, LAA's public auction run day.  Thus, the purported sales of the NG Fraud Vehicles were not "across the block" sales at one of LAA's regularly scheduled sales and were not sold in the ordinary course of LAA's business.

48.     For example, the Reassignment Date of June 8, 2019, for the 2004 Chevrolet Avalanche with VIN ending in 171303 corresponds to a Saturday, which is not a typical public auction day for LAA.  Although the alleged auction sale date reflected in the LAA invoice of August 14, 2019, falls on a Wednesday, the sale of the 2004 Avalanche with VIN ending in 171303 could not have occurred on August 14, 2019, because the reassignment of title reflected a purchase of the vehicle by M. Garrison *months* prior to the alleged auction date of August 14, 2019.  There are numerous other instances of such sales discrepancies by LAA as set forth in the table reflecting the reassignment dates and auction sale dates, all of which are based on the data set forth in Exhibit "G."

49.     For all such NG Fraud Vehicles, the purported sales price as stated on the LAA invoice was both fabricated and inflated by LAA and/or M. Garrison.  These false and fraudulent representations by LAA and M. Garrison are contrary to LAA's representations and warranties in

the Funding Agreement and M. Garrison's representations and warranties in the M. Garrison NextGear Note.

50.     Lisa Druien is an active officer of LAA, regularly engages in the day-to-day operations of LAA and conducts business on behalf of LAA.

51.     Lisa Druien is the Vice President of LAA.

52.     In many instances in which NG Fraud Vehicles were sold through LAA, Lisa Druien notarized title documents prior to such alleged sale by LAA that reflect a purchase or assignment date of the NG Fraud Vehicles on a different date that the LAA invoice shows for such auction sale date.

53.     Lisa Druien had direct and personal knowledge concerning the discrepancies between the reassignment dates reflected on the certificates of title for the NG Fraud Vehicles and the sales date reflected on the Exhibit "G" auction invoices.

54.     Despite having knowledge that discrepancies existed between the reassignment dates reflected on the certificates of title for the NG Fraud Vehicles and the sales date reflected on the Exhibit "G" auction invoices for each corresponding NG Fraud Vehicle, Lisa Druien intentionally withheld disclosing such information to NextGear.

55.     Further, Lisa Druien regularly communicated with M. Garrison to facilitate the transfer of the NG Fraud Vehicles and completed the necessary paperwork on behalf of LAA to make it appear the NG Fraud Vehicles were sold at a public auction on a regularly scheduled auction day.

56.     However, Lisa Druien knew that the NG Fraud Vehicles were not the subject of an "across the block" sale at one of LAA's regularly scheduled sales.

57.     Lisa Druien also knew that the NG Fraud Vehicles were not sold in the ordinary course of LAA's business.

58.     Lisa Druien, LAA, and M. Garrison colluded with one another, and perhaps others, to establish an artificial sales price for the purposes of obtaining financing from NextGear at a premium for vehicles whose value was substantially less than the market value of the amount financed.

59.     LAA and/or Lisa Druien knowingly and intentionally generated false and fraudulent auction invoices and tickets with respect to the sale of NG Fraud Vehicles.

60.     LAA, Lisa Druien, and/or M. Garrison were aware the LAA invoices in Exhibit "G" that were provided to NextGear contained false information with respect to the auction sale date and amount in order to deceive NextGear into believing the NG Fraud Vehicles were sold at a public auction at fair market value.

61.     Had NextGear been aware the auction invoices and tickets associated with the NG Fraud Vehicles contained incorrect, false, or fictitious information pertaining to the sale date or sales amount, NextGear would not have provided financing to M. Garrison based on the alleged sales price of the NG Fraud Vehicles as set forth in the Exhibit "G" LAA invoices.

**Fraudulent Insider Sales**

62.     In addition to the foregoing sale of the NG Fraud Vehicles, LAA, Lisa Druien, and Emmett Druien also supervised, facilitated and/or colluded with M. Garrison to conduct additional fraudulent sales of motor vehicles financed by NextGear.  NextGear discovered irregularities with respect to the following seventeen (17) motor vehicles financed with M. Garrison under the M. Garrison NextGear Note (the "Insider Fraud Vehicles"):

| Unit Year | Unit Make | Unit Model | VIN | Financed Amount | Auction Seller |
|---|---|---|---|---|---|
| 2013 | Lexus | ES 350 | JTHBK1GG6D2020256 | $15,280.00 | Mainer Ford |
| 1999 | Dodge | Ram 2500 | 1B7KF2368XJ512080 | $9,702.00 | Lawton Cache Auto Auction |
| 2007 | International | Semi | 2HSCNSCR97C389008 | $27,480.00 | Big Dawg Motors |
| 2007 | Dodge | Ram 3500 | 3D6WH46A27G712729 | $28,990.00 | Star Motors |
| 2004 | Mitsubish | FE6 | JL6AAE1H44K000734 | $29,490.00 | Austin Financial Services/Michael Garrett |
| 2007 | dodge | ram | 3D6WG36A67G817092 | $26,470.00 | Farmers Electric Cooperative |
| 2014 | Ford | F350SD | 1FD8W3GT5EEA25582 | $26,970.00 | Bottoms Up Motorsports/ Michael Lawson |
| 2014 | Ford | F350SD | 1FD8W3GT7EEA25583 | $29,000.00 | Bottoms Up Motorsports/ Michael Lawson |
| 2007 | VOLVO | VN | 4V4NC9GH87N469707 | $28,990.00 | Kenney W. Self/ Kenney Self |
| 2005 | Chevrolet | Silverado 3500 | 1GCJK33245F935684 | $26,470.00 | Lawton Cache Auto Auction/ Emmett Druien |
| 2007 | international | 7000 | 1HTWBAAR67J461931 | $35,070.00 | Bottoms Up Motorsports/ Michael Lawson |
| 1996 | Ford | F250 | 1FTHF26H2TEB02756 | $10,000.00 | Lawton Cache Auto Auction/ Emmett Druien |
| 2014 | Ram | 3500 | 3C63RRGL7EG235772 | $36,070.00 | Big Dawg/Kyle Way |
| 2016 | Ram | 3500 | 3C7WRTCL9G178005 | $26,470.00 | Manual Gomez/ Manual Gomez |
| 2014 | Ford | Expedition EL | 1FMJK1J57EEF15145 | $23,440.00 | Mainer Ford/Christi Sanders |
| 2006 | Dodge | Ram 3500 | 3D7MX48C06G223278 | $21,940.00 | Vaughn Motor Co/David Vaughn |
| 2015 | Ram | 3500 | 3C63RRGL4FG702552 | $23,940.00 | Austin Financial Services/Michael Garrett |

The amount NextGear tendered to LAA for each Insider Fraud Vehicle identified in the above

table is listed under the column "Financed Amount" as referenced by the Exhibit "D" Rock Hill

18

RDR.   Additionally, the seller of each Insider Fraud Vehicle that was identified by LAA is referenced in the column labeled "Auction Seller."  The buyer for each Insider Fraud Vehicle is M. Garrison.

63.     The documents associated with the sale of the Insider Fraud Vehicles indicates such vehicles were not sold by LAA in the ordinary course of business.  For instance, in at least three (3) separate cases, the Lawton Auto Auction is identified as the *seller* of the Insider Fraud Vehicles.  The specific Insider Fraud Vehicles that were sold by LAA are as follows:

| Unit Year | Unit Make | Unit Model | VIN | Financed Amount | Auction Seller |
|---|---|---|---|---|---|
| 1999 | Dodge | Ram 2500 | 1B7KF2368XJ512080 | $9,702.00 | Lawton Cache Auto Auction |
| 2005 | Chevrolet | Silverado 3500 | 1GCJK33245F935684 | $26,470.00 | Lawton Cache Auto Auction/ Emmett Druien |
| 1996 | Ford | F250 | 1FTHF26H2TEB02756 | $10,000.00 | Lawton Cache Auto Auction/ Emmett Druien |

It is unusual and outside the ordinary course of business for an auction or its principal such as Emmett Druien to sell vehicles that are run through its own auction.  Such conduct by an auction is an indication that the true nature of the sales transaction, including the true identity of the seller and/or the true underlying sales price, has been concealed or altered.

64.     In the instant case, upon information and belief, the sales prices of these three Insider Fraud Vehicles were inflated beyond their fair market value based on their condition at the time of the alleged sale at LAA, enabling M. Garrison and/or LAA to receive additional financing from NextGear that they were otherwise not entitled to receive under the Note and/or Funding Agreement.

65.     In addition to the foregoing, there are several other irregularities in the auction sales process that indicates the Insider Fraud Vehicles were not sold by LAA at all, or

alternatively, were not sold in the ordinary course of business or that the sales price of such Insider Fraud Vehicles was artificially inflated by the parties to the transaction.

66.     For instance, with respect to the 2004 GMC with VIN ending in 500844, M. Garrison is listed as both the buyer *and* seller of the vehicle.  Any such transaction in which the buyer and seller are the same person or entity is a fictitious transaction and is certainly outside the ordinary course of LAA's business.

67.     Additionally, with respect to the 2007 Dodge Ram with VIN ending in 817092 and the 1995 GDAN with VIN ending in 029801, the sellers are not motor vehicle retail dealers. However, LAA is a dealer-only auction that caters to the sale of motor vehicles by wholesale and retail motor vehicle dealers who have General Distinguishing Numbers and are authorized to sell such vehicles by the Texas Department of Motor Vehicles.  Thus, the alleged sale of these two vehicles by non-dealers was not done in the ordinary course of LAA's business contrary to the Funding Agreement.

68.     Further, several of the following Insider Fraud Vehicles had been owned by M. Garrison's affiliated entity, Austin Garrison d/b/a Austin Financial Services, prior to being sold at LAA:

| Unit Year | Unit Make | Unit Model | VIN | Financed Amount | Auction Seller |
|---|---|---|---|---|---|
| 2004 | Mitsubish | FE6 | JL6AAE1H44K000734 | $29,490.00 | Austin Financial Services/Michael Garrett |
| 2014 | Ford | F350SD | 1FD8W3GT5EEA25582 | $26,970.00 | Bottoms Up Motorsports/ Michael Lawson |
| 2014 | Ford | F350SD | 1FD8W3GT7EEA25583 | $29,000.00 | Bottoms Up Motorsports/ Michael Lawson |
| 2015 | Ram | 3500 | 3C63RRGL4FG702552 | $23,940.00 | Austin Financial Services/Michael Garrett |

69.     LAA, Lisa Druien, Emmett Druien, and/or M. Garrison colluded amongst each other to generate invoices that reflect fictitious sales of the Insider Fraud Vehicles and other vehicles allegedly run through the LAA at a public auction, when in fact no such public auction sales occurred.

70.     LAA, Lisa Druien, Emmett Druien, and/or M. Garrison colluded amongst each other to sell the aforementioned four (4) Insider Fraud Vehicles outside the ordinary course of LAA's business with inflated sales prices.

71.     Further, the auction seller identified as Michael Garret is, upon information and belief, a pseudonym or fictitious name and instead refers to the principal of M. Garrison, Michael Garrison, who was involved in orchestrating the fictitious and fraudulent sales of these vehicles at LAA.

72.     The NG Fraud Vehicles and Insider Fraud Vehicles were in poor condition when allegedly run through the auction, if they were run through the auction at all.

73.     The NG Fraud Vehicles and Insider Fraud Vehicles also have discrepancies in their odometer readings between the time they were sold at LAA auction and the time period NG repossessed a portion of the Rock Hill NextGear Vehicles from M. Garrison.   Based on NextGear's review of the odometers in several of the recovered Rock Hill NextGear Vehicles, the odometer readings set forth in the Exhibit "G" LAA invoices are not correct and/or understate the true odometer reading in the Odometer Disclosure Statement.

74.     LAA, Lisa Druien, Emmett Druien, and/or M. Garrison were aware and had knowledge of the poor condition of the NG Fraud Vehicles and Insider Fraud Vehicles prior to their purported "sales" at LAA.

75.     LAA, Lisa Druien, Emmett Druien, and/or M. Garrison knew the odometer

readings set forth in the Odometer Disclosure Statement portion of the Exhibit "G" LAA invoices were incorrect at the time the invoices were generated and/or provided to NextGear.

76.     However, since LAA did not conduct a public auction of the NG Fraud Vehicles and/or Insider Fraud Vehicles, the sales price listed in the invoices generated by LAA did not account for the poor condition of the NG Fraud Vehicles and Insider Fraud Vehicles.

77.     LAA, Lisa Druien, Emmett Druien, and/or M. Garrison knew that by selling all or a portion of the NG Fraud Vehicles and Insider Fraud Vehicles at a non-public auction and outside the ordinary course of business, they would be able to manipulate the sales prices of such vehicles.

78.     LAA, Lisa Druien, Emmett Druien, and/or M. Garrison knew that by falsifying the sales information included in LAA invoices provided to NextGear, they would be able to manipulate the sales prices of such NG Fraud Vehicles and Insider Fraud Vehicles.

79.     LAA, Lisa Druien, Emmett Druien, and/or M. Garrison knew that by manipulating and artificially inflating the sales prices of the NG Fraud Vehicles and Insider Fraud Vehicles, NextGear would be harmed by such conduct.

80.     Defendants LAA, M. Garrison, Emmett Druien, and/or Lisa Druien intentionally and knowingly colluded amongst each other to improperly inflate the value and sales prices of the NG Fraud Vehicles and Insider Fraud Vehicles in order to obtain additional financing from NextGear in violation of the terms of the Funding Agreement and the M. Garrison NextGear Note.

**IV.**
**CLAIMS OF AFC AGAINST DEFENDANTS AND FACTUAL BACKGROUND**

**Facts Relevant to M. Garrison**

81.     Plaintiffs incorporate by reference all previous paragraphs to this Complaint as if set forth fully hereon.

82.     On or about September 3, 2013, AFC and M. Garrison entered into a Demand Promissory Note and Security Agreement (the "AFC Note").

83.     A true and correct copy of said AFC Note, including any applicable amendments, term sheets, and U.S. Aggregate Advance Limit Amendments, is attached hereto and incorporated by reference for all purposes as Exhibit "H."

84.     Pursuant to ¶9.11 of the AFC Note, the agreement and any disputes arising therefrom are governed by the laws of the State of Indiana.

85.     Under the AFC Note, Mr. Garrison became obligated to repay each Advance (as defined in ¶1.2 of the AFC Note and as if fully set forth herein) as specified in the relevant terms sheet for the AFC Note. Specifically, M. Garrison is obligated to pay to AFC at the offices of AFC all Purchase Money Inventory Obligations (as defined in ¶1.23 of the AFC Note and as if fully set forth herein), on demand and without notice, with respect to an Item of Purchase Money Inventory (as defined in ¶1.22 the AFC Note and as if fully set forth herein) on the earlier of:  (a) AFC's demand; (b) forty-eight (48) hours after the disposition by sale or otherwise of an Item of Purchase Money Inventory; or (c) the Curtailment Date (as defined in ¶1.7 of the AFC Note and as if fully set forth herein).

86.     Pursuant to ¶3.0 of the AFC Note, AFC retains a purchase money security interest in the Purchase Money Inventory, as well as a blanket security interest in all inventory and assets of M. Garrison identified as Collateral (as defined in ¶ 1.6 of the AFC Note). AFC perfected said

security interest in the Purchase Money Inventory and Collateral by the filing a UCC-1 Financing Statement with the Texas Secretary of State as to M. Garrison, as debtor, on September 5, 2013, which was assigned filing # 13-0028278970. AFC timely filed a continuation statement to its UCC-1 Financing Statement with the Texas Secretary of State on March 13, 2018, which was assigned filing # 18-00083882.   True and correct copies of the UCC-1 Financing Statement and continuation statement filed by AFC with the office of the Texas Secretary of State are collectively attached hereto and incorporated by reference for all purposes as Exhibit "I."

87.   On or about September 3, 2013, M. Garrison signed and executed an Unconditional and Continuing Guaranty ("AFC Guaranty") with respect to the AFC Note. A true and correct copy of the AFC Guaranty is attached hereto as Exhibit "J" and is incorporated herein by reference for all purposes.

88.   M. Garrison has wholly failed to comply with his individual obligations to AFC pursuant to the AFC Guaranty.

89.   AFC advanced funds to M. Garrison and to certain third parties on M. Garrison's behalf for the purchase of motor vehicle inventory as Collateral pursuant to the terms of the AFC Note.

90.   The funds advanced by AFC to M. Garrison and to certain third parties on M. Garrison's behalf have not been fully repaid as agreed.   Specifically, M. Garrison is indebted to AFC for twenty-eight (28) motor vehicles for which AFC provided advances under the Note. The twenty-eight (28) vehicles (hereinafter, the "AFC Vehicles") are identified by vehicle identification number, AFC stock number, year, make, model and color in AFC's Dealer Payoff Report (the "DPR") dated May 11, 2020.

91.     A true and correct copy of the DPR is attached hereto as Exhibit "K" and incorporated herein by reference for all purposes.

92.     M. Garrison defaulted under the AFC Note by, *inter alia*, failing to make payments of the principal and/or interest due thereunder.

93.     AFC conducted an audit of M. Garrison' sales lot, and based on the results of the lot audit, AFC determined that M. Garrison sold at least one (1) of the AFC Vehicles to third parties without timely remitting to AFC the sales proceeds as required by ¶1.19 of the AFC Note.

94.     To date, the remaining twenty-seven (27) AFC Vehicles have been repossessed by AFC (hereinafter, the "Repossessed Vehicles").  The following one (1) AFC Vehicle was not among the Repossessed Vehicles but instead was sold out of trust by M. Garrison (the "AFC SOT Vehicle"):

| Unit Year | Unit Make | Unit Model | VIN | Financed Amount | Principal Amount Due |
|---|---|---|---|---|---|
| 2015 | Ford | F-250 | 1FT7W2BTXFEA02463 | $28,490.00 | $28,304.42 |

95.     M. Garrison has disposed of the proceeds from the sale of the AFC SOT Vehicle in direct contravention to AFC's perfected, first-priority security interest in those proceeds.  Now that the AFC SOT Vehicle has been sold presumably free and clear of AFC's security interest, AFC no longer has collateral securing that portion of the indebtedness owed by M. Garrison under the AFC Note.

96.     As a result of the occurrence and continuance of the several Events of Default, as that term is defined in the AFC Note, AFC declared the entire indebtedness due under the AFC Note immediately due and payable.

97.    AFC has exercised its default remedies with respect to twenty-seven (27) of the following Repossessed Vehicles and sold them at a public auction to the highest bidder for the following amounts (the "AFC Sold Vehicles"):

| Year | Make | Model | VIN # | Floored Amount | Gross Sales Proceeds | Net Sales Proceeds |
|------|------|-------|-------|----------------|----------------------|--------------------|
| 2006 | Dodge | Ram | 3D7ML48C26G178761 | 21,940.00 | $6,000.00 | $5,501.00 |
| 2008 | Dodge | Ram | 3D7ML48A18G219298 | 25,440.00 | $5,300.00 | $4,771.00 |
| 2007 | Ford | F250 | 1FTSW21P57EB14538 | 20,440.00 | $3,000.00 | $2,535.00 |
| 2002 | Chevrolet | Suburban | 1GNEC16Z82J293191 | 15,280.00 | $600.00 | $321.00 |
| 2006 | Mazda | 6 | JM1GG12L761105547 | 13,270.00 | $1,200.00 | $746.00 |
| 2010 | Dodge | Challenger | 2B3CJ4DV0AH184071 | 14,270.00 | $4,400.00 | $3,956.00 |
| 2009 | Ford | F250 | 1FTSX20R89EA01704 | 22,440.00 | $1,200.00 | $780.00 |
| 2011 | Chevrolet | Silverado | 1GC0KVCG2BZ387391 | 16,780.00 | $2,000.00 | $1,710.00 |
| 2015 | Ford | F250 | 1FT7W2BTXFEC20953 | 30,500.00 | $23,000.00 | $22,721.00 |
| 2014 | Ram | 3500 | 3C63RRGL8EG149807 | 27,980.00 | $15,600.00 | $15,146.00 |
| 2004 | GMC | Sierra | 1GTJK33214F263548 | 24,940.00 | $6,800.00 | $6,360.00 |
| 2012 | Ford | Expedition | 1FMJU1K54CEF09406 | 23,440.00 | $8,600.00 | $8,176.00 |
| 2011 | Ford | Explorer | 1FMHK8F89BGA68442 | 26,280.00 | $5,600.00 | $5,176.00 |
| 2004 | Dodge | Ram | 3D7KU28C64G204039 | 20,840.00 | $4,200.00 | $3,690.00 |
| 2007 | Dodge | Ram | 3D7MX48A37G804242 | 22,940.00 | $9,200.00 | $8,750.00 |
| 2008 | Dodge | Ram | 3D7KR28A48G116225 | 16,280.00 | $3,600.00 | $3,235.00 |
| 2016 | Honda | Pioneer | 1HFVE04R7G4000179 | $17,290.00 | $9,250.00 | $8,830.00 |
| 2005 | Chevrolet | Silverado | 1GCJK33265F919308 | $24,940.00 | $3,700.00 | $3,235.00 |
| 2008 | Chevrolet | Silverado | 1GCJK33648F114088 | $18,790.00 | $9,100.00 | $8,582.50 |
| 2015 | Ford | F350 | 1FD8W3HT2FEA32814 | $35,070.00 | $17,000.00 | $16,516.00 |
| 2015 | Ford | F250sd | 1FT7W2BTXFEA02463 | $28,490.00 | $10,800.00 | $10,471.00 |
| 2013 | Freightliner | M2 | 1FVACWDU5DHFA3237 | $29,940.00 | $11,000.00 | $10,225.00 |
| 1999 | International | 8000-Series | 1HSHBAHNXXH659029 | $28,490.00 | $1,600.00 | $1,355.00 |
| 1988 | Ford | LN 7000 | 1FDNR72P7JVA28327 | $18,290.00 | $1,200.00 | $455.00 |
| 2017 | Apalm | Car Trailer | 5UTGN2428HM007662 | $29,740.00 | $3,000.00 | $2,555.00 |
| 2005 | Take Three | Trailer | 1T9AS40285B540094 | $16,780.00 | $4,000.00 | $3,555.00 |
| 1996 | Ford | F250 | 1FTHX25F0TEB25935 | $12,770.00 | $3,600.00 | $3,045.00 |

98.     True and correct copies of the Sales Recap sheets reflecting the auction handling the sale, auction sale date, gross sales proceeds, charges incurred by AFC, and net sales proceeds for each of the above-referenced AFC Sold Vehicles are collectively attached hereto as Exhibit "L" and incorporated herein by reference for all purposes.  The net proceeds received by AFC from the sale of the AFC Sold Vehicles was $162,398.50.

99.     After consideration of the net sales proceeds from the sale of the AFC Sold Vehicles, in addition to all other lawful offsets, credits, and payments by M. Garrison, the remaining balance due and owing under the AFC Note is $392,994.79, exclusive of attorneys' fees and costs.

100.    As a result of M. Garrison' default, AFC has incurred additional expenses under the AFC Note, including, without limitation, attorneys' fees and court costs, all of which AFC is entitled to recover as holder of the Note.

### Facts Relevant to Lawton Auto Auction

101.    AFC entered into an Auction Servicing Agreement dated December 17, 2013 (the "Auction Agreement"), with LAA.  Pursuant to paragraph two (2) of the Auction Agreement, LAA represented and warranted to AFC (with emphasis added):

> … that all information provided in any documentation sent to AFC pursuant to this Agreement **is accurate and complete** in all respects and that such documentation is sufficient to transfer marketable title to the subject vehicle(s).

Furthermore, the paragraph 1(c) of the Auction Agreement states (with emphasis added) that

> Auction shall … provide AFC with documentation for vehicles purchased by any Dealer with Credit, specifying for each such vehicle (i) the year, make, model, color, body style, and vehicle identification number; (ii) the name and address of the purchasing Dealer; (iii) the actual sale price; and (iv) the buyer's fee due to Auction; (v) the mileage listed on the odometer; (vi) **whether or not such vehicle was purchased during an auction sale on the auction block or off of the auction block**; and (vii) whether or not

such **vehicle was on site at the Auction Facility at the time of such sale**. Regardless of the amount of a Dealer's available Credit, Auction shall not place any vehicle purchase on a Dealer's AFC floor plan without the Dealer's express authorization.

102.    A true and correct copy of the Auction Agreement is attached hereto as Exhibit "M" and is incorporated herein by reference for all purposes.

103.    AFC relied upon the written representations and warranties made by LAA when deciding whether to approve Credit (as defined in the Auction Agreement) or Original Credit (as defined in the Auction Agreement) to LAA for the sale of any specific vehicle.

104.    LAA ran the following twenty-eight (28) AFC Vehicles through auction on the dates specified in the auction bills of sale, whereby M. Garrison was purchaser:

| Unit Year | Unit Make | Unit Model | VIN | Financed Amount | Reassignment Date | Auction Sale Date |
|---|---|---|---|---|---|---|
| 2006 | Dodge | Ram 3500 | 3D7ML48C26G178761 | $21,940.00 | 8/1/2019 | 7/31/2019 |
| 2008 | Dodge | Ram 3500 | 3D7ML48A18G219298 | $25,440.00 | 7/29/2019 | 7/31/2019 |
| 2007 | Ford | F250SD | 1FTSW21P57EB14538 | $20,440.00 | 5/31/2019 | 8/21/2019 |
| 2017 | Car Trailer | | 5UTGN2428HM007662 | $29,740.00 | Reassignment date blank on title | 9/4/2019 |
| 2002 | Chevrolet | Suburban | 1GNEC16Z82J293191 | $15,280.00 | 5/31/2019 | 9/25/2019 |
| 2006 | Mazda | 6 | JM1GG12L761105547 | $13,270.00 | 5/31/2019 | 9/25/2019 |
| 1995 | Trailer | | 1GRAA9224SB029809 | $29,490.00 | 10/11/2019 | 10/2/2019 |
| 2010 | Dodge | Challenger | 2B3CJ4DV0AH184071 | $14,270.00 | Reassignment date blank on title | 10/9/2019 |
| 2009 | Ford | F250SD | 1FTSX20R89EA01704 | $22,440.00 | 5/3/2019 | 10/9/2019 |
| 1999 | International Transtar | 8000-Series | 1HSHBAHNXXH659029 | $28,490.00 | Reassignment date blank on title | 10/16/2019 |
| 1988 | Ford | N-Series | 1FDNR72P7JVA28327 | $18,290.00 | 10/20/2019 | 10/16/2019 |

| 2011 | Chevrolet | Silverado 2500 | 1GC0KVCG2BZ387391 | $16,780.00 | 10/26/2019 | 10/30/2019 |
|---|---|---|---|---|---|---|
| 2015 | Ford | F250SD | 1FT7W2BTXFEC20953 | $30,500.00 | Reassignment date blank on title | 11/27/2019 |
| 2015 | Ford | F350SD | 1FD8W3HT2FEA32814 | $35,070.00 | 12/23/2019 | 1/3/2020 |
| 2005 | Trailer | | 1T9AS40285B540094 | $16,780.00 | 12/21/2019 | 1/3/2020 |
| 2014 | Dodge | Ram 3500 | 3C63RRGL8EG149807 | $27,980.00 | Reassignment date blank on title | 1/8/2019 |
| 2015 | Ford | F250SD | 1FT7W2BTXFEA02463 | $28,490.00 | 1/14/2020 | 1/15/2019 |
| 2004 | GMC | Sierra 3500 | 1GTJK33214F263548 | $24,940.00 | 1/13/2020 | 1/15/2019 |
| 2012 | Ford | Expedition | 1FMJU1K54CEF09406 | $23,440.00 | Reassignment date blank on title | 1/22/2020 |
| 2011 | Ford | Explorer | 1FMHK8F89BGA68442 | $16,280.00 | 7/12/2019 | 1/22/2020 |
| 2004 | Dodge | Ram 2500 | 3D7KU28C64G204039 | $20,840.00 | Reassignment date blank on title | 1/29/2020 |
| 2007 | Dodge | Ram 3500 | 3D7MX48A37G804242 | $22,940.00 | Reassignment date blank on title | 1/29/2020 |
| 2008 | Dodge | Ram 2500 | 3D7KR28A48G116225 | $16,280.00 | 2/4/2020 | 2/12/2020 |
| 1996 | Ford | F250 | 1FTHX25F0TEB25935 | $12,770.00 | 2/14/2020 | 2/19/2020 |
| 2013 | Freightliner | Cascadia | 1FVACWDU5DHFA3237 | $29,490.00 | Reassignment date blank on title | 2/19/2020 |
| 2005 | Chevrolet | Silverado 3500 | 1GCJK33265F919308 | $24,940.00 | 2/10/2020 | 2/26/2020 |
| 2008 | Chevrolet | Silverado 3500 | 1GCJK33648F114088 | $18,790.00 | 2/25/2020 | 3/4/2020 |
| 2016 | Pioneer | 1000-5 Deluxe | 1HFVE04R7G4000179 | $17,290.00 | Reassignment date blank on title | 3/11/2020 |

105.    True and correct copies of the invoices generated by LAA with respect to the sale of the AFC Vehicles are collectively attached hereto as Exhibit "N" and incorporated herein by reference.

106.    True and correct copies of the certificates of title reflecting the reassignment and sale of the AFC Vehicles are collectively attached hereto as Exhibit "O" and incorporated herein by reference.  The date of the reassignment on each of AFC Vehicles' certificates of title in Exhibit "O" are located on the reverse side of each certificate of title and identify M. Garrison, as buyer.

107.    However, LAA did not run the AFC Vehicles through a competitive, public "auction sale on the auction block" as contemplated by the Auction Agreement.

108.    Instead, LAA chose to conduct non-public sales between the various sellers and M. Garrison.

109.    At no time did LAA notify AFC that the AFC Vehicles were not run "on the block" at a live, competitive and public auction during LAA's regularly scheduled auctions, which generally occurred every Wednesday each week.

110.    The amount AFC tendered to LAA for M. Garrison's purchase of the AFC Vehicles is listed under the column "Floored Amount" of the Exhibit "K" DPR and in the "Total Due" amount listed in the Exhibit "N" LAA auction invoices.

111.    For most of the AFC Vehicles, the title reassignment date on the back of the AFC's Vehicles' respective certificates of title reveals that the AFC's Vehicles were actually sold to M. Garrison days, and in some cases *months*, prior to their stated sale date on the Exhibit "N" LAA invoices, which is in contradiction to the sales date specified in the Exhibit "N" invoices.  The only three (3) AFC's Vehicles where the stated auction sale date in the Exhibit "N" invoices is prior to the Reassignment Date on the Exhibit "O" certificates of title are the vehicles with VIN numbers ending in 178761, 029809, and A28327.  All other AFC Vehicles

have significant discrepancies with respect to the auction sales date and reassignment date as referenced on the respective certificate of title.

112.   With respect to the alleged auction sale of the AFC Vehicles, the times and dates as stated in the Exhibit "N" auction invoices provided to AFC by LAA were deliberately fabricated by LAA and/or Lisa Druien.

113.   Further, the sale dates reflected in the Exhibit "O" reassignments of title to the AFC Vehicles do not correspond to the normal public auction dates and times for LAA and instead generally fall on days other than the public auction run date of Wednesday.  Thus, the purported sales of the AFC Vehicles were not "on the auction block or off of the auction block" sales at one of LAA's regularly scheduled sales and were not sold in the ordinary course of the LAA's business.

114.   For example, the Reassignment Date of May 31, 2019, for the 2002 Chevrolet Suburban with VIN ending in 293191 corresponds to a Friday, which is not a typical public auction day for LAA, which falls on a Wednesday.

115.   Moreover, with respect to the sale of the 2002 Suburban with VIN ending in 293191, the alleged auction sale date reflected in the Exhibit "N" LAA invoice of September 25, 2019, could not have occurred on September 25, 2019, because the reassignment of title reflected a purchase of the vehicle by M. Garrison *months* prior to the alleged auction date of September 25, 2019.

116.   For all such AFC Vehicles, the purported sales prices as stated on the Exhibit "N" LAA invoices were both fabricated and inflated by LAA, Lisa Druien, Emmett Druien, and/or M. Garrison.

117.    ***None*** of the LAA invoices are signed by either M. Garrison or the seller, and the invoices do not have any seller's fees, which further indicate fabrication of invoices by LAA and/or Lisa Druien.

118.    These false and fraudulent representations by LAA, Lisa Druien, Emmett Druien, and/or M. Garrison are contrary to LAA's representations and warranties in the Auction Agreement and M. Garrison's representations and warranties in the AFC Note.

119.    In many instances in which the AFC Vehicles were sold through LAA, Lisa Druien notarized title documents prior to such alleged sale by LAA that reflect a purchase or assignment date of such AFC Vehicles on a different date than the corresponding Exhibit "N" invoice shows for such auction sale date.

120.    Lisa Druien had direct and personal knowledge concerning the discrepancies between the reassignment dates reflected on the certificates of title for the AFC Vehicles and the sales date reflected on the Exhibit "N" auction invoices.

121.    Despite having knowledge that discrepancies existed between the reassignment dates reflected on the certificates of title for the AFC Vehicles and the sales date reflected on the Exhibit "N" auction invoices for each corresponding AFC Fraud Vehicle, Lisa Druien intentionally withheld disclosing such information to AFC.

122.    Further, Lisa Druien and/or Emmett Druien regularly communicated with M. Garrison to facilitate the transfer of the AFC Vehicles and completed the necessary paperwork on behalf of LAA to make it appear the AFC Vehicles were sold at a public auction on a regularly scheduled auction day.

123.    However, Lisa Druien and/or Emmett Druien knew that the AFC Vehicles were not the subject of an "across the block" sale at one of LAA's regularly scheduled sales.

124.    Lisa Druien and/or Emmett Druien also knew that the AFC Vehicles were not sold in the ordinary course of LAA's business.

125.    Lisa Druien, Emmett Druien, LAA, and/or M. Garrison colluded with one another, and perhaps others, to establish an artificial sales price for the purposes of obtaining financing from AFC at a premium for vehicles whose value was substantially less than the market value of the amount financed.

126.    LAA, Emmett Druien, and/or Lisa Druien knowingly and intentionally generated false and fraudulent auction invoices and tickets with respect to the sale of the AFC Vehicles.

127.    LAA, Emmett Druien, Lisa Druien, and/or M. Garrison were aware the Exhibit "N" LAA invoices provided to AFC contained false information with respect to the auction sale date and amount in order to deceive AFC into believing the AFC Vehicles were sold at a public auction at fair market value.

128.    Had AFC been aware the auction invoices and tickets associated with the AFC Vehicles contained incorrect, false, or fictitious information pertaining to the sale date or sales amount, AFC would not have provided financing to M. Garrison based on the alleged sales price of the AFC Vehicles.

**Additional Fraudulent Conduct Regarding Sale of AFC Vehicles**

129.    In addition to the forgoing regarding the discrepancies between the Exhibit "O" title reassignment dates and Exhibit "N" auction invoice sale dates for the AFC Vehicles, there exist additional indicia of fraudulent conduct by LAA, Emmett Druien Lisa Druien and/or M. Garrison that ultimately resulted in the inflated sales price listed on the Exhibit "N" auction invoices.

130.    The documents associated with the sale of the AFC Vehicles indicate such vehicles were not sold by LAA in the ordinary course of business.  For instance, in at least one (1) separate case, the LAA is identified as the *seller* of an AFC Vehicle.  The specific AFC Vehicle that was sold by the LAA, as seller, is as follows:

| Unit Year | Unit Make | VIN | Financed Amount | Reassignment Date | Auction Sale Date |
|---|---|---|---|---|---|
| 1995 | Trailer | 1GRAA9224SB029809 | $29,490.00 | 10/11/2019 | 10/2/2019 |

131.    The title reassignment as shown in Exhibit "O" for the above-referenced 1995 Trailer was notarized by Lisa Druien.

132.    It is unusual and outside the ordinary course of business for an auction or its principal to sell vehicles that are run through its own auction.  Such conduct by an auction is an indication that the true nature of the sales transaction, including the true identity of the seller and/or the true underlying sales price, has been concealed or altered.

133.    In the instant case, upon information and belief, the sales prices of the aforementioned 1995 Trailer was inflated beyond their fair market value based on its condition at the time of sale, enabling M. Garrison and/or LAA to receive additional financing from NextGear that they were otherwise not entitled to receive under the Note and/or Auction Agreement.

134.    In addition to the foregoing, the following described 2016 Pioneer was sold at the LAA by an affiliated entity of M. Garrison, Austin Garrison d/b/a Austin Financial Services:

| Unit Year | Unit Make | Unit Model | VIN | Financed Amount | Reassignment Date | Auction Sale Date |
|---|---|---|---|---|---|---|
| 2016 | Pioneer | 1000-5 Deluxe | 1HFVE04R7G4000179 | $17,290.00 | Reassignment date blank on title | 3/11/2020 |

34

135.    LAA, Emmett Druien, Lisa Druien, and/or M. Garrison, colluded amongst each other to generate LAA invoices reflecting the sale of the AFC Vehicles through LAA's auction with false sales information and inflated sales prices.

136.    Further, the auction seller identified in the Exhibit "N" invoice for the sale of the 2014 Dodge Ram ending with VIN 149807 as Michael Lawson of Bottoms Up Motorsports is, upon information and belief, a pseudonym or fictitious name and instead refers to M. Garrison, who was involved in orchestrating the fictitious and fraudulent sales of these vehicles at LAA.

137.    The AFC Vehicles were in poor condition when allegedly run through the LAA auction, if they were run through the auction at all.

138.    The AFC Vehicles also have discrepancies in their odometer readings between the time they were sold at the LAA auction and the time period AFC repossessed the AFC Vehicles from M. Garrison.  Based on AFC's review of the odometers in several of the recovered AFC Vehicles, the odometer readings set forth in the Exhibit "N" LAA invoices are not correct and/or understate the true odometer reading in the Odometer Disclosure Statement.

139.    LAA, Emmett Druien, Lisa Druien and/or M. Garrison were aware and had knowledge of the poor condition of the AFC Vehicles prior to the AFC Vehicles' purported "sale" at the LAA.

140.    LAA, Emmett Druien, Lisa Druien, and/or M. Garrison knew the odometer reading set forth in the Odometer Disclosure Statement portion of the Exhibit "N" LAA invoices were incorrect at the time the invoices were generated and/or provided to AFC.

141.    However, since LAA did not conduct a public auction, the sales price listed in the invoices generated by LAA did not account for the poor condition of the AFC Vehicles.

142. LAA, Emmett Druien, Lisa Druien, and/or M. Garrison knew that by selling all or a portion of the AFC Vehicles at a non-public auction and outside the ordinary course of business, they would be able to manipulate the sales price of such AFC Vehicles.

143. LAA, Emmett Druien, Lisa Druien, and/or M. Garrison knew that by manipulating and artificially inflating the sales price of the AFC Vehicles as reflected on the LAA invoices, AFC would be harmed by such conduct.

144. AFC was harmed by the conduct of LAA, Emmett Druien, Lisa Druien and/or M. Garrison as the net sales proceeds obtained from the sale of the sixteen (16) AFC Sold Vehicles corresponds to approximately less than one third of the original financing provided by AFC based on the sales amounts in the Exhibit "N" invoices.  In many instances, the AFC Sold Vehicles were sold at a public auction at a significantly lower amount than the auction sales amount referenced in the Exhibit "N" invoices because the condition of such AFC Sold Vehicles was very poor.

145. Defendants LAA, M. Garrison, Emmet Druien, and/or Lisa Druien intentionally and knowingly colluded amongst each other to improperly inflate the value and sales prices of the AFC Vehicles in order to obtain additional financing from AFC in violation of the terms of the Auction Agreement and AFC Note.

146. Defendants LAA, Emmett Druien, and Lisa Druien knew that all or a portion of the AFC Vehicles were never run through LAA's auction but instead were the subject of sales that did not involve LAA, many of which were direct sales between the alleged "seller" and M. Garrison for much lower prices than those reflected on the Exhibit "N" invoices.

147. All conditions precedent to this action were satisfied, waived or occurred.

**Attorneys' Fees**

148.     Pursuant to the M. Garrison NextGear Note, and the AFC Note, M. Garrison has expressly waived any right to any jury trial in any action, proceeding or counterclaim brought by either M. Garrison.

149.     Pursuant to the M. Garrison NextGear Note, the M. Garrison Guaranty, the AFC Note, and the AFC Guaranty (collectively, the "Notes and Guaranties"), defendant M. Garrison agreed to pay NextGear's and AFC's costs and expenses, including Plaintiffs' reasonable attorneys' fees and legal expenses incurred in connection with the enforcement of the Notes and Guaranties.

150.     Plaintiffs have retained the law firm of Padfield & Stout, LLP, to enforce the Plaintiffs' rights and remedies under the Notes and Guaranties, and defendant M. Garrison is obligated to pay the law firm's attorneys a reasonable fee for their services pursuant to the aforementioned Notes and Guaranties as well as Chapter 38.001 *et seq.* of the TEX. CIV. PRAC. & REM. CODE.

**V.**
**CAUSES OF ACTION**

**Count I – Breach of Contract (NextGear Only Against M. Garrison)**

151.     Plaintiffs incorporate the allegations of the preceding paragraphs of this Complaint as if fully set forth and restated herein.

152.     The conduct of M. Garrison constitutes a breach of contract.  M. Garrison failed to comply with his contractual obligations to NextGear.  Accordingly, M. Garrison's acts and omissions as described herein constitute an unexcused, unjustified, and material breach of contract.  As a proximate result of M. Garrison's breach of contract, NextGear has suffered actual damages in an amount within the jurisdiction limits of this Court in the amount of

**$936,999.94**, after consideration of all lawful offsets, payments, and credits, excluding prejudgment interest, attorneys' fees as a result of the economic damages for which NextGear sues M. Garrison.

WHEREFORE, NextGear prays that this Court: (1) enter a judgment against M. Garrison in the above-captioned action in the amount of **$936,999.94** for breach of contract, (2) NextGear be awarded its necessary and reasonable attorneys' fees, (3) NextGear be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court, and (4) such other and further relief to which NextGear may be entitled at law or in equity.

### Count II – Breach of Contract (NextGear Only Against LAA)

153.    Plaintiffs incorporate the allegations of the preceding paragraphs of this Complaint as if fully set forth and restated herein.

154.    The conduct of LAA and its default under the Funding Agreement as set forth herein constitutes a breach of contract.  LAA failed to comply with its contractual obligations to NextGear.  Accordingly, LAA's acts and omissions as described herein constitute an unexcused, unjustified, and material breach of contract.  As a proximate result of LAA's breach of contract, NextGear has suffered actual damages in an amount within the jurisdiction limits of this for which NextGear seeks recovery, including any and all prejudgment interest and attorneys' fees as a result of the economic damages for which NextGear sues LAA.

WHEREFORE, NextGear prays that this Court: (1) enter a judgment against LAA in the above-captioned action for breach of contract, (2) NextGear be awarded its necessary and reasonable attorneys' fees, (3) NextGear be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court, and (4) such other and further relief to which NextGear may be entitled at law or in equity.

**Count III – Breach of Contract (AFC Only Against M. Garrison)**

155.    Plaintiffs incorporate the allegations of the preceding paragraphs of this Complaint as if fully set forth and restated herein.

156.    The conduct of M. Garrison and his default under the AFC Note and AFC Guaranty as set forth herein constitutes a breach of contract.  M. Garrison failed to comply with his contractual obligations to AFC.  Accordingly, M. Garrison's acts and omissions as described herein constitute an unexcused, unjustified, and material breach of contract.  As a proximate result of M. Garrison's breach of contract, AFC has suffered actual damages in an amount within the jurisdiction limits of this Court in the amount of **$392,994.79** after accounting for all lawful payments, offsets, and credits, excluding prejudgment interest, attorneys' fees as a result of the economic damages for which AFC sues M. Garrison.

WHEREFORE, AFC prays that this Court: (1) enter a judgment against M. Garrison in the above-captioned action in the amount of **$392,994.79** for breach of contract, (2) AFC be awarded its necessary and reasonable attorneys' fees, (3) AFC be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court, and (4) such other and further relief to which AFC may be entitled at law or in equity.

**Count IV – Breach of Contract (AFC Only Against LAA)**

157.    Plaintiffs incorporate the allegations of the preceding paragraphs of this Complaint as if fully set forth and restated herein.

158.    The conduct of LAA and its default under the Auction Agreement as set forth herein constitutes a breach of contract.  LAA failed to comply with its contractual obligations to AFC.  Accordingly, LAA's acts and omissions as described herein constitute an unexcused, unjustified, and material breach of contract.  As a proximate result of LAA's breach of contract,

AFC has suffered actual damages in the amount of **$392,994.79** for which AFC seeks recovery, including any and all prejudgment interest and attorneys' fees as a result of the economic damages for which AFC sues LAA.

WHEREFORE, AFC prays that this Court: (1) enter a judgment against LAA in the above-captioned action for breach of contract in the amount of **$392,994.79**, (2) AFC be awarded its necessary and reasonable attorneys' fees, (3) AFC be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court, and (4) such other and further relief to which AFC may be entitled at law or in equity.

### Count V – Conversion (NextGear Only Against M. Garrison)

159.    Plaintiffs incorporate the allegations of the preceding paragraphs of this Complaint as if fully set forth and restated herein.

160.    Although previous demand was made for possession of the SOT Vehicles by NextGear's representatives to M. Garrison, M. Garrison has refused to turn over possession of the two (2) Unrecovered SOT Vehicles to NextGear, which are believed to have either been sold by M. Garrison to third parties or are unaccounted for and in the possession of third parties known only to M. Garrison.  M. Garrison's sale, transfer, and/or concealment of the two (2) Unrecovered SOT Vehicles as well as sales proceeds related to the possible sale of the two (2) Unrecovered SOT Vehicles constitutes an improper exercise of dominion and control over such Unrecovered SOT Vehicles and sales proceeds thereto in contravention to NextGear's perfected security interest and superior right of possession of same.

161.    NextGear there alleges that M. Garrison has unlawfully converted the two (2) Unrecovered SOT Vehicles, or to the extent such Unrecovered SOT Vehicles were sold in M. Garrison's business – the sales proceeds thereto – to NextGear's detriment in an amount equal to

the fair market value of each of the two (2) Unrecovered SOT Vehicles at the time and place of conversion.  NextGear alleges the fair market value would be the total principal amount due on the two (2) Unrecovered SOT Vehicles in the amount of **$52,138.81**.

WHEREFORE PREMISES CONSIDERED, NextGear prays that that this Court: (1) enter a judgment against M. Garrison in the above-captioned action for conversion of the Unrecovered SOT Vehicles in the amount of **$52,138.81**, (2) NextGear be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court, and (3) such other and further relief to which NextGear may be entitled at law or in equity.

### Count VI – Conversion (AFC Only Against M. Garrison)

162.    Plaintiffs incorporate the allegations of the preceding paragraphs of this Complaint as if fully set forth and restated herein.

163.    Although previous demand was made for possession of the AFC SOT Vehicle by AFC's representatives to M. Garrison, M. Garrison has refused to turn over possession of the AFC SOT Vehicle to AFC, which is believed to have either been sold by M. Garrison to third parties or are unaccounted for and in the possession of third parties known only to M. Garrison. M. Garrison's sale, transfer, and/or concealment of the AFC SOT Vehicle, as well as sales proceeds related to the possible sale of AFC SOT Vehicle, constitutes an improper exercise of dominion and control over such AFC SOT Vehicle and sales proceeds thereto in contravention to AFC's perfected security interest and superior right of possession of same.

164.    AFC there alleges that M. Garrison has unlawfully converted the AFC SOT Vehicle, or to the extent such AFC SOT Vehicle was sold in M. Garrison's business – the sales proceeds thereto – to AFC's detriment in an amount equal to the fair market value of the AFC

SOT Vehicle at the time and place of conversion.  AFC alleges the fair market value would be the total principal amount due on such AFC SOT Vehicle in the amount of **$28,304.42**.

WHEREFORE PREMISES CONSIDERED, AFC prays that that this Court: (1) enter a judgment against M. Garrison in the above-captioned action for conversion of the AFC SOT Vehicle in the amount of **$28,304.42**, (2) AFC be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court, and (3) such other and further relief to which AFC may be entitled at law or in equity.

### Count VII – Fraud (NextGear Only Against LAA, Lisa Druien, and Emmett Druien)

165.   Plaintiffs incorporate the allegations of the preceding paragraphs of this Complaint as if fully set forth and restated herein.

166.   Defendants LAA Emmett Druien, and Lisa Druien, by means of a scheme designed to artificially inflate the sales price of the NG Fraud Vehicles and/or Insider Fraud Vehicles sold at LAA auction, made misrepresentations and omissions of fact to NextGear concerning the value, status, auction sales process, and condition of the NG Fraud Vehicles and Insider Fraud Vehicles as set forth in the LAA auction invoices.  LAA, Emmett Druien, and/or Lisa Druien intentionally withheld information from NextGear that the NG Fraud Vehicles and Insider Fraud Vehicles were not sold "across the block" at a competitive, public auction.  When LAA Emmett Druien, and/or Lisa Druien made these representations and omissions to NextGear, LAA, Emmett Druien, and/or Lisa Druien knew they were false or made such assertions recklessly, as a positive assertion, and without knowledge of their truth.  Defendants LAA, Emmett Druien, and/or Lisa Druien further made such representations and omissions with the intent that NextGear act upon them and advance money for purposes of financing the NG Fraud Vehicles and/or Insider Fraud Vehicles.   NextGear relied on those representations and/or

omissions and suffered economic injury in the amount of at least **$650,279.48** as a result, which corresponds to the payoff for the NG Fraud Vehicles and Insider Fraud Vehicles of $836,471.21 less the net sales proceeds of $186,191.73 from the sale of the NG Sold Vehicles that were only acquired from LAA.

WHEREFORE PREMISES CONSIDERED, NextGear prays that that this Court: (1) enter a judgment against LAA, Emmett Druien, and Lisa Druien, jointly and severally, in the above-captioned action for their fraudulent conduct related to the NG Fraud Vehicles in the amount of **$650,279.48**, (2) NextGear be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court, and (3) such other and further relief to which NextGear may be entitled at law or in equity.

### Count IX – Fraud (AFC Only Against LAA, Emmett Druien, and Lisa Druien)

167.    Plaintiffs incorporate the allegations of the preceding paragraphs of this Complaint as if fully set forth and restated herein.

168.    Defendants LAA, Emmett Druien, and Lisa Druien, by means of a scheme designed to artificially inflate the sales price of the AFC Vehicles sold at LAA auction, made misrepresentations and omissions of fact to AFC concerning the value, status, auction sales process, and condition of the AFC Vehicles as set forth in LAA auction invoices.  LAA, Emmett Druien, and/or Lisa Druien intentionally withheld information from AFC that the AFC Vehicles were not sold "across the block" at a competitive, public auction.  When LAA, Emmett Druien, and/or Lisa Druien made these representations and omissions to AFC, LAA, Emmett Druien, and/or Lisa Druien knew they were false or made such assertions recklessly, as a positive assertion, and without knowledge of their truth.  Defendants LAA, Emmett Druien, and/or Lisa Druien further made such representations and omissions with the intent that AFC act upon them

43

and advance money for purposes of financing the AFC Vehicles.   AFC relied on those representations and/or omissions and suffered economic injury in the amount of at least **$392,994.79** as a result, which corresponds to the amount advanced by AFC to LAA for the AFC Vehicles less the net sales proceeds obtained by AFC from the AFC Sold Vehicles.

WHEREFORE PREMISES CONSIDERED, AFC prays that that this Court: (1) enter a judgment against LAA, Emmett Druien, and Lisa Druien, jointly and severally, in the above-captioned action for their fraudulent conduct related to the AFC Vehicles in the amount of **$392,994.79**, (2) AFC be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court, and (3) such other and further relief to which AFC may be entitled at law or in equity.

### Count IX – Conspiracy To Commit Fraud
### (NextGear Only Against LAA, Emmett Druien, Lisa Druien, and M. Garrison)

169.    Plaintiffs incorporate the allegations of the preceding paragraphs of this Complaint as if fully set forth and restated herein.

170.    Defendants LAA, Emmett Druien, Lisa Druien, and M. Garrison were members of a combination of two or more persons.

171.    The object of the combination was to accomplish an unlawful purpose or a lawful purpose by unlawful means.   Here, defendants conspired to artificially inflate the sales price of the NG Fraud Vehicles sold at LAA auction and misrepresent to NextGear the value, status, auction sales process, and condition of the NG Fraud Vehicles as set forth in the LAA auction invoices.

172.    LAA, Emmett Druien, Lisa Druien, and/or M. Garrison had a meeting of the minds on the object or course of action.

173.    LAA, Emmett Druien, Lisa Druien, and/or M. Garrison committed unlawful, overt acts to further the object or course of action.

174.    NextGear suffered injury as a proximate result of the wrongful actions in the amount of at least **$650,279.48** as a result, which corresponds to the payoff for the NG Fraud Vehicles and Insider Fraud Vehicles less the net sales proceeds of $186,191.73.

WHEREFORE PREMISES CONSIDERED, NextGear prays that that this Court: (1) enter a judgment against LAA, Emmett Druien, Lisa Druien, and M. Garrison jointly and severally, in the above-captioned action for their fraudulent conduct related to the NG Fraud Vehicles in the amount of **$650,279.48**, (2) NextGear be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court, and (3) such other and further relief to which NextGear may be entitled at law or in equity.

### Count X – Conspiracy To Commit Fraud
### (AFC Only Against LAA, Emmett Druien, Lisa Druien, and M. Garrison)

175.    Plaintiffs incorporate the allegations of the preceding paragraphs of this Complaint as if fully set forth and restated herein.

176.    Defendants LAA, Emmett Druien, Lisa Druien, and M. Garrison were members of a combination of two or more persons.

177.    The object of the combination was to accomplish an unlawful purpose or a lawful purpose by unlawful means.  Here, defendants conspired to artificially inflate the sales price of the AFC Vehicles sold at LAA auction and misrepresent to AFC the value, status, auction sales process, and condition of the AFC Vehicles as set forth in the fraudulent and fictitious LAA auction invoices.

178.    LAA, Emmett Druien, Lisa Druien, and/or M. Garrison had a meeting of the minds on the object or course of action.

179.   LAA, Emmett Druien, Lisa Druien, and/or M. Garrison committed unlawful, overt acts to further the object or course of action.

180.   AFC suffered injury as a proximate result of the wrongful actions in the amount of at least **$392,994.79** as a result, which corresponds to the amount advanced by AFC to LAA for the AFC Vehicles less the net sales proceeds obtained by AFC from the AFC Sold Vehicles.

WHEREFORE PREMISES CONSIDERED, AFC prays that that this Court: (1) enter a judgment against LAA, Emmett Druien, Lisa Druien, and M. Garrison jointly and severally, in the above-captioned action for their fraudulent conduct related to the AFC Vehicles in the amount of **$392,994.79**, (2) AFC be awarded pre-judgment and post-judgment interest as provided by law along with all costs of court, and (3) such other and further relief to which AFC may be entitled at law or in equity.

### Count XI – Exemplary Damages
### (AFC and NextGear Against LAA, Emmett Druien Lisa Druien, and M. Garrison)

181.   Plaintiffs incorporate the allegations of the preceding paragraphs of this Complaint as if fully set forth and restated herein.

182.   A plaintiff who successfully prosecutes a suit for fraud can recover exemplary damages under Section 41.003(a)(1) of the Texas Civil Practices and Remedies Code.  Plaintiffs seek exemplary damages as provided for by Section 41.003 of the Texas Civil Practices & Remedies Code because defendants LAA, Emmett Druien, Lisa Druien, and M. Garrison perpetrated a fraud upon and acted with malice with respect to Plaintiffs.  The defendants, with the intent to defraud or harm Plaintiffs, engaged in an outrageous course of conduct.

WHEREFORE PREMISES CONSIDERED, NextGear and AFC seek exemplary damages against LAA, Emmett Druien, Lisa Druien, and M. Garrison as a result of their

fraudulent conduct, and further seek such other or additional relief to which NextGear and AFC may be entitled in law or in equity.

**Respectfully submitted,**

PADFIELD & STOUT, L.L.P
420 Throckmorton Street, Suite 1210
Fort Worth, Texas 76102
Phone: 817-338-1616
Fax: 817-338-1610


/s/ Christopher V. Arisco
Alan B. Padfield
State Bar I.D.# 00784712
abp@padfieldstout.com
Christopher V. Arisco
State Bar I.D. #24064830
carisco@padfieldstout.com

*Attorneys for NextGear and AFC*

## CERTIFICATE OF SERVICE

This is to certify that on March 25, 2021, a true and correct copy of the foregoing Second Amended Complaint has been forwarded to defendant M. Garrison*, pro se,* at 549 i-30 E., Sulphur Springs, Texas 75482, via certified mail, return receipt requested, and Druien, Inc. d/b/a Lawton Auto Auction a/k/a Lawton Cache Auto Auction and Lisa Druien, by and through their counsel of record, Joseph M. Vacek and Richard Tallini, of Bailey & Galyen at 1300 Summit Avenue, Suite 650, Fort Worth, Texas 76102, via ECF and/or e-mail at jvacek@galyen and rtallini@galyen.com.


/s/ Christopher V. Arisco
Christopher V. Arisco