**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
(FORT WORTH DIVISION)**

| | |
|---|---|
| NEXTGEAR CAPITAL, INC. AND AUTOMOTIVE FINANCE CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> DRUIEN, INC. D/B/A LAWTON AUTO AUCTION A/K/A LAWTON CACHE AUTO AUCTION, LISA DRUIEN, MICHAEL VERNON GARRISON D/B/A ROCK HILL USED CARS, AND EMMETT DRUIEN, <br><br> Defendants. | Civil Action No. 4:20-cv-00959-BJ |

---

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

**Alan B. Padfield**
Texas Bar No. 00784712
abp@padfieldstout.com
**Christopher V. Arisco**
Texas Bar No. 24064830
carisco@padfieldstout.com
**PADFIELD & STOUT, LLP**
420 Throckmorton Street, Suite 1210
Fort Worth, TX 76102
Telephone:    817.338.1616
Facsimile:    817.338.1610

*Attorneys for Plaintiffs NextGear Capital, Inc. and Automotive Finance Corporation*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................3

I. SUMMARY ...................................................................................................................4

II. FACTUAL BACKGROUND............................................................................................4

    A. CLAIMS OF NEXTGEAR AGAINST DEFENDANTS AND FACTUAL BACKGROUND................4
      i.    *Undisputed Facts Relevant to Michael Vernon Garrison d/b/a Rock Hill Used Cars* ............. 4
      ii.   *Facts Relevant to LAA and Lisa Druien related to the NG Fraud Vehicles*......................... 7
      iii.  *Facts Relevant to LAA, Lisa Druien, and Emmett Druien related to the Insider Fraud Vehicles.*...................................................................................................................... 12
    B. CLAIMS OF AFC AGAINST DEFENDANTS AND FACTUAL BACKGROUND ..........................14
      i.    *Facts Relevant to Michael Vernon Garrison d/b/a Rock Hill Used Cars* ................................ 14
      ii.   *Facts Relevant to LAA, Lisa Druien, and Emmett Druien*........................................ 16

III. BURDEN OF PROOF ..................................................................................................20

IV. ARGUMENT & AUTHORITY .......................................................................................20

    A. THE DEFENDANTS' DEEMED ADMISSIONS CONCLUSIVELY ESTABLISH PLAINTIFFS' CLAIMS AS A MATTER OF LAW. ..............................................................................................20
    B. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIMS FOR BREACH OF CONTRACT AGAINST LAA...........................................................................................22
    C. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIMS FOR FRAUD AGAINST DEFENDANTS. ................................................................................................23
    D. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CONSPIRACY TO COMMIT FRAUD CLAIMS AGAINST DEFENDANTS...........................................................................24
    E. PLAINTIFFS ARE ENTITLED TO PREJUDGMENT INTEREST, POST-JUDGMENT INTEREST, AND RECOVERY OF REASONABLE AND NECESSARY ATTORNEYS' FEES....................................26

VI. PRAYER ...................................................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117 (5th Cir. 1991). ................................................................................................................ 21

*Colony Creek, Limited v. Resolution Trust Corporation*, 941 F.2d 1323, 1325 (5th Cir. 1991)... 22

*Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011) ................................................................ 26

*Hill v. Breazeale*, 197 Fed. Appx. 331 (5th Cir. 2006)........................................................ 20, 21

*In re Enron Corp. Sec., Derivative & ""ERISA" Litig.,* 490 F. Supp. 2d 784, 795 (S.D. Tex. 2007) ........................................................................................................................ 25

Intercontinental Grp. P'ship v. KB Home Lone Start L.P., 295 S.W.3d 650, 653 (Tex.2009)..... 26

*Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex.1990)................................................................ 25

*McDonald v. Equifax Inc.,* 3:15-CV-3212-B, 2017 WL 879224 (N.D. Tex. Mar. 6, 2017) .. 20, 21

*McDonald v. Equifax Inc.*, 3:15-CV-3212-B, 2017 WL 879224 (N.D. Tex. Mar. 6, 2017). ....... 21

*Mid–Continent Casualty Co. v. Chevron Pipe Line Co.,* 205 F.3d 222, 230 (5th Cir.2000)........ 26

*Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758 (5th Cir. 1996) ........................ 20

*Tilton v. Marshall*, 925 S.W.2d 672 (Tex.1996)................................................................ 25

*Topalian v. Ehrman,* 954 F.2d 1125 (5th Cir. 1992) ............................................................ 20

*Transport Insurance Co. v. Faircloth*, 898 S.W.2d 269 (Tex.1995) ........................................ 25

*Tyler v. Citi-Residential Lending Inc.*, 812 F. Supp. 2d 784, 787 (N.D. Tex. 2011)................... 22

Walker Int'l Holdings, Ltd. v. Republic of Congo, 415 F.3d 413, 416 (5th Cir. 2005)............... 26

*Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). ....................................... 23

*Winchek v. Am. Express Travel Related Servs.*, 232 S.W.3d 197 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ................................................................................................... 22

*Zuniga v. Wooster Ladder Co.*, 119 S.W.3d 856 (Tex. App.—San Antonio 2003, no pet.) ........ 22

**Statutes**

Fed. R. Civ. P. 36.................................................................................................................. 20

Fed. R. of Civ. P. 56............................................................................................................ 21

Tex. Civ. Prac. & Rem. Code 38.001 .................................................................................. 26

Tex. Gov't Code § 311.005.................................................................................................. 27

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Now comes Plaintiffs NextGear Capital, Inc. ("NextGear") and Automotive Finance Corporation ("AFC") (collectively, "Plaintiffs"), and files this Brief in Support of Motion for Summary Judgment, and in support of the same would respectfully show the Court the following:

## I.  SUMMARY

1.     Defendants Druien, Inc. d/b/a Lawton Auto Auction a/k/a Lawton Cache Auto Auction ("LAA"), Lisa Druien, and Emmett Druien (collectively, the "Defendants") have failed to respond or object to any of Plaintiffs' written discovery in this matter, including Plaintiffs' requests for admissions or supplementing their initial disclosures as previously ordered by this Court [Doc. # 82].  As a result of Defendants' failure to answer Plaintiffs' requests for admissions, the resulting deemed admissions along with the affidavit testimony of Eric Brown of NextGear and Jerome Bosl of AFC conclusively establish each and every element of Plaintiffs' causes of action for breach of contract, fraud, and conspiracy to commit fraud.  Accordingly, Plaintiffs are entitled to summary judgment under Federal Rule of Civil Procedure 56 because there is no genuine dispute as to any material fact and the Plaintiffs are entitled to judgment as a matter of law, including the recovery of Plaintiffs' reasonable and necessary attorney's fees.

## II.  FACTUAL BACKGROUND

**A. CLAIMS OF NEXTGEAR AGAINST DEFENDANTS AND FACTUAL BACKGROUND**

### i.  *Undisputed Facts Relevant to Michael Vernon Garrison d/b/a Rock Hill Used Cars*

2.     On or about May 6, 2015, NextGear and Michael Vernon Garrison d/b/a Rock Hill Used Cars ("M. Garrison") entered into a floor plan financing agreement whereby M. Garrison executed a Demand Promissory Note and Loan and Security Agreement (the "M. Garrison NextGear Note") and whereby NextGear, as Lender, agreed to make Advances to M. Garrison to buy motor vehicles in exchange for NextGear acquiring a purchase money security interest in each

motor vehicle bought.[1]  Pursuant to ¶ 2 of the M. Garrison NextGear Note, M. Garrison granted to NextGear a security interest in the Lender Financed Inventory and the Titles thereto (as defined in the M. Garrison NextGear Note) and also granted to NextGear a security interest in all of M. Garrison's other Collateral (as defined in ¶ 2(a) the M. Garrison NextGear Note).[2]

3.     NextGear perfected its security interests against M. Garrison's Collateral by filing a UCC-1 Financing Statement with the Texas Secretary of State as to M. Garrison, as debtor, on May 11, 2015, which was assigned filing # 15-0014536196.[3]  NextGear timely filed a continuation statement to its UCC-1 Financing Statement with the Texas Secretary of State on December 24, 2019.[4]

4.     NextGear advanced funds to M. Garrison and to certain third parties on M. Garrison's behalf, such as LAA, in order to finance motor vehicle inventory as Collateral pursuant to the terms of the M. Garrison NextGear Note.[5]  The funds advanced by NextGear to M. Garrison and to certain third parties on M. Garrison's behalf were not fully repaid as agreed.[6]  Specifically, M. Garrison was indebted to NextGear for fifty-five (55) motor vehicles for which NextGear provided advances under the M. Garrison NextGear Note.[7]  The fifty-five (55) vehicles (hereinafter, the "NextGear Vehicles") are identified by vehicle identification number, NextGear stock number, year, make, model and color in NextGear's Receivable Detail Report for M. Garrison (the "Rock Hill RDR") dated May 1, 2020.[8]

---

[1] *See* Exhibit A, App. p. 2, ¶ 3; *See* Exhibit A-1, App. p. 17-35.
[2] *See* Exhibit A, App. p. 3, ¶ 6; *See* Exhibit A-1, App. p. 17, ¶ 2.
[3] *See* Exhibit A, App. p. 3, ¶ 7; *See* Exhibit A-3, App. p. 41.
[4] *See* Exhibit A App. p. 3, ¶ 7; *See* Exhibit A-3, App. p. 42.
[5] *See* Exhibit A, App. p. 3, ¶ 8.
[6] *See* Exhibit A, App. p. 3, ¶ 9.
[7] *See* Exhibit A, App. p. 3, ¶ 9; *See* Exhibit A-4, App. p. 43-47.
[8] *See* Exhibit A, App. p. 3-4, ¶ 9; *See* Exhibit A-4, App. p. 43-47.

5.      M. Garrison defaulted under the M. Garrison NextGear Note by, *inter alia*, failing to make payments of the principal and/or interest due thereunder.[9]   As a result of the occurrence and continuance of the several Events of Default, as that term is defined in the M. Garrison NextGear Note, NextGear declared the entire indebtedness due under the M. Garrison NextGear Note immediately due and payable.[10]

6.      NextGear has exercised its default remedies with respect to fifty (50) repossessed vehicles from M. Garrison and sold them at auction to the highest bidder (the "NG Sold Vehicles").[11]   The net proceeds received by NextGear from the sale of all the NG Sold Vehicles totals $261,433.80.[12]   All of the NG Sold Vehicles were sold "as is," although several NG Sold Vehicles exhibited structural damage and were in poor condition.[13]   For all NG Sold Vehicles, the gross sales proceeds were significantly below the stated sales price in the LAA auction invoices for the same NG Sold Vehicles, which is referenced below in additional detail.[14]   After consideration of the net sales proceeds from the sale of the NG Sold Vehicles, in addition to all other lawful offsets, credits, and payments by M. Garrison, the remaining balance due and owing under the M. Garrison NextGear Note is $1,100,209.37.[15]

7.      NextGear and M. Garrison have entered into an Agreed Judgment on May 12, 2021 in the above-styled case.[16] No portion of the Agreed Judgment has been satisfied by M. Garrison

---

[9] *See* Exhibit A, App. p. 4, ¶ 10.
[10] *See* Exhibit A, App. p. 5, ¶ 14; *See* Exhibit A-1, App. p. 23-24, ¶ 6.
[11] *See* Exhibit A, App. p. 5, ¶ 15; See Exhibit A-7, App. p. 53-59.
[12] *See* Exhibit A, App. p. 7, ¶ 16; *See* Exhibit A-7, App. p. 59.
[13] *See* Exhibit A, App. p. 7, ¶ 16.
[14] *See* Exhibit A, App. p. 7-8, ¶ 16; *See* Exhibit A-7, App. p. 53-59; *See* Exhibit A-9, App. p. 66-172.
[15] *See* Exhibit A, App. p. 8, ¶ 18.; *See* Exhibit A-6, App. p. 49.
[16] *See* Exhibit A, App. p. 8, ¶ 19; *See* Exhibit F, App. p. 1457-1459, *See* Agreed Judgment as to Defendant Michael Vernon Garrison d/b/a Rockhill Used Cars Only [Doc. # 94].

or any other third party.[17]  For purposes of NextGear's motion for summary judgment, NextGear only seeks recovery on its claims against the remaining Defendants as outlined below.

  ***ii. Facts Relevant to LAA and Lisa Druien related to the NG Fraud Vehicles.***

  8. NextGear entered into a Universal Funding Agreement with LAA dated September 27, 2010 (the "Funding Agreement").[18] The Funding Agreement was signed by LAA's Vice President, Lisa Druien, on behalf of LAA.[19] At all times relevant to the facts stated herein, Lisa Druien was the Vice President of LAA and an active officer of LAA, and regularly engaged in the day-to-day operations of LAA and conducted business on behalf of LAA.[20] Additionally, Emmett Druien is the President of LAA and an active officer of LAA and regularly engages in the day-to-day operations of LAA and conducts business on behalf of LAA.[21]

  9. LAA is a dealer-only auction that caters to the sale of motor vehicles by wholesale and retail motor vehicle dealers who have General Distinguishing Numbers and are authorized and licensed to sell such vehicles.[22]  Pursuant to paragraph five (5) of the Funding Agreement, LAA represented and warranted such NextGear Vehicles would be sold through the LAA auction in an "across the block" sale at one of LAA's regularly scheduled sales in the ordinary course of business.[23]

  10. NextGear relied upon the written representations and warranties made by LAA when deciding whether to approve Credit (as defined in the Funding Agreement)[24] or Auction Payments

---

[17] *See* Exhibit A, App. p. 8, ¶ 19.
[18] *See* Exhibit A, App. p. 8, ¶ 20; *See* Exhibit A-8, App. p. 60-65; *See* Exhibit C, App. p. 407, Request for Admission Numbers 25-27.
[19] *See* Exhibit A, App. p. 8, ¶ 20; *See* Exhibit A-8, App. p. 64; *See* Exhibit C, App. p. 407, Request for Admission Number 26; *See* Exhibit D, App. p. 758-60, Request for Admission Numbers 1, 14, 15, and 16.
[20] *See* Exhibit D, App. p. 758-59, Request for Admission Numbers 1-5; *See* Exhibit C, App. p. 404-05, Request for Admission Numbers 2-3, 5-6, 8, and 10-12.
[21] *See* Exhibit E, App. p. 1111, Request for Admission Numbers 1-6; *See* Exhibit C, App. p. 404-05, Request for Admission Numbers 1, 3, 4, 5, 7, 9 and 10.
[22] *See* Exhibit A, App. p. 9, ¶ 21; *See* Exhibit C, App. p. 406, Request for Admission Number 20.
[23] *See* Exhibit A, App. p. 9, ¶ 22; *See* Exhibit A-8, pg. 62, ¶ 5.
[24] *See* Exhibit A, App. p. 9, ¶ 23; *See* Exhibit A-8, App. p. 60, ¶ 1(c) (defining "Credit" as "that line of credit Dealer has been granted by DSC for purposes of financing its used Vehicle purchases").

(as defined in the Funding Agreement)[25] to LAA for the sale of any specific Vehicle (as defined in the Funding Agreement).[26]  However, LAA knowingly failed to run the NextGear Vehicles through a live, competitive auction on the dates specified in the auction bills of sale per the affidavit testimony of Eric Brown, which identifies such NG Fraud Vehicles by year, make, model, and vehicle identification number (hereinafter referred to as the "NG Fraud Vehicles").[27]  Pursuant to the Balance Calculation Report, calculated as of August 25, 2021, the total payoff for all NG Fraud Vehicles is $340,738.94.[28]

11.    The amount NextGear tendered to LAA for each NG Fraud Vehicle is identified in the auction invoices generated by LAA for each NG Fraud Vehicle (the "LAA Invoices").[29] NextGear relied on the amounts and sales dates set forth in the LAA Invoices in order to approve the funding amount to be released to the LAA on behalf of M. Garrison.[30]  For most of the NG Fraud Vehicles, the title reassignment date on the back of such vehicles' respective certificates of title reveals that the NG Fraud Vehicles were actually sold to M. Garrison days, and in some cases *months*, prior to their stated sale date at LAA, when compared to the corresponding invoices generated by LAA reflecting different dates of sale at auction.[31]

12.    Defendants admit LAA did not run any of the NG Fraud Vehicles through a live, competitive auction as reflected on their invoices, as required by the Funding Agreement.[32] Instead,

---

[25] *See* Exhibit A, App. p. 9, ¶ 23; *See* Exhibit A-8, App. p. 60, ¶ 1(f) (defining "Auction Payment" as "the aggregate of the sale price of a Vehicle purchased by Dealer at a scheduled Auction sale and the related buyer's fee and post-sale inspection fee due Auction for any such Vehicle purchased at Auction by Dealer with Credit").

[26] *See* Exhibit A, App. p. 9, ¶ 23; *See* Exhibit A-8, pg. 60, ¶ 1(i) (defining "Vehicle" as "any automobile, truck, boat, RV, powersports unit, or salvage Vehicle which Dealer purchases with Credit at Auction, and Auction requests DSC to remit the Auction Payment to Auction").

[27] *See* Exhibit A, App. p. 9-11, ¶ 24; *See* Exhibit A-9, App. p. 66-172; *See* Exhibit C, App. p. 407-08, Request for Admission Numbers 31-38.

[28] *See* Exhibit A, App. p. 11, ¶ 25; *See* Exhibit A-6, App. p. 49-52.

[29] *See* Exhibit A, App. p. 11, ¶ 26; *See* Exhibit A-9, App. p. 66-172.

[30] *See* Exhibit A, App. p. 11, ¶ 26; *See* Exhibit C, App. p. 410, Request for Admission Number 52.

[31] *See* Exhibit A, App. p. 11-12, ¶ 28; *See* Exhibit A-9 App. p. 66-172; *See* Exhibit C, App. p. 408, Request for Admission Numbers 35-36.

[32] *See* Exhibit A-8, App. p. 62-63; *See* Exhibit C, App. p. 407, Request for Admission Numbers 28- 32.

the times and dates as stated in the LAA invoices provided to NextGear for purposes of facilitating financing from NextGear were deliberately fabricated by Defendants, and such NG Fraud Vehicles were greatly overvalued based on their subsequent sales price at auction once recovered and sold by NextGear in partial satisfaction of the M. Garrison NextGear Note.[33]   These false and fraudulent representations are contrary to LAA's representations and warranties in the Funding Agreement and constitute a breach of such Funding Agreement.[34]

13.     Counsel for NextGear served the sellers listed in the LAA Invoices with document subpoenas requesting sales documents for the NG Fraud Vehicles.[35]  Thereafter, several sellers delivered responsive documents for seven (7) of the NG Fraud Vehicles that made clear that LAA fabricated the sales price and the sale date on the LAA Invoices for the NG Fraud Vehicles (the "NG Subpoena Documents").[36]  Specifically, the NG Subpoena Documents confirm that the following five (5) NG Fraud Vehicles **were in most cases never run through auction at LAA** but instead were sold at a much lower prices to M. Garrison via other means and at earlier dates than the dates listed on the LAA Invoices:[37]

| Year | Make | Model | VIN | Sale Price | Reassignment Date | Sale Date |
|------|------|-------|-----|-----------|-------------------|-----------|
| 2004 | Chevrolet | Avalanche | 3GNEC12T04G171303 | $1,500.00 | 7/12/2019 | 7/3/2019 |
| 2011 | Chevrolet | Tahoe | 1GNSCDFJ5BR260679 | $9,000.00 | 6/17/2019 | 5/28/2019 |
| 2005 | Dodge | Ram 2500 | 3D7KR28C65G706682 | $5,790.00 | 1/15/2020 | 1/15/2020 |
| 1996 | Ford | Windstar Vans | 2FMDA5148TBB47033 | $500.00 | 7/12/2019 | 7/3/2019 |
| 2006 | Nissan | Maxima | 1N4BA41E46C810994 | $1,000.00 | 7/12/2019 | 7/3/2019 |

---

[33] See Exhibit A, App. p. 12, ¶ 29; See Exhibit A-7, App. p. 53-59; See Exhibit A-9, App. p. 66-172; See Exhibit C, App. p. 408-09, Request for Admission Number 34 and 40-45; See Exhibit D, App. p. 760-61, Request for Admission Numbers 22 and 27-28; See Exhibit E, App. p. 1113-14, Request for Admission Numbers 21 and 26-27.

[34] See Exhibit A, App. p. 12, ¶ 30; See Exhibit A-8 App. p. 62-63; See Exhibit C, App. p. 407, Request for Admission Numbers 28-30; See Exhibit D, App. p. 760, Request for Admission Numbers 17-19; See Exhibit E, App. p. 1112-13, Request for Admission Numbers 16-18.

[35] See Exhibit A, App. p. 12-13, ¶ 31; See Exhibit G, App. p. 1460-1564.

[36] See Exhibit A, App. p. 12-13, ¶ 31; See Exhibit G, App. p. 1460-1482, 1539-1564.

[37] See Exhibit A, App. p. 13, ¶ 31; See Exhibit A-9, App. p. 66-69, 81-87, 110-113, 132-147; See Exhibit G, App. p. 1460-1482, 1539-1564.

14.     The NG Subpoena Documents reflected on the table above show that the dates and sale prices as stated in the LAA Invoices provided to NextGear for purposes of facilitating an Auction Payment were deliberately fabricated by LAA and/or Lisa Druien and Emmett Druien.[38] Additionally, the NG Subpoena Documents further confirm that the NG Fraud Vehicles were not sold through a live, competitive auction as reflected on their invoices, as required by the Funding Agreement.[39]   For example, the LAA Invoice for the 2004 Chevrolet Avalanche VIN # 3GNEC12T04G171303, shows that the vehicle sold on August 14, 2019 for $11,230.00.[40] However, the NG Subpoena Documents show that the same vehicle actually sold on July 3, 2019 for $1,500.00.[41]

15.     LAA's representatives had direct and personal knowledge concerning the discrepancies between the reassignment dates reflected on the certificates of title for the NG Fraud Vehicles and the sales date reflected on the LAA Invoices and intentionally withheld disclosing such discrepancies to NextGear.[42]   Furthermore, Lisa Druien notarized title documents prior to such alleged sale by LAA that reflect a purchase or assignment date of the NG Fraud Vehicles on a different date than the LAA invoice shows for such auction sale date.[43]

16.     Moreover, Lisa Druien had direct and personal knowledge concerning the discrepancies between the reassignment dates reflected on the certificates of title for the NG Fraud

---

[38] *See* Exhibit A-9, App. p. 66-69, 81-87, 110-113, 132-147; *See* Exhibit G, App. p. 1460-1482, 1539-1564; *See* Exhibit C, App. p. 408, Request for Admission Numbers 34 and 39; *See* Exhibit D, App. p. 760-61, Request for Admission Numbers 22 and 27; *See* Exhibit E, App. p. 1113-14, Request for Admission Numbers 21 and 26.
[39] *See* Exhibit A-8, App. p. 60-65; *See* Exhibit A-9, App. p. 66-69, 81-87, 110-113, 132-147; *See* Exhibit G, App. p. 1460-1482, 1539-1564; *See* Exhibit C, App. p. 407, Request for Admission Numbers 28 and 31-32.
[40] *See* Exhibit A-9, App. p. 68.
[41] *See* Exhibit A, App. p. 11; *See* Exhibit G, App. p. 1464-65.
[42] *See* Exhibit C, App. p. 409, Request for Admission Numbers 41-42; *See* Exhibit D, App. p. 761, Request for Admission Numbers 29-30; *See* Exhibit E, App. p. 1114, Request for Admission Numbers 28-29.
[43] *See* Exhibit A-9, App. p. 66-172; *See* Exhibit D, App. p. 759, Request for Admission Numbers 6-9.

Vehicles and the sales date reflected on the auction invoices.[44] Despite having knowledge that discrepancies existed between the reassignment dates reflected on the certificates of title for the NG Fraud Vehicles and the sales date reflected on the auction invoices for each corresponding NG Fraud Vehicles, Lisa Druien intentionally withheld disclosing such information to NextGear.[45] Further, Lisa Druien regularly communicated with M. Garrison to facilitate the transfer of the NG Fraud Vehicles and completed the necessary paperwork on behalf of LAA to make it appear the NG Fraud Vehicles were sold at a public auction on a regularly scheduled auction day.[46]

17.   Defendants admit they knew that the NG Fraud Vehicles were not the subject of an "across the block" sale at one of LAA's regularly scheduled sales and knew that the NG Fraud Vehicles were not sold in the ordinary course of LAA's business.[47]  Defendants further admit they colluded with one another to establish an artificial sales price for the purposes of obtaining financing from NextGear at a premium for vehicles whose value was substantially less than the market value of the amount financed.[48]

18.   Defendants admit they knowingly and intentionally generated false and fraudulent auction invoices and tickets with respect to the sale of NG Fraud Vehicles.[49] Defendants were aware that the LAA invoices that were provided to NextGear contained false information with respect to the auction sale date and amount in order to deceive NextGear into believing the NG Fraud Vehicles were sold at a public auction at fair market value.[50] NextGear reasonably relied upon the LAA invoices

---

[44] *See* Exhibit D, App. p. 761, Request for Admission Number 29.
[45] *See* Exhibit D, App. p. 761, Request for Admission Number 30.
[46] *See* Exhibit D, App. p. 761-62, Request for Admission Number 31.
[47] *See* Exhibit D, App. p. 761, Request for Admission Numbers 25-30.
[48] *See* Exhibit C, App. p. 409, Request for Admission Number 44; *See* Exhibit D, App. p. 762, Request for Admission Number 32.
[49] *See* Exhibit C, App. p. 408-09, Request for Admission Numbers 34, 39-40, 45-46; *See* Exhibit D, App. p. 761-62, Request for Admission Numbers 27-28, 33-35.
[50] *See* Exhibit C, App. p. 409-10, Request for Admission Number 44 and 51; *See* Exhibit D, App. p. 762, Request for Admission Numbers 32, 38-39.

generated by LAA and Lisa Druien when deciding whether to advance funds to M. Garrison.[51]

19.     Had NextGear been aware the auction invoices and tickets associated with the NG Fraud Vehicles contained incorrect, false, or fictitious information pertaining to the sale date or sale amount that were intentionally fabricated by LAA and Lisa Druien, NextGear would not have provided financing to M. Garrison and LAA based on the alleged sales price of the NG Fraud Vehicles as set forth in the LAA invoices.[52]

### iii.     *Facts Relevant to LAA, Lisa Druien, and Emmett Druien related to the Insider Fraud Vehicles.*

20.     In addition to the foregoing sale of the NG Fraud Vehicles, LAA, Lisa Druien, and Emmett Druien also supervised, facilitated and colluded with M. Garrison to conduct additional fraudulent sales of motor vehicles financed by NextGear.[53]  NextGear discovered irregularities with respect to seventeen (17) motor vehicles financed with M. Garrison under the M. Garrison NextGear Note (the "Insider Fraud Vehicles")[54]

21.     The documents associated with the sale of the Insider Fraud Vehicles indicates such vehicles were not sold by LAA in the ordinary course of business.[55]  For instance, in at least three (3) separate cases, LAA and Emmett Druien is identified as the seller of the Insider Fraud Vehicles.[56]  The specific Insider Fraud Vehicles that were sold by LAA are as follows:

| Unit Year | Unit Make | Unit Model | VIN | Financed Amount | Auction Seller |
|---|---|---|---|---|---|

---

[51] *See* Exhibit A, App. p. 11 ¶ 26; *See* Exhibit C, App. p. 410, Request for Admission Number 52; *See* Exhibit D, App. p. 763, Request for Admission Number 40.
[52] *See* Exhibit A, App. p. 13 ¶ 32; *See* Exhibit C, App. p. 410, Request for Admission Number 53; *See* Exhibit D, App. p. 763, Request for Admission Number 41.
[53] *See* Exhibit A, App. p. 13-15; *See* Exhibit C, App. p. 409, Request for Admission Number 44; *See* Exhibit D, App. p. 762, Request for Admission Numbers 32-33; *See* Exhibit E, App. p. 1114-15, Request for Admission Numbers 31-32.
[54] *See* Exhibit A, App. p. 13-14 ¶ 33; *See* Exhibit A-4, App. p. 43-47; *See* Exhibit A-9, App. p. 66-172.
[55] *See* Exhibit A-9, App. p. 66-172; *See* Exhibit C, App. p. 409-10, Request for Admission Number 47-49.
[56] *See* Exhibit A, App. p. 14-15 ¶ 34; *See* Exhibit A-9, App. p. 66-172; *See* Exhibit C, App. p. 407, Request for Admission Number 24.

| 1999 | Dodge | Ram 2500 | 1B7KF2368XJ512080 | $9,702.00 | Lawton Cache Auto Auction |
| 2005 | Chevrolet | Silverado 3500 | 1GCJK33245F935684 | $26,470.00 | Lawton Cache Auto Auction/ Emmett Druien |
| 1996 | Ford | F250 | 1FTHF26H2TEB02756 | $10,000.00 | Lawton Cache Auto Auction/ Emmett Druien |

It is unusual and outside the ordinary course of business for an auction, such as LAA, or its principal, such as Emmett Druien, to sell vehicles that are run through its own auction.[57]  Even LAA indicated on its own auction rules listed on its website that LAA "is not a party to the contract of sale . . . [t]he contract is between the buyer and seller . . . [t]he auction acts as an agent only."[58] Such conduct by an auction and its representatives is an indication that the true nature of the sales transaction, including the true identity of the seller and/or the true underlying sales price, has been concealed or altered.[59]

22.     Based on NextGear's assessment of the value of such Insider Fraud Vehicles that were recovered after M. Garrison's default under the M. Garrison NextGear Note, NextGear determined that the sales prices of these three Insider Fraud Vehicles were inflated beyond their fair market value based on their condition at the time of the alleged sale through LAA, thereby enabling LAA to receive additional financing from NextGear that they were otherwise not entitled to receive under the Funding Agreement.[60]

23.     NextGear relied on LAA's, Emmett Druien's, and Lisa Druien's representations and omissions and suffered economic injury in the amount of at least $686,308.80 as a result,

---

[57] *See* Exhibit C, App. p. 406-10, Request for Admission Numbers 22-24 and 48-49; *See* Exhibit D, App. p. 762, Request for Admission Number 37; *See* Exhibit E, App p. 1112-15, Request for Admission Numbers 7-8 and 36.
[58] *See* Exhibit C, App. p. 406, Request for Admission Number 22.
[59] *See* Exhibit C, App. p. 409, Request for Admission Number 48.
[60] *See* Exhibit A, App. p. 15; *See* Exhibit A-9, App. p. 66-172; *See* Exhibit C, App. p. 410, Request for Admission Numbers 50-51; *See* Exhibit D, App p. 762, Request for Admission Numbers 38-39; *See* Exhibit E, App. p. 1115, Request for Admission Numbers 37-38.

which corresponds to the remaining payoff for the NG Fraud Vehicles and Insider Fraud Vehicles after the application of the net sales proceeds from the sale of the NG Sold Vehicles that were only acquired by M. Garrison from LAA.[61]

**B. CLAIMS OF AFC AGAINST DEFENDANTS AND FACTUAL BACKGROUND**

   *i.  Facts Relevant to Michael Vernon Garrison d/b/a Rock Hill Used Cars*

   24.   On or about September 3, 2013, AFC and M. Garrison entered into a Demand Promissory Note and Security Agreement (the "AFC Note"), whereby AFC advanced funds to M. Garrison and to certain third parties on M. Garrison's behalf for the purchase of motor vehicle inventory as Collateral pursuant to the terms of the AFC Note.[62]

   25.   Pursuant to ¶3.0 of the AFC Note, AFC retains a purchase money security interest in the Purchase Money Inventory, as well as a blanket security interest in all inventory and assets of M. Garrison identified as Collateral (as defined in ¶ 1.6 of the AFC Note).[63] AFC perfected said security interest in the Purchase Money Inventory and Collateral by the filing a UCC-1 Financing Statement with the Texas Secretary of State as to M. Garrison, as debtor, on September 5, 2013, which was assigned filing # 13-0028278970 and AFC timely filed a continuation statement to its UCC-1 Financing Statement with the Texas Secretary of State on March 13, 2018, which was assigned filing # 18-00083882.[64]

   26.   AFC advanced funds to M. Garrison and to certain third parties on M. Garrison's behalf for the purchase of motor vehicle inventory as Collateral pursuant to the terms of the AFC Note.[65]  The funds advanced by AFC to M. Garrison and to certain third parties on M. Garrison's

---

[61] *See* Exhibit A, App. p. 16 ¶ 37; *See* Exhibit A-6, App. p. 49-52; *See* Exhibit A-7, App. p. 53-59.
[62] *See* Exhibit B, App. p. 174 ¶ 3; *See* Exhibit B-1, App. p. 186-208.
[63] *See* Exhibit B, App. p. 175 ¶ 5; *See* Exhibit B-1, App. p. 186-89.
[64] *See* Exhibit B, App. p. 175 ¶ 5; *See* Exhibit B-3, App. p. 212-13.
[65] *See* Exhibit B, App. p. 175 ¶ 6; *See* Exhibit B-4, App. p. 214-15.

behalf have not been fully repaid as agreed.[66]  Specifically, M. Garrison is indebted to AFC for twenty-eight (28) motor vehicles for which AFC provided advances under the Note.[67]  The twenty-eight (28) vehicles (hereinafter, the "AFC Vehicles") are identified by vehicle identification number, AFC stock number, year, make, model and color in AFC's Dealer Payoff Report (the "DPR") dated May 11, 2020.[68]

27.     M. Garrison defaulted under the AFC Note by, *inter alia*, failing to make payments of the principal and/or interest due thereunder.[69]  AFC has exercised its default remedies with respect to all twenty-eight (28) of the following AFC Vehicles and sold them at a public auction to the highest bidder (the "AFC Sold Vehicles").[70]  The net proceeds received by AFC from the sale of the AFC Sold Vehicles was $163,428.50.[71]  After consideration of the net sales proceeds from the sale of the AFC Sold Vehicles, in addition to all other lawful offsets, credits, and payments by M. Garrison, the remaining balance due and owing under the AFC Note is $391,964.79, exclusive of attorneys' fees and costs.[72]

28.     AFC and M. Garrison have entered into an Agreed Judgment on May 12, 2021 in the above-styled case.[73] No portion of the Agreed Judgment has been satisfied by M. Garrison or any other third party.[74] For purposes of AFC's motion for summary judgment, AFC only seeks recovery on its claims against the remaining Defendants as outlined below.

---

[66] *See* Exhibit B, App. p. 175 ¶ 7; *See* Exhibit B-4, App. p. 214-15.
[67] *See* Exhibit B, App. p. 175 ¶ 7; *See* Exhibit B-4, App. p. 214-15.
[68] *See* Exhibit B, App. p. 175 ¶ 7; *See* Exhibit B-4, App. p. 214-15.
[69] *See* Exhibit B, App. p. 176 ¶ 8; *See* Exhibit B-1, App. p. 191.
[70] *See* Exhibit B, App. p. 176 ¶ 12; *See* Exhibit B-4, App. p. 214-15; *See* Exhibit B-5, App. p. 216-300.
[71] *See* Exhibit B, App. p. 176-78 ¶ 12-13; *See* Exhibit B-5.
[72] *See* Exhibit B, App. p. 178 ¶ 14; *See* Exhibit B-4, App. p. 214-15; *See* Exhibit B-5, App. p. 216-300.
[73] *See* Exhibit B, App. p. 178 ¶ 15; *See* Exhibit F, App. p. 1457-1459; *See* Agreed Judgment as to Defendant Michael Vernon Garrison d/b/a Rockhill Used Cars Only [Doc. # 94].
[74] *See* Exhibit B, App. p. 178 ¶ 15.

ii.   *Facts Relevant to LAA, Lisa Druien, and Emmett Druien*

29.    AFC entered into an Auction Servicing Agreement dated December 17, 2013 (the "Auction Agreement"), with LAA.[75]  Lisa Druien and Emmett Druien both signed the Funding Auction Agreement on behalf of LAA.[76]  Pursuant to paragraph two (2) of the Auction Agreement, LAA represented and warranted to AFC that any documentation sent by LAA to AFC would be accurate, complete, and any invoice representing an auction sale would represent a sale occurring at a competitive, live auction at LAA's auction facility.[77]  AFC relied upon the written representations and warranties made by LAA when deciding whether to approve Credit (as defined in the Auction Agreement) or Original Credit (as defined in the Auction Agreement) to LAA for the sale of any specific vehicle.[78]

30.    Although LAA alleges it ran the twenty-eight (28) AFC Vehicles through auction on the dates specified in the auction bills of sale, Defendants in fact failed to run the AFC Vehicles through the LAA at a competitive auction.  For most of the AFC Vehicles, the title reassignment date on the back of the AFC Vehicles' respective certificates of title reveals that the AFC Vehicles were actually sold to M. Garrison days, and in some cases months, prior to their stated sale date as provided on the LAA Invoices, generated by LAA reflecting different dates of sale at auction.[79]

31.    Thus, with respect to the alleged auction sale of AFC Vehicles, Defendants admit LAA did not run the AFC Vehicles through a competitive, public auction sale on the auction block

---

[75] *See* Exhibit B, App. p. 178 ¶ 16; *See* Exhibit B-6, App. p. 301-304; *See* Exhibit C, App. p. 410, Request for Admission Numbers 55-57.
[76] *See* Exhibit B, App. p. 178 ¶ 16; *See* Exhibit B-6, App. p. 304; *See* Exhibit D, App. p. 763, Request for Admission Number 45; *See* Exhibit E, App. p. 1116, Request for Admission Number 44.
[77] *See* Exhibit B, App. p. 178-79 ¶ 18; *See* Exhibit B-6, App. p. 301-02; *See* Exhibit C, App. p. 411, Request for Admission Number 59.
[78] *See* Exhibit B, App. p. 179 ¶ 19; *See* Exhibit B-6, App. p. 301; *See* Exhibit C, App. p. 413, Request for Admission Number 79.
[79] *See* Exhibit B, App. p. 182 ¶ 25; *See* Exhibit B-7, App. p. 305-332; *See* Exhibit B-8, App. p. 333-396; *See* Exhibit C, App. p. 411-12, Request for Admission Number 66.

as reflected on their LAA Invoices and as required by the Auction Agreement.[80] Instead, the times and dates as stated in the LAA Invoices provided to AFC for purposes of facilitating financing from AFC were deliberately fabricated by Defendants, and such AFC Vehicles were greatly overvalued based on their subsequent sales price at auction once recovered and sold by AFC in partial satisfaction of the AFC Note.[81]

32.    Additionally, counsel for AFC served the sellers listed in the LAA Invoices with document subpoenas requesting sales documents for the AFC Vehicles.[82] Thereafter, several sellers delivered responsive documents for eight (8) of the AFC Vehicles that made clear that LAA fabricated the sales price and the sale date on the LAA Invoices for the AFC Vehicles (the "AFC Subpoena Documents").[83] Specifically, the AFC Subpoena Documents show that at least eight (8) AFC Vehicles were sold in a different manner, at a different time, and at a much lower price than indicated on the LAA Invoices.[84]  The AFC Subpoena Documents confirm that the dates and sale prices as stated in the LAA Invoices provided to AFC for purposes of facilitating AFC advances were deliberately fabricated by Defendants.[85] Additionally, the AFC Subpoena Documents establish that the AFC Vehicles were not sold through a live, competitive auction as reflected on their invoices, as required by the Auction Agreement.[86]

33.    At no time did LAA notify AFC that the AFC Vehicles were not run "on the block"

---

[80] *See* Exhibit B-6 App. p. 301-04; *See* Exhibit B-7, App. p. 305-332; *See* Exhibit C, App. p. 411, Request for Admission Numbers 59 and 62.
[81] *See* Exhibit B, App. p. 182 ¶ 26; *See* Exhibit C, App. p. 411-12, Request for Admission Numbers 63, 65, 67 and 69.
[82] *See* Exhibit B, App. p. 182 ¶ 27; *See* Exhibit G, App. p. 1460-1564.
[83] *See* Exhibit B, App. p. 182 ¶ 27; *See* Exhibit G, App. p. 1483-1492, 1498-1512, 1518-1538, 1550-1564.
[84] *See* Exhibit B, App. p. 182 ¶ 27; *See* Exhibit B-7, App. p. 305-332; *See* Exhibit G, App. p. 1483-1492, 1498-1512, 1518-1538, 1550-1564.
[85] *See* Exhibit B, App. p. 182 ¶ 27; *See* Exhibit B-7, App. p. 305-332; *See* Exhibit G, App. p. 1483-1492, 1498-1512, 1518-1538, 1550-1564; *See* Exhibit C, App. p. 412, Request for Admission Numbers 67-68; *See* Exhibit D, App. p. 764, Request for Admission Numbers 55-56; *See* Exhibit E, App. p. 1117, Request for Admission Numbers 54-55.
[86] *See* Exhibit B, App. p. 182 ¶ 27; *See* Exhibit G, App. p. 1483-1492, 1498-1512, 1518-1538, 1550-1564; *See* Exhibit C, App. p. 411, Request for Admission Numbers 62-64; *See* Exhibit D, App. p. 764, Request for Admission Numbers 50-52; *See* Exhibit E, App. p. 1116-17, Request for Admission Numbers 49-51.

at a live, competitive and public auction during LAA's regularly scheduled auctions, which generally occurred every Wednesday each week.[87]  Lisa Druien admits she had direct and personal knowledge concerning the discrepancies between the reassignment dates reflected on the certificates of title for the AFC Vehicles and the sales date reflected on the LAA invoices.[88] Despite having knowledge that discrepancies existed between the reassignment dates reflected on the certificates of title for the AFC Vehicles and the sales date reflected on the LAA invoices for each corresponding AFC Fraud Vehicle, Lisa Druien admits to intentionally withheld disclosing such information to AFC.[89]

34.     With respect to the alleged auction sale of the AFC Vehicles, Defendants admit the times and dates as stated in the LAA invoices provided to AFC by LAA were deliberately fabricated by Defendants.[90] Additionally, the purported AFC Vehicle sales prices as stated on the LAA invoices were both fabricated and inflated by Defendants.[91] These false and fraudulent representations by Defendants are contrary to LAA's representations and warranties in the Auction Agreement.[92]

35.     Further, Lisa Druien and Emmett Druien regularly communicated with M. Garrison to facilitate the transfer of the AFC Vehicles and completed the necessary paperwork on behalf of LAA to make it appear the AFC Vehicles were sold at a public auction on a regularly scheduled auction day.[93] However, Lisa Druien and Emmett Druien knew that the AFC Vehicles were not the subject of an "across the block" sale at one of LAA's regularly scheduled sales and knew that the

---

[87] *See* Exhibit C, App. p. 406, 411, Request for Admission Numbers 21 and 64.
[88] *See* Exhibit D, App. p. 765, Request for Admission Number 59.
[89] *See* Exhibit D, App. p. 765, Request for Admission Number 60.
[90] *See* Exhibit C, App. p. 412, Request for Admission Numbers 67-72; *See* Exhibit D, App. p. 764-65, Request for Admission Numbers 55-59; *See* Exhibit E, App. p. 1117, Request for Admission Numbers 54.
[91] *See* Exhibit C, App. p. 412, Request for Admission Numbers 67-68; *See* Exhibit D, App. p. 764, Request for Admission Numbers 55-56; *See* Exhibit E, App. p. 1117, Request for Admission Numbers 54-56.
[92] *See* Exhibit C, App. p. 410-11, Request for Admission Numbers 58-59; *See* Exhibit D, App. p. 763, Request for Admission Number 46-47; *See* Exhibit E, App. p. 1116, Request for Admission Number 45-46.
[93] *See* Exhibit C, App. p. 412, Request for Admission Number 73; *See* Exhibit D, App. p. 765, Request for Admission Number 61; *See* Exhibit E, App. p. 1118, Request for Admission Numbers 60.

AFC Vehicles were not sold in the ordinary course of LAA's business.[94]

36.     Defendants colluded with one another to establish an artificial sales price for the purposes of obtaining financing from AFC at a premium for vehicles whose value was substantially less than the market value of the amount financed.[95] Defendants admit they knowingly and intentionally generated false and fraudulent auction invoices and tickets with respect to the sale of the AFC Vehicles.[96] Further, Defendants admit they were aware the LAA invoices provided to AFC contained false information with respect to the auction sale date and amount in order to deceive AFC into believing the AFC Vehicles were sold at a public auction at fair market value.[97]

37.     AFC reasonably relied upon the LAA invoices generated by Defendants when deciding whether to advance funds to M. Garrison.[98] Had AFC been aware the auction invoices and tickets associated with the AFC Vehicles contained incorrect, false, or fictitious information pertaining to the sale date or sales amount, AFC would not have provided financing to M. Garrison based on the alleged sales price of the AFC Vehicles.[99] As a result of these misrepresentations AFC has suffered economic injury in the amount of $391,964.79, which corresponds to the payoff for the AFC Vehicles of $555,393.29 less the net sales proceeds of $163,428.50 from the sale of the AFC Sold Vehicles that were acquired by M. Garrison from LAA.[100]

---

[94] *See* Exhibit C, App. p. 412-13, Request for Admission Number 74-75; *See* Exhibit D, App. p. 765, Request for Admission Number 62-63; *See* Exhibit E, App. p. 1118, Request for Admission Numbers 61-62.

[95] *See* Exhibit C, App. p. 413, Request for Admission Number 77; *See* Exhibit D, App. p. 766, Request for Admission Number 65; *See* Exhibit E, App. p. 1118, Request for Admission Number 64.

[96] *See* Exhibit C, App. p. 413, Request for Admission Number 76; *See* Exhibit D, App. p. 765, Request for Admission Number 64; *See* Exhibit E, App. p. 1118, Request for Admission Number 63.

[97] *See* Exhibit C, App. p. 413, Request for Admission Number 77; *See* Exhibit D, App. p. 766, Request for Admission Number 65; *See* Exhibit E, App. p. 1118, Request for Admission Numbers 64.

[98] *See* Exhibit B, App. p. 184 ¶ 33; *See* Exhibit C, App. p. 413, Request for Admission Number 79; *See* Exhibit D, App. p. 766, Request for Admission Number 67; *See* Exhibit E, App. p. 1118, Request for Admission Numbers 66.

[99] *See* Exhibit B, App. p. 183 ¶ 28; *See* Exhibit C, App. p. 413, Request for Admission Number 81; *See* Exhibit D, App. p. 766, Request for Admission Number 68; *See* Exhibit E, App. p. 1119, Request for Admission Numbers 67.

[100] *See* Exhibit B, App. p. 184 ¶ 33; *See* Exhibit C, App. p. 413, Request for Admission Number 81.

## III.  BURDEN OF PROOF

38.     Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact.[101] Such a showing entitles the movant to summary judgment as a matter of law.[102] The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.[103] Once the movant produces such evidence, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial— that is, the non-movant must come forward with evidence establishing each of the challenged elements of its case for which the non-movant will bear the burden of proof at trial.[104] Summary judgment is appropriate, therefore, if the non-movant fails to set forth specific facts, by affidavits or otherwise, to show there is a genuine issue for trial.[105]

## IV.  ARGUMENT & AUTHORITY

### A.     THE DEFENDANTS' DEEMED ADMISSIONS CONCLUSIVELY ESTABLISH PLAINTIFFS' CLAIMS AS A MATTER OF LAW.

39.     Pursuant to Federal Rule of Civil Procedure 36, a matter requested through an admission will be deemed admitted unless, within thirty days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection.[106] A matter admitted is conclusively established, unless the Court, on motion, permits the admission to be withdrawn or amended.[107] In form and substance a Rule 36 admission is comparable to an

---

[101] *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758, 762 (5th Cir. 1996); *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir. 1992).
[102] *Id.*
[103] *Id.*
[104] *Id.*
[105] *Id.*
[106] FED. R. CIV. P. 36(a); *Hill v. Breazeale*, 197 Fed. Appx. 331, 336 (5th Cir. 2006).
[107] *See McDonald v. Equifax Inc.,* 3:15-CV-3212-B, 2017 WL 879224, at *3 (N.D. Tex. Mar. 6, 2017); *see* FED. R. CIV. P. 36(b)

admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary admission of a party.[108]

40.     An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible.[109] This conclusive effect applies equally to those admissions made affirmatively and those established by default, even if the matters admitted relate to material facts that defeat a party's claim.[110] Here, Plaintiff served consolidated discovery requests on defendants LAA and Lisa Druien on April 15, 2021, and defendant Emmett Druien on June 8, 2021.  However, all Defendants failed to respond or object to said discovery requests.[111] Therefore, all of Plaintiffs' requests for admissions as cited herein are deemed admissions and have been conclusively established as a matter of law.

41.     Under Federal Rule of Civil Procedure 56(c)(1)(A), admissions are listed as proper summary judgment evidence that can be used to show that there is an absence or presence of a genuinely disputed fact.[112] If the requests for admission concern an essential issue or element, the failure to respond to requests for admission can lead to a grant of summary judgment against the non-responding party.[113] Because deemed admissions, even those obtained by default, are conclusive as to the matters admitted, "they cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the summary judgment record."[114]

---

[108] *Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991).
[109] *Id.*
[110] *Id.*
[111] *See* Exhibit C, App. p. 397-750; *See* Exhibit D, App. p. 751-1103; *See* Exhibit E, App. p. 1104-1456.
[112] FED. R. OF CIV. P. 56(c)(1)(A); *McDonald v. Equifax Inc*., 3:15-CV-3212-B, 2017 WL 879224, at *3 (N.D. Tex. Mar. 6, 2017).
[113] *Hill v. Breazeale*, 197 Fed. Appx. 331, 336 (5th Cir. 2006); *McDonald v. Equifax Inc.*, 3:15-CV-3212-B, 2017 WL 879224, at *3 (N.D. Tex. Mar. 6, 2017).
[114] *McDonald v. Equifax Inc.,* 3:15-CV-3212-B, 2017 WL 879224, at *3 (N.D. Tex. Mar. 6, 2017).

Therefore, Defendants' deemed admissions are proper summary judgment evidence and conclusively establish all of Plaintiffs claims.

**B.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIMS FOR BREACH OF CONTRACT AGAINST LAA.**

42.    NextGear and AFC are entitled to summary judgment as a matter of law on their claim for breach of contract.  To prevail on a claim for breach of contract, a plaintiff must prove that: 1) there is a valid and enforceable contract; 2) the plaintiff is the proper party to sue for the contract; 3) the plaintiff performed, tendered performance of, or was excused from performing its contractual obligations; 4) the defendants breached the contract; and 5) the defendants' breach caused the plaintiff injury.[115]  Suits on contracts are typically well-suited for resolution through summary judgment.[116]

43.    NextGear and AFC, through Defendants' deemed admissions as well as the Affidavit testimony of Eric Brown, Jerome Bosl, and other summary judgment evidence cited herein, have conclusively established all elements of their respective claims for breach of contract as a matter of law. Specifically, Plaintiffs have conclusively established: (1) NextGear  and AFC entered into and executed a valid and enforceable contract with LAA, which required LAA to run all vehicles through a live, competitive and public auction during LAA's regularly scheduled auctions;[117] (2) Plaintiffs performed their contractual obligations by financing the purchase of the NextGear

---

[115] *Tyler v. Citi-Residential Lending Inc.*, 812 F. Supp. 2d 784, 787 (N.D. Tex. 2011); *Winchek v. Am. Express Travel Related Servs.*, 232 S.W.3d 197, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Zuniga v. Wooster Ladder Co.*, 119 S.W.3d 856, 862 (Tex. App.—San Antonio 2003, no pet.).
[116] *See Colony Creek, Limited v. Resolution Trust Corporation*, 941 F.2d 1323, 1325 (5th Cir. 1991) ("[B]ecause of the relative simplicity of the issues involved, suits to enforce promissory notes 'are among the most suitable classes of cases for summary judgment.'") (quoting *Lloyd v. Lawrence*, 472 F.2d 313, 316 (5th Cir. 1972)).
[117] *See* Exhibit A, App. p. 8 ¶ 20; *See* Exhibit A-8, App. p. 60-65*; See* Exhibit B, App. p. 178 ¶ 16; Exhibit B-6, App. p. 301-04; *See* Exhibit C, App. p. 407, Request for Admission Numbers 25-30.

Vehicles and AFC Vehicles and tender payment to the LAA;[118] (3) LAA breached its contractual obligations owed to Plaintiffs because LAA fabricated its auction invoices and failed to run the NextGear Vehicles and AFC Vehicles through a live, competitive auction;[119] and (4) LAA's breach of contract has damaged NextGear in the amount of $686,308.80 and AFC in the amount of $391,964.79,[120] along with recovery of Plaintiffs' reasonable and necessary attorneys' fees. NextGear is entitled to recover its reasonable and necessary attorney's fees in the amount of $45,162.25, and AFC is likewise entitled to recover its reasonable and necessary attorney's fees in the amount of $45,162.25 for the prosecution of Plaintiffs' breach of contract cause of action against LAA.[121]

44.     Therefore, Plaintiffs entitled to summary judgment against LAA for breach of contract in the amount of $686,308.80 for NextGear and $391,964.79 for AFC, respectively, plus pre-judgment interest and post-judgment interest as provided by law, attorney's fees, and court costs.[122]

## C.     PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIMS FOR FRAUD AGAINST DEFENDANTS.

45.     NextGear and AFC are entitled to summary judgment as a matter of law on their claim for fraud claims against Defendants.  To prevail on a fraud claim, a plaintiff must prove that the defendant made: 1) a misstatement or omission; 2) of material fact; 3) made with the intent to defraud; 4) on which the plaintiff relied; and 5) which proximately caused the plaintiff's injury.[123]

---

[118] See Exhibit A, App. p. 11 ¶ 26; See Exhibit A-4, App. p. 43-47; See Exhibit A-8, App. p. 60-65; See Exhibit B, App. p. 181 ¶ 24; See Exhibit B-4, App. p. 214-15; See Exhibit B-6, App. p. 301-04; See Exhibit C, App. p. 410, Request for Admission Number 52-53.
[119] See Exhibit A, App. p. 9-11 ¶ 24; See Exhibit A-8, App. p. 60-65; See Exhibit B, App. p. 178 ¶ 16; Exhibit B-6, App. p. 301-04; See Exhibit C, App. p. 407-08, Request for Admission Numbers 27-40.
[120] See Exhibit A, App. p. 16 ¶ 37; See Exhibit B, App. p. 184 ¶ 33; See Exhibit C, App. p. 410, Request for Admission Number 54.
[121] See Exhibit H App. p. 1565-1569; See Exhibit H-1, App. p. 1570-1608.
[122] See Exhibit A, App. p. 16 ¶ 37; See Exhibit B, App. p. 184 ¶ 33.
[123] Williams v. WMX Techs., Inc., 112 F.3d 175, 177 (5th Cir. 1997).

46.     NextGear and AFC, through Defendants' deemed admissions, the affidavit testimony of Eric Brown and Jerome Bosl, and other summary judgment evidence cited herein, have established all the elements of fraud as a matter of law. Specifically, Plaintiffs have both established: (1) Defendants, by means of a scheme designed to artificially inflate the sales price of the NG Fraud Vehicles, Insider Fraud Vehicles, and AFC Vehicles made material misrepresentations and omissions to NextGear and AFC that said vehicles were sold "across the block" at a competitive, public auction;[124] (2) such misrepresentations and omissions were of material fact concerning the value, status, auction sales process, and condition of the NG Fraud Vehicles, Insider Fraud Vehicles, and AFC Vehicles as set forth in the LAA auction invoices; (3) Defendants made such representations and omissions with the intent that Plaintiffs act upon them and advance money for purposes of financing the NG Fraud Vehicles, Insider Fraud Vehicles, and/or AFC Vehicles;[125] (4) Plaintiffs relied on Defendants' misrepresentations and omissions;[126] (5) and such conduct proximately caused Plaintiffs to suffer economic injury in the amount of $686,308.80 for NextGear and $391,964.79 for AFC.[127]

47.     Therefore, there is no genuine issue of material fact concerning Defendants' liability and damages for fraud, and Plaintiffs are entitled to summary judgment against Defendants, jointly and severally, for their fraudulent acts and omissions as a matter of law.

**D.     PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CONSPIRACY TO COMMIT FRAUD CLAIMS AGAINST DEFENDANTS.**

---

[124] Exhibit C, App. p. 409-10, Request for Admission Numbers 44 and 50; Exhibit D, App. p. 762, Request for Admission Numbers 32 and 38; Exhibit E, App. p. 1114-15, Request for Admission Numbers 31 and 37.
[125] Exhibit C, App. p. 410, Request for Admission Number 51; Exhibit D, App. p. 762, Request for Admission Number 39; Exhibit E, App. p. 1115, Request for Admission No. 38.
[126] Exhibit C, App. p. 410, Request for Admission Number 52; Exhibit D, App. p. 763, Request for Admission Number 40; Exhibit E, App. p. 1115, Request for Admission No. 39.
[127] *See* Exhibit A, App. p. 16 ¶ 37; *See* Exhibit B, App. p. 184 ¶ 33

48.      Plaintiffs are entitled to summary judgment as a matter of law on its conspiracy to commit fraud claims against Defendants.  To prevail on a claim for civil conspiracy in Texas, a plaintiff must prove the following elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.[128] The fourth element is sometimes phrased as a meeting of the minds "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."[129] The "gist" of a "civil conspiracy" is the injury the conspirators intend to cause. Conspiracy is a derivative tort, because recovery is not based on the conspiracy, i.e., the agreement, but on the injury from the underlying tort, here fraud.[130] Thus to be liable for conspiracy, a defendant must also participate in the underlying fraud.[131]

49.      Plaintiffs, through summary-judgment evidence consisting of Defendants' deemed admissions have conclusively established all the necessary elements of conspiracy to commit fraud as a matter of law. Specifically, Plaintiffs have established:  (1) Defendants were members of a combination of two or more persons; (2) the object of the combination was to accomplish an unlawful purpose or a lawful purpose by unlawful means because Defendants conspired among one another to artificially inflate the sales price of the NG Fraud Vehicles and AFC Vehicles and misrepresent to Plaintiffs the value, status, auction sales process, and condition of the NG Fraud Vehicles and AFC Vehicles as set forth in the LAA auction invoices;[132] (3) Defendants had a meeting of the minds on the object or course of action; (4) Defendants committed unlawful, overt

---

[128] *See In re Enron Corp. Sec., Derivative & ""ERISA" Litig.,* 490 F. Supp. 2d 784, 795 (S.D. Tex. 2007); *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex.1990).

[129] *See In re Enron Corp. Sec., Derivative & ""ERISA" Litig*., 490 F. Supp. 2d 784, 795 (S.D. Tex. 2007); *Transport Insurance Co. v. Faircloth*, 898 S.W.2d 269, 278 (Tex.1995).

[130] *See Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex.1996).

[131] *See Id.*

[132] Exhibit C, App. p. 409-10, Request for Admission Numbers 44 and 50; Exhibit D, App. p. 762, Request for Admission Numbers 32 and 38; Exhibit E, App. p. 1114-15, Request for Admission Numbers 31 and 37.

acts by defrauding NextGear and AFC to further the object or course of action;[133] (5) Plaintiffs suffered injury as a proximate result of the Defendants' wrongful actions in the amount of $686,308.80 as to NextGear and $391,964.79 as to AFC.[134]

50.     Therefore, there is no genuine issue of material fact concerning Defendants' liability and damages for conspiracy to commit fraud, and Plaintiffs are entitled to summary judgment against Defendants, jointly and severally, for conspiracy to commit fraud related to the NG Fraud Vehicles, Insider Fraud Vehicles and AFC Vehicles as set forth herein.

**E.     PLAINTIFFS ARE ENTITLED TO PREJUDGMENT INTEREST, POST-JUDGMENT INTEREST, AND RECOVERY OF REASONABLE AND NECESSARY ATTORNEYS' FEES.**

51.     Plaintiffs are entitled to recovery of their attorneys' fees with respect to their claims for breach of contract.  Specifically, in this suit, there is a contractual basis for awarding attorneys' fees to Plaintiffs pursuant to the Tex. Civ. Prac. & Rem. Code 38.001, *et seq.*  Whether a party may recover attorneys' fees under a statute is a question of law for the Court.[135]   Where federal jurisdiction is based on diversity, state law controls the award of attorneys' fees.[136]

52.     Under Texas law, a litigant can recover attorneys' fees "only if specifically provided for by statute or contract."[137]  The contracts at issue with LAA did not contain an attorneys' fees provision, so Plaintiffs must seek attorneys' fees under § 38.001 of the Texas Civil Practice and Remedies Code. Meanwhile, section 38.001 states "[a] person may recover reasonable attorneys' fees from an individual or corporation, in addition to the amount of a valid claim and costs if the claim is for ... an oral or written contract."  The term "person" is broadly defined to include a

---

[133] Exhibit C, App. p. 409-10, Request for Admission Numbers 44, 50, 51, 52; Exhibit D, App. p. 762-63, Request for Admission Numbers 32, 38, 39 and 40; Exhibit E, App. p. 1114-15, Request for Admission Numbers 31, 37, 38, and 39.
[134] *See* Exhibit A, App. p. 16 ¶ 37; *See* Exhibit B, App. p. 184 ¶ 33.
[135] *Walker Int'l Holdings, Ltd. v. Republic of Congo,* 415 F.3d 413, 416 (5th Cir. 2005).
[136] *Mid–Continent Casualty Co. v. Chevron Pipe Line Co.,* 205 F.3d 222, 230 (5th Cir.2000).
[137] *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011) (citing *Intercontinental Grp. P'ship v. KB Home Lone Start L.P.,* 295 S.W.3d 650, 653 (Tex.2009)).

corporation, organization, governmental agency, trust, partnership, association, or any other legal entity.[138]

53.   Plaintiffs claims for breach of a written contract by LAA entitled Plaintiffs to seek the recovery of their reasonable and necessary attorneys' fees as a result of the breach of said contracts.  Pursuant to the Affidavit of Christopher Arisco, NextGear has incurred reasonable and necessary attorneys' fees in the amount of $45,162.25, and AFC has likewise incurred reasonable and necessary attorneys' fees in the amount of $45,162.25 for the prosecution of Plaintiffs' breach of contract cause of action against LAA.[139]  Additionally, this Court should order the LAA to pay post-judgment interest on the total amount of attorneys' fees and expenses award to the Plaintiff. The Fifth Circuit has held that interest on attorneys' fees begins to accrue on the date of the judgment allowing recovery of attorneys' fees and runs until the date the fees are paid in full.[140] Furthermore, if the prevailing party is awarded attorneys' fees and those fees are a part of the judgment, then those fees and expenses will bear interest at the same rate as that applied to the judgment on the merits.[141]

54.   Additionally, with respect to post-judgment interest, 28 U.S.C. § 1961(a) sets forth that interest "shall be allowed on any money judgment in a civil case recovered in a district court."[142] 28 U.S.C. § 1961(a) also sets forth that interest will be at the rate of the "weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."[143] Therefore, this

---

[138] Tex. Gov't Code § 311.005(2).
[139] *See* Exhibit H, App. p.1568 ¶ 10; *See* Exhibit H-1, App. p. 1570-1608.
[140] *See Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 544-45 (5th Cir. 1983) (en banc), *overruled in part on other grounds by J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 790 F.2d 1193, 1195 (5th Cir. 1986), aff'd 482 U.S. 437 (1987).
[141] *Id.*
[142] *Ocasek v. Manville Corp. Asbestos Disease Comp. Fund*, 956 F.2d 152, 154 (7th Cir. 1992).
[143] *Id.*

Court should grant Plaintiffs' request for post-judgment interest at the rate for the calendar week preceding the date of this Court's judgment.[144] The award of post-judgment interest should also accrue during the period from the date the judgment was rendered until the date the judgment is satisfied.[145]

## V.  CONCLUSION

55.     By failing to respond to Plaintiffs' written discovery, Defendants have judicially admitted through deemed admissions that they intentionally fabricated the LAA Invoices to misrepresent the value, status, location, and sale of the vehicles identified therein, causing Plaintiffs to advance funds in excess of the fair market value and enabling both Defendants and M. Garrison to obtain an unjustified windfall.  Although Defendants had a contractual obligation to run the NG Fraud Vehicles and AFC Vehicles through a live, competitive auction, the NG Subpoena Documents and AFC Subpoena Documents establish that in many cases such vehicles were sold directly to M. Garrison for much lower prices at much earlier times.  NextGear and AFC justifiably relied on the LAA Invoices as a measure of the fair market value.  As a result of such reliance, Plaintiffs have been damaged, and there is no genuine issue of material fact preventing entry of a judgment against Defendants for breach of contract, fraud, and conspiracy to commit fraud.  Moreover, NextGear is entitled to recover its reasonable and necessary attorney's fees in the amount of $45,162.25, and AFC is likewise entitled to recover its reasonable and necessary attorney's fees in the amount of $45,162.25 resulting from said breach of contract pursuant to the contracts themselves and applicable law.[146]

---

[144] *In re Beveridge*, 416 B.R. at 581-82 (awarding post-judgment interest on debt that was declared nondischargeable . . . .").
[145] *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 331-32 (5th Cir. 1995).
[146] *See* Exhibit H, App. p. 1565-1569; *See* Exhibit H-1, App. p. 1570-1608.

## VI.  PRAYER

WHEREFORE, PREMISES CONSIDERED, NextGear and AFC prays that the Court grant this Motion for Summary Judgment and enter judgment as follows:

(1) Judgement on it breach of contract claim against LAA for actual, economic damages in the amount of $686,308.80 as to NextGear and $391,964.79 as to AFC;

(2) Judgment on its fraud and conspiracy to commit fraud claims against Defendants, jointly and severally, in the amount of $686,308.80 as to NextGear and $391,964.79 as to AFC;

(3) Pre-judgment interest at the statutory rate of 6.00% from date of filing the lawsuit through date of judgment;

(4) Attorneys' fees incurred in prosecuting its claim in the trial court and on any appeals in an amount within the jurisdictional limits of the Court;

(5) Court costs;

(6) Post-judgment interest as allowed by law; and

(7) Such other and further relief, general or special, legal or equitable, to which NextGear may show itself to be justly entitled to receive.

**Respectfully Submitted,**

PADFIELD & STOUT, L.L.P
420 Throckmorton Street, Suite 1210
Fort Worth, Texas 76102
Phone: 817-338-1616
Fax: 817-338-1610

/s/ Christopher V. Arisco
Alan B. Padfield
State Bar I.D.# 00784712
abp@padfieldstout.com
Christopher V. Arisco
State Bar I.D. #24064830
carisco@padfieldstout.com

*Attorneys for NextGear and AFC*

## CERTIFICATE OF SERVICE

This is to certify that on August 30, 2021, a true and correct copy of the foregoing *Plaintiffs' Brief in Support of Motion for Summary Judgment* has been forwarded to Defendants Emmett Druien, Druien, Inc. d/b/a Lawton Auto Auction a/k/a Lawton Cache Auto Auction, and Lisa Druien, by and through their counsel of record, Richard Tallini, of Bailey & Galyen at 1300 Summit Avenue, Suite 650, Fort Worth, Texas 76102, via ECF.

/s/ Christopher V. Arisco
Christopher V. Arisco