**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**(FORT WORTH DIVISION)**

| | |
|---|---|
| NEXTGEAR CAPITAL, INC. AND AUTOMOTIVE FINANCE CORPORATION, | |
| Plaintiffs, | |
| v. | |
| DRUIEN, INC. D/B/A LAWTON AUTO AUCTION A/K/A LAWTON CACHE AUTO AUCTION, LISA DRUIEN, MICHAEL VERNON GARRISON D/B/A ROCK HILL USED CARS, AND EMMETT DRUIEN, | Civil Action No. 4:20-cv-00959-BJ |
| Defendants. | |

**APPENDIX OF EVIDENCE IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF**

Plaintiffs NextGear Capital, Inc. and Automotive Finance Corporation file this Appendix of Evidence in Support of Plaintiffs' Motion for Summary Judgment and Brief in Support Thereof filed contemporaneously herewith.

**TABLE OF CONTENTS**

| EXHIBIT | DESCRIPTION | PAGES |
|---|---|---|
| A | Affidavit of Eric Brown | 1-16 |
| A-1 | M. Garrison NextGear Note | 17-35 |
| A-2 | M. Garrison NextGear Guaranty | 36-40 |
| A-3 | NextGear UCC-1 Financing Statement and Continuation Statement | 41-42 |
| A-4 | NextGear Rock Hill Receivable Detail Report | 43-47 |
| A-5 | NextGear Rock Hill SOT report | 48 |
| A-6 | Balance Calculation Report | 49-52 |
| A-7 | NextGear Payment Received Report | 53-59 |
| A-8 | Universal Funding Agreement | 60-65 |
| A-9 | NextGear LAA Auction Invoices & Certificates of Title | 66-172 |
| B | Affidavit of Jerome Bosl | 173-185 |

| B-1 | AFC Demand Promissory Note and Security Agreement | 186-208 |
|-----|---------------------------------------------------|---------|
| B-2 | M. Garrison AFC Guaranty | 209-211 |
| B-3 | AFC UCC-1 Financing Statement and continuation statement filing | 212-213 |
| B-4 | AFC's Dealer Payoff Report | 214-215 |
| B-5 | AFC Sale Recap Sheet for AFC Sold Vehicles | 216-300 |
| B-6 | Auction Servicing Agreement | 301-304 |
| B-7 | AFC LAA Invoices | 305-332 |
| B-8 | AFC LAA Certificates of Title | 333-396 |
| C | Plaintiffs' Consolidated Discovery Requests Directed to LAA | 397-750 |
| D | Plaintiffs' Consolidated Discovery Requests Directed to Lisa Druien | 751-1103 |
| E | Plaintiffs' Consolidated Discovery Requests Directed to Emmett Druien | 1104-1456 |
| F | M. Garrison Agreed Judgment | 1457-1459 |
| G | Seller Subpoena Documents | 1460-1564 |
| H | Affidavit of Christopher V. Arisco | 1565-1569 |
| H-1 | Redacted Billing and Expense Entries | 1570-1608 |

**Respectfully Submitted,**

PADFIELD & STOUT, L.L.P
420 Throckmorton Street, Suite 1210
Fort Worth, Texas 76102
Phone: 817-338-1616
Fax: 817-338-1610

/s/ Christopher V. Arisco
Alan B. Padfield
State Bar I.D.# 00784712
abp@padfieldstout.com
Christopher V. Arisco
State Bar I.D. #24064830
carisco@padfieldstout.com

*Attorneys for Plaintiffs NextGear Capital, Inc.*
*and Automotive Finance Corporation*

<u>**C**ERTIFICATE OF **S**ERVICE</u>

        This is to certify that on August 30, 2021, a true and correct copy of the foregoing has been forwarded to Defendants Emmett Druien, Druien, Inc. d/b/a Lawton Auto Auction a/k/a Lawton Cache Auto Auction, and Lisa Druien, by and through their counsel of record, Richard Tallini, of Bailey & Galyen at 1300 Summit Avenue, Suite 650, Fort Worth, Texas 76102, via ECF.

                                        <u>/s/ Christopher V. Arisco</u>
                                        Christopher V. Arisco

## EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
(FORT WORTH DIVISION)**

| | |
|---|---|
| NEXTGEAR CAPITAL, INC. AND AUTOMOTIVE FINANCE CORPORATION, | |
| Plaintiffs, | |
| v. | |
| DRUIEN, INC. D/B/A LAWTON AUTO AUCTION A/K/A LAWTON CACHE AUTO AUCTION, LISA DRUIEN, MICHAEL VERNON GARRISON D/B/A ROCK HILL USED CARS, AND EMMETT DRUIEN, | Civil Action No. 4:20-cv-00959-BJ |
| Defendants. | |

**AFFIDAVIT OF ERIC BROWN**

| | |
|---|---|
| STATE OF INDIANA | § |
| | § |
| COUNTY OF HAMILTON | § |

BEFORE ME, the undersigned official, on this day personally appeared Eric Brown, known to me to be a credible person and who, after having been by me first duly sworn, on his oath deposed and stated the following:

1.    My name is Eric Brown. I am the Senior Manager of Risk and Recovery for NextGear Capital, Inc. (hereinafter referred to as "NextGear"). I am over the age of eighteen and duly qualified to make this application and affidavit. I have personal knowledge of the facts stated herein based on the performance of my duties as Senior Manager of Risk and Recovery for NextGear and the statements made herein are within my personal knowledge, true, and correct.

2.    I am a custodian of records for NextGear. Attached hereto as Exhibits "A-1" through "A-9" are records held by NextGear. The said records are kept in the regular course of

business, and it as the regular course of business of NextGear for an employee or representative of NextGear, with knowledge of the act, event, condition, opinion or diagnosis recorded, to make the record or to transmit information thereof to be included in such record; and the records were made at or near the time or reasonably soon thereafter. The records attached hereto are the originals or exact duplicates of the originals.

### Facts Relevant to M. Garrison

3.    On or about May 6, 2015, NextGear and Michael Vernon Garrison d/b/a Rock Hill Used Cars ("M. Garrison") entered into a floor plan financing agreement whereby M. Garrison executed a Demand Promissory Note and Loan and Security Agreement (the "M. Garrison NextGear Note") and whereby NextGear, as Lender, agreed to make Advances, as defined in paragraph (2) of Appendix A of the M. Garrison NextGear Note, in its sole discretion, to M. Garrison. A true and correct copy of the M. Garrison NextGear Note with attached Appendix A, Advanced Schedule, and Power of Attorney thereto is attached hereto and incorporated by reference for all purposes as Exhibit "A-1."

4.    In conjunction with the execution of the M. Garrison NextGear Note, and to ensure payment of the indebtedness thereunder, M. Garrison signed and executed an Individual Guaranty (the "M. Garrison Guaranty") on or about May 6, 2015, whereby M. Garrison voluntarily, unconditionally, and absolutely guaranteed full and prompt payment when due, whether by acceleration or otherwise, of all Liabilities as defined in paragraph 1(b) of the M. Garrison Guaranty. A true and correct copy of the M. Garrison Guaranty is attached hereto and incorporated herein by reference for all purposes as Exhibit "A-2."

5.    Under §4(f) the M. Garrison NextGear Note, M. Garrison was obligated "[t]o hold all amounts received from the sale of any Unit of Lender Financed Inventory in the form as

Appendix 2

received in trust for the sole benefit of and for Lender, and to remit such funds satisfying all amounts due Lender and owing by Borrower for and in connection with such Receivable, in each case within twenty-four (24) hours of Borrower's receipt of such funds (or receipt of such funds by any Affiliate of Borrower)."

6.     Pursuant to ¶ 2 of the M. Garrison NextGear Note, M. Garrison granted to NextGear a security interest in the Lender Financed Inventory and the Titles thereto (as defined in the M. Garrison NextGear Note) and also granted to NextGear a security interest in all of M. Garrison's other Collateral (as defined in ¶ 2(a) the M. Garrison NextGear Note).

7.     NextGear perfected its security interests against M. Garrison's Collateral by filing a UCC-1 Financing Statement with the Texas Secretary of State as to M. Garrison, as debtor, on May 11, 2015, which was assigned filing # 15-0014536196.  NextGear timely filed a continuation statement to its UCC-1 Financing Statement with the Texas Secretary of State on December 24, 2019. True and correct copies of the UCC-1 Financing Statement and continuation statement filed by NextGear on M. Garrison are collectively attached hereto and incorporated by reference for all purposes as Exhibit "A-3."

8.     NextGear advanced funds to M. Garrison and to certain third parties on M. Garrison's behalf in order to finance motor vehicle inventory as Collateral pursuant to the terms of the M. Garrison NextGear Note.

9.     The funds advanced by NextGear to M. Garrison and to certain third parties on M. Garrison's behalf have not been fully repaid as agreed.  Specifically, M. Garrison is indebted to NextGear for fifty-five (55) motor vehicles for which NextGear provided advances under the M. Garrison NextGear Note.  The fifty-five (55) vehicles (hereinafter, the "Rock Hill NextGear Vehicles") are identified by vehicle identification number, NextGear stock number, year, make,

model and color in NextGear's Receivable Detail Report for M. Garrison (the "Rock Hill RDR")
dated May 1, 2020. A true and correct copy of the Rock Hill RDR is attached hereto as Exhibit
"A-4" and incorporated herein by reference for all purposes.

10.    M. Garrison defaulted under the M. Garrison NextGear Note by, inter alia, failing
to make payments of the principal and/or interest due thereunder.

11.    NextGear conducted an audit of M. Garrison's sales lot, and based on the results of
the lot audit, NextGear determined that M. Garrison sold at least five (5) of the Rock Hill NextGear
Vehicles to third parties without timely remitting to NextGear the sales proceeds as required by
paragraph 4(f) of the M. Garrison NextGear Note.

12.    A list of the five (5) Rock Hill NextGear Vehicles sold out of trust by M. Garrison
(collectively referred to herein as the "SOT Vehicles") is attached hereto as Exhibit "A-5" and
identifies for each SOT Vehicle the year, make, model, full vehicle identification number, and
remaining principal balance due for each such SOT Vehicle. As set forth in Exhibit "A-5," M.
Garrison failed to pay back any portion of the original principal amount advanced for the SOT
Vehicles, and the total principal amount due for the SOT Vehicles is $115,810.00. Subsequent to
the Exhibit "A-5" SOT report date of May 1, 2020, NextGear was able to recover three (3) of the
five (5) SOT Vehicles as follows:

| Year | Make | Model | VIN # |
|------|------|-------|-------|
| 2015 | RAM | 3500 | 3C63RRHLXFG642243 |
| 2000 | FORD | MUSTANG | 1FAFP4446YF239383 |
| 2008 | FORD | F550 4X4 EX | 1FDAX57R18ED86326 |

However, NextGear was unable to locate, recover or sell the remaining two (2) SOT Vehicles
identified in the Exhibit "A-5" SOT Report (the "Unrecovered SOT Vehicles"), whose combined

total payoff as of August 25, 2021 equals $55,198.76. A true and correct copy of the Balance

Calculation Report is attached hereto and incorporated herein by reference for all purposes as

"Exhibit A-6." In addition to the foregoing, NextGear was able to repossess and secure almost all

of the remaining Rock Hill NextGear Vehicles listed in the Exhibit "A-4" Rock Hill RDR.

       13.    M. Garrison has disposed of the proceeds from the sale of the SOT Vehicles in

direct contravention to NextGear's perfected, first-priority security interest in those proceeds.

With respect to the two SOT Vehicles NextGear was unable to locate or recover, those SOT

Vehicles have been sold presumably free and clear of NextGear's security interest, and NextGear

no longer has collateral securing that portion of the indebtedness owed by M. Garrison under the

M. Garrison NextGear Note.

       14.    As a result of the occurrence and continuance of the several Events of Default, as

that term is defined in the M. Garrison NextGear Note, NextGear declared the entire indebtedness

due under the M. Garrison NextGear Note immediately due and payable.

       15.    NextGear has exercised its default remedies with respect to fifty (50) of the

following repossessed vehicles from M. Garrison and sold them at auction to the highest bidder

for the following amounts (the "NG Sold Vehicles"):

| Year | Make | Model | VIN # | Floored Amount | Gross Sales Proceeds | Net Sales |
|------|------|-------|-------|----------------|----------------------|-----------|
| 2004 | CHEVROLET | AVALANCHE 4X2 CR | 3GNEC12T04G171303 | $11,230 | $2,200 | $1,869.40 |
| 2013 | LEXUS | ES 350 | JTHBK1GG6D2020256 | $15,280 | $8,500 | $8,315.00 |
| 2008 | FORD | F550 4X4 RG | 1FDAF57R48EB34427 | $28,990 | $8,250 | $8,170.00 |
| 1999 | DODGE | RAM 2500 | 1B7KF2368XJ512080 | $9,702 | $1,700 | $1,355.40 |

| 2003 | GMC | C5500 | 1GDJ5C1114F500844 | $34,470 | $1,000 | $815.00 |
|------|-----|-------|-------------------|---------|--------|---------|
| 2013 | FORD | F-150 | 1FTFW1ET7DFB02285 | $17,500 | $9,900 | $9,795.00 |
| 2004 | MITSUBISHI | FE639 | JL6AAE1H44K000734 | $29,490 | $1,250 | $1,070.00 |
| 2004 | FORD | 350 SRW 4X4 CR | 1FTSW31P04EA21086 | $16,780 | $3,500 | $2,969.80 |
| 2007 | DODGE | RAM3500 4X4 QD | 3D7MX48CX7G723854 | $19,320 | $4,000 | $3,685.40 |
| 2004 | GMC TRUCK | C7500 | 1GDM7C1384F512353 | $34,325 | $5,500 | $4,596.30 |
| 2006 | CHEVROLET | 3500 4X4 CR | 1GCJK33D46F252242 | $21,940 | $9,500 | $ 9,315.00 |
| 2011 | RAM | 2500 4X4 CR | 3D7TT2CT2BG511932 | $22,940 | $15,300 | $15,010.40 |
| 2015 | FORD | F250 4X4 CR | 1FT7W2BTXFEC10911 | $26,970 | $15,100 | $14,866.00 |
| 2011 | GMC TRUCK | SIERA 35 4X4 EX | 1GT523C81BZ265964 | $27,125 | $5,200 | $4,893.40 |
| 2009 | DODGE | RAM 2500 4X2 6C | 3D7KR28L39G535332 | $20,625 | $4,500 | $4,115.40 |
| 1996 | FORD | F250 4X4 REG | 1FTHF26H2TEB02756 | $10,000 | $600 | $401.00 |
| 1996 | FORD | WINDSTAR FWD | 2FMDA5148TBB47033 | $8,190 | $300 | $115.00 |
| 2016 | RAM | 3500 4X4 CR | 3C7WRTCL9GG178005 | $26,470 | $13,700 | $13,515.00 |
| 2014 | FORD | EXPEDITN EL 4X4 | 1FMJK1J57EEF15145 | $23,440 | $8,500 | $8,297.00 |
| 2002 | FORD | F250 4X4 CR | 1FTNW21F42EA89984 | $23,940 | $7,250 | $7,065.00 |
| 2012 | FORD | 350 DRW 4X4 C/C | 1FD8W3HT5CEC10971 | $24,125 | $11,500 | $11,119.00 |
| 1994 | FORD | F150 4X2 EXT | 1FTEX15N9RKA15724 | $8,990 | $700 | $360.40 |
| 1989 | FORD | MED HVY CONVNTN | 1FDXK84A3KVA37099 | $25,100 | $5,500 | $ 4,900.00 |
| 2015 | RAM | 3500 | 3C63RRGL4FG702552 | $23,940 | $8,000 | $7,895.00 |
| 2008 | FORD | F550 4X4 EX | 1FDAX57R18ED86326 | $28,675 | $4,000 | $3,805.00 |
| 2009 | FORD | F250SD | 1FTSX20R19EA01706 | $16,280 | $1,150 | $986.00 |
| 2007 | INTNL | L SEMI | 2HSCNSCR97C389008 | $27,480 | $3,200 | $3,015.00 |
| 2014 | FORD | F350SD | 1FT8W3DT0EEB34184 | $30,450 | $7,200 | $6,895.00 |
| 2007 | INTNL | 7000 | 1HTWBAAR67J461931 | $35,070 | $7,900 | $7,574.00 |

AFFIDAVIT OF ERIC BROWN                                                                                     PAGE 6

| 2006 | NISSAN | MAXIMA | 1N4BA41E46C810994 | $7,180 | $1,000 | $786.00 |
|------|--------|--------|-------------------|--------|--------|---------|
| 2015 | FORD | F350SD | 1FT8W3DT0FEA26911 | $23,500 | $6,400 | $5,892.43 |
| 2011 | CHEVROLET | TAHOE | 1GNSCDFJ5BR260679 | $26,940 | $9,900 | $9,561.00 |
| 2007 | DODGE | RAM | 3D6WH46A27G712729 | $28,990 | $3,500 | $2,663.90 |
| 2007 | DODGE | RAM | 3D6WG36A67G817092 | $26,470 | $2,800 | $2,627.00 |
| 2014 | FORD | F350 | 1FD8W3GT5EEA25582 | $26,970 | $6,750 | $6,307.40 |
| 2014 | FORD | F350 | 1FD8W3GT7EEA25583 | $29,000 | $11,300 | $11,053.00 |
| 2002 | DODGE | RAM | 3B7KC23C92M236518 | $15,170 | $2,250 | $2,016.00 |
| 2006 | CHEVROLET | SILV | 1GCJK33245F935684 | $21,940 | $10,250 | $9,864.80 |
| 2011 | FORD | F350 | 1FT7X3B64BEB25540 | $17,725 | $2,250 | $2,051.00 |
| 2005 | DODGE | RAM | 3D7KS28C05G751217 | $16,725 | $4,000 | $3,723.40 |
| 2015 | RAM | 3500 | 3C63RRHLXFG642243 | $27,125 | $10,500 | $9,320.57 |
| 2000 | INTER | DUMP | 1HTSDAAN2YH314391 | $26,100 | $2,500 | $2,350.00 |
| 1982 | GMC | DUMP | 1GDG6H1J6NJ501295 | $19,100 | $600 | $450.00 |
| 2005 | DODGE | RAM | 3D7KR28C65G706682 | $14,270 | $4,400 | $4,050.40 |
| 2009 | FORD | F350 | 1FTWW33R09EA44875 | $19,820 | $2,500 | $2,150.40 |
| 2007 | FORD | F750 | 3FRXF75S95V156426 | $29,990 | $4,500 | $4,350.00 |
| 2000 | FORD | MUSTANG | 1FAFP4446YF239383 | $10,285 | $850 | $686.00 |
| 2015 | FORD | COMM | 1FDXE4FSXFDA07194 | $25,440 | $8,500 | $8,089.00 |
| 2007 | VOLVO | VN | 4V4NC9GH87N469707 | $28,990 | $5,500 | $5,250.00 |
| 1995 | GDAN | 1GR | 1GRAA922XSB029801 | $16,280 | $600 | $150.00 |

16.  A true and correct copy of the NextGear Payment Received Report reflecting the net sales proceeds for each of the above-referenced NG Sold Vehicles is attached hereto as Exhibit "A-7" and incorporated herein by reference for all purposes. The net proceeds received by NextGear from the sale of all the NG Sold Vehicles totals $261,433.80. All of the NG Sold Vehicles were sold "as is," although several NG Sold Vehicles exhibited structural damage and were in poor condition. For all NG Sold Vehicles, the gross sales proceeds were significantly below the stated sales price in the Druien, Inc. d/b/a Lawton Auto Auction a/k/a Lawton Cache

Auto Auction ("LAA") invoices provided by LAA to NextGear for the same NG Sold Vehicles, which is referenced below in additional detail. True and correct copies of the LAA Invoices provided to NextGear and utilized by NextGear to approve funding on or on behalf of M. Garrison are collectively attached hereto as Exhibit "A-9."

17.     NextGear has not yet sold the remaining Rock Hill NextGear Vehicles which were not otherwise included in the NG Sold Vehicles or sold out of trust by M. Garrison.  Two of the remaining, unsold units recovered by NextGear have missing vehicle identification plates, so the units cannot be sold. The final unit was located at a repair shop with a sizable balance owed by Rock Hill/M. Garrison.

18.     After consideration of the net sales proceeds from the sale of the NG Sold Vehicles, in addition to all other lawful offsets, credits, and payments by M. Garrison, the current balance due under the M. Garrison NextGear Note is $1,100,209.37.

19.     NextGear and M. Garrison have entered into an Agreed Judgment in the above-styled case. No portion of the Agreed Judgment has been satisfied by M. Garrison or any other third party.  For purposes of NextGear's motion for summary judgment, NextGear's only seeks recovery on its claims against the remaining defendants, Druien, Inc. d/b/a Lawton Auto Auction a/k/a Lawton Cache Auto Auction ("LAA"), Lisa Druien, and Emmett Druien.

### Facts Relevant to LAA, Lisa Druien, and Emmett Druien

20.     NextGear, previously doing business as Dealer Services Corporation, entered into a Universal Funding Agreement with LAA dated September 27, 2010 (the "Funding Agreement"). Lisa Druien signed the Funding Agreement on behalf of LAA, as shown on page 5 of Exhibit "A-8."  A true and correct copy of the Funding Agreement is attached hereto as Exhibit "A-8" and is incorporated herein by reference for all purposes.

AFFIDAVIT OF ERIC BROWN                                                          PAGE 8

21.    LAA is a dealer-only auction that represents itself to cater to the sale of motor vehicles by wholesale and retail motor vehicle dealers who have General Distinguishing Numbers and are authorized and licensed to sell such vehicles.

22.    Pursuant to paragraph five (5) of the Funding Agreement, LAA represented and warranted (with emphasis added):

> …that with respect to each purchase of a Vehicle by a Dealer with Credit through Auction for which Auction requests the Auction Payment be funded by DSC to Auction that: (a) such Vehicle actually exists; **(b) Such Vehicle was the subject of an "across the block" sale at one of Auction's regularly scheduled sales, and such sale was conducted by Auction in the ordinary course of Auction's business**; (c) Such Vehicle is available immediately for the purchasing Dealer's actual possession; (d) The certificate of title for such Vehicle is valid and is under the control of Auction on the day of funding; **(e) the Bill of Sale for such Vehicle accurately reflects** (i) the name, address and phone number for the buying Dealer and the seller; (ii) the signature of the buying Dealer and seller; (iii) the make, model, year, color, mileage and the entire vehicle identification number for the subject Vehicle; **(iv) the sale date for the Subject Vehicle**; (v) the sale price for the subject Vehicle; and (vi) each Auction charge for which Auction has requested to be funded in the subject Auction Payment.[1]

23.    NextGear relied upon the written representations and warranties made by LAA when deciding whether to approve Credit (as defined in the Funding Agreement) or Auction Payments (as defined in the Funding Agreement) to LAA for the sale of any specific Vehicle (as defined in the Funding Agreement).  Accordingly, the Funding Agreement required LAA to run all Vehicles through a live, competitive auction during LAA's regularly scheduled auctions, which generally occurred every Wednesday each week.

24.    However, the documentation attached to this Affidavit demonstrates that LAA failed to run the following twenty-two (22) Rock Hill NextGear Vehicles through a live,

---

[1] *See* Exhibit A-8 (emphasis added).

competitive auction on the dates specified in the auction bills of sale (hereinafter referred to as the

"NG Fraud Vehicles"):

| Unit Year | Unit Make | Unit Model | VIN | Financed Amount | Reassignment Date | Auction Sale Date |
|---|---|---|---|---|---|---|
| 2004 | Chevrolet | Avalanche | 3GNEC12T04G171303 | $11,230.00 | 7/12/2019 | 8/14/2019 |
| 2008 | FORD | SUPER DUTY | 1FDAF57R48EB34427 | $28,990.00 | 4/15/2019 | 10/16/2019 |
| 2004 | GMC | C5C | 1GDJ5C1114F500844 | $34,470.00 | | 10/16/2019 |
| 2009 | Ford | F250SD | 1FTSX20R19EA01706 | $16,280.00 | 5/3/2019 | 10/16/2019 |
| 2011 | Chevrolet | Tahoe | 1GNSCDFJ5BR260679 | $25,940.00 | 6/17/2019 | 10/30/2019 |
| 2004 | Ford | F350SD | 1FTSW31P04EA21086 | $16,780.00 | 8/29/2018 | 11/20/2019 |
| 2001 | HDAB | 53' | 1H9CE53311A263507 | $27,480.00 | 5/21/2019 | 11/20/2019 |
| 1995 | GDAN | 1GR | 1GRAA922XSB029801 | $16,280.00 | 12/11/2018 | 11/27/2019 |
| 2007 | Dodge | Ram 3500 | 3D7MX48CX7G723854 | $19,320.00 | 11/22/2019 | 12/4/2019 |
| 2015 | Ford | F350SD | 1FT8W3DT0FEA26911 | $23,500.00 | 6/28/2019 | 12/18/2019 |
| 2002 | Dodge | Ram 2500 | 3B7KC23C92M236518 | $15,170.00 | 12/31/2019 | 1/3/2020 |
| 2006 | Chevrolet | Silverado 3500 | 1GCJK33D46F252242 | $21,940.00 | 12/3/2019 | 1/8/2020 |
| 2011 | Ram | 2500 | 3D7TT2CT2BG511932 | $22,940.00 | 12/23/2019 | 1/8/2020 |
| 2015 | Ford | F250SD | 1FT7W2BTXFEC10911 | $26,970.00 | 12/20/2019 | 1/22/2020 |
| 2005 | Dodge | Ram 2500 | 3D7KR28C65G706682 | $14,270.00 | 1/15/2020 | 1/22/2020 |
| 1996 | Ford | Windstar Vans | 2FMDA5148TBB47033 | $8,190.00 | 7/12/2019 | 1/29/2020 |
| 2006 | Nissan | Maxima | 1N4BA41E46C810994 | $7,180.00 | 7/12/2019 | 1/29/2020 |
| 2009 | Ford | F350SD | 1FTWW33R09EA44875 | $19,820.00 | 7/25/2019 | 1/29/2020 |
| 2005 | FORD | F750 | 3FRXF75S95V156426 | $29,990.00 | 8/6/2019 | 2/19/2020 |

| 2002 | Ford | F250SD | 1FTNW21F42EA89984 | $23,940.00 | 2/20/2020 | 2/26/2020 |
| 1994 | Ford | F150 | 1FTEX15N9RKA15724 | $8,990.00 | 2/21/2020 | 3/4/2020 |
| 2015 | Ford | Commercial Vans | 1FDXE4FSXFDA07194 | $25,440.00 | 3/10/2020 | 3/11/2020 |

25.   True and correct copies of the Certificates of Title and Lawton Auction invoices for the twenty-two (22) NG Fraud Vehicles are collectively attached hereto as Exhibit "A-9" and incorporated herein by reference.  The Exhibit "A-9" documents shall be referred to herein as the "LAA Invoices." Pursuant to the Exhibit "A-6" Balance Calculation Report, the total payoff for all NG Fraud Vehicles is $340,738.94.

26.   The amount NextGear tendered to LAA for each NG Fraud Vehicle is identified in the above table is listed under the column "Financed Amount" pursuant to the amounts listed in the LAA Invoices generated by LAA for each NG Fraud Vehicle.  NextGear relied on the amounts and sales dates set forth in the LAA Invoices in order to approve the funding amount to be released to the LAA on behalf of M. Garrison.

27.   Additionally, the reassignment date reflected on each of the NG Fraud Vehicles' certificate of title that discloses the assignment of each NG Fraud Vehicle from the seller to M. Garrison, as buyer, is identified under the column "Reassignment Date." Meanwhile, the "Auction Sale Date" in the above table reflects the purported date each NG Fraud Vehicle was sold by LAA according to the invoices and other documents generated by LAA, which were provided to NextGear by LAA.

28.   For most of the NG Fraud Vehicles, the title reassignment date on the back of such vehicles' respective certificates of title as set forth in LAA Invoices reveals that the NG Fraud Vehicles were actually sold to M. Garrison days, and in some cases months, prior to their stated

sale date at LAA, when compared to the corresponding LAA Invoices generated by LAA reflecting different dates of sale at auction.

29.     Thus, with respect to the alleged auction sale of NG Fraud Vehicles, the documentation attached to this Affidavit confirms LAA did not run any of the NG Fraud Vehicles through a live, competitive auction as reflected on their LAA Invoices and as required by the Funding Agreement.  Instead, the times and dates as stated in the LAA Invoices provided to NextGear for purposes of facilitating financing from NextGear were deliberately fabricated by LAA and/or Lisa Druien and Emmett Druien, and such NG Fraud Vehicles were greatly overvalued based on their subsequent sales price at auction once recovered and sold by NextGear in partial satisfaction of the M. Garrison NextGear Note.

30.     Additionally, to the extent the purported sales price as stated on the LAA Invoices of the NG Fraud Vehicles were fabricated or inflated by LAA, any such false and fraudulent representations by LAA are contrary to LAA's representations and warranties in the Funding Agreement and constitute a breach of such Funding Agreement.

31.     Additionally, counsel for NextGear served the sellers listed in the LAA Invoices with document subpoenas requesting sales documents for the NG Fraud Vehicles. Thereafter, Mainer Ford, Frontera Vehicle Sales & Parts, and Wichita Falls Ford Lincoln delivered responsive documents for seven (7) of the NG Fraud Vehicles that made clear that LAA fabricated the sales price and the sale date on the LAA Invoices for the NG Fraud Vehicles (the "NG Subpoena Documents").  True and correct copies of the NG Subpoena Documents along with corresponding business records affidavits received from third parties are attached NextGear's summary judgment Appendix as Exhibit "G" and incorporated by reference.   Specifically, the NG Subpoena

Documents show that the following five (5) NG Fraud Vehicles were sold at a much lower price than indicated on the Exhibit "A-9" LAA Invoices which were provided by LAA to NextGear:

| Year | Make | Model | VIN | Sales Price Per NG Subpoena Docs | Sales Price Per LAA Invoices |
|------|------|-------|-----|----------------------------------|------------------------------|
| 2004 | Chevrolet | Avalanche | 3GNEC12T04G171303 | $1,500.00 | $11,230.00 |
| 2011 | Chevrolet | Tahoe | 1GNSCDFJ5BR260679 | $9,000.00 | $25,940.00 |
| 1996 | Ford | Windstar Vans | 2FMDA5148TBB47033 | $500.00 | $8,190.00 |
| 2006 | Nissan | Maxima | 1N4BA41E46C810994 | $1,000.00 | $7,180.00 |
| 2005 | Dodge | Ram 2500 | 3D7KR28C65G706682 | $5,790.00 | $14,270.00 |

32.     Had NextGear been aware the auction invoices and tickets associated with the NG Fraud Vehicles as identified above contained incorrect, false, or fictitious information pertaining to the sale date or sales amount, NextGear would not have provided financing to M. Garrison based on the alleged sales price of the NG Fraud Vehicles as set forth in the LAA Invoices.

33.     In addition to the foregoing sale of the NG Fraud Vehicles, NextGear discovered irregularities with respect to the following seventeen (17) motor vehicles financed with M. Garrison under the M. Garrison NextGear Note (the "Insider Fraud Vehicles"):

| Unit Year | Unit Make | Unit Model | VIN | Financed Amount | Auction Seller |
|-----------|-----------|------------|-----|-----------------|----------------|
| 2013 | Lexus | ES 350 | JTHBK1GG6D2020256 | $15,280.00 | Mainer Ford |
| 1999 | Dodge | Ram 2500 | 1B7KF2368XJ512080 | $9,702.00 | Lawton Cache Auto Auction |
| 2007 | International | Semi | 2HSCNSCR97C389008 | $27,480.00 | Big Dawg Motors |
| 2007 | Dodge | Ram 3500 | 3D6WH46A27G712729 | $28,990.00 | Star Motors |
| 2004 | Mitsubish | FE6 | JL6AAE1H44K000734 | $29,490.00 | Austin Financial Services/Michael Garrett |
| 2007 | Dodge | Ram | 3D6WG36A67G817092 | $26,470.00 | Farmers Electric Cooperative |

| 2014 | Ford | F350SD | 1FD8W3GT5EEA25582 | $26,970.00 | Bottoms Up Motorsports/ Michael Lawson |
| 2014 | Ford | F350SD | 1FD8W3GT7EEA25583 | $29,000.00 | Bottoms Up Motorsports/ Michael Lawson |
| 2007 | VOLVO | VN | 4V4NC9GH87N469707 | $28,990.00 | Kenney W. Self/ Kenney Self |
| 2005 | Chevrolet | Silverado 3500 | 1GCJK33245F935684 | $26,470.00 | Lawton Cache Auto Auction/ Emmett Druien |
| 2007 | International | 7000 | 1HTWBAAR67J461931 | $35,070.00 | Bottoms Up Motorsports/ Michael Lawson |
| 1996 | Ford | F250 | 1FTHF26H2TEB02756 | $10,000.00 | Lawton Cache Auto Auction/ Emmett Druien |
| 2014 | Ram | 3500 | 3C63RRGL7EG235772 | $36,070.00 | Big Dawg/Kyle Way |
| 2016 | Ram | 3500 | 3C7WRTCL9G178005 | $26,470.00 | Manual Gomez/ Manual Gomez |
| 2014 | Ford | Expeditio n EL | 1FMJK1J57EEF15145 | $23,440.00 | Mainer Ford/Christi Sanders |
| 2006 | Dodge | Ram 3500 | 3D7MX48C06G223278 | $21,940.00 | Vaughn Motor Co/David Vaughn |
| 2015 | Ram | 3500 | 3C63RRGL4FG702552 | $23,940.00 | Austin Financial Services/Michael Garrett |

The amount NextGear tendered to LAA for each Insider Fraud Vehicle identified in the above table is listed under the column "Financed Amount" as referenced by the Exhibit "A-4" Rock Hill RDR.  Additionally, the seller of each Insider Fraud Vehicle that was identified by LAA is referenced in the column labeled "Auction Seller."  The buyer for each Insider Fraud Vehicle is M. Garrison.

34.    In at least three (3) separate cases of sales of the Insider Fraud Vehicles, LAA is itself identified as the seller of the Insider Fraud Vehicles. The specific Insider Fraud Vehicles that were sold by LAA are as follows:

| Unit Year | Unit Make | Unit Model | VIN | Financed Amount | Auction Seller |
|---|---|---|---|---|---|
| 1999 | Dodge | Ram 2500 | 1B7KF2368XJ512080 | $9,702.00 | Lawton Cache Auto Auction |
| 2005 | Chevrolet | Silverado 3500 | 1GCJK33245F935684 | $26,470.00 | Lawton Cache Auto Auction/ Emmett Druien |
| 1996 | Ford | F250 | 1FTHF26H2TEB02756 | $10,000.00 | Lawton Cache Auto Auction/ Emmett Druien |

It is unusual and outside the ordinary course of business for an auction or its principal such as Emmett Druien to sell vehicles that are run through its own auction.

35.     Based on NextGear's assessment of the value of such Insider Fraud Vehicles that were recovered after M. Garrion's default under the M. Garrison NextGear Note, NextGear has determined the sales prices of these three Insider Fraud Vehicles were inflated beyond their fair market value based on their condition at the time of the alleged sale through the LAA. As a result, LAA was able to receive additional financing from NextGear that they were otherwise not entitled to receive under the Funding Agreement.

36.     Upon recovery by NextGear of the NG Fraud Vehicles and Insider Fraud Vehicles, NextGear observed such vehicles were in poor condition, contrary to the auction sales price suggested by the documents created and issued by LAA. NextGear personnel also observed that the NG Fraud Vehicles and Insider Fraud Vehicles had unexplainable discrepancies in their odometer readings between the time they were sold at LAA auction and the time period NextGear repossessed a portion of the Rock Hill NextGear Vehicles from M. Garrison. Based on NextGear's review of the odometers in several of the recovered Rock Hill NextGear Vehicles, the odometer readings set forth in the LAA Invoices are not correct and/or understate the true odometer reading in the Odometer Disclosure Statement.

37.     NextGear relied on LAA's, Emmett Druien's, and Lisa Druien's representations and omissions and suffered economic injury in the amount of at least $686,308.80 as a result, which corresponds to the remaining payoff for the NG Fraud Vehicles and Insider Fraud Vehicles after the application of the net sales proceeds from the sale of the NG Sold Vehicles that were only acquired by M. Garrison from LAA.

38.     As a result of the Defendants' respective conduct, NextGear was required to obtain the services of its attorneys to prosecute this cause of action for damages before the Court.

39.     I affirm under the penalties of perjury that the foregoing facts and statements are true and correct to the best of my knowledge and belief.

Further affiant sayeth not.

NEXTGEAR CAPITAL, INC.

By:  Eric Brown
Its:  Senior Manager of Risk and Recovery

SUBSCRIBED AND SWORN TO BEFORE ME by the said Eric Brown, Senior Manager of Risk and Recovery for NextGear Capital, Inc. on this the 20th day of August, 2021.



Notary Public In and For Said
County and State

# EXHIBIT A-1

### DEMAND PROMISSORY NOTE
### AND LOAN AND SECURITY AGREEMENT

FOR VALUE RECEIVED, the undersigned borrower ("Borrower") promises to pay to the order of NextGear Capital, Inc. ("Lender"), with its principal office at 1320 City Center Drive, Suite 100, Carmel, Indiana 46032, or such other place as Lender may designate in writing or on the Discover Portal from time to time, in lawful money of the United States of America, the principal sum of One Hundred Fifty Thousand Dollars and Zero Cents ($150,000.00), or such greater or lesser sum which may be advanced to or on behalf of Borrower from time to time, together with all costs, interest, fees, and expenses as provided for under this Note. Unless otherwise stated in an addendum to this Note, this Note shall become effective on the date of Borrower's execution hereof as set forth below Borrower's signature (such date, or the effective date otherwise stated in the applicable addendum, the "Effective Date").

NOW, THEREFORE, in consideration of the mutual covenants, agreements and conditions contained herein, Borrower and Lender (each, a "Party" and collectively, the "Parties") agree as follows:

1. DEFINITIONS  Capitalized terms used in this Note or in the other Loan Documents without definition shall have the respective meanings as set forth in Appendix A attached hereto and incorporated herein by reference (such meanings to be equally applicable to both the singular and plural forms of the terms defined). Any capitalized terms used herein or in another Loan Document, but not otherwise defined herein or in such other Loan Document, as the case may be, shall have the meanings ascribed to them in the UCC.

2. GRANT OF SECURITY INTEREST.  In order to secure full and prompt payment of all Liabilities and performance of all obligations of Borrower to Lender, its Affiliates, and/or their respective successors or assigns:

   (a) Borrower grants to Lender a continuing security interest in all of Borrower's assets and properties, wherever located, including, without limitation, all equipment of any kind or nature; all vehicles and vehicle parts; all Inventory now owned or hereafter acquired, including, without limitation, all Lender Financed Inventory now owned or hereafter acquired; all amounts in Borrower's Reserve held by or on behalf of Lender, if any; all documents, documents of title, deposit accounts, accounts receivable, manufacturer rebates and incentive payments, chattel paper, including, without limitation, all Receivables and general intangibles now owned or hereafter acquired by Borrower; all cash reserves; all of Borrower's books and records (including any books and records contained on computer hardware or software or otherwise stored by or on behalf of Borrower in electronic or digital form); and all additions, accessions, accessories, replacements, substitutions, and proceeds of any of the foregoing (collectively, the "Collateral").

   (b) The security interest given to Lender in Section 2(a) is given to Lender to secure payment of all Liabilities and the performance of all obligations of Borrower to Lender, under this Note, under any other Loan Document, or otherwise, all without relief from valuation or appraisement Laws. Upon the request of Lender, Borrower shall promptly execute and deliver to Lender or its designee such further documents and instruments, and shall take such further actions, in each case as Lender may deem necessary or desirable to protect Lender's interest in the Collateral or otherwise effectuate the provisions of this Note and the other Loan Documents. Without limiting the generality of the foregoing, Borrower shall, upon the request of Lender, (i) use its best efforts to secure all consents and approvals that may be necessary or appropriate for the assignment to Lender of any Collateral (including any contract of Borrower that constitutes any portion of the Collateral), or that may be necessary in order for Lender to receive the full benefit of all Collateral and to enforce its security interest in the Collateral; (ii) provide Lender and its Representatives with full access to all Collateral, including any and all books and records relating thereto; and (iii) deliver to Lender all Collateral consisting of negotiable documents, chattel paper, and instruments not deposited for collection in the aggregate (in each case, accompanied by any related bills of sale or any other instruments of transfer executed for Borrower), in each case promptly after Borrower receives the same.

   (c) Borrower authorizes Lender to file any UCC financing statements and any continuation statements under the UCC, in each case to the extent necessary or desirable to effect or preserve the security interest granted by Borrower hereunder or under any other Loan Document. Further, Borrower hereby acknowledges, ratifies and approves any UCC financing statements or other filings under the UCC that may have been made by or on behalf of Lender and its Affiliates prior to the Effective Date. The security interest granted by Borrower in Section 2(a) shall be in addition to, and not a substitution for, any right of offset, setting, or reclamation that Lender may have against Borrower, whether pursuant to this Note, any other Loan Document, or any Law.

3. INTEREST RATE.  Interest shall accrue on Borrower's Liabilities to Lender in accordance with the following schedule:

   (a) All outstanding Liabilities relating to a Floorplan Advance or a Receivable Advance shall accrue interest on a per annum basis from the Floorplan Date or the Receivable Origination Date, as the case may be, based upon a 360-day year, and such interest shall be compounded daily at the Base Rate, plus the Contract Rate, in each case as stated on the applicable Advance Schedule, until such outstanding Liabilities are paid in full.

   (b) The Base Rate may be amended or modified by Lender from time to time in Lender's sole discretion by posting such amendment or modification on the Finance Program Rate, Term and Fee Schedule. However, Lender may increase the Base Rate by no more than fifty (50) basis points (i.e. one-half of one percent) in any thirty (30) day period.

Page 1 of 12

NextGear Demand Promissory Note and Loan and Security Agreement (v. 3.0)

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

4.   BORROWER'S REPRESENTATIONS, WARRANTIES, AND COVENANTS.  At the time of Borrower's execution of this Note and continuing at all times thereafter until all Liabilities have been indefeasibly paid and satisfied in full and this Note and all other Loan Documents terminated in accordance with their respective terms, Borrower hereby represents, warrants, covenants, and agrees:

(a)  To sell, lease, or rent Lender Financed Inventory only in the Ordinary Course of Business and in accordance with Law, and not to sell or otherwise dispose of any Lender Financed Inventory except as herein provided.

(b)  To keep Lender Financed Inventory only at Borrower's Place of Business and not to remove any Lender Financed Inventory from such place for a period exceeding twenty-four (24) hours, unless previously authorized in writing by Lender. Notwithstanding the foregoing, Borrower may consent Lender to authorize Borrower to consign certain Lender Financed Inventory to another licensed dealer at such consignee dealer's place of business. Borrower's request to consign Lender Financed Inventory as referenced above is subject to Borrower and the consignee dealer executing and delivering to Lender any documentation that Lender may require, including a UCC financing statement or other similar filing on consignee dealer, or an authorization for Lender to make any such filing. Lender may deny Borrower's request to consign Lender Financed Inventory in Lender's sole and absolute discretion.

(c)  To keep Inventory in good repair and insured against all physical risks in such amounts and under such policies issued by such insurance companies as are deemed necessary and satisfactory by Lender; provided, however, that any insurance company issuing required coverage to Borrower pursuant to the requirements of this Section 4(c) shall have been assigned to an A.M. Best Financial Size Category (FSC) of "X" or higher, and shall have a minimum A.M. Best Financial Strength (FSR) rating of "A-". Lender shall be named "loss payee" on such insurance policies. Borrower shall provide Lender with a certificate or certificates of insurance evidencing that the above-mandated insurance requirements have been satisfied and specifying that the applicable insurance carriers will mail direct written notice to Lender at least thirty (30) days prior to any cancellation or non-renewal of any of the above-mandated policies. Alternatively, and unless the Unit of Lender Financed Inventory has been branded as "salvage" or is otherwise ineligible for the Collateral Protection Program, Borrower may satisfy the insurance coverages required under this Section 4(c) by voluntarily enrolling in Lender's Collateral Protection Program. In the event Borrower fails to procure, maintain or provide proof of the insurance coverages required under this Section 4(c), Lender may enroll Borrower in Lender's Collateral Protection Program, or, alternatively, Lender may secure on Borrower's behalf such policies of insurance as Lender, in its sole discretion, deems necessary, in each case from such insurers, in such amounts and with such coverages and deductibles as Lender, in its sole discretion, deems necessary. Charges incurred under the Collateral Protection Program are calculated as of the Floorplan Date from the amount of each original Floorplan Advance related to a Unit of Lender Financed Inventory, through the life of the Floorplan Advance. Borrower understands and agrees that Lender has an insurable interest in the Collateral, including all Lender Financed Inventory, by virtue of Borrower's pledge of the Collateral as security to Lender for the repayment of all Liabilities by Borrower to Lender under this Note and the other Loan Documents. Fees for the Collateral Protection Program are published in the Finance Program Rate, Term and Fee Schedule.

(d)  To keep at all times complete and accurate records of Borrower's Business and to promptly (but in any event within two (2) Business Days) provide to Lender copies of such records and any financial information regarding Borrower's Business or Borrower's financial condition generally, in each case as Lender may request. Borrower authorizes Lender to share such information and any and all other information that Lender may possess regarding Borrower's Credit Line or Borrower's relationship with Lender, including information regarding this Note and the other Loan Documents; Borrower's loan history; account history; payment history; audit history, account balance; loan application; credit worthiness; credit availability; and such other general business information regarding Borrower's Credit Line and Borrower's relationship with Lender, to any and all Persons that Lender, in its sole discretion, deems reasonable, including auctions. Without limiting the generality of the foregoing, Borrower shall maintain complete and accurate records and financial statements for all Advances requested or made hereunder, and all other transactions hereunder, including bank statements, cancelled checks, sales invoices, proofs of payment, and other sales files, in each case for at least a period of five (5) years after the date on which such Advance was made or such transaction occurred, as the case may be.

(e)  To allow Lender and its Representatives to inspect Lender Financed Inventory during normal business hours and at other reasonable times at Borrower's Place of Business and such other places as any Lender Financed Inventory may be located and to inspect and make copies of Borrower's books and records. Borrower shall pay Lender for the costs and expenses incurred by Lender or its Representatives to undertake such audits of any Lender Financed Inventory and such inspections and copying of Borrower's books and records, in each case on the applicable Maturity Date.

(f)  To hold all amounts received from the sale of any Unit of Lender Financed Inventory in the form as received in trust for the sole benefit of and for Lender, and to remit such funds satisfying all amounts due Lender and owing by Borrower for such Unit of Lender Financed Inventory, in each case within twenty-four (24) hours of Borrower's receipt of such funds (or receipt of such funds by any Affiliate of Borrower)

(g)  To hold all amounts received that relate to any Receivable that is subject to a Receivable Advance in the form as received in trust for the sole benefit of and for Lender, and to remit such funds satisfying all amounts due Lender and owing by Borrower for and in connection with such Receivable, in each case within twenty-four (24) hours of Borrower's receipt of such funds (or receipt of such funds by any Affiliate of Borrower).

(h)  That, for each Receivable which is the subject of a Receivable Advance, (i) Borrower is the sole and unconditional owner of such Receivable; (ii) such Receivable is not already encumbered by any voluntary or involuntary Liens which are senior to Lender's security

Account #95421                                          NextGear Demand Promissory Note and Loan and Security Agreement (v. 1.0)

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 18

interest in such Receivable; (iii) Borrower has a legal right to pledge such Receivable to Lender as security for Liabilities under this Note and the other Loan Documents; (iv) such Receivable represents an original bona fide sale to the buyer(s) named therein, (v) such Receivable is now and will remain free from any claim, defense, setoff, or counterclaim of any nature and is enforceable against the buyer(s) named therein and third parties according to its terms, (vi) all statements, facts, numbers, and other information in such Receivable and all related documents are true and accurate to the best of Borrower's knowledge, are free from fraud, and have not been altered or modified subsequent to their execution, except for such alterations or modifications as have been acknowledged and initialed by Borrower and the other parties thereto; (vii) Borrower has met all of Borrower's obligations to the subject buyer(s) for such Receivable, and Borrower has no knowledge of any event which indicates or suggests the prospective un-collectability of all or any portion of the Receivable; (viii) the Unit that is the subject of the Receivable was sold at fair market value, not as salvage, and has actually been delivered into the possession of and has been accepted by the subject buyer(s); and (ix) the sale and related financing of the Unit that is the subject of the Receivable complies with all Laws (including all usury Laws, the Uniform Consumer Credit Code, all consumer credit Laws, and all equal credit opportunity and disclosure Laws).

(i)   That any request for an Advance shall constitute an affirmative representation by Borrower to Lender that Borrower is in full compliance with all terms, conditions, representations, warranties and covenants made under this Note and the other Loan Documents, in each case as of the date of such request.

(j)   That Borrower now has, and will have at the time of any Advance and through the date of any repayment of the Liabilities thereunder, (i) sufficient cash and equity capital to conduct its Business and pay its debts as they mature, (ii) sufficient capital and other financial resources necessary to engage in the Business and perform its obligations under any agreement to which it is a party and any transaction in which it may engage hereafter; and (iii) ownership of property (including property of all wholly-owned and partially-owned subsidiaries of Borrower) having an aggregate fair market value that is greater than the sum of Borrower's debts (which shall include debts of all wholly-owned and partially-owned subsidiaries of Borrower).

(k)   That, without Lender's prior written consent (which consent may be withheld by Lender in its sole discretion), Borrower shall not (I) make any distributions of its property or assets (including any cash), except for tax and other distributions that (A) are made in the Ordinary Course of Business and, (B) are made in compliance with all Laws, and (C) will not render Borrower or any of its Affiliates insolvent, or otherwise impair the ability of Borrower or any of its Affiliates to satisfy their respective financial obligations when and as such obligations become due; (ii) sell, issue, redeem, retire, purchase, or otherwise acquire, directly or indirectly, any of its capital stock or other equity, in any manner which would reduce, in the aggregate and on cumulative basis, either the cash position or "tangible net worth" of Borrower (as defined in accordance with United States generally accepted accounting principles) by more than ten percent (10%); (iii) make any material change in its capital structure, or make any material change in its Business or operations; (iv) make any loans or other advances of money or any loans or advances of Inventory or other property to any Person, including any officer, director, stockholder, employee, or Affiliate of Borrower, other than (A) advances against commissions, and other similar advances to employees in the Ordinary Course of Business, and (B) loans not exceeding an aggregate of two percent (2%) of the Credit Line; (v) undertake or permit any of its equity holders to undertake any transaction or series of transactions that would result in the equity holders of Borrower, as of the Effective Date, owning and controlling less than seventy-five percent (75%) of all classes of the outstanding equity of Borrower on a fully-diluted basis; or (vi) engage in any transaction or series of transactions to sell, liquidate, or otherwise transfer, all or substantially all of its assets. If Borrower desires to engage in any transaction or series of transactions that would, absent the written consent of Lender, be prohibited under this Section 4(k), Borrower shall provide Lender with no less than thirty (30) days' prior written notice describing the proposed transaction or series of transactions in reasonable detail, and Lender may, in its sole discretion, consent in writing to such transaction or series of transactions, as the case may be. For purposes of clarity, in no event shall any failure to respond by Lender be construed as acceptance or acquiescence to any transaction or series of transactions hereunder, or any waiver by Lender with respect to any transaction or series of transactions prohibited under this Section 4(k).

(l)   To pay immediately and to remain current with all levied taxes, assessments, charges, judgments, and expenses which may now or hereafter be entered, levied, or assessed against Borrower, Borrower's Business or any other business in which Borrower may be involved, and/or any of the Collateral. Lender may, in its sole discretion, make an Advance to a third party on Borrower's behalf to pay such taxes, assessments, charges, judgments, and expenses to protect Lender's interests, and may thereafter collect the amount of any such Advance, together with any associated costs and expenses of Lender, from Borrower as an Administrative Charge pursuant to the terms of this Note.

(m)   That Borrower has obtained all necessary permits and licenses required by Law to operate its Business as a wholesale or retail seller, lessor, or renter of Inventory, and that Borrower has complied with all filing requirements to operate as the entity or business type on record with the appropriate governmental office(s).

(n)   That no legal, administrative, or arbitration proceedings are pending or threatened against Borrower which could reasonably affect Borrower, its Business or any Collateral, or which could materially and adversely affect any other business of Borrower or any properties or prospects, or the general condition, financial or otherwise, of Borrower, or Borrower's ability to repay all Liabilities and otherwise meet its obligations under this Note and the other Loan Documents.

(o)   That Borrower shall immediately notify Lender in writing of any tax warrant, tax levy or any legal, administrative, or arbitration proceedings to which Borrower becomes a party after the Effective Date.

(p)   That all payments made by Borrower to Lender via check or ACH, at the time of issuance, will be written or drawn upon an account that

Page 3 of 12

TRIAL MODE − a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 19

contains immediately available funds sufficient to cover the dollar amount of such check or ACH.

(q) That Borrower's legal name and address as they appear in Section 15 are accurate and complete, and Borrower shall immediately notify Lender in writing of any change in Borrower's Place of Business, bank account information, legal name, physical address, contact information for Borrower or any principal of Borrower (including any change in telephone number), mailing address, business type, state of organization, ownership, management, or control and shall execute any and all documents requested by Lender at any time to bring Borrower into compliance with this Note and any other Loan Document.

(r) That Borrower and all Guarantors are legally competent and have all necessary power and authority to enter into and perform their respective obligations under this Note and the other Loan Documents.

(s) That Borrower shall not disclose to any third party, without the written consent of Lender, any terms and conditions applicable to Borrower's Credit Line, whether such terms and conditions are set forth on the applicable Advance Schedule, this Note or any other Loan Document.

(t) That Borrower may have an account with Lender where information can be accessed and transmissions can be sent through the Discover Portal or by other electronic means, and Borrower shall have the means and the affirmative obligation to control access to the account information of Borrower by passwords and a Borrower account number. Borrower shall be solely responsible for any unauthorized access to Borrower's account. Access to Borrower's account may be revoked or otherwise restricted by Lender at any time, in Lender's sole discretion, without prior notice to Borrower.

(u) That Borrower shall use Advances solely for Business purposes and not for personal, family, or household purposes. This means, among other things, that Borrower may not use Advances to purchase a vehicle for Borrower's personal, family, or household use, and no Lender Financed Inventory may be used for Borrower's personal, family, or household use. This Note and all Advances requested or made hereunder shall be requested and made only for commercial purposes and Borrower hereby expressly and unconditionally waives, to the fullest extent permitted by Law, the protections of any Law intended to protect consumers or regulate consumer loans.

(v) That Borrower will provide Lender the name of each individual authorized to buy Inventory and make Advance requests hereunder on Borrower's behalf. Notwithstanding the foregoing or anything to the contrary in any Loan Document, Borrower shall be responsible and liable for all Advance requests and other Liabilities incurred by any such appointed individual or any other actual or apparent representative or agent of Borrower (regardless of whether such Person is specifically appointed by Borrower as contemplated above).

5.   CREDIT TERMS AND CONDITIONS.  Borrower understands and agrees to the following terms, conditions, covenants, and other agreements relating to its Credit Line and any Advances made under this Note and the other Loan Documents, and acknowledges that any failure by Borrower to adhere to any such terms, conditions, covenants, or other agreements shall result in Lender having the right (in addition to any other right that Lender may have), in its sole discretion and without notice to Borrower, to declare a Maturity Event with respect to all related Advances:

(a) The decision to make an Advance to or on behalf of Borrower is the exclusive right of Lender, whether or not an Event of Default has occurred, and Borrower understands that Lender may refuse to make an Advance at any time, with or without cause and without prior notice to Borrower or any Guarantors of such decision. Borrower is not obligated to finance any Inventory or Receivable through Lender.

(b) Borrower's Credit Line may require a Reserve as a credit underwriting condition to the grant of credit and as additional security for the repayment of Liabilities under this Note and the other Loan Documents. In the event a Reserve is either requested by Borrower or required by Lender, Borrower will be required to execute a Reserve Agreement, and the applicable Required Reserve Amount and Reserve Charge will be indicated on the applicable Advance Schedule.

(c) Borrower must deliver or cause to be delivered to Lender the Title or MSO for any Unit of Inventory at the time of any related Floorplan Advance request, or, in the event of a Universal Source Purchase, within seven (7) days after Lender funds the related Floorplan Advance.

(d) Borrower must deliver or cause to be delivered to Lender the original Receivable which is the subject of a Receivable Advance request within seven (7) days after Lender funds such Receivable Advance. In the event that a Receivable Advance is made by Lender with respect to a Unit for which there is an unpaid Floorplan Advance, then any such Receivable Advance made to Borrower shall be net of such unpaid Floorplan Advance and all other unpaid Liabilities of Borrower with respect to such Unit.

(e) Borrower must be in complete compliance with this Note and the other Loan Documents before an Advance request may be approved by Lender. Additionally, Lender may require certain other information from Borrower to be submitted before Lender will consider an Advance request.

(f) Borrower shall pay all Liabilities, without notice, that concern or relate to a Floorplan Advance for any Unit of Lender Financed Inventory on or before the Maturity Date. Lender shall apply such payments to any and all Liabilities relating to such Floorplan Advance. Notwithstanding anything herein to the contrary, if a shortage exists between the payments received by Lender with respect to a Floorplan Advance, and the Liabilities relating to such Floorplan Advance, then such shortage shall be immediately due and payable and shall continue to be considered a Liability owed by Borrower to Lender, secured by the remaining Collateral.

Page 4 of 12

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 20

(g)  Borrower shall pay all Liabilities, without notice, that concern or relate to a Receivable Advance for a subject Receivable on or before the Maturity Date. Lender shall apply such payments to any and all Liabilities relating to such Receivable Advance. Notwithstanding anything herein to the contrary, if a shortage exists between the payments received by Lender with respect to a Receivable Advance, and the Liabilities relating to such Receivable Advance, then such shortage shall be immediately due and payable and shall continue to be considered a Liability owed by Borrower to Lender, secured by the remaining Collateral.

(h)  Borrower shall pay all Liabilities, without notice, which do not concern or relate to a Floorplan Advance or a Receivable Advance, including Administrative Charges and other account level charges, in each case on their respective Maturity Dates.

(i)  With respect to payments that relate to a Floorplan Advance or a Receivable Advance which exceed the outstanding Liabilities owed by Borrower in connection with such Floorplan Advance or Receivable Advance, as the case may be, and with respect to payments for all other Liabilities, the order and method of application of such payments shall be at the sole discretion of Lender. Notwithstanding anything herein to the contrary, if an event Lender declares an Event of Default, Lender may apply all subsequent payments, including payments directly related to a Floorplan Advance or a Receivable Advance, in any manner or order. Payments initiated or received by Lender after 5:00PM EST may be applied the next Business Day.

(j)  Unless either (i) the Maturity Date for a Floorplan Advance has been accelerated as the result of a Maturity Event or a declaration of an Event of Default; or (ii) such Floorplan Advance is in the final Period pursuant to the applicable Advance Schedule, a Curtailment of such Floorplan Advance will automatically be processed at the end of the current Period. Upon the processing of the Curtailment for a Floorplan Advance, Borrower shall pay the accrued Interest, accrued Floorplan Fee, any other accrued Floorplan Advance related fees, and a principal reduction of such Floorplan Advance, in each case pursuant to this Note, the applicable Advance Schedule, and any applicable event sale or promotional terms in effect for such Floorplan Advance. Additionally, unless (a) the Maturity Date for a Floorplan Advance has been accelerated as the result of a Maturity Event or a declaration of an Event of Default; or (b) Borrower has notified Lender that Borrower has disposed of the subject Unit of Lender Financed Inventory by sale or otherwise, Borrower shall be deemed to have requested, and Lender may, in its sole discretion, automatically approve and process, an Extension with respect to such Floorplan Advance. With respect to any Extension, the Period, accrued Interest, accrued Floorplan Fee, any other Floorplan related fees, and the principal reduction required to be paid by Borrower for such Extension shall, in each case, be equal in all respects to those of the last Period, and, upon the processing of such Extension, Borrower shall pay such accrued Interest, accrued Floorplan Fee, any other accrued Floorplan Advance related fees, and principal reduction of such Floorplan Advance, in each case pursuant to this Note, the applicable Advance Schedule, and any applicable event sale or promotional terms in effect for such Floorplan Advance. Additionally, for each Extension, Borrower shall be charged any applicable Universal Program Fee (including any Universal Extension Fee) set forth in the Finance Program Rate, Fee, and Term Schedule for the applicable Finance Program.

(k)  Unless either (i) the Maturity Date for a Receivable Advance has been accelerated as the result of a Maturity Event or a declaration of an Event of Default; or (ii) such Receivable Advance is in the final Period pursuant to the applicable Advance Schedule, a Curtailment of such Receivable Advance will automatically be processed at the end of the current Period. Upon the processing of the Curtailment for a Receivable Advance, Borrower shall pay the accrued Interest, accrued Receivable Fee, any other accrued Receivable Advance related fees, and a principal reduction of such Receivable Advance, in each case pursuant to this Note, the applicable Advance Schedule, and any applicable event sale or promotional terms in effect for such Receivable Advance. Additionally, unless (a) the Maturity Date for a Receivable Advance has been accelerated as the result of a Maturity Event or a declaration of an Event of Default; (b) Borrower has notified Lender that Borrower has received full payment on the subject Receivable; or (c) Borrower has notified Lender that Borrower has declared a default under such Receivable, Borrower shall be deemed to have requested, and Lender may, in its sole discretion, automatically approve and process an Extension with respect to such Receivable Advance. With respect to any Extension, the Period, accrued Receivable Fee, any other Receivable related fees, and the principal reduction required to be paid by Borrower for such Extension shall, in each case, be equal in all respects to those of the last Period, and, upon the processing of such Extension, Borrower shall pay such accrued Interest, accrued Receivable Fee, any other accrued Receivable Advance related fees, and principal reduction of such Receivable Advance, in each case pursuant to this Note, the applicable Advance Schedule, and any applicable event sale or promotional terms in effect for such Receivable Advance. Additionally, for each Extension, Borrower shall be charged any applicable Universal Program Fee (including any Universal Extension Fee) set forth in the Finance Program Rate, Fee, and Term Schedule for the applicable Finance Program.

(l)  Lender may hold any property (and proceeds thereof) or funds belonging to or payable to Borrower or any of its Affiliates ("Setoff Funds") and apply such Setoff Funds to any outstanding Liabilities of Borrower or to any amounts owing by Borrower to any Affiliate of Lender, and Borrower hereby grants to Lender or its Affiliates, as the case may be, a lien on such Setoff Funds. Lender and its Affiliates may at any time apply any or all of the Setoff Funds to any outstanding Liabilities of Borrower or to any amounts owing by Borrower to any Affiliate of Lender. Borrower expressly waives any requirement of maturity or mutuality among Lender and its various Affiliates.

(m)  Any statement of Borrower's account furnished or made available to Borrower by Lender, to the extent no objection is made in writing by Borrower within ten (10) days after Borrower's receipt of such statement, shall constitute a definitive statement of Borrower's Credit Line and Liabilities as of the date of such statement and shall be binding upon Borrower.

(n)  Borrower hereby expressly authorizes Lender and its Affiliates to communicate with Borrower via facsimile transmissions, email, telephonic transmissions, both to a residential telephone line and/or cell phone, including text messaging, using an automatic telephone dialing system or an artificial or prerecorded voice message, and/or any other forms of communication, for any purpose, including general business matters, account information, marketing materials, collection, and/or any other communication needs. Borrower agrees that such express permission

Page 5 of 12

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 21

shall extend to any and all of the contact information that Borrower has provided herein, including physical and email addresses, phone numbers, fax numbers, etc., and to such other addresses, phone numbers, email addresses, online chat, social media platforms, etc. that Borrower may provide to Lender or that Lender may obtain from any third party at a later date.

(o) So long as Borrower is not in default of this Note or any other Loan Document, Borrower may sell Lender Financed Inventory to bona fide buyers in the Ordinary Course of Business, but nothing herein shall be deemed to waive or release any interest Lender may have hereunder or under any other agreement in any proceeds or replacements of such Lender Financed Inventory. Upon the sale of any Unit of Lender Financed Inventory, Borrower shall hold the proceeds from such sale in trust for the benefit of Lender, and Borrower shall pay to Lender, in accordance with this Note and the other Loan Documents, an amount equal to the unpaid balance of the Liabilities relating to such Unit of Lender Financed Inventory.

(p) Borrower shall allow Lender and its Representatives to access Borrower's books and records at Borrower's Place of Business and such other without any prior notice to Borrower of such audits. Borrower shall be responsible for and agrees to pay all of Lender's expenses in conducting such audits.

(q) Each Unit of Lender Financed Inventory must be physically verified at the time of any audit conducted by or on behalf of Lender to be at Borrower's Place of Business, or such other place as Lender may authorize. In the event that any Unit of Lender Financed Inventory is not so verified, Lender may, in its sole discretion, provide Borrower an opportunity to produce such Unit of Lender Financed Inventory at Borrower's Place of Business, or such other place as Lender may authorize.

(r) Borrower may request from Lender, for a legitimate business purpose, the Title to a Unit of Lender Financed Inventory, but Lender reserves the right to grant or deny such request in its sole discretion. In the event Lender grants any such request, any Title provided to Borrower or to any other Person on Borrower's behalf, must be returned to Lender by the close of business on the seventh (7th) day after the date of Lender's release of such Title.

(s) Borrower and each Guarantor authorize Lender to obtain and share credit information relating to Borrower and its Guarantors from and with credit bureaus, financial institutions, trade creditors, affiliates, and others and to conduct such other credit investigations that Lender in its sole discretion deems necessary. The individual signing below on behalf of Borrower expressly authorizes Lender to obtain his or her consumer credit report from time to time at Lender's discretion, and expressly ratifies any such consumer credit report that may have been obtained by or on behalf of Lender prior to the Effective Date. Borrower also authorizes Lender to contact any third parties to disclose information, including information contained in Lender application, for the purpose of, among other things, obtaining intercreditor agreements and perfecting Lender's security interest. Further, if a Credit Line is granted, Borrower and each Guarantor authorize Lender to review Borrower's account periodically, which may include obtaining additional credit information on Borrower and each Guarantor through any available medium.

(t) Borrower's account is subject to "NSF" fees in the amount stated in the Finance Program Rate, Fee, and Term Schedule or the maximum amount permitted by Law for each check or ACH issued by Borrower which is subsequently returned for insufficient funds, in addition to any charge or fee imposed by Borrower's and/or Lender's depository institution.

(u) Lender may process checks electronically, at first presentment and any re-presentment, by transmitting the amount of the check, routing number, account number, and check serial number to Borrower's financial institution. By submitting a check for payment, Borrower authorizes Lender to initiate an electronic debit from Borrower's bank account. When Lender processes Borrower's check electronically, Borrower's payment may be debited from Borrower's bank account as soon as the same day Lender receives Borrower's check.

(v) Borrower's account is subject to a late fee in the amount stated in the Finance Program Rate, Fee, and Term Schedule or the maximum amount permitted by Law for any Unit of Lender Financed Inventory for which Borrower fails to remit payment under this Note or any other Loan Document when due. Borrower acknowledges and agrees that the late fee charged by Lender is a reasonable estimate of Lender's additional administrative burden and costs incurred due to the delay and inconvenience to Lender associated with a late payment.

(w) Borrower's account is subject to Administrative Charges. Borrower acknowledges and agrees that any such Administrative Charge charged by Lender is permitted under this Note and the other Loan Documents, and Borrower consents to the assessment of any such Administrative Charge to Borrower's account.

(x) Borrower's account is subject to Universal Program Fees. Lender maintains and publishes the "Finance Program Rate, Fee, and Term Schedule" for each Finance Program applicable to Borrower's Credit Line via posting the same on the Discover Portal. Borrower may request a copy of the Finance Program Rate, Fee, and Term Schedule from Lender in writing at any time. All universal or generally applicable rates and fees and any amendments to the Terms and Conditions shall be published therein, incorporated herein by reference and made a part of this Note and any other applicable Loan Documents. The rates and fees applied to Borrower's Liabilities under this Note, any amended Terms and Conditions, or any applicable event sale or promotional terms in effect with respect to an eligible Floorplan Advance or Receivable Advance shall be (i) the applicable rates and fees set forth on the applicable Advance Schedule; (ii) the rates, fees, and amendments to the Terms and Conditions most recently published on the applicable Finance Program Rate, Fee, and Term Schedule; and (iii) the rates, fees, terms, and conditions as set forth in the applicable marketing materials outlining event sale and/or promotional terms. Lender may amend the rates, fees, and Terms and Condition from time to time, at Lender's sole discretion, and without additional Notice to

NextGear Demand Promissory Note and Loan and Security Agreement (v. 1.0)

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 22

Borrower other than the publication of such amendments on the Discover Portal.

(y) Lender maintains and publishes the Lender Guide on the Discover Portal. Borrower acknowledges and agrees that the Lender Guide and the content found therein are not part of this Note or any other Loan Document, are for informational purposes only, and do not create any new or additional contract rights or obligations for Borrower or Lender. Borrower acknowledges and agrees that the Lender Guide and the content therein is subject to change by Lender at any time without notice. To the extent the Lender Guide and the content therein are determined to create or provide additional contractual rights for Borrower and a conflict exists between this Note or any other Loan Document, on the one hand, and the Lender Guide, on the other hand, the provision of this Note or the other Loan Document, as the case may be, shall prevail.

(z) Borrower waives demand, presentment for payment, notice of dishonor, protest, and notice of protest, and expressly agrees that this Note and all payments coming due under it and any other Loan Documents may be extended or modified from time to time without in any way affecting Borrower's liability under this Note or any other Loan Document. Borrower and Guarantors understand that Lender may, at any time and without notice to Borrower, with or without cause, demand that this Note immediately be paid in full. The demand nature of this Note does not limit Lender's election of remedies upon an Event of Default by Borrower, and Borrower and Guarantors acknowledge that upon Lender's declaration of an occurrence of an Event of Default, all Liabilities under this Note and the other Loan Documents shall automatically accelerate and Lender may, at any time and without notice to Borrower, demand immediate payment of all Liabilities under this Note and the other Loan Documents and take such further action as may be contemplated under Section 7 or otherwise permitted by Law or in equity. Borrower shall have the right to pay all Liabilities in full at any time.

(aa) Notwithstanding Section 4(f), upon any disposition of a Unit of Lender Financed Inventory, whether by sale or otherwise, or the receipt by Borrower (or any other Person on behalf of Borrower) of full or partial payment by or on behalf of the purchaser of such Unit of Lender Financed Inventory, Lender may, without notice to Borrower and in Lender's sole discretion, declare a Maturity Event with respect to the related Floorplan Advance.

(bb) Notwithstanding Section 4(g), upon any receipt by Borrower of full payment under any Receivable that is subject to a Receivable Advance, or upon Borrower's declaration of a default under any such Receivable, Lender may, without notice to Borrower and in Lender's sole discretion, declare a Maturity Event with respect to the related Receivable Advance.

(cc) The receipt, by Lender or Borrower, or any third party on Borrower's behalf, of proceeds related to any Unit of Lender Financed Inventory shall constitue conclusive proof of the sale or other disposition of such Unit of Lender Financed Inventory.

6. EVENTS OF DEFAULT.  The occurrence of any of the following events shall be considered an event of default under this Note and the other Loan Documents (each, an "Event of Default"):

(a) Borrower or any Guarantor fails to perform any of its obligations, undertakings or covenants under this Note or under any other Loan Document, including any obligation to repay any Liability when due and Borrower's obligation to pay upon demand any outstanding Liability under this Note.

(b) Borrower or any Guarantor breaches or otherwise violates any provision of this Note or any other Loan Document.

(c) Borrower makes any representation or warranty to Lender, or provides to Lender any schedule, certificate, financial statement, report, notice, or other writing, which is false or misleading in any material respect when made or delivered.

(d) Any damage or destruction of any Inventory and appropriate insurance naming Lender as "Loss Payee" is not in effect as required under Section 4(c).

(e) Borrower or any Guarantor, or any of their respective Parent Companies, has defaulted in the payment or performance of any debt or obligation under any other agreement, whether to Lender or to a third party.

(f) Borrower or any Guarantor, or any of their respective Parent Companies, becomes insolvent or consents to the appointment of a trustee, receiver, or other custodian for such Borrower, Guarantor, or Parent Company, as the case may be, or for any property belonging to any of the foregoing Persons; or such Borrower, Guarantor, or Parent Company, as the case may be, makes a general assignment for the benefit of its creditors; or any bankruptcy, reorganization, debt arrangement, or other case or proceeding under any bankruptcy or insolvency Law, or a dissolution or liquidation proceeding, is commenced by or against such Borrower, Guarantor, or Parent Company, as the case may be.

(g) Any material change in the management, ownership, or control of Borrower or its Parent Company occurs (unless such material change has been consented to in writing by Lender).

(h) The voluntary or administrative dissolution, death, or incompetence of Borrower or any Guarantor, or any of their respective Parent Companies.

(i) Any change in the financial condition of Borrower or any Guarantor, or any of their respective Parent Companies, that Lender in good faith

Page 7 of 12

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 23

deems adverse.

(j) Borrower or any Guarantor, or any of their respective Parent Companies, admits in writing that it is unable to pay its debts as they become due.

(k) Lender in good faith deems itself insecure for any reason.

7. RIGHTS AND REMEDIES. Upon any Event of Default, Lender may, at its option and without notice to Borrower, exercise any or all of the following rights in a separate, successive, or concurrent fashion, and Lender's exercise of any rights hereunder shall not preclude Lender from pursuing other rights and remedies in conjunction therewith or at a later time:

(a) Demand immediate payment of all Liabilities under this Note and the other Loan Documents and all other indebtedness and amounts owed to Lender and its Affiliates by Borrower and its Affiliates. Lender shall have all rights and remedies available hereunder and under the other Loan Documents, and all rights and remedies available to Lender at law or in equity, including the rights and remedies of a secured party under the UCC. These rights and remedies include the right to cancel any unfunded Advances; to enter into Borrower's premises with or without legal process, but without force, and to take possession of and remove any Collateral; and to notify any account debtors or other Person obligated on Collateral to make payment or otherwise render performance to or for the benefit of Lender. Lender shall have the right to contact any third parties, including auctions, governmental agencies, Borrower's licensing authorities, consumer finance companies, floorplan companies, other finance companies, consumers, other borrowers, Auction Insurance Agency, and such other Persons as Lender may elect to contact in its sole discretion, and to share such information as is necessary, in Lender's sole discretion, for any reason, including for purposes of and related to collection of any Liabilities under this Note and the other Loan Documents. At Lender's request, and to the extent Borrower may lawfully do so, Borrower shall assemble, prepare for removal, and make available to Lender at a place designated by Lender which is reasonably convenient for Lender and Borrower such Collateral as Lender may request.

(b) Initiate proceedings to appoint a receiver in any court of competent jurisdiction. To the extent permitted by Law, Borrower waives the right to notice and hearing of the appointment of a receiver and consents to such appointment without requiring Lender to post a bond.

(c) To the extent permitted by Law, Borrower gives consent to Lender to proceed in any action to collect on or execute against any and all bonds that Borrower or its Affiliates may have posted with any governmental authorities or third parties.

(d) Without limiting the foregoing, Lender may take control of any funds generated by any Collateral, and in Lender's name or Borrower's name, demand, collect, receipt for, settle, compromise, sue for, repossess, accept returns of, foreclose, or realize upon any Collateral. Borrower waives any and all rights it may have to notice prior to seizure by Lender of any Collateral. Borrower agrees that private sale of any Lender Financed Inventory at the amount then owed to Lender on such Lender Financed Inventory, less costs reasonably incurred by Lender in preparation of disposition of such Lender Financed Inventory, shall be a commercially reasonable method of disposition of such Collateral. Additionally, Borrower further agrees that any Inventory Collateral repossessed or otherwise obtained by Lender after an Event of Default may be disposed of by Lender, in Lender's sole discretion, at any regular or online sale of any wholesale auto auction that may be an Affiliate of Lender, or at any National Auto Auction Association member, and, in each case, any such a sale is and shall be deemed commercially reasonable for all purposes. Borrower shall be liable to Lender for any deficiency resulting from Lender's disposition of the Collateral. Borrower agrees that the Collateral is of the type customarily sold on a recognized market and that Lender therefore has no obligation to notify Borrower prior to a sale of any Collateral. Lender shall not be responsible for the accuracy or validity of any document or for the existence or value of any Collateral. Lender shall not be required to marshal any assets in favor of Borrower. Lender has no obligation to pursue any third party for any liability or obligation owed to Borrower. Borrower further agrees to pay all reasonable attorneys' fees and other collection costs incurred by Lender and its Affiliates in enforcing this Note and any other Loan Document after any Event of Default. To the extent not prohibited by Law, Borrower waives all appraisement, valuation, anti-deficiency, homestead, exemption, and usury Laws now or hereafter in effect, and releases all right to appeal after payment in full.

8. LOAN DOCUMENTS. In addition to the execution and delivery of this Note, upon the request of Lender, Borrower shall execute (or cause the execution of) the following additional documents in connection with Borrower's Credit Line (together with all other documents and instruments executed by Borrower in connection with this Note or Borrower's Credit Line, the "Loan Documents"), each of which shall be incorporated herein by reference and made a part of this Note: (a) a Power of Attorney in favor of Lender, (b) prior to Lender making any Advances under this Note, an Advance Schedule for each unique set of terms for the Finance Program applicable to Borrower, which may be amended from time to time; (c) such Guaranties of all of Borrower's Liabilities under this Note and the other Loan Documents as Lender may request, including Guaranties of all owners of Borrower; (d) a Reserve Agreement in favor of Lender; and (e) prior to Lender authorizing Borrower to place any Lender Financed Inventory on consignment with another licensed dealer, a Consignment Agreement acceptable to Lender.

9. ASSIGNMENT. This Note and any other Loan Document may be assigned by Lender without notice to Borrower, but Borrower may not assign this Note or any other Loan Document without the prior written consent of Lender.

10. THIRD PARTY BENEFICIARIES. Neither this Note nor any other Loan Document is intended to confer upon any Person other than the Parties any rights or remedies hereunder; provided, however, that the rights and remedies afforded to Lender under Sections 2, 5(l), 5(n), 5(s), 7, 11 and 14 shall also inure to the benefit of the Affiliates of Lender and such Affiliates shall be intended third party beneficiaries of the provisions thereof.

Page 8 of 12

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 24

11. INDEMNIFICATION: Borrower shall, at its expense, defend, indemnify and hold harmless Lender and its Affiliates, and each of their respective directors, officers, principals, partners, shareholders or holders of any ownership interest, as the case may be, employees, Representatives, attorneys, and agents (the "Lender Parties") from and against any and all claims, judgments, losses, damages, demands, payments, fines, costs, expenses (including reasonable attorneys' fees and court costs), and liabilities of any nature or description incurred by a Lender Party to the extent arising from or relating to any of the following: (a) any personal injury or property damage caused by Borrower or any of its Representatives, (b) any breach by Borrower of this Note or any other Loan Document, including the breach of any representation, warranty, or other agreement contained in this Note or in any other Loan Document; and (c) Borrower's operation of its Business or any of Borrower's operations or activities.

12. NO JOINT VENTURE, PARTNERSHIP, OR AGENCY. Nothing contained in this Note or in any other Loan Document shall confer upon Lender or Borrower any interest in, or subject either of them to any liability for, or in respect of, the business, assets, profits, losses, or liabilities of the other. This Note does not constitute and shall not be characterized as a joint venture, partnership, or agency between Lender and Borrower. Nothing in this Section 12 shall limit or restrict the respective obligations and undertakings of Lender and Borrower hereunder.

13. AMENDMENT; MERGER. This Note and the other Loan Documents are intended by the Parties to be an amendment to and restatement of any prior Demand Promissory Note and Loan and Security Agreement or similar document or instrument (including any prior promissory note, loan and security agreement or similar contract) between Lender (or any predecessor of Lender, including Dealer Services Corporation and/or Manheim Automotive Financial Services, Inc.) and Borrower. With the exception of the amendments and modifications that Lender is entitled to make without the written consent of Borrower pursuant to this Note or any other Loan Document, this Note may be modified or amended only upon the written consent of Lender and Borrower. In the case of the other Loan Documents, with the exception of the amendments and modifications that Lender is entitled to make without the prior written consent of Borrower pursuant to this Note or any other Loan Document, such other Loan Documents may be modified or amended only upon the written consent of Lender and the Person to whom such amendment relates. Additionally, the Finance Programs, Lender Guide, descriptions of specific Units of Lender Financed Inventory, amounts and terms of Advances, Maturity Dates, Extensions, Interest, Base Rates, Administrative Charges, Lender Universal Program Fees, late fees, NSF fees, and other charges allowed by this Note or any other Loan Document may be proven by the records kept by Lender. Notwithstanding the foregoing, any advance and/or loan originated pursuant to one or more agreements between Borrower and Dealer Services Corporation and/or Manheim Automotive Financial Services, Inc. prior to the Effective Date for which indebtedness from Borrower remains outstanding as of the Effective Date, shall remain subject to the terms and conditions of such prior agreement(s) for all intents and purposes until such indebtedness has been indefeasibly repaid and satisfied in full.

14. EXECUTION. The Parties understand and agree that Lender may execute this Note and any other Loan Documents by affixing the signature of an authorized representative of Lender via signature stamp. Additionally, Lender may execute this Note and any other Loan Documents by affixing to this Note or such other Loan Document, as the case may be, an electronic or digital signature, which electronic or digital signature shall for all purposes be deemed effective to constitute the valid signature of Lender. Any electronic or digital signature affixed to this Note or any other Loan Documents by Lender shall be deemed to satisfy all requirements imposed on electronic or digital signatures under the UCC, the Electronic Signatures in Global and National Commerce Act (the "E-Sign Act"), and any other similar Laws relating to the validity or enforceability of electronic or digital signatures, and such electronic or digital signature shall not be denied legal effect, validity, or enforceability solely because it is in electronic or digital form. Notwithstanding the foregoing, Borrower may execute this Note and any other Loan Documents only by original signature of an authorized officer of Borrower, unless otherwise authorized by Lender. Lender may, in its sole discretion, permit Borrower and/or any Guarantor to execute this Note and any other Loan Documents by affixing to this Note or such other Loan Document, as the case may be, an electronic or digital signature. Borrower acknowledges and agrees that any electronic or digital signature of Borrower or any Guarantor shall for all purposes be deemed effective and constitute the valid signature of Borrower or Guarantor, as the case may be, and shall be deemed to satisfy all requirements imposed on electronic or digital signatures under the UCC, the E-Sign Act, and any other similar Laws relating to the validity or enforceability of electronic or digital signatures and such electronic or digital signature shall not be denied legal effect, validity, or enforceability solely because it is in electronic or digital form. A facsimile or photocopied reproduction of signatures on this Note and any other Loan Documents shall be deemed original signatures for all intents and purposes. This Note and the other Loan Documents may be executed by the Parties in one or more counterparts which, collectively, shall constitute one and the same agreement.

15. NOTICES. All notices, demands and requests required or permitted to be given under this Note and any other Loan Document shall be (a) in writing, (b) sent by facsimile with receipt confirmed by telephone (but only if a facsimile number is provided below), delivered by personal delivery or sent by commercial delivery service or certified mail, return receipt requested, (c) deemed to have been given on the date sent by facsimile with receipt confirmed by telephone, the date of personal delivery or the date set forth in the records of the delivery service or on the return receipt, and (d) addressed as follows (or, in the case of Lender, to any other subsequent address that Lender may provide to Borrower (through written notice, via the Discover Portal, or otherwise) for purposes of directing future notices, demands or requests):

If to Lender:          NextGear Capital, Inc., 1320 City Center Drive, Suite 100, Carmel, IN 46032
                       Telephone: (317) 571-3721 Facsimile: (317) 571-3737

                       with a copy to:

                       NextGear Capital, Inc., 1320 City Center Drive, Suite 100, Carmel, IN 46032
                       Telephone: (317) 571-3721 Facsimile: (317) 571-3737
                       Attention: Legal Department

Page 9 of 12

Account 592423                                   NextGear Demand Promissory Note and Loan and Security Agreement (v. 1.0)

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 25

If to Borrower:      Michael Vernon Garrison, d/b/a Rock Hill Used Cars
                     519 Interstate Highway 30 E , Sulphur Springs, TX  754826153
                     Telephone: (903) 951-8597 Facsimile:

16.  NO WAIVER.  No failure or delay by Lender in exercising any right, power, or privilege or the granting of an exception by Lender with respect to any Term or Condition will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege, or the exercise of any other right, power, or privilege by Lender.

17.  TERMINATION.  No termination of this Note shall alter Borrower's obligations and Liabilities relating to Advances and amounts funded or committed prior to the effective date of such termination, and all rights and remedies, including the security interest granted herein and the rights of Lender as a secured party hereunder, shall extend until all Liabilities owed by Borrower to Lender have been indefeasibly paid and satisfied in full.

18.  LEGAL FEES AND COLLECTION COSTS.  Borrower shall pay to Lender all reasonable legal fees, expenses, and collection costs incurred by Lender, Lender's Affiliates, and/or Lender's Representatives as a result of any Event of Default, Borrower's failure to perform any obligation or satisfy any Liability under this Note or any other Loan Document, and/or Borrower's unsuccessful prosecution of affirmative claims or counterclaims against such party or parties.

19.  SEVERABILITY.  Any provision of this Note or any other Loan Document that is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability, without rendering invalid or unenforceable the remaining provisions of this Note and the other Loan Documents or affecting the validity or enforceability of any provision of this Note or any other Loan Document in any other jurisdiction.

20.  GOVERNING LAW.  Except with respect to the interpretation or enforcement of the arbitration and other provisions set forth in Section 22 (which shall be governed by the Federal Arbitration Act), the validity, enforceability, and interpretation of this Note and the other Loan Documents shall be governed by the internal Laws of the State of Indiana, without regard to conflicts of Laws provisions thereof.

21.  JURISDICTION AND VENUE.  As evidenced by Borrower's signature below, Borrower submits to the personal jurisdiction and venue of the state and federal courts of Marion County and Hamilton County, Indiana, and agrees that any and all claims or disputes pertaining to this Note or any other Loan Document, or to any matter arising out of or related in this Note or any other Loan Document, initiated by Borrower against Lender, shall be brought in the state or federal courts of Marion County or Hamilton County, Indiana. Further, Borrower expressly consents to the jurisdiction and venue of the state and federal courts of Marion County and Hamilton County, Indiana, as to any legal or equitable action that may be brought in such court by Lender, and waives any objection based upon lack of personal jurisdiction, improper venue, or forum non conveniens with respect to any such action.  Borrower acknowledges and agrees that Lender reserves the right to initiate and prosecute any action against Borrower in any court of competent jurisdiction, and Borrower consents to such forum as Lender may elect.

22.  DISPUTE RESOLUTION; WAIVER OF CLASS ACTION RIGHTS.

     (a)  In most cases, any disputes or claims that Borrower may have can be resolved quickly and to Borrower's satisfaction by contacting Lender regarding such dispute or claims.  In the unlikely event that Lender is unable to resolve a dispute or claim that Borrower may have, Borrower agrees to arbitrate any such dispute or claim.  This agreement to arbitrate is intended to be broadly interpreted, and includes (i) all disputes, claims and counterclaims arising out of or relating to this Note or any other Loan Document or any aspect of Borrower's relationship with Lender, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; (ii) all disputes, claims and counterclaims that may have arisen before this Note or any prior contract or agreement between Borrower and Lender (including all disputes, claims and counterclaims relating to any marketing or advertising by Lender); and (iii) any disputes, claims and counterclaims that may arise after the termination of this Note and any other Loan Document. Additionally, Borrower acknowledges that Lender may (but shall in no event be required to) arbitrate any dispute or claim that it may have against Borrower, with any such arbitration being governed by the provisions of this Section 22. Borrower, at its election, may opt-out of the arbitration provisions set forth in Sections 22(a), 22(c) and 22(d) by providing written notice of its election to opt-out no later than thirty (30) days after the Effective Date, which notice shall be provided to Lender pursuant to Section 15 ("Opt-Out Notice"), provided that such Opt-Out Notice shall become effective only upon Borrower's receipt of written confirmation from Lender that such Opt-Out Notice has been received by Lender within the required time period. Borrower acknowledges and agrees that, irrespective of any Opt-Out Notice or any written confirmation thereof, Borrower shall in all events be subject to the provisions of Section 22(b).

     (b)  ANY ARBITRATION PROCEEDING UNDER THIS NOTE WILL TAKE PLACE ON AN INDIVIDUAL BASIS.  CLASS ARBITRATIONS AND CLASS ACTIONS OF ANY KIND (WHETHER PURSUED THROUGH ARBITRATION OR THROUGH THE COURTS) ARE NOT PERMITTED.  BORROWER AGREES THAT IT MAY BRING CLAIMS AGAINST LENDER ONLY IN ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.  BORROWER AGREES THAT, BY ENTERING INTO THIS NOTE, BORROWER IS WAIVING ITS RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR OTHER SIMILAR REPRESENTATIVE PROCEEDING.  UNLESS CONSENTED TO IN WRITING BY LENDER, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S

Page 10 of 12

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 26

CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. BORROWER ACKNOWLEDGES AND AGREES THAT THE SIZE OF BORROWER'S CREDIT LINE, THE INTEREST RATE TO WHICH ADVANCES ARE SUBJECT AND CERTAIN FEES CHARGED TO BORROWER, AS WELL AS THE SIZE AND DATES OF SPECIFIC ADVANCES, ARE UNIQUE TO AND NEGOTIATED BY BORROWER, AND THAT SUCH FACTORS WILL AND DO VARY AMONG BORROWERS.

(c) Any dispute or claim subject to arbitration pursuant to this Section 22 shall be submitted to binding arbitration administered by the Judicial Arbitration and Mediation Service ("JAMS") pursuant to its Comprehensive Arbitration Rules and Procedures as then in effect (the "JAMS Comprehensive Rules"); provided, however, that any dispute or claim that is subject to arbitration pursuant to this Section 22 and that involves disputes or claims where the aggregate amount reasonably in dispute or controversy is less than $100,000, shall be submitted to binding arbitration administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures as in effect on the Effective Date (the "JAMS Streamlined Rules"). The disputes and claims subject to arbitration pursuant to this Section 22 will be resolved by a single arbitrator selected pursuant to the JAMS Comprehensive Rules or the JAMS Streamlined Rules, as the case may be. The arbitrator shall be bound by and shall strictly enforce the terms of this Note and the other Loan Documents and may not limit, expand, or otherwise modify any term or provision of this Note or any other Loan Document or any other contract or document between Borrower and Lender. The arbitrator shall not have the power to award to Borrower any damages that are excluded or that have been waived by Borrower under this Note or any other Loan Document, and Borrower irrevocably waives any claim that it may have thereto. The arbitrator shall not have the power to enter pre-hearing discovery of documents or the taking of depositions. The arbitrator shall render a written decision within six (6) months after being selected. Any arbitration will be held in Indianapolis, Indiana (or its greater metro area). Each Party will bear its own expenses in the arbitration and will share equally the costs of the arbitration; provided, however, that the arbitrator may, in his or her discretion, award costs and fees to the prevailing Party. The result of any arbitration shall be final and binding upon the Parties. Judgment upon any arbitration award may be entered in any court having jurisdiction over the award or over the applicable party or its assets.

(d) This Note and the other Loan Documents evidence transactions in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this Section 22, notwithstanding the provisions of Section 20.

23. WAIVER OF JURY TRIAL. AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, LENDER AND BORROWER KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE ANY RIGHT EITHER PARTY MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION BASED UPON OR ARISING OUT OF THIS NOTE OR ANY OTHER LOAN DOCUMENT, OR ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS NOTE OR ANY OF THE OTHER LOAN DOCUMENTS, OR ANY COURSE OF CONDUCT, STATEMENT, WHETHER ORAL OR WRITTEN, OR ACTIONS OF LENDER OR BORROWER. NEITHER LENDER NOR BORROWER SHALL SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THESE PROVISIONS SHALL NOT HAVE BEEN DEEMED TO HAVE BEEN MODIFIED IN ANY RESPECT OR RELINQUISHED BY LENDER OR BORROWER EXCEPT BY WRITTEN INSTRUMENT EXECUTED BY BOTH LENDER AND BORROWER.

24. LIMITATION OF LIABILITY. IN NO EVENT SHALL ANY LENDER PARTY BE LIABLE FOR ANY SPECIAL, INDIRECT, EXEMPLARY, PUNITIVE, INCIDENTAL, MULTIPLE OR CONSEQUENTIAL DAMAGES (INCLUDING ANY DAMAGES RESULTING FROM LOSS OF USE, LOSS OF PROFITS, LOSS OF BUSINESS OR OTHER ECONOMIC LOSS) ARISING OUT OF OR IN CONNECTION WITH THIS NOTE OR ANY OTHER LOAN DOCUMENT (OR ANY ADVANCES MADE BY LENDER HEREUNDER OR THEREUNDER), EVEN IF SUCH LENDER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. FURTHER, IN NO EVENT SHALL THE LENDER PARTIES, COLLECTIVELY, BE LIABLE FOR ANY DAMAGES UNDER THIS NOTE OR ANY OTHER LOAN DOCUMENT (OR IN CONNECTION WITH ANY ADVANCE BY LENDER HEREUNDER OR THEREUNDER) THAT EXCEED, IN THE AGGREGATE, AN AMOUNT EQUAL TO THE SUM OF THE INTEREST AND FLOORPLAN FEES ACTUALLY PAID TO LENDER BY BORROWER UNDER THIS NOTE DURING THE TWELVE (12) MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM AT ISSUE (OR, IN THE CASE OF MULTIPLE EVENTS, THE FIRST SUCH EVENT GIVING RISE TO THE CLAIM AT ISSUE).

25. WAIVER OF BOND. BORROWER WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY BOND OR SURETY OR SECURITY ON SUCH BOND WHICH MIGHT, BUT FOR THIS WAIVER, BE REQUIRED OF LENDER DURING ATTEMPTS TO RECOVER COLLATERAL OR OTHERWISE.

26. CALIFORNIA BORROWERS. In the event Borrower's Place of Business is in the State of California, Borrower acknowledges and agrees that any initial Advance made under this Note must be in the amount of at least Five Thousand Dollars and Zero Cents ($5,000), and Borrower shall neither request nor accept any initial Advance under this Note in an amount less than Five Thousand Dollars and Zero Cents ($5,000).

27. DISCLAIMER. THE DISCOVER PORTAL LICENSED OR PROVIDED HEREUNDER IS PROVIDED AS A CONVENIENCE TO BORROWER AND ON AN "AS-IS" BASIS. LENDER MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, ORAL OR WRITTEN, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF NON-INFRINGEMENT, TITLE, ACCURACY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, LENDER MAKES NO REPRESENTATIONS OR WARRANTIES THAT THE DISCOVER PORTAL WILL OPERATE ERROR-FREE OR ON AN UNINTERRUPTED BASIS, AND LENDER SHALL IN NO EVENT BE LIABLE OR RESPONSIBLE FOR ANY OUTAGE OR OTHER LOSS OF FUNCTIONALITY OR CONNECTIVITY WITH RESPECT TO THE DISCOVER PORTAL, AND NO SUCH OUTAGE OR OTHER LOSS OF FUNCTIONALITY OR CONNECTIVITY SHALL EXCUSE ANY FAILURE BY BORROWER TO

Account #92421.                                                    NextGear Demand Promissory Note and Loan and Security Agreement (v. 1.0)

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 27

TIMELY PERFORM ALL OF ITS OBLIGATIONS TO LENDER UNDER THIS NOTE AND THE OTHER LOAN DOCUMENTS.

28. DESCRIPTIVE HEADINGS; INTERPRETATION. The descriptive headings herein are for convenience of reference only and shall not control or affect the meaning or construction of any provision of this Note. As used in this Note and the other Loan Documents, the terms "include," "includes," and "including" are deemed to be followed by "without limitation" whether or not they are in fact followed by such words or words of like import. Words (including the defined terms set forth in Appendix A) of one gender shall be held to include the other gender as the context requires. Any references in this Note or in the other Loan Documents to a particular statute or regulation shall be deemed to include all amendments thereto, rules and regulations thereunder and any successor statute, rule, or regulation, or published clarifications or interpretations with respect thereto, in each case as in effect from time to time.

29. EFFECTIVE DATE OF OTHER LOAN DOCUMENTS. Unless otherwise stated in the applicable Loan Document, the effective date of any Loan Document executed by a party shall be the later of (a) the Effective Date of this Note, or (b) the date of Borrower's execution thereof as set forth below Borrower's signature thereon (or, in the case of any Guaranty, the date of Guarantor's execution thereof as set forth below Guarantor's signature thereon). In the event that the date of Borrower's or Guarantor's execution of any Loan Document is not set forth below Borrower's or Guarantor's signature thereon, then the effective date of such Loan Document shall be deemed to be the Effective Date of this Note.

WHEREFORE, the Parties, by their respective duly authorized representatives, have executed this Demand Promissory Note and Loan and Security Agreement on the dates set forth below.

**BORROWER:**

Michael Vernon Garrison, d/b/a Rock Hill Used Cars

By:

Michael Vernon Garrison, Owner

Date: 5 - 6 - 15

**LENDER:**

NEXTGEAR CAPITAL, INC.

By:

Name (Print):

Date: 5 - 6 - 15

**GUARANTORS ACKNOWLEDGE AND CONSENT TO THE FOREGOING:**

Guarantor (Sign):

Michael Vernon Garrison

Account #9C421

NextGear Demand Promissory Note and Loan and Security Agreement (v. 1.0)

TRIAL MODE − a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 28

## APPENDIX A

(1) "Administrative Charge" shall mean any expense charged by Lender to Borrower that is reasonable or necessary, in Lender's sole discretion, to administer or monitor Borrower's account, to preserve any Collateral, or to collect any Liabilities under this Note.

(2) "Advance" shall mean any discretionary loan or payment in any amount, for any purpose, made pursuant to this Note by Lender to Borrower or on Borrower's behalf to any third party.

(3) "Advance Schedule" shall mean any addendum or other document executed pursuant to this Note, in each case as modified from time to time, which indicates the applicable specific terms regarding Borrower's Floorplan Fees, Receivable Fees, Contract Rate of Interest, Period(s), Required Reserve Amount, Reserve Charge, required principal reduction to obtain a Curtailment of the Maturity Date, and number of available Curtailments.

(4) "ACH" shall mean any payment by or on behalf of Borrower to Lender made via a nationwide electronic funds transfer network processing electronic debit and credit entries to or from Borrower's bank accounts.

(5) "Affiliate" shall mean, with respect to any Person, any other Person that, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such first-named Person (which shall, for purposes of clarity, include any parent company and any direct or indirect subsidiary of such first-named Person) and, if such first-named Person is a natural person, also includes any member of such first-named Person's immediate family. For purposes of this definition, the term "control" means, with respect to any Person, the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise.

(6) "Base Rate" shall mean the greater of that variable rate of interest or that fixed rate of interest as stated in the Finance Program Rate, Fee, and Term Schedule.

(7) "Borrower" shall have the meaning set forth in the Preamble.

(8) "Borrower's Place of Business" shall mean the primary place where the Collateral and Borrower's books and records are kept, and where Borrower's operations are conducted.

(9) "Business" shall mean Borrower's business, as it relates to the purchase and sale, lease, or rent of Inventory and/or the origination of any Receivables.

(10) "Business Day" shall mean any day other than a Saturday, Sunday, federal holiday or day on which banking institutions in Carmel, Indiana are authorized or obligated by Law or executive order to be closed.

(11) "Check" shall mean any payment by or on behalf of Borrower to Lender not made in cash, via certified funds, wire transfer, or ACH.

(12) "Collateral" shall have the meaning set forth in Section 2(a).

(13) "Collateral Protection Program" shall mean that certain program in which Borrower may participate in lieu of providing third party insurance as required under this Note.

(14) "Contract Rate" shall mean that rate of interest as stated on the applicable Advance Schedule.

(15) "Credit Line" shall mean Borrower's floorplan line of credit with Lender pursuant to and under this Note.

(16) "Curtailment" shall mean that grant by Lender, in its sole discretion, to Borrower of additional time extending the Maturity Date for an additional Period. The number of allowable Curtailments shall be as stated on the applicable Advance Schedule.

(17) "Discover Portal" shall mean that certain web-based portal located at http://www.nextgearcapital.com (or any similar successor portal, interface or website) owned, operated or maintained by Lender and, subject to the Terms and Conditions, to which Borrower shall have access to from time to time as determined by Lender.

(18) "Effective Date" shall have the meaning set forth in the Preamble.

(19) "E-Sign Act" shall have the meaning set forth in Section 14.

(20) "Event of Default" shall have the meaning set forth in Section 6.

(21) "Extension" shall mean that grant by Lender, in its sole discretion, to Borrower of additional time extending the Maturity Date beyond the last

Page 1 of 4

Appendix 29

Period as stated on the applicable Advance Schedule.

(22) "Finance Program" shall mean any finance program offered by Lender and available to Borrower for the financing of Inventory or Receivables pursuant to an Advance under this Note.

(23) "Finance Program Rate, Fee, and Term Schedule" shall mean that current schedule of applicable universal interest rates, fees and term and condition amendments for each Finance Program, including Universal Program Fees; late fees; fees relating to returned checks or ACH payments due to insufficient funds; the Base Rate; Collateral Protection Program fees; and notice of amendments in the Terms and Conditions, published by Lender via posting such schedule of such universal rates and fees and notice of amendments in the Terms and Conditions on the Discover Portal.

(24) "Floorplan Advance" shall mean an Advance made pursuant to this Note relating to a Unit of Inventory to be offered for sale, lease or rent, or leased or rented by Borrower in the Ordinary Course of Business.

(25) "Floorplan Date" shall mean (a) for a Universal Source Purchase, the sale date, regardless of the date the Floorplan Advance is actually requested or funded; and (b) for a Specific Source Purchase, the date the request for the Floorplan Advance is received by Lender, regardless of the date such Floorplan Advance is actually funded.

(26) "Floorplan Fee" shall mean the fee charged by Lender to Borrower, as set forth on the applicable Advance Schedule, for each Unit of Lender Financed Inventory for each Period, including any Extensions thereof.

(27) "Guarantor" shall mean any Person executing this Note as a Guarantor or any Person executing any Guaranty pursuant to this Note.

(28) "Interest" shall mean the aggregate rate of interest which accrues on all Liabilities owed by Borrower to Lender under or arising out of this Note or the other Loan Documents.

(29) "Inventory" shall mean all Units held by Borrower for wholesale or retail sale, lease, or rent, or leased or rented by Borrower. "Inventory" includes Lender Financed Inventory.

(30) "JAMS" shall have the meaning set forth in Section 22(c).

(31) "JAMS Comprehensive Rules" shall have the meaning set forth in Section 22(c).

(32) "JAMS Standard Rules" shall have the meaning set forth in Section 22(c).

(33) "Law" or "Laws" shall mean applicable common law and any applicable statute, permit, ordinance, code or other law, rule, regulation or order enacted, adopted, promulgated or applied by any governmental authority, all as in effect from time to time.

(34) "Lender" shall have the meaning set forth in the Preamble.

(35) "Lender Financed Inventory" shall mean all Units for which an Advance has been made under this Note.

(36) "Lender Guide" shall mean those procedures and instructions for the use of Lender's system and the Discover Portal, in each case as modified by Lender from time to time in Lender's sole discretion, which are available in hard copy upon Borrower's written request to Lender or by Borrower logging onto the Discover Portal.

(37) "Lender Parties" shall have the meaning set forth in Section 11.

(38) "Liabilities" shall mean any and all Advances, debts, financial obligations, Administrative Charges, Lender Universal Program Fees, Interest, Floorplan Fees, NSF fees, late fees, charges, expenses, attorneys' fees, costs of collection, covenants, and duties owing, arising, due, or payable from Borrower to Lender of any kind or nature, present, or future, under any instrument, guaranty, or other document, whether arising under this Note, any other Loan Document, or otherwise, whether directly or indirectly (including those acquired by assignment), absolute or contingent, primary or secondary, due or to become due, now existing, or hereafter arising, and however acquired.

(39) "Liens" shall mean any claims, liabilities, security interests, liens, mortgages, deeds of trust, pledges, conditions, charges, claims, options, rights of first refusal, easements, proxies, voting trusts or agreements, transfer restrictions under any contract or agreement or encumbrances of any kind or nature whatsoever.

(40) "Loan Documents" shall have the meaning set forth in Section 8.

(41) "Maturity Date" shall mean (a) for all Liabilities concerning or relating to a Floorplan Advance or a Receivable Advance, the earlier of the last day of the current Period or the day on which Lender declares a Maturity Event; (b) for all Liabilities not directly related to a Floorplan Advance or a Receivable Advance, ten (10) days after the date such Liability is posted to Borrower's account; and (c) for One Day Loans, the

ag1&w旧

NextGear Demand Promissory Note and Loan and Security Agreement (v. 1.0) - Appendix A

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 30

date such One Day Loan is posted to Borrower's account.  Notwithstanding the foregoing, upon the declaration of an Event of Default by Lender, the Maturity Date for all Liabilities shall be the earlier of (i) the date on which such Event of Default is declared by Lender, or (ii) the date on which such Event of Default first occurred.  In the event the Maturity Date is not a Business Day, the Maturity Date shall be deemed to be the next Business Day.

(42)   "Maturity Event" shall mean any event, act or circumstance arising under this Note or any other Loan Document (including any failure by Borrower to adhere to any term or provision of this Note or any other Loan Document), which causes Lender to declare the event, act or circumstance a "Maturity Event" with respect to any Floorplan Advance or Receivable Advance.

(43)   "MSO" shall mean the manufacturer's certificate of origin or other document evidencing ownership of a Unit issued by the manufacturer of the Unit.

(44)   "Note" shall mean this Demand Promissory Note and Loan and Security Agreement and all present and future amendments, modifications, and addendums referenced herein.

(45)   "One Day Loan" shall mean the amount of any Advance that is in excess of the market value of a Unit, as determined by Lender in its sole discretion.  The determination of whether to approve an Advance which would result in the posting of a One Day Loan to Borrower's account shall be in Lender's sole discretion.  One Day Loans mature on the date on which they post to Borrower's account.

(46)   "Opt-Out Notice" shall have the meaning set forth in Section 22(a).

(47)   "Ordinary Course of Business" shall mean the ordinary course of the Business of Borrower, consistent with past practices (but only to the extent such past practices were in compliance with Law and in accordance with best industry practices).

(48)   "Parent Company" shall mean, with respect to Borrower or any Guarantor, the Person(s) that, directly or indirectly, have the power to direct or cause the direction of the management and policies of Borrower or Guarantor, as the case may be, whether through the ownership of voting securities, by contract or otherwise.

(49)   "Party" or "Parties" shall have the meaning set forth in the Preamble.

(50)   "Period" shall mean the number of days set forth on the applicable Advance Schedule, which (a) in the case of a Floorplan Advance, shall be calculated beginning on the Floorplan Date; and (b) in the case of a Receivable Advance, shall be calculated beginning on the Receivable Origination Date.

(51)   "Person" shall mean any individual, corporation, joint stock company, association, partnership, joint ventures, trust, estate, limited liability company, limited liability partnership, governmental authority or other entity or organization.

(52)   "Receivable" shall mean chattel paper, including a retail installment contract or buy here pay here contract, evidencing a monetary obligation of a buyer for the purchase of a motor vehicle from Borrower and the granting of a security interest in the vehicle to Borrower as security for the repayment of the monetary obligation.

(53)   "Receivable Advance" shall mean an Advance made pursuant to this Note to provide Borrower with working capital secured by a specific Receivable owned and originated by Borrower in the Ordinary Course of Business.

(54)   "Receivable Fee" shall mean the fee charged by Lender to Borrower, set forth on the applicable Advance Schedule, for each individual Receivable Advance for each Period, including any Extension thereof.

(55)   "Receivable Origination Date" shall mean, with respect to any Receivable for which a Receivable Advance is made pursuant to this Note, the date on which such Receivable was originated by Borrower

(56)   "Representative" shall mean, with respect to Borrower or Lender, as the case may be, the directors, officers, stockholders, employees, trustees, agents, and representatives, including any investment banker, consultant, attorney, or accountant, of Borrower or Lender, as the case may be.

(57)   "Required Reserve Amount" shall mean the aggregate total amount of funds required to be remitted by Borrower to Lender, as set forth in the applicable Advance Schedule, and held in the Reserve as a condition to the grant of Credit under this Note and the other Loan Documents.

(58)   "Reserve" shall mean the cash deposited with Lender by Borrower on a voluntary basis or as required as an underwriting condition and held by Lender as additional security for Borrower's Liabilities under this Note and the other Loan Documents, and Borrower's other Obligations (as defined in the Reserve Agreement) to the Lender Parties.

(59)   "Reserve Charge" shall mean that charge by Lender to Borrower, as set forth on the applicable Advance Schedule, assessed for the purpose of funding any Reserve.

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 31

(60)  "Setoff Funds" shall have the meaning set forth in Section 5(l).

(61)  "Specific Source Purchase" shall mean all purchases or other requests for an Advance, made by or on behalf of Borrower, that do not constitute a Universal Source Purchase.

(62)  "Terms and Conditions" shall mean all provisions of this Note and the other Loan Documents, with the exception of terms specifically referenced on the applicable Advance Schedule.

(63)  "Title" shall mean the certificate of title or other document evidencing ownership of a Unit issued by a duly authorized state, commonwealth, province, or government agency.

(64)  "UCC" shall mean the Uniform Commercial Code as enacted in the State where the Collateral at issue is located.

(65)  "Unit" shall mean any manufactured item, including motor vehicles, for which there exists a Title, MSO, or other similar evidence of ownership acceptable to Lender.

(66)  "Universal Program Fee" shall mean any published fee, as stated in the Finance Program Rate, Fee, and Term Schedule, charged by Lender to Borrower pursuant to a Finance Program.

(67)  "Universal Source Purchase" shall mean any purchase made by or on behalf of Borrower for which (a) a request for an Advance is made by or on behalf of Borrower; (b) from an auction or third party business that has entered into a universal funding agreement with Lender; and (c) such request for an Advance is received by Lender within seven (7) days of Borrower's purchase of the vehicle that is the subject of such request.

Page 4 of 4

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 32

**ADVANCE SCHEDULE**

Wholesale

Borrower: Michael Vernon Garrison, d/b/a Rock Hill Used Cars        Market: Plano

Account Number: 92421                          Finance Program: Core

This Advance Schedule is being entered into by the undersigned borrower ("Borrower") and NextGear Capital, Inc. ("Lender") pursuant to that certain Demand Promissory Note and Loan and Security Agreement by and between Borrower and Lender (the "Note"). Capitalized terms used herein but not defined herein shall have the respective meanings as set forth in the Note (such meanings to be equally applicable to both the singular and plural forms of the terms defined).

The Period(s) and the required principal reduction for Curtailment for each Advance made pursuant to the Note and this Advance Schedule shall be as follows:

| Period | Number of Days in Period | Required Principal Reduction to Extend Maturity Date | Floorplan Fee |
|--------|--------------------------|------------------------------------------------------|---------------|
| 1      | 45                       | 7.50%                                                | $85.00        |
| 2      | 45                       | N/A – No Further Curtailments Available              | $85.00        |

Contract Rate: 4.50%

Additional fees, charges, and other terms applicable to Advances made pursuant to the Note and this Advance Schedule are set forth on the Finance Program Rate, Fee, and Term Schedule, which can be found on the Discover Portal.

WHEREFORE, the Parties, by their respective duly authorized representatives, have executed this Advance Schedule on the dates set forth below.

**BORROWER:**                                  **LENDER:**

Michael Vernon Garrison, d/b/a Rock Hill Used Cars    NEXTGEAR CAPITAL, INC.

By: _____                   By: _____

Michael  Vernon Garrison, Owner                Name (Print): _____

Date: 5 - 6 - 15                               Date: 5 - 6 - 15

Page 1 of 1

NextGear Advance Schedule (v. 1.0)

TRIAL MODE − a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 33

**POWER OF ATTORNEY**
(Sole Proprietor)

This Power of Attorney is executed by the undersigned borrower ("Borrower") and delivered to NextGear Capital, Inc. ("Lender") pursuant to that certain Demand Promissory Note and Loan and Security Agreement by and between Borrower and Lender (the "Note"). Capitalized terms used herein but not defined herein shall have the respective meanings as set forth in the Note (such meanings to be equally applicable to both the singular and plural forms of the terms defined). Any capitalized terms used herein, but not otherwise defined herein or in the Note, as the case may be, shall have the meanings ascribed to them in the UCC.

1.  No Person to whom this Power of Attorney is presented, as authority for Lender to take any action described below, shall be required to inquire into or seek confirmation from Borrower as to the authority of Lender to take any action described below, or as to the existence of or fulfillment of any condition to this Power of Attorney, which is intended to grant to Lender unconditionally the authority to take and perform the actions described below. Borrower irrevocably waives any right that it may have, now or at any time in the future, to commence any claim, litigation, suit, petition, writ, or proceeding in any court of competent jurisdiction or before any arbitrator or other neutral, against any Person acting in reliance upon or otherwise acknowledging any power or authority granted by Borrower under this Power of Attorney. The Power of Attorney granted hereby is coupled with an interest and may not be revoked or canceled by Borrower without Lender's written consent or as otherwise allowed by Law. This Power of Attorney shall be deemed a "Loan Document" for all intents and purposes as referenced in the Note.

2.  With or without the occurrence of an Event of Default under the Note, Borrower irrevocably appoints Lender (and all Representatives designated by Lender), with full power of substitution, as Borrower's true and lawful attorney-in-fact with full power and authority in the place and stead of Borrower and in the name of Borrower or in its own name, from time to time in Lender's discretion, to take any and all appropriate actions and to execute and deliver any and all documents and instruments which may be necessary or desirable to accomplish the purposes of the Note and each of the other Loan Documents. Without limiting the generality of the foregoing, Borrower hereby grants to Lender the power and right, on behalf of Borrower, without further notice to or assent by Borrower, at any time, to do the following:

    (a)  execute such security agreements, invoices, notes, and related documentation as may be necessary for Borrower to acquire, refinance, or sell any Collateral (including any Units secured or to be secured by Advances made thereon);

    (b)  execute all documents necessary for Lender to perfect or secure its interest in the Collateral;

    (c)  make, settle, and adjust claims under policies of insurance, and endorse any check, draft, instrument, or other item of payment for the proceeds of such policies of insurance, and make all determinations and decisions with respect to such policies of insurance;

    (d)  endorse the name of Borrower upon any document, instrument, certificate, evidence of title, state registration documents, trust receipt, checks or other items of payment, or any related or similar documents, in each case as necessary to pay for or protect the Collateral, including, without limitation, any agreements between Borrower and any global positioning satellite company;

    (e)  endorse the name of Borrower upon any items of payment or proceeds of any Collateral (including any Units constituting Collateral), and to deposit the same to the account of Lender on account of Borrower's Liabilities under the Note and the other Loan Documents;

    (f)  endorse the name of Borrower upon any chattel paper, document, instrument, invoice, freight bill, bill of lading, or similar document or agreement relating to any Collateral;

    (g)  use the information recorded on or contained in any data processing equipment, computer hardware, or software relating to any Collateral to which Borrower has access;

    (h)  pay or discharge any taxes, liens, security interests, or other encumbrances levied or placed on or threatened against Borrower, or any of the Collateral;

    (i)  communicate with any party to any contract with regard to the assignment of the right, title, and interest of Borrower in and under such contract and/or the Collateral, and other matters relating thereto;

    (j)  contact any third parties and disclose and/or receive any Borrower information, including, without limitation, information or data in Borrower's application for credit with Lender, the Note, or Borrower's Credit Line, in each case for the purpose of, among other things, preserving Lender's security interest in the Collateral and ensuring the satisfaction of Borrower's Liabilities under the Note and the other Loan Documents; and

    (k)  do all other things reasonably necessary to satisfy Borrower's Liabilities under the Note and the other Loan Documents.

3.  Upon the occurrence of an Event of Default under the Note, Borrower irrevocably appoints Lender (and all Representatives designated by Lender), with full power of substitution, as Borrower's true and lawful attorney-in-fact with full power and authority in the place and stead of Borrower and in the name of Borrower or in its own name, from time to time in Lender's discretion, to do the following:

    (a)  demand, collect, accept receipt for, settle, compromise, adjust, foreclose, or realize upon any of the Collateral, in each case in such manner as Lender may determine;

Page 1 of 2

NextGear Power of Attorney (Sole Proprietor) (v. 130)

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 34

(b) file or prosecute any claim, litigation, suit, petition, writ, or proceeding in any court of competent jurisdiction or before any arbitrator or other neutral, or take any other action otherwise deemed appropriate by Lender for the purpose of collecting any and all such moneys due to Borrower, whenever payable, and to enforce any other right in respect of the Collateral, including, without limitation, confessing to or consenting to judgments, writs of replevin or possession, and/or any equitable relief in favor of Lender or its Affiliates;

(c) file or prosecute all proofs of claim against any account debtor on behalf of Borrower; and

(d) notify the United States Postal Service of a change in address for the delivery of Borrower's mail to an address designated by Lender, and to receive Borrower's mail on behalf of Borrower.

4. Any provision of this Power of Attorney that is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability, without rendering invalid or unenforceable the remaining provisions of this Power of Attorney or affecting the validity or enforceability of any provision of this Power of Attorney in any other jurisdiction. Borrower hereby ratifies, to the extent permitted by Law, all that Lender or its designated Representatives shall lawfully do or cause to be done by virtue hereof. The rights and privileges set forth herein shall be deemed supplemental and in addition to any rights and privileges to which Lender or any other Person may be entitled under the Note or any other Loan Document. A facsimile or photocopied reproduction of any signature on this Power of Attorney shall be deemed an original signature for all intents and purposes.

WHEREFORE, Borrower has executed this Power of Attorney on the date set forth below.



**BORROWER:**

Michael Vernon Garrison, d/b/a Rock Hill Used Cars

By: _____

Michael Vernon Garrison, Owner

Date:  5 - 6 - 15

STATE OF:  TEXAS      )
                      )  SS:
COUNTY OF:  HoPKinS   )

Before me, a Notary Public in and for said County and State, personally appeared  Michael Garrison  who acknowledged the execution of the foregoing Power of Attorney, and who, having been duly sworn, states that any representations contained therein are true.

Witness my hand and Notarial Seal this  6th  day of  MAY , 20 15

Notary Signature  Linda Brown

Notary Name (Printed)  LinDA  BrowN .

My Commission Expires: Jul; 27, 2016  County of Residence.  HoPKiNS

LINDA SUE BROWN
MY COMMISSION EXPIRES
July 27, 2016

Account #92421                                    NextGear Power of Attorney (Sole Proprietor) (v. 1.0)

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 35

**INDIVIDUAL GUARANTY**

THIS INDIVIDUAL GUARANTY (this "Guaranty") is made and entered into by the undersigned guarantor ("Guarantor") in favor of NextGear Capital, Inc. ("Lender"), pursuant to that certain Demand Promissory Note and Loan and Security Agreement by and between Borrower (as defined below) and Lender (the "Note").

NOW, THEREFORE, in consideration of any loan or other financial accommodation heretofore or hereafter at any time made or granted to Borrower by Lender, and the mutual covenants, agreements, and conditions contained herein, Guarantor agrees as follows:

1.  DEFINITIONS.  Capitalized terms used herein and not defined in this Section 1 or elsewhere in this Guaranty shall have the respective meanings as set forth in the Note (such meanings to be equally applicable to both the singular and plural forms of the terms defined).  Any capitalized terms used herein, but not otherwise defined herein or in the Note, as the case may be, shall have the meanings ascribed to them in the UCC.

    (a)  "Borrower" shall mean the Person listed below, including any Affiliates of such Person, whether now in existence or hereinafter established or acquired:

        Michael Vernon Garrison, d/b/a Rock Hill Used Cars
        519 Interstate Highway 30 E., Sulphur Springs, TX  754826153
        Telephone: (903) 951-8597 Facsimile:

    (b)  "Liabilities" shall mean any and all Advances, debts, financial obligations, fees, charges, expenses, attorneys' fees, and costs of collection owing, arising, due, or payable from Borrower to Lender or any of its Affiliates, of any kind or nature, present or future, under any instrument, guaranty, or other document, whether arising under the Note or any other Loan Document, whether directly or indirectly, absolute or contingent, primary or secondary, due or to become due, now existing or hereafter arising, and however acquired.

2.  GUARANTY AND OTHER AGREEMENTS.

    (a)  Guaranty Obligations.  Guarantor hereby voluntarily, unconditionally, and absolutely guarantees (i) the full and prompt payment when due, whether by acceleration or otherwise, and at all times hereafter, of all Liabilities; and (ii) the full and prompt performance of all the terms, covenants, conditions, and agreements related to the Liabilities.  Guarantor further agrees to pay all expenses, including attorneys' fees and court costs (including, in each case, those relating to bankruptcy and appeals), paid or incurred by Lender or its Affiliates in endeavoring to collect on any Liabilities, and in enforcing this Guaranty or in defending any claims by Borrower or any Guarantor related to any of the Liabilities, plus interest on such amounts at the lesser of (A) thirteen percent (13%) per annum, compounded daily, or (B) the maximum rate permitted by Law.  Interest on such amounts paid or incurred by Lender shall be computed from the date of payment made by Lender and shall be payable on demand.

    (b)  General Nature of Guaranty.  Guarantor acknowledges that this Guaranty is a guaranty of payment and not of collection, and that his or her obligations hereunder shall be absolute, unconditional, and unaffected by: (i) the waiver of the performance or observance by Borrower or any Guarantor of any agreement, covenant, term, or condition to be performed or observed by Borrower or any such Guarantor, as the case may be, (ii) the extension of time for the payment of any sums owing or payable with respect to any of the Liabilities or the time for performance of any other obligation arising out of or relating to any of the Liabilities, (iii) the modification, alteration, or amendment of any obligation arising out of or relating to any of the Liabilities; (iv) any failure, delay, or omission by Lender to enforce, assert, or exercise any right, power, or remedy in connection with any of the Liabilities; (v) the genuineness, validity, or enforceability of any of the Liabilities or any document related thereto; (vi) the existence, value, or condition of, or failure of Lender to perfect its lien against, any security pledged in connection with the Liabilities; (vii) the release of any security pledged in connection with the Liabilities, or the release, modification, waiver, or failure to enforce any other guaranty, pledge, or security agreement; (viii) the voluntary or involuntary liquidation, dissolution, sale of all or substantially all of the property, marshalling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition, or readjustment or other similar application or proceeding affecting Borrower or any assets of Borrower; (ix) the release or discharge of Borrower or any other Guarantor from the performance or observance of any agreements, covenants, terms, or conditions in connection with any of the Liabilities, by operation of Law or otherwise; (x) the default of Borrower in any obligations to Guarantor or any torts committed by Borrower against Guarantor, even if Lender is alleged to be complicit or to have committed a direct tort against Guarantor; or (xi) any change in Borrower's ownership, entity type, legal structure, or state of organization or formation, or in Guarantor's relationship to Borrower or any other Guarantor.

    (c)  Continuing and Unlimited Nature of Guaranty.  The obligations of Guarantor under this Guaranty shall be continuing and shall cover any and all Liabilities existing as of the effective date of this Guaranty and any and all Liabilities thereafter incurred by Borrower, including any and all Liabilities existing at the time of any termination of this Guaranty.  This Guaranty shall be unlimited in amount and shall continue in effect until this Guaranty is terminated pursuant to Section 3.

    (d)  Waivers by Guarantor.  Guarantor hereby expressly waives: (i) notice of the acceptance by Lender of this Guaranty; (ii) notice of the existence, creation, or non-payment of all or any of the Liabilities; (iii) presentment, demand, notice of dishonor, protest, and all other notices whatsoever; (iv) diligence in collection or protection of, or realization upon any of the Liabilities, any obligation under this Guaranty, or any security for or guaranty of any of the foregoing; (v) impairment of any collateral securing the Liabilities; (vi) notice of any change in Borrower's credit terms or limits with Lender, including any temporary or permanent increases in Borrower's Credit Line (and Guarantor prospectively consents to any such change); (vii) any non-contractual duties of Lender to Borrower or any Guarantor; and (viii) the protections of any Laws intended to protect consumers or regulate consumer loans, as the Liabilities are commercial in nature.

Page 1 of 5

NextGear Individual Guaranty (v. 1.0)

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 36

(e) **Authorization.** Guarantor authorizes Lender to obtain and share credit information relating to Guarantor from and with credit bureaus, financial institutions, trade creditors, affiliates, and others and to conduct such other credit investigations that Lender in its sole discretion deems necessary. Guarantor expressly authorizes Lender to obtain his or her consumer credit report from time to time at Lender's discretion, and expressly ratifies any such consumer credit report that may have been obtained by or on behalf of Lender prior to the effective date of this Guaranty. Guarantor also authorizes Lender to contact any third parties to disclose information for the purpose of, among other things, obtaining intercreditor agreements and perfecting Lender's security interest. Further, Guarantor authorizes Lender to periodically obtain additional credit information on Guarantor through any available medium.

(f) **Communication.** Guarantor hereby expressly authorizes Lender and its Affiliates to communicate with Guarantor via facsimile transmissions, email messages, telephonic transmissions, both to a residential telephone line and/or cell phone, including text messaging, using an automatic telephone dialing system or an artificial or prerecorded voice message, and/or any other forms of communication, for any purpose, including general business matters, account information, marketing materials, collection, and/or any other communication needs. Guarantor acknowledges and agrees that such express permission shall extend to any and all of the contact information that Guarantor has provided herein, including any physical and email addresses, phone numbers, fax numbers, etc., and to such other addresses, phone numbers, email addresses, online chat, social media platforms, etc. that Guarantor may provide to Lender or that Lender may obtain from any third party at a later date.

(g) **Enforcement.** In no event shall Lender have any obligation to proceed against Borrower, any other Guarantor or any other Person, or any security pledged in connection with the Liabilities, before seeking satisfaction from Guarantor. Lender may, at its option, proceed, prior or subsequent to, or simultaneously with, the enforcement of its rights hereunder, to exercise any right or remedy it may have against Borrower, any other Guarantor or other Person, or any security pledged in connection with the Liabilities. This Guaranty is in addition to, and not in substitution for, any other guaranty or other securities which Lender may now or hereafter hold.

(h) **Reinstatement.** Guarantor agrees that, if, at any time, all or any part of any payment theretofore applied by Lender to any of the Liabilities is or must be rescinded or returned to Lender for any reason whatsoever (including as a result of any insolvency, bankruptcy, or reorganization of Borrower or any of his or her Affiliates), such Liabilities shall, for purposes of this Guaranty, to the extent that such payment is or must be rescinded or returned, be deemed to have continued in existence, notwithstanding such application by Lender, and this Guaranty shall continue to be effective or reinstated, as applicable, as to all such Liabilities, all as though such application by Lender had not been made.

(i) **Financial Statements.** Upon Lender's request, Guarantor will provide Lender with Guarantor's audited financial statements, as certified by Guarantor's independent certified public accountant, and such other financial statements, information, and other materials as Lender may request from time to time.

(j) **Application of Payments; Subrogation.** Any amounts received by Lender from any source on account of the Liabilities may be applied by it toward the payment of such of the Liabilities, and in such order of application, as Lender may from time to time elect. Notwithstanding any payments made by or for the account of Guarantor, Guarantor shall not be subrogated to any rights of Lender.

3. **TERMINATION.**

(a) **Payment of Liabilities and Termination of Credit Line.** This Guaranty shall be terminated upon the occurrence of all of the following: (i) the payment by Borrower or any Guarantor, either jointly or severally, of all Liabilities outstanding; (ii) the payment of all obligations by Guarantor which may be due to Lender under this Guaranty; and (iii) the filing of a UCC termination statement as to Borrower by or on behalf of Lender, or other written verification from Lender that Borrower's Credit Line is terminated.

(b) **Revocation of Guaranty.** This Guaranty may be revoked by Guarantor upon written notice to Lender by certified mail, return receipt requested, to the address provided in Section 5(d). This Guaranty shall be deemed terminated upon the occurrence of a revocation in the manner provided in this Section 3(b). However, such revocation and termination shall in no way terminate or otherwise affect: (i) any obligations of Guarantor existing on or prior to the effective date of such revocation or termination; or (ii) any obligations of Guarantor arising after the effective date of such revocation or termination with respect to any Liabilities incurred by Borrower on or before the effective date of such revocation or termination.

4. **EVENTS OF DEFAULT.** The occurrence of any of the following events shall be considered an event of default under this Guaranty (each, an "Event of Default"):

(a) Guarantor fails to make full payment of any amount owed hereunder after notice from Lender;

(b) Guarantor fails to perform or observe any agreement, covenant, term, or condition contained in this Guaranty (other than any monetary obligation described in clause (a) above), and such failure continues for ten (10) days after notice from Lender;

(c) Guarantor makes an assignment for the benefit of creditors or fails to pay his or her debts as the same become due and payable;

(d) Guarantor petitions or applies to any tribunal for the appointment of a trustee or receiver of the business, estate, or assets or of any substantial portion of his or her business, estate, or assets, or commences any proceedings relating to Guarantor under any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution, or liquidation Law of any jurisdiction, whether now or hereafter in effect (each, a "Bankruptcy Filing");

Page 2 of 5

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 37

(e) any Bankruptcy Filing is filed or any related proceedings commenced against Guarantor, and Guarantor by any act indicates his or her approval thereof, consent thereto, or acquiescence therein, or any order is entered appointing any trustee or receiver, declaring Guarantor bankrupt or insolvent, or approving or accepting the Bankruptcy Filing in any such proceedings;

(f) any suit or proceeding is filed or any related proceedings commenced against Guarantor or any of his or her Affiliates, which, if adversely determined, could substantially impair the ability of Guarantor or Borrower to perform any of their respective obligations with respect to this Guaranty or any of the Liabilities, in each case as determined by Lender in its sole and absolute discretion; or

(g) there is any Event of Default by Guarantor under the Note.

If an Event of Default under this Guaranty shall have occurred, in addition to pursuing any remedies which may be available to Lender with respect to the Liabilities, Lender, at its option, may take whatever action at law or in equity Lender may deem necessary, regardless of whether Lender shall have exercised any of its rights or remedies with respect to any of the Liabilities, and Lender may demand, at its option, that Guarantor pay forthwith the full amount which would be due and payable hereunder as if all Liabilities were then due and payable.

5.  GENERAL.

(a) Assignment; Successors and Assigns. This Guaranty may be assigned by Lender without notice to Guarantor, but Guarantor may not assign this Guaranty without the prior written consent of Lender. The guaranty and the other agreements contained herein shall bind the legal representatives, heirs, successors, and assigns of Guarantor, and shall inure to the benefit of Lender and its successors and assigns. Each reference to Guarantor herein shall be deemed to include the legal representatives, heirs, and agents of Guarantor, and their respective successors and assigns.

(b) Amendment; Merger. This Guaranty is intended by the Parties to be an amendment to and restatement of any prior Individual Guaranty or other similar document or instrument between Lender (or any predecessor of Lender, including Dealer Services Corporation and/or Manheim Automotive Financial Services, Inc.) and Guarantor, or otherwise executed by Guarantor for the benefit Lender (or any predecessor of Lender, including Dealer Services Corporation and/or Manheim Automotive Financial Services, Inc.). This Guaranty may be modified or amended only upon the written consent of Lender and Guarantor. The Parties acknowledge that Guarantor may have also acknowledged and consented to the terms and conditions set forth in the Note, and, in such event, this Guaranty shall be deemed supplemental and in addition to the terms and conditions of the Note to which Guarantor has acknowledged and consented. In the event of any conflict between a term or provision set forth in this Guaranty, and a term or provision set forth in the Note, the term or provision set forth in this Guaranty shall, as between Lender and Guarantor, be deemed controlling.

(c) Execution. Guarantor may execute this Guaranty only by original signature of Guarantor, unless otherwise authorized by Lender. Lender may, in its sole discretion, permit Guarantor to execute this Guaranty by affixing to this Guaranty an electronic or digital signature. Guarantor acknowledges and agrees that any electronic or digital signature of Guarantor shall for all purposes be deemed effective and constitute the valid signature of Guarantor, and shall be deemed to satisfy all requirements imposed on electronic or digital signatures under the UCC, the Electronic Signatures in Global and National Commerce Act (the "E-Sign Act"), and any other similar Laws relating to the validity or enforceability of electronic or digital signatures, and such electronic or digital signature shall not be denied legal effect, validity, or enforceability solely because it is in electronic or digital form. A facsimile or photocopied reproduction of the signatures on this Guaranty shall be deemed original signatures for all intents and purposes.

(d) Notices. All notices, demands and requests required or permitted to be given under this Guaranty shall be (i) in writing, (ii) sent by facsimile with receipt confirmed by telephone (but only if a facsimile number is provided below), delivered by personal delivery or sent by commercial delivery service or certified mail, return receipt requested (except with respect to notices pursuant to Section 3(b), which notices may only be given by certified mail, return receipt requested), (iii) deemed to have been given on the date sent by facsimile with receipt confirmed by telephone, the date of personal delivery or the date set forth in the records of the delivery service or on the return receipt, and (iv) addressed as follows (or, in the case of Lender, to any other subsequent address that Lender may provide to Guarantor (through written notice or otherwise) for purposes of directing future notices, demands or requests):

If to Lender:     NextGear Capital, Inc., 1320 City Center Drive, Suite 100, Carmel, IN 46032
                  Telephone: (317) 571-3721 Facsimile: (317) 571-3737

                  with a copy to:

                  NextGear Capital, Inc., 1320 City Center Drive, Suite 100, Carmel, IN 46032
                  Telephone: (317) 571-3721 Facsimile: (317) 571-3737
                  Attention: Legal Department

If to Guarantor:  Michael Vernon Garrison
                  549 Interstate Highway 30 ESulphur Springs, TX 754826153
                  Telephone: (903) 951-8597 Mobile: (903) 951-8597

(e) No Waiver. No failure or delay by Lender in exercising any right, power, or privilege or the granting of an exception by Lender with respect

Page 3 of 5

Account #92421                           NextGear Individual Guaranty (v. 1.0)

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 38

to any term or condition of this Guaranty will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege, or the exercise of any other right, power, or privilege by Lender.

(f) <u>Severability</u>. Any provision of this Guaranty that is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability, without rendering invalid or unenforceable the remaining provisions of this Guaranty or affecting the validity or enforceability of any provision of this Guaranty in any other jurisdiction.

(g) <u>Governing Law</u>. Except with respect to the interpretation or enforcement of the arbitration and other provisions set forth in Section 5(i) (which shall be governed by the Federal Arbitration Act), the validity, enforceability, and interpretation of this Guaranty shall be governed by the internal Laws of the State of Indiana, without regard to conflicts of Laws provisions thereof.

(h) <u>Jurisdiction and Venue</u>. As evidenced by Guarantor's signature below, Guarantor submits to the personal jurisdiction and venue of the state and federal courts of Marion County and Hamilton County, Indiana, and agrees that any and all claims or disputes pertaining to this Guaranty, or to any matter arising out of or related to this Guaranty, initiated by Guarantor against Lender, shall be brought in the state or federal courts of Marion County or Hamilton County, Indiana. Further, Guarantor expressly consents to the jurisdiction and venue of the state and federal courts of Marion County and Hamilton County, Indiana, as to any legal or equitable action that may be brought in such court by Lender, and waives any objection based upon lack of personal jurisdiction, improper venue or forum non conveniens with respect to any such action. Guarantor acknowledges and agrees that Lender reserves the right to initiate and prosecute any action against Guarantor in any court of competent jurisdiction, and Guarantor consents to such forum as Lender may elect.

(i) <u>Dispute Resolution; Waiver of Class Action Rights</u>.

    (i) In the unlikely event that Lender is unable to resolve a dispute or claim that Guarantor may have, Guarantor agrees to arbitrate any such dispute or claim. This agreement to arbitrate is intended to be broadly interpreted, and includes (i) all disputes, claims and counterclaims arising out of or relating to this Guaranty or any aspect of Guarantor's relationship with Lender, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory, (ii) all disputes, claims and counterclaims that may have arisen before this Guaranty or any prior contract or agreement between Guarantor and Lender; and (iii) any disputes, claims and counterclaims that may arise after the termination of this Guaranty. Additionally, Guarantor acknowledges that Lender may (but shall in no event be required to) arbitrate any dispute or claim that it may have against Guarantor, with any such arbitration being governed by the provisions of this Section 5(i). Guarantor, at his or her election, may opt-out of the arbitration provisions set forth in Sections 5(i)(i), 5(i)(iii) and 5(i)(iv) by providing written notice of his or her election to opt-out no later than thirty (30) days after Guarantor's execution of this Guaranty, which notice shall be provided to Lender pursuant to Section 5(d) ("<u>Opt-Out Notice</u>"), provided that such Opt-Out Notice shall become effective only upon Guarantor's receipt of written confirmation from Lender that such Opt-Out Notice has been received by Lender within the required time period. Guarantor acknowledges and agrees that, irrespective of any Opt-Out Notice or any written confirmation thereof, Guarantor shall in all events be subject to the provisions of Section 5(i)(ii).

    (ii) ANY ARBITRATION PROCEEDING UNDER THIS GUARANTY WILL TAKE PLACE ON AN INDIVIDUAL BASIS. CLASS ARBITRATIONS AND CLASS ACTIONS OF ANY KIND (WHETHER PURSUED THROUGH ARBITRATION OR THROUGH THE COURTS) ARE NOT PERMITTED. GUARANTOR AGREES THAT IT MAY BRING CLAIMS AGAINST LENDER ONLY IN HIS OR HER INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. GUARANTOR AGREES THAT, BY ENTERING INTO THIS GUARANTY, GUARANTOR IS WAIVING HIS OR HER RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR OTHER SIMILAR REPRESENTATIVE PROCEEDING. UNLESS CONSENTED TO IN WRITING BY LENDER, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. GUARANTOR ACKNOWLEDGES AND AGREES THAT THE SIZE OF BORROWER'S CREDIT LINE, THE INTEREST RATE TO WHICH ADVANCES ARE SUBJECT AND CERTAIN FEES CHARGED TO BORROWER, AS WELL AS THE SIZE AND DATES OF SPECIFIC ADVANCES AND WHAT (IF ANY) GUARANTIES ARE REQUIRED, ARE UNIQUE TO AND NEGOTIATED BY BORROWER (AND, IF APPLICABLE, GUARANTOR), AND THAT SUCH FACTORS WILL AND DO VARY AMONG BORROWERS AND OTHER GUARANTORS.

    (iii) Any dispute or claim subject to arbitration pursuant to this Section 5(i) shall be submitted to binding arbitration administered by the Judicial Arbitration and Mediation Service ("<u>JAMS</u>") pursuant to its Comprehensive Arbitration Rules and Procedures as then in effect (the "<u>JAMS Comprehensive Rules</u>"); provided, <u>however</u>, that any dispute or claim that is subject to arbitration pursuant to this Section 5(i) and that involves disputes or claims where the aggregate amount reasonably in dispute or controversy is less than $100,000, shall be submitted to binding arbitration administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures as in effect as of the effective date of this Guaranty (the "<u>JAMS Streamlined Rules</u>"). The disputes and claims subject to arbitration pursuant to this Section 5(i) will be resolved by a single arbitrator selected pursuant to the JAMS Comprehensive Rules or the JAMS Streamlined Rules, as the case may be. The arbitrator shall be bound by and shall strictly enforce the terms of this Guaranty and may not limit, expand or otherwise modify any term or provision of this Guaranty or any other contract or document between Guarantor and Lender. The arbitrator shall not have the power to award to Guarantor any damages that are excluded or that have been waived by Guarantor under this Guaranty, and Guarantor irrevocably waives any claim that it may have thereto. The arbitrator shall not have the power to order pre-hearing discovery of documents or the taking of depositions. The arbitrator shall render a written decision within six (6) months after being selected. Any arbitration will be held in Indianapolis, Indiana (or its greater metro area). Each Party will bear its own expenses in the arbitration and will share equally the costs of the arbitration; provided, <u>however</u>, that the arbitrator may, in his or

<div align="center">Page 4 of 5</div>

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

her discretion, award costs and fees to the prevailing Party.  The result of any arbitration shall be final and binding upon the Parties.  Judgment upon any arbitration award may be entered in any court having jurisdiction over the award or over the applicable party or its assets.

(iv)  This Guaranty evidences transactions in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this Section 5(i), notwithstanding the provisions of Section 5(g).

(j)  WAIVER OF JURY TRIAL.  AFTER CONSULTING OR HAVING HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, LENDER AND GUARANTOR KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE ANY RIGHT EITHER PARTY MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION BASED UPON OR ARISING OUT OF THIS GUARANTY, OR ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS GUARANTY, OR ANY COURSE OF CONDUCT, STATEMENT, WHETHER ORAL OR WRITTEN, OR ACTIONS OF LENDER OR GUARANTOR.  NEITHER LENDER NOR GUARANTOR SHALL SEEK TO CONSOLIDATE, BY COUNTERCLAIM OR OTHERWISE, ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED.  THESE PROVISIONS SHALL NOT HAVE BEEN DEEMED TO HAVE BEEN MODIFIED IN ANY RESPECT OR RELINQUISHED BY LENDER OR GUARANTOR EXCEPT BY WRITTEN INSTRUMENT EXECUTED BY BOTH LENDER AND GUARANTOR.

(k)  LIMITATION OF LIABILITY.  IN NO EVENT SHALL ANY LENDER PARTY BE LIABLE FOR ANY SPECIAL, INDIRECT, EXEMPLARY, PUNITIVE, INCIDENTAL, MULTIPLE OR CONSEQUENTIAL DAMAGES (INCLUDING ANY DAMAGES RESULTING FROM LOSS OF USE, LOSS OF PROFITS, LOSS OF BUSINESS OR OTHER ECONOMIC LOSS) ARISING OUT OF OR IN CONNECTION WITH THIS GUARANTY, EVEN IF SUCH LENDER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  FURTHER, IN NO EVENT SHALL THE LENDER PARTIES, COLLECTIVELY, BE LIABLE FOR ANY DAMAGES UNDER THIS GUARANTY OR ANY OTHER LOAN DOCUMENT THAT EXCEED, IN THE AGGREGATE, AN AMOUNT EQUAL TO THE SUM OF THE INTEREST AND FLOORPLAN FEES ACTUALLY PAID TO LENDER BY BORROWER UNDER THE NOTE DURING THE TWELVE (12) MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO THE CLAIM AT ISSUE (OR, IN THE CASE OF MULTIPLE EVENTS, THE FIRST SUCH EVENT GIVING RISE TO THE CLAIM AT ISSUE).

(l)  Descriptive Headings; Interpretation.  The descriptive headings herein are for convenience of reference only and shall not control or affect the meaning or construction of any provision of this Guaranty.  As used in this Guaranty, the terms "include," "includes," and "including" are deemed to be followed by "without limitation" whether or not they are in fact followed by such words or words of like import.

WHEREFORE, Guarantor has executed this Guaranty on the date set forth below.

GUARANTOR:

By: _____
Michael Vernon Garrison

Date: 5-6-15

STATE OF: TEXAS                    )
                                   )
COUNTY OF: HoPKins )         SS:

Before me, a Notary Public in and for said County and State, personally appeared _Michael Garrison_ who acknowledged the execution of the foregoing Individual Guaranty, and who, having been duly sworn, states that any representations contained therein are true.

Witness my hand and Notarial Seal this 6th day of MAy, 2015.

Notary Signature _Linda Brown_

Notary Name (Printed) _Linda Brown_

My Commission Expires: July 27, 2016    County of Residence: HoPKins

LINDA SUE BROWN
MY COMMISSION EXPIRES
July 27, 2016

Account #92421                                        NextGear Individual Guaranty (v. 1.0)

TRIAL MODE - a valid license will remove this message. See the keywords property of this PDF for more information.

Appendix 40

UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS



**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CT Lien Solutions

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
**CT Lien Solutions
2727 Allen Parkway
Ste. 100
Houston, TX 77019
USA

**FILING NUMBER:** 15-0014536196
**FILING DATE:** 05/11/2015   09:24 AM
**DOCUMENT NUMBER:** 605936970001
**FILED: Texas Secretary of State**
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME - Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Garrison | Michael | Vernon | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 519 Interstate Highway 30 E | Sulphur Springs | TX | 75482 | USA |

2. DEBTOR'S NAME - Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Rock Hill Used Cars | | | |
| OR | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 519 Interstate Highway 30 E | Sulphur Springs | TX | 75482 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) - Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| NEXTGEAR CAPITAL, INC. | | | |
| OR | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1320 CITY CENTER DR., STE 100 | CARMEL | IN | 46032 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All Debtors assets and properties wherever located, including without limitation
all equipment of any kind or nature, all vehicles, vehicle parts and inventory
now owned or hereafter acquired, without limitation, purchase money inventory,
the purchase of which was financed or floorplanned by NextGear Capital, Inc. for
Debtor of whatever kind or nature, and all returns, repossessions, exchanges,
substitutions, attachments, additions, accessions, accessories, replacements,
and proceeds thereof; all accounts, accounts receivable, chattel paper, and
general intangibles now owned or hereafter acquired by Debtor together with the
proceeds thereof; all of Debtors documents, books and records relating to the
forgoing.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box.
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY

**UCC FINANCING STATEMENT AMENDMENT**

**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Lien Solutions

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
**CT Lien Solutions
2929 Allen Parkway, Ste. 100
Houston, TX 77019
USA

**FILING NUMBER:** 19-00481575
**FILING DATE:** 12/24/2019      11:00 AM
**DOCUMENT NUMBER:** 933800130001
**FILED: Texas Secretary of State**
**IMAGE GENERATED ELECTRONICALLY FOR XML FILING**
**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1a. INITIAL FINANCING STATEMENT FILE NUMBER
**15-0014536196**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of the Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and also name of Assignor in item 9.
For partial assignment, complete item 7 and 9 and also indicate affected collateral in item 8

4. ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**
Check one of these two boxes. This Change affects ☐ Debtor or ☐ Secured Party of record. AND Check one of these three boxes to:

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| | | | |
|---|---|---|---|
| OR | 6a. ORGANIZATION'S NAME | | |
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | | | | |
|---|---|---|---|---|
| OR | 7a. ORGANIZATION'S NAME | | | |
| | 7b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | | | | |
|---|---|---|---|---|
| OR | 9a. ORGANIZATION'S NAME **NEXTGEAR CAPITAL, INC.** | | | |
| | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY**





**Receivable Detail**

**Requested by** : MAN\GENE.WHEELER **Requested on** : 2020-05-01 01:28:05 PM

**Regions** : None Selected  **Markets** : None Selected
**Delinquency Flag** : All  **Dealer Type** : None Selected
**Business** : 92421  **Dealer Finance Program** : None Selected
**Exclude Default Dealers** : No  **Exclude Account Level Charges**: No
**Include Comments** : No  **Summary Type** : None

| Customer Profile | |
|---|---|
| **Name:** | Rock Hill Used Cars |
| **Dealer #:** | 92421 |
| **Address Line 1:** | 519 Interstate Highway 30 E |
| **Address Line 2:** | |
| **City, State, ZIP:** | Sulphur Springs, TX 754826153 |
| **Phone:** | (903) 951-8597 |
| **Fax:** | (n/a) - |

| Market Info & Account Profile | |
|---|---|
| **Market:** | Plano |
| **Market Phone:** | (214) 282-5039 |
| **Finance Program:** | Core |
| **Dealer Status:** | DL |
| **Lot Audit:** | Incomplete |
| **Unapplied Funds:** | $.00 |
| **Reserved Funds:** | $.00 |

| Fee Type | Description | Amount Due | Date Incurred |
|---|---|---|---|
| NSF | | $25.00 | 2020/04/02 |
| **Total Account Charges for Rock Hill Used Cars (92421)** | | **$25.00** | |

| LOC Type | Approved Credit | Temp. Credit | Temp. Expiration | Total Credit | Outstanding Principal | Pending | Credit Available | Term Plan |
|---|---|---|---|---|---|---|---|---|
| Wholesale | $800,000.00 | $.00 | | $800,000.00 | $818,653.39 | $0.00 | $.00 | D60/30/30 -- F75/40/40 -- R4.0 -- C%10/5 |
| Heavy Trucks | $100,000.00 | $.00 | | $100,000.00 | $329,402.50 | $0.00 | $.00 | D60/60/30 -- F150/0/75 -- R0.25 -- C%10/10 |
| **Total Lines of Credit for Rock Hill Used Cars (92421)** | | | | | | | | |
| | **$900,000.00** | **$.00** | | **$900,000.00** | **$1,148,055.89** | **$.00** | **$.00** | |

Appendix 43

**Receivable Detail**

Requested by : MAN\GENE.WHEELER **Requested on :** 2020-05-01 01:28:05 PM

## Heavy Trucks Inventory for Rock Hill Used Cars (92421)

| Floor Date | Days | Last Paid | VS | Vehicle Description | Col or | VIN | Stk # | TS | Due | Disb | Source | Original Amount | Principal Balance | One Day Balance | Fee | Interest | Collateral Protection | Other | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/27/19 | 156 | 01/27/20 | RHD | 1995 GDAN 1GR | Whi | 1GRAA9 22XSB0 29801 | 317 | FR | 04/27/20 | S | LAWTON CACHE AUTO AUCTION | $16,280.00 | $14,652.00 | $.00 | $75.00 | $266.32 | $270.65 | $85.00 | $15,348.97 |
| 12/02/19 | 150 | 01/31/20 | RHD | 2001 HDAB 53' | Bla | 1H9CE5 3311A26 3507 | 314 | FR | 04/30/20 | S | LAWTON CACHE AUTO AUCTION | $27,480.00 | $24,732.00 | $.00 | $75.00 | $430.35 | $437.62 | $170.00 | $25,844.97 |
| 12/11/19 | 142 | 02/10/20 | RHD | 2014 Ford F350 | Whi | 1FT8W3 DT0EEB 34184 | 319 | ST | 05/11/20 | S | Lone Star Auto Auction | $30,450.00 | $27,405.00 | $.00 | $75.00 | $421.07 | $431.63 | $135.00 | $28,467.70 |
| 12/30/19 | 123 | 02/28/20 | RHD | 2007 VOLV VN | Whi | 4V4NC9 GH87N4 69707 | 325 | FR | 05/28/20 | S | LAWTON CACHE AUTO AUCTION | $28,990.00 | $26,091.00 | $.00 | $75.00 | $307.27 | $319.61 | $.00 | $26,792.88 |
| 01/08/20 | 114 | 03/09/20 | RHD | 2004 GMC C750 | Whi | 1GDM7 C1384F 512353 | 330 | FR | 05/08/20 | S | Lubbock Auto Auction | $34,325.00 | $30,892.50 | $.00 | $.00 | $303.09 | $318.36 | $.00 | $31,513.95 |
| 01/22/20 | 100 | | RHD | 2007 inte 7000 | Bla | 1HTWB AAR67J 461931 | 340 | ST | 05/22/20 | S | LAWTON CACHE AUTO AUCTION | $35,070.00 | $35,070.00 | $.00 | $150.00 | $673.91 | $613.73 | $238.00 | $36,745.64 |
| 01/24/20 | 98 | | RHD | 1992 GMC DUMP | Whi | 1GDG6 H1J6NJ 501295 | 337 | ST | 05/26/20 | S | Route 66 Auto Auction of El Reno, LLC | $19,100.00 | $19,100.00 | $.00 | $150.00 | $360.04 | $327.57 | $68.00 | $20,005.61 |
| 01/24/20 | 98 | | RHD | 2000 INTE DUMP | Whi | 1HTSDA AN2YH3 14391 | 336 | ST | 05/26/20 | S | Route 66 Auto Auction of El Reno, LLC | $26,100.00 | $26,100.00 | $.00 | $150.00 | $490.83 | $447.62 | $68.00 | $27,256.45 |
| 01/29/20 | 93 | | RHD | 2001 ORBI TRAI | Unk | 109US4 0212P12 8652 | 342 | FR | 05/29/20 | S | Lone Star Auto Auction | $15,125.00 | $15,125.00 | $.00 | $150.00 | $271.41 | $246.16 | $103.00 | $15,895.57 |
| 02/12/20 | 79 | | RHD | 2016 Ram 3500 | Whi | 3C7WR TCL9GG 178005 | 350 | ST | 06/12/20 | S | LAWTON CACHE AUTO AUCTION | $26,470.00 | $26,470.00 | $.00 | $150.00 | $397.66 | $365.95 | $68.00 | $27,451.61 |
| 02/19/20 | 72 | | RHD | 2005 FORD F750 | Whi | 3FRXF7 5S95V1 56426 | 351 | ST | 06/19/20 | S | LAWTON CACHE AUTO AUCTION | $29,990.00 | $29,990.00 | $.00 | $150.00 | $408.61 | $377.87 | $68.00 | $30,994.48 |
| 03/06/20 | 56 | | RHD | 1989 FORD WEST | Whi | 1FDXK8 4A3KVA 37099 | 358 | ST | 05/05/20 | S | Route 66 Auto Auction of El Reno, LLC | $25,100.00 | $25,100.00 | $.00 | $150.00 | $262.82 | $245.98 | $68.00 | $25,826.80 |
| 03/18/20 | 44 | | CUV | 2008 FORD F-55 | Unk | 1FDAX5 7R18ED 86326 | 361 | FR | 05/18/20 | S | Lone Star Auto Auction | $28,675.00 | $28,675.00 | $.00 | $150.00 | $232.06 | $220.80 | $18.00 | $29,295.86 |

**Total Heavy Trucks**
**Unit Count: 13**

| | | | | | | | | | | | | $343,155.00 | $329,402.50 | $.00 | $1,500.00 | $4,825.44 | $4,623.55 | $1,089.00 | $341,440.49 |

Appendix 44

**Receivable Detail**

Requested by : MAN\GENE,WHEELER **Requested on :** 2020-05-01 01:28:05 PM

## Wholesale Inventory for Rock Hill Used Cars (92421)

| Floor Date | Days | Last Paid | VS | Vehicle Description | Col or | VIN | Stk # | TS | Due | Disb | Source | Original Amount | Principal Balance | One Day Balance | Fee | Interest | Collateral Protection | Other | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/15/19 | 260 | 02/13/20 | RHD | 2004 Chev Aval | Blu | 3gnec12 t04g171 303 | 264 | ST | 03/30/20 | S | LAWTON CACHE AUTO AUCTION | $11,230.00 | $8,221.42 | $.00 | $85.00 | $200.34 | $153.29 | $50.00 | $8,710.05 |
| 10/09/19 | 205 | 02/24/20 | RHD | 2013 Lexu ES 3 | Whi | jthbk1gg 6d20202 56 | 274 | ST | 05/26/20 | S | LAWTON CACHE AUTO AUCTION | $15,280.00 | $12,093.40 | $.00 | $170.00 | $253.40 | $179.16 | $225.00 | $12,920.96 |
| 10/16/19 | 198 | 03/16/20 | RHD | 2004 GMC C5C | Whi | 1GDJ5C 1114F50 0844 | 285 | FR | 05/15/20 | S | LAWTON CACHE AUTO AUCTION | $34,470.00 | $26,598.35 | $.00 | $80.00 | $355.76 | $277.49 | $175.00 | $27,486.60 |
| 10/16/19 | 198 | 03/16/20 | RHD | 1999 Dodg Ram | Whi | 1B7KF2 368XJ51 2080 | 284 | ST | 05/15/20 | S | LAWTON CACHE AUTO AUCTION | $9,702.00 | $7,486.43 | $.00 | $80.00 | $102.01 | $78.10 | $225.00 | $7,971.54 |
| 10/16/19 | 198 | 03/16/20 | RHD | 2009 Ford F250 | Whi | 1FTSX2 0R19EA 01706 | 286 | ST | 05/15/20 | S | LAWTON CACHE AUTO AUCTION | $16,280.00 | $12,562.26 | $.00 | $80.00 | $169.41 | $131.05 | $225.00 | $13,167.72 |
| 10/16/19 | 198 | 03/16/20 | RHD | 2008 FORD SUPE | Whi | 1FDAF5 7R48EB 34427 | 276 | FR | 05/15/20 | S | LAWTON CACHE AUTO AUCTION | $28,990.00 | $22,369.77 | $.00 | $80.00 | $299.61 | $233.37 | $175.00 | $23,157.75 |
| 10/29/19 | 184 | 02/28/20 | RHD | 2013 Ford F150 | Whi | 1FTFW1 ET7DFB 02285 | 296 | FR | 04/29/20 | S | Route 66 Auto Auction of El Reno, LLC | $17,500.00 | $14,214.38 | $.00 | $80.00 | $264.50 | $192.93 | $175.00 | $14,926.81 |
| 10/30/19 | 184 | 02/28/20 | RHD | 2011 Chev Taho | Sil | 1GNSC DFJ5BR 260679 | 302 | ST | 04/29/20 | S | LAWTON CACHE AUTO AUCTION | $25,940.00 | $21,069.77 | $.00 | $80.00 | $390.85 | $285.99 | $175.00 | $22,001.61 |
| 11/06/19 | 177 | 03/06/20 | RHD | 2007 inte semi | Whi | 2HSCNS CR97C3 89008 | 305 | ST | 05/06/20 | S | LAWTON CACHE AUTO AUCTION | $27,480.00 | $22,320.63 | $.00 | $80.00 | $366.32 | $269.30 | $175.00 | $23,211.25 |
| 11/13/19 | 170 | 03/12/20 | RHD | 2007 Dodg Ram | Whi | 3D6WH4 6A27G7 12729 | 309 | ST | 05/13/20 | S | LAWTON CACHE AUTO AUCTION | $28,990.00 | $23,547.13 | $.00 | $80.00 | $343.33 | $253.66 | $175.00 | $24,399.12 |
| 11/20/19 | 163 | 02/20/20 | RHD | 2004 Mits FE6 | Whi | JL6AAE 1H44K0 00734 | 311 | ST | 05/22/20 | S | LAWTON CACHE AUTO AUCTION | $29,490.00 | $25,213.95 | $.00 | $120.00 | $530.28 | $366.41 | $260.00 | $26,490.64 |
| 11/20/19 | 163 | 02/20/20 | RHD | 2004 Ford F350 | Whi | 1ftsw31p 04ea210 86 | 312 | ST | 05/22/20 | S | LAWTON CACHE AUTO AUCTION | $16,780.00 | $14,346.90 | $.00 | $120.00 | $302.15 | $208.49 | $175.00 | $15,152.54 |
| 11/27/19 | 156 | 02/25/20 | RHD | 2007 dodg ram | Whi | 3D6WG 36A67G 817092 | 316 | ST | 04/27/20 | S | LAWTON CACHE AUTO AUCTION | $26,470.00 | $25,146.50 | $.00 | $60.00 | $299.86 | $305.73 | $50.00 | $25,862.09 |
| 12/04/19 | 149 | 03/03/20 | RHD | 2007 Dodg Ram | Bla | 3d7mx4 8cx7g72 3854 | 318 | ST | 05/04/20 | S | LAWTON CACHE AUTO AUCTION | $19,320.00 | $18,354.00 | $.00 | $60.00 | $194.58 | $199.48 | $50.00 | $18,858.06 |
| 12/18/19 | 135 | 03/17/20 | RHD | 2014 Ford F350 | Whi | 1fd8w3gt 5eea255 82 | 322 | ST | 05/18/20 | S | LAWTON CACHE AUTO AUCTION | $26,970.00 | $25,621.50 | $.00 | $60.00 | $203.42 | $212.39 | $50.00 | $26,147.31 |
| 12/18/19 | 135 | 03/17/20 | RHD | 2014 Ford F350 | Whi | 1fd8w3gt 7eea255 83 | 324 | ST | 05/18/20 | S | LAWTON CACHE AUTO AUCTION | $29,000.00 | $27,550.00 | $.00 | $60.00 | $218.70 | $228.38 | $50.00 | $28,107.08 |
| 12/18/19 | 135 | 03/17/20 | RHD | 2015 Ford F350 | Whi | 1ft8w3dt 0fea269 11 | 321 | ST | 05/18/20 | S | LAWTON CACHE AUTO AUCTION | $23,500.00 | $22,325.00 | $.00 | $60.00 | $177.28 | $185.06 | $50.00 | $22,797.34 |
| 01/03/20 | 119 | | RHD | 2005 Chev Silv | Whi | 1gcjk332 45f9356 84 | 327 | ST | 05/04/20 | S | LAWTON CACHE AUTO AUCTION | $26,470.00 | $26,470.00 | $.00 | $80.00 | $584.21 | $551.24 | $68.00 | $27,753.45 |

**Receivable Detail**

Requested by : MAN\GENE,WHEELER **Requested on :** 2020-05-01 01:28:05 PM

## Wholesale Inventory for Rock Hill Used Cars (92421)

| Floor Date | Days | Last Paid | VS | Vehicle Description | Color | VIN | Stk # | TS | Due | Disb | Source | Original Amount | Principal Balance | One Day Balance | Fee | Interest | Collateral Protection | Other | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/03/20 | 119 | | RHD | 2002 Dodg Ram | Sil | 3b7kc23c92m236518 | 326 | ST | 05/04/20 | S | LAWTON CACHE AUTO AUCTION | $15,170.00 | $15,170.00 | $.00 | $80.00 | $335.52 | $315.92 | $68.00 | $15,969.44 |
| 01/08/20 | 114 | | RHD | 2011 Ford F350 | Whi | 1FT7X3B64BEB25540 | 329 | ST | 05/07/20 | S | Lubbock Auto Auction | $17,725.00 | $17,725.00 | $.00 | $80.00 | $374.69 | $353.61 | $68.00 | $18,601.30 |
| 01/08/20 | 114 | | RHD | 2005 Dodg Ram | Red | 3D7KS28C05G751217 | 331 | ST | 05/07/20 | S | Lubbock Auto Auction | $16,725.00 | $16,725.00 | $.00 | $80.00 | $353.64 | $333.66 | $68.00 | $17,560.30 |
| 01/08/20 | 114 | 03/09/20 | RHD | 2011 Ram 2500 | Gra | 3D7TT2C2BG511932 | 333 | ST | 05/08/20 | S | LAWTON CACHE AUTO AUCTION | $22,940.00 | $20,646.00 | $.00 | $80.00 | $318.84 | $212.77 | $50.00 | $21,307.61 |
| 01/08/20 | 114 | 03/09/20 | RHD | 2006 Chev Silv | Blu | 1GCJK33D46F252242 | 332 | ST | 05/08/20 | S | LAWTON CACHE AUTO AUCTION | $21,940.00 | $19,746.00 | $.00 | $80.00 | $304.98 | $203.49 | $50.00 | $20,384.47 |
| 01/22/20 | 100 | | RHD | 2005 Dodg Ram | Whi | 3D7KR28C65G706682 | 341 | ST | 05/22/20 | S | LAWTON CACHE AUTO AUCTION | $14,270.00 | $14,270.00 | $.00 | $155.00 | $427.85 | $249.73 | $68.00 | $15,170.58 |
| 01/22/20 | 100 | | RHD | 2015 Ford F250 | Whi | 1ft7w2btxfec10911 | 335 | ST | 05/21/20 | S | LAWTON CACHE AUTO AUCTION | $26,970.00 | $26,970.00 | $.00 | $80.00 | $496.85 | $471.98 | $68.00 | $28,086.83 |
| 01/23/20 | 99 | | CUV | 2015 Ram 3500 | Gra | 3C63RRHLXFG642243 | 334 | FR | 05/22/20 | S | Lone Star Auto Auction | $27,125.00 | $27,125.00 | $.00 | $80.00 | $494.48 | $469.94 | $18.00 | $28,187.42 |
| 01/29/20 | 93 | | RHD | 2006 Niss Maxi | Mar | 1n4ba41e46c810994 | 348 | ST | 05/29/20 | S | LAWTON CACHE AUTO AUCTION | $7,180.00 | $7,180.00 | $.00 | $155.00 | $201.14 | $116.85 | $68.00 | $7,720.99 |
| 01/29/20 | 93 | | CUV | 2014 Ram 3500 | Bla | 3c63rrgl7eg235772 | 346 | FR | 05/29/20 | S | LAWTON CACHE AUTO AUCTION | $36,070.00 | $36,070.00 | $.00 | $155.00 | $1,000.87 | $587.04 | $188.00 | $38,000.91 |
| 01/29/20 | 93 | | RHD | 1996 Ford Wind | Whi | 2fmda5148tbb47033 | 347 | ST | 05/29/20 | S | LAWTON CACHE AUTO AUCTION | $8,190.00 | $8,190.00 | $.00 | $155.00 | $229.01 | $133.29 | $68.00 | $8,775.30 |
| 01/29/20 | 93 | | RHD | 2011 GMC Sier | Unk | 1GT523C81BZ265964 | 343 | ST | 05/29/20 | S | Lone Star Auto Auction | $27,125.00 | $27,125.00 | $.00 | $155.00 | $751.60 | $441.46 | $68.00 | $28,541.06 |
| 01/29/20 | 93 | | RHD | 1996 Ford F250 | Blu | 1fthf26h2teb02756 | 345 | FR | 05/29/20 | S | LAWTON CACHE AUTO AUCTION | $10,000.00 | $10,000.00 | $.00 | $155.00 | $278.92 | $162.75 | $18.00 | $10,614.67 |
| 01/29/20 | 93 | | RHD | 2009 Dodg Ram | Unk | 3D7KR28L39G535332 | 344 | ST | 05/29/20 | S | Lone Star Auto Auction | $20,625.00 | $20,625.00 | $.00 | $155.00 | $572.21 | $335.67 | $68.00 | $21,755.88 |
| 01/29/20 | 93 | | RHD | 2009 Ford F350 | Gra | 1ftww33r09ea44875 | 349 | ST | 05/29/20 | S | LAWTON CACHE AUTO AUCTION | $19,820.00 | $19,820.00 | $.00 | $155.00 | $549.99 | $322.57 | $68.00 | $20,915.56 |
| 02/26/20 | 65 | | RHD | 2006 Dodg Ram | Red | 3d7mx48c06g223278 | 353 | FR | 05/27/20 | S | LAWTON CACHE AUTO AUCTION | $21,940.00 | $21,940.00 | $.00 | $115.00 | $419.64 | $249.57 | $18.00 | $22,742.21 |
| 02/26/20 | 65 | | RHD | 2002 Ford F250 | Red | 1ftnw21f42ea89984 | 354 | ST | 05/27/20 | S | LAWTON CACHE AUTO AUCTION | $23,940.00 | $23,940.00 | $.00 | $115.00 | $457.77 | $272.32 | $68.00 | $24,853.09 |
| 02/26/20 | 65 | | RHD | 2014 Ford Expe | Red | 1fmjk1j57eef15145 | 352 | ST | 05/27/20 | S | LAWTON CACHE AUTO AUCTION | $23,440.00 | $23,440.00 | $.00 | $115.00 | $448.25 | $266.63 | $68.00 | $24,337.88 |

Appendix 46

**Receivable Detail**

**Requested by :** MAN\GENE,WHEELER **Requested on :** 2020-05-01 01:28:05 PM

## Wholesale Inventory for Rock Hill Used Cars (92421)

| Floor Date | Days | Last Paid | VS | Vehicle Description | Col or | VIN | Stk # | TS | Due | Disb | Source | Original Amount | Principal Balance | One Day Balance | Fee | Interest | Collateral Protection | Other | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/04/20 | 58 | | RHD | 2012 Ford F350 | Unk | 1FD8W3 HT5CEC 10971 | 355 | ST | 05/04/20 | S | Lone Star Auto Auction | $24,125.00 | $24,125.00 | $.00 | $75.00 | $409.73 | $244.87 | $68.00 | $24,922.60 |
| 03/04/20 | 58 | | CUV | 2000 Ford Must | Unk | 1FAFP4 446YF23 9383 | 356 | FR | 05/04/20 | S | Lone Star Auto Auction | $10,265.00 | $10,265.00 | $.00 | $75.00 | $175.22 | $104.19 | $18.00 | $10,637.41 |
| 03/04/20 | 58 | | RHD | 1994 Ford F150 | Whi | 1FTEX1 5N9RKA 15724 | 357 | ST | 05/04/20 | S | LAWTON CACHE AUTO AUCTION | $8,990.00 | $8,990.00 | $.00 | $75.00 | $153.70 | $91.25 | $68.00 | $9,377.95 |
| 03/11/20 | 51 | | RHD | 2015 Ford Comm | Whi | 1FDXE4 FSXFDA 07194 | 360 | ST | 05/11/20 | S | LAWTON CACHE AUTO AUCTION | $25,440.00 | $25,440.00 | $.00 | $75.00 | $377.77 | $227.05 | $68.00 | $26,187.82 |
| 03/11/20 | 51 | | RHD | 2015 Ram 3500 | Red | 3c63rrgl 4fg7025 52 | 359 | ST | 05/11/20 | S | LAWTON CACHE AUTO AUCTION | $23,940.00 | $23,940.00 | $.00 | $75.00 | $355.58 | $213.66 | $68.00 | $24,652.24 |
| 03/18/20 | 44 | | CUV | 2011 Niss Sent | Unk | 3N1AB6 AP3BL6 46445 | 362 | FR | 05/18/20 | S | Lone Star Auto Auction | $13,675.00 | $13,675.00 | $.00 | $75.00 | $174.51 | $105.30 | $18.00 | $14,047.81 |
| **Total Wholesale** **Unit Count: 42** | | | | | | | | | | | | **$881,492.00** | **$818,653.39** | **$.00** | **$4,110.00** | **$14,918.77** | **$10,797.09** | **$3,994.00** | **$852,473.25** |

Appendix 47

**SOT Vehicle Report**

EXHIBIT
A-5

**Business:** Rock Hill Used Cars (92421)

**Buyer Business Status:** Non Performing

**LOC Type:** All

**Run Date:** 5/1/2020 1:45 PM

**Flooring Status:** Both (Approved & Written Off)

**Unit Status:** CUV, SAU, SOT

**Requested By:** Gene Wheeler

| Stock # | Date Floored | Vehicle Description | VIN | Original Amount | Principal Balance | Written Off Principal | Vehicle Status |
|---------|--------------|--------------------|-----|-----------------|-------------------|----------------------|----------------|
| 334 | 1/23/2020 | 2015 Ram 3500 | 3C63RRHLXFG642243 | $ 27,125.00 | $ 27,125.00 | $ 0.00 | CUV |
| 346 | 1/29/2020 | 2014 Ram 3500 | 3c63rrgl7eg235772 | $ 36,070.00 | $ 36,070.00 | $ 0.00 | CUV |
| 356 | 3/4/2020 | 2000 Ford Mustang | 1FAFP4446YF239383 | $ 10,265.00 | $ 10,265.00 | $ 0.00 | CUV |
| 361 | 3/18/2020 | 2008 FORD F-550 F SUPER DUTY | 1FDAX57R18ED86326 | $ 28,675.00 | $ 28,675.00 | $ 0.00 | CUV |
| 362 | 3/18/2020 | 2011 Nissan Sentra | 3N1AB6AP3BL646445 | $ 13,675.00 | $ 13,675.00 | $ 0.00 | CUV |
| **Total: 5 Records** | | | | **$ 115,810.00** | **$ 115,810.00** | **$ 0.00** | |

## Balance Calculation for Written Off Account Report

Dealer: Rock Hill Used Cars(92421)
Requested by: MAN\SHANNON.LANDRETH
Report Date: Wed 8/25/2021 8:40:15 AM



EXHIBIT
A-6

### Summary

| Written Off Principal Interest And Fees | Written Off Account-Level Charges | Post Writeoff Interest | Post Write Off Payments | Total |
|---|---|---|---|---|
| $ 992,109.15 | $ 38,593.79 | $ 69,506.43 | $ 0.00 | $ 1,100,209.37 |

### Written Off Principal, Interest, and Fees

| Flr. Date | WO Date | Days | VS | Vehicle Description | Color | VIN | Stk # | TS | Disb | Original Amount | Principal Balance | One Day Loan Bal | Floorplan Fee Bal | Interest Bal | CPP Bal. | Other Fee Balance | Total Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/15/19 | 09/29/20 | 411 | DIS | 2004 Chevrolet Avalanche | Blue | 171303 | 264 | AU | S | $11,230.00 | $6,352.02 | $0.00 | $85.00 | $523.27 | $320.33 | $50.00 | $7,330.62 |
| 10/09/19 | 09/29/20 | 356 | DIS | 2013 Lexus ES 350 | White | 020256 | 274 | AU | S | $15,280.00 | $3,778.40 | $0.00 | $170.00 | $557.59 | $441.21 | $275.00 | $5,222.20 |
| 10/16/19 | 09/29/20 | 349 | DIS | 2008 FORD SUPER DUTY | White | B34427 | 276 | AU | S | $28,990.00 | $14,199.77 | $0.00 | $80.00 | $1,029.46 | $705.19 | $225.00 | $16,239.42 |
| 10/16/19 | 09/29/20 | 349 | DIS | 1999 Dodge Ram 2500 | White | 512080 | 284 | AU | S | $9,702.00 | $6,015.43 | $0.00 | $80.00 | $401.73 | $247.89 | $225.00 | $6,970.05 |
| 10/16/19 | 09/29/20 | 349 | DIS | 2004 GMC C5C | White | 500844 | 285 | AU | S | $34,470.00 | $25,783.35 | $0.00 | $80.00 | $1,527.93 | $910.87 | $225.00 | $28,527.15 |
| 10/16/19 | 09/29/20 | 349 | DIS | 2009 Ford F250SD | White | A01706 | 286 | AU | S | $16,280.00 | $11,576.26 | $0.00 | $80.00 | $712.98 | $450.14 | $225.00 | $13,044.38 |
| 10/29/19 | 09/29/20 | 336 | DIS | 2013 Ford F150 | White | B02285 | 296 | AU | S | $17,500.00 | $4,419.38 | $0.00 | $80.00 | $553.95 | $453.25 | $175.00 | $5,681.58 |
| 10/30/19 | 09/29/20 | 335 | DIS | 2011 Chevrolet Tahoe | Silver | 260679 | 302 | AU | S | $25,940.00 | $11,508.77 | $0.00 | $80.00 | $1,160.57 | $953.29 | $175.00 | $13,877.63 |
| 11/06/19 | 09/29/20 | 328 | DIS | 2007 international semi | White | 389008 | 305 | AU | S | $27,480.00 | $19,305.63 | $0.00 | $80.00 | $1,266.58 | $692.50 | $175.00 | $21,519.71 |
| 11/13/19 | 09/29/20 | 321 | DIS | 2007 Dodge Ram 3500 | White | 712729 | 309 | AU | S | $28,990.00 | $20,883.23 | $0.00 | $80.00 | $1,328.53 | $826.94 | $175.00 | $23,293.70 |
| 11/20/19 | 09/29/20 | 314 | DIS | 2004 Mitsubish FE6 | White | 000734 | 311 | AU | S | $29,490.00 | $24,143.95 | $0.00 | $120.00 | $1,639.00 | $810.24 | $260.00 | $26,973.19 |
| 11/20/19 | 09/29/20 | 314 | DIS | 2004 Ford F350SD | White | a21086 | 312 | AU | S | $16,780.00 | $11,377.10 | $0.00 | $120.00 | $868.44 | $519.76 | $175.00 | $13,060.30 |
| 12/02/19 | 09/29/20 | 302 | LHD | 2001 HDAB 53' | Black | 263507 | 314 | FR | S | $27,480.00 | $24,732.00 | $0.00 | $75.00 | $1,133.24 | $721.35 | $220.00 | $26,881.59 |
| 11/27/19 | 09/29/20 | 307 | DIS | 2007 dodge ram | White | 817092 | 316 | AU | S | $26,470.00 | $22,519.50 | $0.00 | $60.00 | $946.97 | $968.14 | $50.00 | $24,544.61 |
| 11/27/19 | 09/29/20 | 307 | DIS | 1995 GDAN 1GR | White | 029801 | 317 | AU | S | $16,280.00 | $14,502.00 | $0.00 | $75.00 | $683.62 | $700.85 | $185.00 | $16,146.47 |
| 12/04/19 | 09/29/20 | 300 | DIS | 2007 Dodge Ram 3500 | Black | 723854 | 318 | AU | S | $19,320.00 | $14,668.60 | $0.00 | $60.00 | $618.44 | $537.58 | $50.00 | $15,934.62 |
| 12/11/19 | 09/29/20 | 293 | DIS | 2014 Ford F350SD | White | B34184 | 319 | AU | S | $30,450.00 | $20,510.00 | $0.00 | $75.00 | $1,058.87 | $991.15 | $135.00 | $22,770.02 |
| 12/18/19 | 09/29/20 | 286 | DIS | 2015 Ford F350SD | White | a26911 | 321 | AU | S | $23,500.00 | $16,432.57 | $0.00 | $60.00 | $672.59 | $645.66 | $50.00 | $17,860.82 |
| 12/18/19 | 09/29/20 | 286 | DIS | 2014 Ford F350SD | White | a25582 | 322 | AU | S | $26,970.00 | $19,314.10 | $0.00 | $60.00 | $791.81 | $778.76 | $50.00 | $20,994.67 |
| 12/18/19 | 09/29/20 | 286 | DIS | 2014 Ford F350SD | White | a25583 | 324 | AU | S | $29,000.00 | $16,497.00 | $0.00 | $60.00 | $769.50 | $801.85 | $50.00 | $18,178.35 |
| 12/30/19 | 09/29/20 | 274 | DIS | 2007 VOLVO VN | White | 469707 | 325 | AU | S | $28,990.00 | $20,841.00 | $0.00 | $75.00 | $1,013.01 | $1,085.67 | $50.00 | $23,064.68 |
| 01/03/20 | 09/29/20 | 270 | DIS | 2002 Dodge Ram 2500 | Silver | 236518 | 326 | AU | S | $15,170.00 | $12,159.00 | $0.00 | $80.00 | $704.24 | $599.97 | $68.00 | $13,611.21 |

| Flr. Date | WO Date | Days | VS | Vehicle Description | Color | VIN | Stk # | TS | Disb | Original Amount | Principal Balance | One Day Loan Bal | Floorplan Fee Bal | Interest Bal | CPP Bal. | Other Fee Balance | Total Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/03/20 | 09/29/20 | 270 | DIS | 2005 Chevrolet Silverado 3500 | White | 935684 | 327 | AU | S | $26,470.00 | $16,605.20 | $0.00 | $80.00 | $1,137.42 | $1,074.68 | $68.00 | $18,965.30 |
| 01/08/20 | 09/29/20 | 265 | DIS | 2011 Ford F350SD | White | B25540 | 329 | AU | S | $17,725.00 | $15,674.00 | $0.00 | $80.00 | $829.57 | $750.65 | $68.00 | $17,402.22 |
| 01/08/20 | 09/29/20 | 265 | DIS | 2004 GMC C7500 C | White | 512353 | 330 | AU | S | $34,325.00 | $26,296.20 | $0.00 | $75.00 | $1,073.75 | $907.04 | $50.00 | $28,401.99 |
| 01/08/20 | 09/29/20 | 265 | DIS | 2005 Dodge Ram 2500 | Red | 751217 | 331 | AU | S | $16,725.00 | $13,001.60 | $0.00 | $80.00 | $747.28 | $664.40 | $68.00 | $14,561.28 |
| 01/08/20 | 09/29/20 | 265 | DIS | 2006 Chevrolet Silverado 3500 | Blue | 252242 | 332 | AU | S | $21,940.00 | $10,431.00 | $0.00 | $80.00 | $831.96 | $502.97 | $50.00 | $11,895.93 |
| 01/08/20 | 09/29/20 | 265 | DIS | 2011 Ram 2500 | Gray | 511932 | 333 | AU | S | $22,940.00 | $5,635.60 | $0.00 | $80.00 | $670.62 | $529.92 | $50.00 | $6,966.14 |
| 01/23/20 | 09/29/20 | 250 | DIS | 2015 Ram 3500 | Gray | 642243 | 334 | AU | S | $27,125.00 | $17,804.43 | $0.00 | $80.00 | $1,077.03 | $1,034.82 | $68.00 | $20,064.28 |
| 01/22/20 | 09/29/20 | 251 | DIS | 2015 Ford F250SD | White | c10911 | 335 | AU | S | $26,970.00 | $12,104.00 | $0.00 | $80.00 | $956.83 | $972.27 | $68.00 | $14,181.10 |
| 01/24/20 | 09/29/20 | 249 | DIS | 2000 INTERNATIONAL DUMP TRUCK | White | 314391 | 336 | AU | S | $26,100.00 | $23,750.00 | $0.00 | $225.00 | $1,194.53 | $995.72 | $68.00 | $26,233.25 |
| 01/24/20 | 09/29/20 | 249 | DIS | 1992 GMC DUMP TRUCK | White | 501295 | 337 | AU | S | $19,100.00 | $18,650.00 | $0.00 | $225.00 | $898.14 | $728.67 | $68.00 | $20,569.81 |
| 01/22/20 | 09/29/20 | 251 | DIS | 2007 international 7000 | Black | 461931 | 340 | AU | S | $35,070.00 | $27,496.00 | $0.00 | $225.00 | $1,504.19 | $1,153.80 | $238.00 | $30,616.99 |
| 01/22/20 | 09/29/20 | 251 | DIS | 2005 Dodge Ram 2500 | White | 706682 | 341 | AU | S | $14,270.00 | $10,219.60 | $0.00 | $155.00 | $978.12 | $551.89 | $68.00 | $11,972.61 |
| 01/29/20 | 09/29/20 | 244 | LHD | 2001 ORBIT TRAILER | Unknown | 128652 | 342 | FR | S | $15,125.00 | $15,125.00 | $0.00 | $225.00 | $705.58 | $561.14 | $103.00 | $16,719.72 |
| 01/29/20 | 09/29/20 | 244 | DIS | 2011 GMC Sierra 3500 | Unknown | 265964 | 343 | AU | S | $27,125.00 | $22,231.60 | $0.00 | $155.00 | $1,838.79 | $944.63 | $118.00 | $25,288.02 |
| 01/29/20 | 09/29/20 | 244 | DIS | 2009 Dodge Ram 2500 | Unknown | 535332 | 344 | AU | S | $20,625.00 | $16,509.60 | $0.00 | $155.00 | $1,388.19 | $718.27 | $68.00 | $18,839.06 |
| 01/29/20 | 09/29/20 | 244 | DIS | 1996 Ford F250 | Blue | b02756 | 345 | AU | S | $10,000.00 | $9,599.00 | $0.00 | $155.00 | $727.82 | $353.50 | $68.00 | $10,903.32 |
| 01/29/20 | 09/29/20 | 244 | PAS | 2014 Ram 3500 | Black | 235772 | 346 | FR | S | $36,070.00 | $36,070.00 | $0.00 | $155.00 | $2,644.23 | $1,142.52 | $188.00 | $40,199.75 |
| 01/29/20 | 09/29/20 | 244 | DIS | 1996 Ford Windstar Vans | White | b47033 | 347 | AU | S | $8,190.00 | $8,075.00 | $0.00 | $155.00 | $604.94 | $278.05 | $68.00 | $9,180.99 |
| 01/29/20 | 09/29/20 | 244 | DIS | 2006 Nissan Maxima | Maroon | 810994 | 348 | AU | S | $7,180.00 | $6,394.00 | $0.00 | $155.00 | $508.75 | $239.99 | $68.00 | $7,365.74 |
| 01/29/20 | 09/29/20 | 244 | DIS | 2009 Ford F350SD | Gray | a44875 | 349 | AU | S | $19,820.00 | $17,669.60 | $0.00 | $155.00 | $1,393.67 | $714.51 | $68.00 | $20,000.78 |
| 02/12/20 | 09/29/20 | 230 | DIS | 2016 Ram 3500 | White | 178005 | 350 | AU | S | $26,470.00 | $12,955.00 | $0.00 | $150.00 | $817.78 | $727.26 | $68.00 | $14,718.04 |
| 02/19/20 | 09/29/20 | 223 | DIS | 2005 FORD F750 | White | 156426 | 351 | AU | S | $29,990.00 | $25,640.00 | $0.00 | $225.00 | $1,208.67 | $1,165.11 | $118.00 | $28,356.78 |
| 02/26/20 | 09/29/20 | 216 | DIS | 2014 Ford Expedition EL | Red | f15145 | 352 | AU | S | $23,440.00 | $15,143.00 | $0.00 | $155.00 | $1,211.32 | $627.61 | $68.00 | $17,204.93 |
| 02/26/20 | 09/29/20 | 216 | CUV | 2006 Dodge Ram 3500 | Red | 223278 | 353 | FR | S | $21,940.00 | $21,940.00 | $0.00 | $155.00 | $1,409.04 | $694.95 | $18.00 | $24,216.99 |
| 02/26/20 | 09/29/20 | 216 | DIS | 2002 Ford F250SD | Red | a89984 | 354 | AU | S | $23,940.00 | $16,875.00 | $0.00 | $115.00 | $1,279.43 | $628.43 | $68.00 | $18,965.86 |
| 03/04/20 | 09/29/20 | 209 | DIS | 2012 Ford F350SD | Unknown | C10971 | 355 | AU | S | $24,125.00 | $12,859.00 | $0.00 | $155.00 | $1,154.94 | $692.39 | $68.00 | $14,929.33 |
| 03/04/20 | 09/29/20 | 209 | DIS | 2000 Ford Mustang | Unknown | 239383 | 356 | AU | S | $10,265.00 | $9,579.00 | $0.00 | $155.00 | $627.05 | $344.90 | $68.00 | $10,773.95 |
| 03/04/20 | 09/29/20 | 209 | DIS | 1994 Ford F150 | White | A15724 | 357 | AU | S | $8,990.00 | $8,629.60 | $0.00 | $115.00 | $550.90 | $235.99 | $68.00 | $9,599.49 |
| 03/06/20 | 09/29/20 | 207 | DIS | 1989 FORD WESTERN HAULER 8000 | White | A37099 | 358 | AU | S | $25,100.00 | $20,200.00 | $0.00 | $150.00 | $858.86 | $628.13 | $68.00 | $21,904.99 |
| 03/11/20 | 09/29/20 | 202 | DIS | 2015 Ram 3500 | Red | 702552 | 359 | AU | S | $23,940.00 | $16,045.00 | $0.00 | $115.00 | $1,156.28 | $599.10 | $68.00 | $17,983.38 |

Appendix 50

| Flr. Date | WO Date | Days | VS | Vehicle Description | Color | VIN | Stk # | TS | Disb | Original Amount | Principal Balance | One Day Loan Bal | Floorplan Fee Bal | Interest Bal | CPP Bal. | Other Fee Balance | Total Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/11/20 | 09/29/20 | 202 | DIS | 2015 Ford Commercial Vans | White | A07194 | 360 | AU | S | $25,440.00 | $17,351.00 | $0.00 | $155.00 | $1,341.69 | $823.62 | $68.00 | $19,739.31 |
| 03/18/20 | 09/29/20 | 195 | DIS | 2008 FORD F-550 F SUPER DUTY | Unknown | D86326 | 361 | AU | S | $28,675.00 | $24,870.00 | $0.00 | $150.00 | $946.57 | $627.27 | $68.00 | $26,661.84 |
| 03/18/20 | 09/29/20 | 195 | PAS | 2011 Nissan Sentra | Unknown | 646445 | 362 | FR | S | $13,675.00 | $13,675.00 | $0.00 | $155.00 | $789.65 | $361.36 | $18.00 | $14,999.01 |
| **Total for Dealer # 92421** | | | | | | | | | | **$1,224,647.00** | **$886,622.09** | **$0.00** | **$6,540.00** | **$55,025.91** | **$38,138.15** | **$5,783.00** | **$992,109.15** |

**Total Unit Count 55**

## Written Off Account-Level Charges

| Fee Type | Description | Date Incurred | WO Date | Amount |
|---|---|---|---|---|
| Repo (Account) | MANHEIM AR 6.5.20 STK:321 | 09/29/2020 | 09/29/2020 | $15.00 |
| Repo (Account) | MANHEIM AR 6.5.20 STK: 319, 321 | 09/29/2020 | 09/29/2020 | $60.00 |
| Repo (Account) | Manheim AR 7/17/2020 STK 316 | 09/29/2020 | 09/29/2020 | $185.60 |
| Repo (Account) | Texas Lone Star AA INV 401623 stk 334 | 09/29/2020 | 09/29/2020 | $150.00 |
| Repo (Account) | MANHEIM AR 6.11.20 STK: 356 | 09/29/2020 | 09/29/2020 | $35.00 |
| Repo (Account) | Ready Logistics INV 12014764 stk 302 | 09/29/2020 | 09/29/2020 | $75.00 |
| Repo (Account) | Z66 AA INV 214419 stk 302 | 09/29/2020 | 09/29/2020 | $164.27 |
| Repo (Account) | Manheim AR 5/29/2020 stk 286 | 09/29/2020 | 09/29/2020 | $84.00 |
| Repo (Account) | Strategic Remarketing Solutions INV 12135 stks 317,340,305,333,350,314,264,330,336,337,274,357,345,286,335, 354,312,319,321,322,324,329,349,355,361,351,316,284,326,331, 341,344,309,318,343,327,332,276,342,325,358 | 09/29/2020 | 09/29/2020 | $37,549.32 |
| Repo (Account) | Manheim AR 07.07.20 INV 32967882 STK 302 | 09/29/2020 | 09/29/2020 | $65.00 |
| NSF | | 09/29/2020 | 09/29/2020 | $25.00 |
| Repo (Account) | Manheim AR 7.17.2020 Stk 316 | 09/29/2020 | 09/29/2020 | $185.60 |
| **Totals for Dealer # 92421** | | | | **$38,593.79** |

## Post Write Off Interest

| Dealer Name and Number | Market Name | Market # | Date Written Off | Post Writeoff Interest |
|---|---|---|---|---|
| Rock Hill Used Cars(92421) | DO NOT USE - DVF Central | 55 | 09/29/2020 | $69,506.43 |

Appendix 51

**Post Write Off Payments**

| Dlr # | Dealer Name | Region | Market | Dealer Finance Program | Risk Contact | Incident Status | Receipt # | Payment Date | Write Off Date | Written Off Recovery Payment |
|---|---|---|---|---|---|---|---|---|---|---|

**Totals for Dealer # 92421**

Appendix 52

**Payment Received Report without Payment Detail**

**Division:** Multiple Selected   **Region:** Multiple Selected   **Market:** Multiple Selected

**Business Number:** 92421   **Start Date:** 5/1/2020   **End Date:** 8/25/2021

**Payment Method:** Multiple Selected   **Finance Program Type:** Multiple Selected

**Dealer Statuses:**   **Voided:** Non Voided   **User:** ALL



**Data Classification:** Confidential

For more information, click on or copy and paste this link https://coxautoinc.sharepoint.com/sites/service-enterprise-risk-security/SitePages/Cox-Automotive-Security-Policies.aspx and review Information Security Policy and Standards PDF file.

| Posted Date | Dlr # | Dealer Name | Receipt # | Stk # | FS | VS | TL | Payment Method | Chk # | Payment Via | Initiated From | Void N | Amount Applied |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/19/2020 | 92421 | Rock Hill Used Cars | 94153898 | 332 | WO | DIS | AU | Wire | | Other | Other | N | $ 9,315.00 |
| | | | | 350 | WO | DIS | AU | Wire | | Other | Other | N | $ 13,515.00 |
| **Total Receipt # 94153898** | | | | | | | | | | | | | **$ 22,830.00** |
| **Total Date 5/19/2020** | | | | | | | | | | | | | **$ 22,830.00** |
| 5/20/2020 | 92421 | Rock Hill Used Cars | 94186967 | 333 | WO | DIS | AU | Wire | | Other | Other | N | $ 15,010.40 |
| **Total Receipt # 94186967** | | | | | | | | | | | | | **$ 15,010.40** |
| **Total Date 5/20/2020** | | | | | | | | | | | | | **$ 15,010.40** |
| 5/22/2020 | 92421 | Rock Hill Used Cars | 94261497 | 361 | WO | DIS | AU | Wire | | Other | Other | N | $ 3,805.00 |
| **Total Receipt # 94261497** | | | | | | | | | | | | | **$ 3,805.00** |
| **Total Date 5/22/2020** | | | | | | | | | | | | | **$ 3,805.00** |
| 5/26/2020 | 92421 | Rock Hill Used Cars | 94314592 | 264 | WO | DIS | AU | Wire | | Other | Other | N | $ 1,869.40 |
| | | | | 354 | WO | DIS | AU | Wire | | Other | Other | N | $ 7,065.00 |
| **Total Receipt # 94314592** | | | | | | | | | | | | | **$ 8,934.40** |
| 5/26/2020 | 92421 | Rock Hill Used Cars | 94318823 | 296 | WO | DIS | AU | Wire | | Other | Other | N | $ 9,795.00 |
| **Total Receipt # 94318823** | | | | | | | | | | | | | **$ 9,795.00** |
| **Total Date 5/26/2020** | | | | | | | | | | | | | **$ 18,729.40** |
| 5/27/2020 | 92421 | Rock Hill Used Cars | 94362697 | 311 | WO | DIS | AU | Wire | | Other | Other | N | $ 1,070.00 |
| **Total Receipt # 94362697** | | | | | | | | | | | | | **$ 1,070.00** |
| **Total Date 5/27/2020** | | | | | | | | | | | | | **$ 1,070.00** |

Report ID: OP011

Appendix 53

**Payment Received Report without Payment Detail**

**Division:** Multiple Selected   **Region:** Multiple Selected   **Market:** Multiple Selected

**Business Number:** 92421   **Start Date:** 5/1/2020   **End Date:** 8/25/2021

**Payment Method:** Multiple Selected   **Finance Program Type:** Multiple Selected

**Dealer Statuses:**   **Voided:** Non Voided   **User:** ALL

**Data Classification:** <span style="color:red">Confidential</span>
For more information, click on or copy and paste this link https://coxautoinc.sharepoint.com/sites/service-enterprise-risk-security/SitePages/Cox-Automotive-Security-Policies.aspx and review Information Security Policy and Standards PDF file.

| Posted Date | Dlr # | Dealer Name | Receipt # | Stk # | FS | VS | TL | Payment Method | Chk # | Payment Via | Initiated From | Void | Amount Applied |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/28/2020 | 92421 | Rock Hill Used Cars | 94398745 | 358 | WO | DIS | AU | Wire | | Other | Other | N | $ 4,900.00 |
| **Total Receipt # 94398745** | | | | | | | | | | | | | **$ 4,900.00** |
| **Total Date 5/28/2020** | | | | | | | | | | | | | **$ 4,900.00** |
| 5/29/2020 | 92421 | Rock Hill Used Cars | 94435161 | 352 | WO | DIS | AU | Wire | | Other | Other | N | $ 8,297.00 |
| **Total Receipt # 94435161** | | | | | | | | | | | | | **$ 8,297.00** |
| 5/29/2020 | 92421 | Rock Hill Used Cars | 94448303 | 305 | WO | DIS | AU | Wire | | Other | Other | N | $ 3,015.00 |
| | | | | 340 | WO | DIS | AU | Wire | | Other | Other | N | $ 7,574.00 |
| **Total Receipt # 94448303** | | | | | | | | | | | | | **$ 10,589.00** |
| **Total Date 5/29/2020** | | | | | | | | | | | | | **$ 18,886.00** |
| 6/2/2020 | 92421 | Rock Hill Used Cars | 94511781 | 359 | WO | DIS | AU | Wire | | Other | Other | N | $ 7,895.00 |
| **Total Receipt # 94511781** | | | | | | | | | | | | | **$ 7,895.00** |
| 6/2/2020 | 92421 | Rock Hill Used Cars | 94518081 | 357 | WO | DIS | AU | Wire | | Other | Other | N | $ 360.40 |
| **Total Receipt # 94518081** | | | | | | | | | | | | | **$ 360.40** |
| **Total Date 6/2/2020** | | | | | | | | | | | | | **$ 8,255.40** |
| 6/3/2020 | 92421 | Rock Hill Used Cars | 94538805 | 276 | WO | DIS | AU | Wire | | Other | Other | N | $ 8,170.00 |
| **Total Receipt # 94538805** | | | | | | | | | | | | | **$ 8,170.00** |
| **Total Date 6/3/2020** | | | | | | | | | | | | | **$ 8,170.00** |
| 6/8/2020 | 92421 | Rock Hill Used Cars | 94663820 | 348 | WO | DIS | AU | Wire | | Other | Other | N | $ 786.00 |
| **Total Receipt # 94663820** | | | | | | | | | | | | | **$ 786.00** |

Report ID:  OP011

Appendix 54

**Payment Received Report without Payment Detail**

**Division:** Multiple Selected   **Region:** Multiple Selected   **Market:** Multiple Selected

**Business Number:** 92421   **Start Date:** 5/1/2020   **End Date:** 8/25/2021

**Payment Method:** Multiple Selected   **Finance Program Type:** Multiple Selected

**Dealer Statuses:**   **Voided:** Non Voided   **User:** ALL

**Data Classification:** Confidential
For more information, click on or copy and paste this link https://coxautoinc.sharepoint.com/sites/service-enterprise-risk-security/SitePages/Cox-Automotive-Security-Policies.aspx and review Information Security Policy and Standards PDF file.

| Posted Date | Dlr # | Dealer Name | Receipt # | Stk # | FS | VS | TL | Payment Method | Chk # | Payment Via | Initiated From | Void | Amount Applied |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/8/2020 | 92421 | Rock Hill Used Cars | 94669064 | 274 | WO | DIS | AU | Wire | | Other | Other | N | $ 8,315.00 |
| | | | | 330 | WO | DIS | AU | Wire | | Other | Other | N | $ 4,596.30 |
| **Total Receipt # 94669064** | | | | | | | | | | | | | **$ 12,911.30** |
| **Total Date 6/8/2020** | | | | | | | | | | | | | **$ 13,697.30** |
| 6/10/2020 | 92421 | Rock Hill Used Cars | 94732910 | 284 | WO | DIS | AU | Wire | | Other | Other | N | $ 1,355.40 |
| | | | | 318 | WO | DIS | AU | Wire | | Other | Other | N | $ 3,685.40 |
| **Total Receipt # 94732910** | | | | | | | | | | | | | **$ 5,040.80** |
| **Total Date 6/10/2020** | | | | | | | | | | | | | **$ 5,040.80** |
| 6/11/2020 | 92421 | Rock Hill Used Cars | 94774232 | 347 | WO | DIS | AU | Wire | | Other | Other | N | $ 115.00 |
| **Total Receipt # 94774232** | | | | | | | | | | | | | **$ 115.00** |
| **Total Date 6/11/2020** | | | | | | | | | | | | | **$ 115.00** |
| 6/15/2020 | 92421 | Rock Hill Used Cars | 94855068 | 285 | WO | DIS | AU | Wire | | Other | Other | N | $ 815.00 |
| **Total Receipt # 94855068** | | | | | | | | | | | | | **$ 815.00** |
| 6/15/2020 | 92421 | Rock Hill Used Cars | 94875152 | 319 | WO | DIS | AU | Wire | | Other | Other | N | $ 6,895.00 |
| **Total Receipt # 94875152** | | | | | | | | | | | | | **$ 6,895.00** |
| **Total Date 6/15/2020** | | | | | | | | | | | | | **$ 7,710.00** |

Report ID:  OP011

Appendix 55

**Payment Received Report without Payment Detail**

**Division:** Multiple Selected     **Region:** Multiple Selected     **Market:** Multiple Selected

**Business Number:** 92421     **Start Date:** 5/1/2020     **End Date:** 8/25/2021

**Payment Method:** Multiple Selected     **Finance Program Type:** Multiple Selected

**Dealer Statuses:**     **Voided:** Non Voided     **User:** ALL

**Data Classification:** <span style="color:red">Confidential</span>
For more information, click on or copy and paste this link https://coxautoinc.sharepoint.com/sites/service-enterprise-risk-security/SitePages/Cox-Automotive-Security-Policies.aspx and review Information Security Policy and Standards PDF file.

| Posted Date | Dlr # | Dealer Name | Receipt # | Stk # | FS | VS | TL | Payment Method | Chk # | Payment Via | Initiated From | Void | Amount Applied |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/16/2020 | 92421 | Rock Hill Used Cars | 94897902 | 312 | WO | DIS | AU | Wire | | Other | Other | | $ 2,969.80 |
| | | | | 335 | WO | DIS | AU | Wire | | Other | Other | N | $ 14,866.00 |
| | | | | 343 | WO | DIS | AU | Wire | | Other | Other | N | $ 4,893.40 |
| | | | | 344 | WO | DIS | AU | Wire | | Other | Other | N | $ 4,115.40 |
| | | | | 355 | WO | DIS | AU | Wire | | Other | Other | N | $ 11,119.00 |
| **Total Receipt # 94897902** | | | | | | | | | | | | | **$ 37,963.60** |
| **Total Date 6/16/2020** | | | | | | | | | | | | | **$ 37,963.60** |
| 6/17/2020 | 92421 | Rock Hill Used Cars | 94927015 | 284 | WO | DIS | AU | Wire | | Other | Other | N | $ 115.60 |
| | | | | 326 | WO | DIS | AU | Wire | | Other | Other | N | $ 995.00 |
| | | | | 355 | WO | DIS | AU | Wire | | Other | Other | N | $ 147.00 |
| **Total Receipt # 94927015** | | | | | | | | | | | | | **$ 1,257.60** |
| **Total Date 6/17/2020** | | | | | | | | | | | | | **$ 1,257.60** |
| 6/19/2020 | 92421 | Rock Hill Used Cars | 94996500 | 345 | WO | DIS | AU | Wire | | Other | Other | N | $ 401.00 |
| **Total Receipt # 94996500** | | | | | | | | | | | | | **$ 401.00** |
| **Total Date 6/19/2020** | | | | | | | | | | | | | **$ 401.00** |
| 6/22/2020 | 92421 | Rock Hill Used Cars | 95040986 | 286 | WO | DIS | AU | Wire | | Other | Other | N | $ 986.00 |
| | | | | 321 | WO | DIS | AU | Wire | | Other | Other | N | $ 5,892.43 |
| **Total Receipt # 95040986** | | | | | | | | | | | | | **$ 6,878.43** |
| **Total Date 6/22/2020** | | | | | | | | | | | | | **$ 6,878.43** |

Report ID:  OP011

Appendix 56

**Payment Received Report without Payment Detail**

**Division:** Multiple Selected    **Region:** Multiple Selected    **Market:** Multiple Selected

**Business Number:** 92421    **Start Date:** 5/1/2020    **End Date:** 8/25/2021

**Payment Method:** Multiple Selected    **Finance Program Type:** Multiple Selected

**Dealer Statuses:** **Voided:** Non Voided    **User:** ALL

**Data Classification:** <span style="color:red">Confidential</span>
For more information, click on or copy and paste this link https://coxautoinc.sharepoint.com/sites/service-enterprise-risk-security/SitePages/Cox-Automotive-Security-Policies.aspx and review Information Security Policy and Standards PDF file.

| Posted Date | Dlr # | Dealer Name | Receipt # | Stk # | FS | VS | TL | Payment Method | Chk # | Payment Via | Initiated From | Void | Amount Applied |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/23/2020 | 92421 | Rock Hill Used Cars | 95080872 | 309 | WO | DIS | AU | Wire | | Other | Other | | $ 2,663.90 |
| | | | | 324 | WO | DIS | AU | Wire | | Other | Other | N | $ 11,053.00 |
| | | | | 327 | WO | DIS | AU | Wire | | Other | Other | N | $ 9,864.80 |
| | | | | 331 | WO | DIS | AU | Wire | | Other | Other | N | $ 3,723.40 |
| | | | | 349 | WO | DIS | AU | Wire | | Other | Other | N | $ 2,150.40 |
| **Total Receipt # 95080872** | | | | | | | | | | | | | **$ 29,455.50** |
| **Total Date 6/23/2020** | | | | | | | | | | | | | **$ 29,455.50** |
| 6/29/2020 | 92421 | Rock Hill Used Cars | 95220828 | 334 | WO | DIS | AU | Wire | | Other | Other | N | $ 9,176.57 |
| **Total Receipt # 95220828** | | | | | | | | | | | | | **$ 9,176.57** |
| **Total Date 6/29/2020** | | | | | | | | | | | | | **$ 9,176.57** |
| 6/30/2020 | 92421 | Rock Hill Used Cars | 95254836 | 322 | WO | DIS | AU | Wire | | Other | Other | N | $ 6,307.40 |
| | | | | 336 | WO | DIS | AU | Wire | | Other | Other | N | $ 2,350.00 |
| | | | | 337 | WO | DIS | AU | Wire | | Other | Other | N | $ 450.00 |
| **Total Receipt # 95254836** | | | | | | | | | | | | | **$ 9,107.40** |
| 6/30/2020 | 92421 | Rock Hill Used Cars | 95268557 | 334 | WO | DIS | AU | Wire | | Other | Other | N | $ 144.00 |
| **Total Receipt # 95268557** | | | | | | | | | | | | | **$ 144.00** |
| **Total Date 6/30/2020** | | | | | | | | | | | | | **$ 9,251.40** |
| 7/1/2020 | 92421 | Rock Hill Used Cars | 95285029 | 341 | WO | DIS | AU | Wire | | Other | Other | N | $ 4,050.40 |
| **Total Receipt # 95285029** | | | | | | | | | | | | | **$ 4,050.40** |
| **Total Date 7/1/2020** | | | | | | | | | | | | | **$ 4,050.40** |

Report ID:  OP011

Appendix 57

**Payment Received Report without Payment Detail**

**Division:** Multiple Selected   **Region:** Multiple Selected   **Market:** Multiple Selected

**Business Number:** 92421   **Start Date:** 5/1/2020   **End Date:** 8/25/2021

**Payment Method:** Multiple Selected   **Finance Program Type:** Multiple Selected

**Dealer Statuses:**   **Voided:** Non Voided   **User:** ALL

**Data Classification:** <span style="color:red">Confidential</span>
For more information, click on or copy and paste this link https://coxautoinc.sharepoint.com/sites/service-enterprise-risk-security/SitePages/Cox-Automotive-Security-Policies.aspx and review Information Security Policy and Standards PDF file.

| Posted Date | Dlr # | Dealer Name | Receipt # | Stk # | FS | VS | TL | Payment Method | Chk # | Payment Via | Initiated From | Void | Amount Applied |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/8/2020 | 92421 | Rock Hill Used Cars | 95444788 | 329 | WO | DIS | AU | Wire | | Other | Other | N | $ 2,051.00 |
| **Total Receipt # 95444788** | | | | | | | | | | | | | **$ 2,051.00** |
| **Total Date 7/8/2020** | | | | | | | | | | | | | **$ 2,051.00** |
| 7/9/2020 | 92421 | Rock Hill Used Cars | 95478765 | 326 | WO | DIS | AU | Wire | | Other | Other | N | $ 2,016.00 |
| **Total Receipt # 95478765** | | | | | | | | | | | | | **$ 2,016.00** |
| **Total Date 7/9/2020** | | | | | | | | | | | | | **$ 2,016.00** |
| 7/14/2020 | 92421 | Rock Hill Used Cars | 95591724 | 360 | WO | DIS | AU | Wire | | Other | Other | N | $ 8,089.00 |
| **Total Receipt # 95591724** | | | | | | | | | | | | | **$ 8,089.00** |
| 7/14/2020 | 92421 | Rock Hill Used Cars | 95596619 | 356 | WO | DIS | AU | Wire | | Other | Other | N | $ 686.00 |
| **Total Receipt # 95596619** | | | | | | | | | | | | | **$ 686.00** |
| **Total Date 7/14/2020** | | | | | | | | | | | | | **$ 8,775.00** |
| 7/23/2020 | 92421 | Rock Hill Used Cars | 95828582 | 316 | WO | DIS | AU | Wire | | Other | Other | N | $ 2,627.00 |
| **Total Receipt # 95828582** | | | | | | | | | | | | | **$ 2,627.00** |
| **Total Date 7/23/2020** | | | | | | | | | | | | | **$ 2,627.00** |
| 7/27/2020 | 92421 | Rock Hill Used Cars | 95889069 | 302 | WO | DIS | AU | Wire | | Other | Other | N | $ 9,561.00 |
| **Total Receipt # 95889069** | | | | | | | | | | | | | **$ 9,561.00** |
| **Total Date 7/27/2020** | | | | | | | | | | | | | **$ 9,561.00** |
| 7/30/2020 | 92421 | Rock Hill Used Cars | 95991739 | 351 | WO | DIS | AU | Wire | | Other | Other | N | $ 4,350.00 |

Report ID:  OP011

Appendix 58

| Posted Date | Dlr # | Dealer Name | Receipt # | Stk # | FS | VS | TL | Payment Method | Chk # | Payment Via | Initiated From | Void | Amount Applied |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Receipt # 95991739** | | | | | | | | | | | | | **$ 4,350.00** |
| **Total Date 7/30/2020** | | | | | | | | | | | | | **$ 4,350.00** |
| 9/1/2020 | 92421 | Rock Hill Used Cars | 96749292 | 317 | WO | DIS | AU | Wire | | Other | Other | N | $ 150.00 |
| | | | | 325 | WO | DIS | AU | Wire | | Other | Other | N | $ 5,250.00 |
| **Total Receipt # 96749292** | | | | | | | | | | | | | **$ 5,400.00** |
| **Total Date 9/1/2020** | | | | | | | | | | | | | **$ 5,400.00** |
| **TOTAL** | | | | | | | | | | | | | **$ 261,433.80** |

Page 7 of 7

Report ID:  OP011

Appendix 59

EXHIBIT
A-8

## UNIVERSAL FUNDING AGREEMENT

This Universal Funding Agreement (hereinafter referred to as the "Agreement") is made and entered into on this 27 day of September, 2010, by and among DEALER SERVICES CORPORATION (hereinafter referred to as "DSC"), and LAWTON CACHE AUTO AUCTION (hereinafter referred to as "Auction").

WHEREAS, Auction conducts the sale of Vehicles through its facility located in Lawton, OK; and

WHEREAS, DSC desires to allow Dealers (as defined below), to use their DSC Credit (as defined below) for purposes of financing their Vehicle (as defined below) purchases from Auction.

NOW, THEREFORE, in consideration of the premises and the mutual agreements and covenants set forth herein, and other good and valuable consideration, the undersigned hereby agree as follows:

1. Definitions.  Unless defined in this section or the context otherwise requires, all terms used herein which are defined in the Uniform Commercial Code shall have the meanings therein stated.

    a. "Advance" shall mean all loans or payments by DSC to Dealer or on Dealer's behalf to any third party.

    b. "Bill of Sale" shall mean the valid block ticket or other document generated by Auction evidencing the purchase of a Vehicle at a regularly scheduled Auction sales event and disclosing (i) the name, address and phone number for the buying Dealer and the seller; (ii) the signature of the buying Dealer and seller; (iii) the make, model, year, color, mileage and the entire vehicle identification number for the subject Vehicle; (iv) the sale date for the Subject Vehicle; (v) the sale price for the subject Vehicle; and (vi) each Auction charge for which Auction has requested to be funded in the subject Vehicle's Auction Payment.

    c. "Credit" shall mean that line of credit Dealer has been granted by DSC for purposes of financing its used Vehicle purchases.

    d. "Dealer" shall mean an individual or entity which holds a used vehicle dealers license and has been granted Credit by DSC.

    e. "DSC Number" shall mean the DSC assigned account number associated with a particular Dealer.

    f. "Auction Payment" shall mean the aggregate of the sale price of a Vehicle purchased by Dealer at a scheduled Auction sale and the related buyer's fee and post-sale inspection fee due Auction for any such Vehicle purchased at Auction by Dealer with Credit.

    g. "Inventory" shall mean all Dealer's Vehicles, Vehicle parts, other inventory and all additions, accessions, accessories, replacements, and proceeds thereof, now owned or hereafter acquired, held for sale or lease in the ordinary course of Dealer's business.

    h. "Person" shall mean any individual sole proprietorship, partnership, corporation, limited liability company, joint venture, association or estate.

    i. "Vehicle" shall mean any automobile, truck, boat, RV, powersports unit, or salvage Vehicle which Dealer purchases with Credit at Auction, and Auction requests DSC to remit the Auction Payment to Auction.

2.    Terms and Conditions.

a.    DSC shall have the sole right and discretion as to the terms and conditions for Dealer's Credit and the ultimate authority in the decision to grant Credit to any Dealer.

b.    Only DSC pre-approved and pre-registered Dealers and their representatives are authorized to purchase Vehicles with Credit.  Auction shall not allow unauthorized Persons to purchase Vehicles with Dealer's Credit.

c.    DSC shall not be required to approve any Advance request or fund an Auction Payment for a Vehicle purchased by a Dealer with Credit for any Vehicle with a sale price equal to or greater than $50,000 without Auction and Dealer obtaining prior written approval via email or facsimile from DSC to approve and fund such Advance.

d.    DSC may provide notice to Auction that a Dealer is in default of its DSC line of credit.  In the event DSC provides such notice of a default to Auction, Auction shall advise DSC whether the identified Dealer has any Inventory located at Auction's facility and whether the Auction is holding checks or drafts made payable to the Dealer for sold Inventory.  Auction shall tender such Inventory, checks or drafts to DSC upon DSC's request for turnover and agreement to indemnify and hold harmless Auction for Auction's compliance with DSC's request.

3.    Floorplanning and Funding Procedures.

a.    DSC shall have assigned each Dealer a DSC Number prior to Dealer making any purchases at Auction with Credit.  Prior to any such purchases with Credit, the Dealer shall have authorized Auction to use Dealer's DSC Number to verify Dealer's available Credit.  Auction may verify Dealer's available Credit by accessing Dealer's information online at www.discoverdsc.com and may print a report containing such information.  DSC agrees to pay Auction Payment up to and including the available amount of Credit showing on Dealer's account report at the time Auction verified Dealer's available Credit and for a 24 hour period thereafter.  In the event Auction permits Dealer to purchase a Vehicle with Credit without Auction verifying Dealer's Credit availability prior to the purchase, DSC reserves the right to refuse funding the Advance.

b.    Within 24 hours upon conclusion of the sale at which a Vehicle is purchased by Dealer with Credit, Auction shall go online to www.discoverdsc.com and enter, for each Subject Vehicle, (i) the Dealer's DSC Number; (ii) the Auction Payment; (iii) the entire identification number (VIN); (iv) the make, model, color and year;  (v) Auction's unique identity number for the Vehicle, (i.e., the last 6 numbers of the VIN, lot number or other); and (vi) the odometer reading.  DSC may but shall not be required to approve any Advance request by Dealer or fund an Auction Payment request by Auction for any Vehicle purchase made by Dealer where Auction fails to enter (i) the Dealer's DSC Number; (ii) the Auction Payment; (iii) the entire identification number (VIN); (iv) the make, model, color and year;  (v) Auction's unique identity number for the Vehicle, (i.e., the last 6 numbers of the VIN, lot number or other); and (vi) the odometer reading within 24 hours of the conclusion of the sale at which the purchase of the subject Vehicle was made.  Auction shall enter the certificate of title  number and State of issuance for each subject Vehicle at such time that Auction has acquired actual possession of the subject Vehicle's certificate of title.

c.    Auction shall have previously provided DSC with Auction's bank account information including the name of the bank, account number and routing number.  Upon satisfaction of all conditions required for funding a specific Vehicle purchased by Dealer with Credit pursuant to paragraph 3(b) above DSC shall ACH the Auction Payment for the subject Vehicle to Auction's designated account and provide Auction with a detailed description of the ACH transaction by making such information available online at www.discoverdsc.com.  Within seven (7) days from the date DSC funds Auction Payment to Auction's designated bank account, Auction is responsible for delivering via overnight FedEx, UPS, DHL or next day certified mail the subject Vehicle's certificate of title and related Bill of Sale for the transaction to the Dealer's assigned DSC branch

(or as otherwise directed by DSC pursuant to the notice provisions of this Agreement). In the event the subject Vehicle's certificate of title and related Bill of Sale for the transaction are not received by DSC within seven (7) days from the date DSC funds Auction Payment to Auction, DSC reserves the right to require the immediate return of such Auction Payment by Auction.

d.      The Certificate of Title for any Vehicle shall not be delivered directly to the purchasing Dealer under any circumstance. In the event the certificate of title for any Vehicle purchased by a Dealer with Credit for which the Auction Payment has been remitted to Auction is delivered directly to a purchasing Dealer by Auction, Auction shall return the Auction Payment within twenty-four (24) hours from demand by DSC. In the event the certificate of title for any Vehicle purchased by Dealer with Credit is delivered directly to a purchasing Dealer by Auction, DSC shall not be required to approve the Advance and remit the Auction Payment, regardless of Dealer's Credit availability at the time of the Vehicle Purchase.

e.      In the event a Vehicle that has been funded by DSC to Auction pursuant to this Agreement and has been subsequently voided due to arbitration or otherwise by Auction, Auction shall immediately, but in any event within 24 hours from the time the transaction was voided, notify DSC of the voided transaction. Auction shall within seven (7) days from the date of notification to DSC of the hereunto referenced voided transaction, return to DSC the Auction Payment remitted by DSC to Auction relating to the specific voided transaction.

f.      In the event DSC deems it necessary to withdraw a Dealer's Credit during an Auction sale, DSC must immediately, by telephone, facsimile or e-mail, notify the appropriate Auction personnel of such action. Upon receipt of such notice, Auction shall use its best efforts to notify Dealer of such withdrawal of Credit and prevent Dealer from further purchases with Credit. In any event, after receipt of such notice from DSC, Auction shall not issue gate passes to Dealer for Vehicles purchased with Credit regardless of whether the vehicle was purchased before or after notice to the Auction that the Dealer's Credit has been withdrawn unless approved by DSC prior to issuance of such gate pass.

4.      <u>Confidentiality</u>.

a.      DSC acknowledges that it could gain access to confidential information about Auction, the disclosure of which could substantially harm the business of Auction. DSC agrees not to disclose to any third party any confidential information about Auction which it receives from Auction.

b.      Auction acknowledges that it could gain access to confidential information about DSC, the disclosure of which could substantially harm the business of DSC. Auction agrees not to disclose to any third party any confidential information about DSC which it receives from DSC.

5.      <u>Auction Representations and Warranties</u>. Auction represents and warrants to DSC that with respect to each purchase of a Vehicle by a Dealer with Credit through Auction for which Auction requests the Auction Payment be funded by DSC to Auction that:

a.      Such Vehicle actually exists;

b.      Such Vehicle was the subject of an "across the block" sale at one of Auction's regularly scheduled sales, and such sale was conducted by Auction in the ordinary course of Auction's business;

c.      Such Vehicle is available immediately for the purchasing Dealer's actual possession;

d.      The certificate of title for such Vehicle is valid and is under the control of Auction on the day of funding;

e.      The Bill of Sale for such Vehicle accurately reflects (i) the name, address and phone number for the buying Dealer and the seller; (ii) the signature of the buying Dealer and seller; (iii) the make, model, year, color, mileage and the entire vehicle identification number for the subject Vehicle;

(iv) the sale date for the Subject Vehicle; (v) the sale price for the subject Vehicle; and (vi) each Auction charge for which Auction has requested to be funded in the subject Auction Payment.

    f.    The Dealer is not in the Auction Insurance Agency "KO" book at the time of Dealer's purchase of the Vehicle with Credit;

    g.    The Dealer is not materially in default of the terms and conditions of any agreement between Auction and Dealer at the time of Dealer's purchase of the Vehicle with Credit; and

    h.    Such vehicle is free of all Auction liens, security interests, and other encumbrances.

6.    <u>Termination</u>.

    a.    This Agreement may be terminated by either party giving thirty (30) days prior written notice to the other party.

    b.    Upon termination, the parties' obligations arising out of transactions consummated prior to termination shall survive.

7.    <u>Miscellaneous Provisions</u>.

    a.    The parties to this Agreement may not assign their respective rights, duties or obligations contained herein to any other Person, in whole or in part, without the prior written consent of the other party.  The parties shall not unreasonably withhold such written consent.

    b.    This Agreement and all its provisions shall be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, successors and permitted assigns and shall not benefit any person other than those enumerated above.

    c.    This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.

    d.    This Agreement is intended by the parties to be the final expression of their agreement with respect to the terms included in this Agreement and may not be contradicted by evidence of any prior or contemporaneous agreement.

    e.    This Agreement may not be modified or amended except by mutual letter of agreement signed by all parties.

    f.    Any provision of this Agreement that is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining provisions of this Agreement or affecting the validity or enforceability of any provision of this Agreement in any other jurisdiction.

    g.    This Agreement shall be governed by the laws of the State of Indiana.

    h.    All parties hereto shall be responsible for their own legal fees.

    i.    Unless otherwise provided for in this Agreement, all notices and other official communications given under this Agreement shall be in writing and shall be delivered in person, by certified mail, return receipt requested, postage prepaid, overnight courier or by confirmed facsimile transmission.  All notices to a party will be sent to the address set forth below or to such other addresses as such party may designate by notice to the other party hereunder.

To DSC:          Dealer Services Corporation
                 1320 City Center Dr., Suite 100
                 Carmel, IN 46032
                 Attn: CEO/President
                 Phone: (317) 571-3721
                 Facsimile: (317) 571-3737

To Auction:      **LAWTON CACHE AUTO AUCTION**
                 # 9 Southwest 112th St.

                 Lawton, OK 73505

                 Attn: _Lisa Druien_
                 Phone: (580) 536-4645
                 Fax:    (580) 536-4645

j.      Auction shall not use the name, logo, trade name, trademark or other proprietary indicia of DSC, except as herein provided, without DSC's prior written consent. Likewise, DSC shall not use Auction's name, logo, trade name, trademark or other proprietary indicia without its prior written consent.

k.      Headings have been inserted in the Agreement as a matter of convenience of reference only; such headings are not a part of the Agreement and shall not be used in the interpretation of this Agreement.

The parties are signing this Agreement as of the date first above written.

**DEALER SERVICES CORPORATION**               **LAWTON CACHE AUTO AUCTION**

By: _____            By: _____

Its: _____           Its: _____

Page 5 of 5

Appendix 64



CREDIT AUTHORIZATION TO
DEALER SERVICES CORPORATION FOR ACH DEPOSIT

## Facility Information

Name of Facility: **LAWTON CACHE AUTO AUCTION**

Address: **# 9 Southwest 112th St.**

City: **Lawton**     State: **OK**     Zip: **73505**

Phone Number: **(580) 536-4645**     Fax Number: (580) 536-4645

FEIN #: ███ 37 9     General Manager: Lise Druien

Website: Lawton Auto Auction . com     Email: Cleanlisa @ sw.rr.com

### Mailing Address (If Different from Above)

Mailing Address: #944 Same

City:     State:     Zip:

Phone Number:     Fax Number:

### Bank Information

Bank Name: First National Bank

Bank Address: 3801 Fairway Blvd

City: W. Chita Falls     State: Texas     Zip: 76310

Bank Phone Number: 940-696-3000     Bank Fax Number:

Contact at Bank: Jeanie

### Account Information

Full Account Name: Druien, Inc.     Account Type: Checking

Account Number: ███ 260

Routing Number: ███ 452

### Signature

**Facility desires to have and authorizes Dealer Services Corporation ("DSC") to initiate electronic credit entries, and if necessary, debit entries and adjustments for any credit entries in error to Facility's account listed below. This authorization will remain in effect until DSC receives written notice of termination from Facility. Facility authorizes DSC to stop any ACH to Facility's account without advance notice.**

I certify as the _(Vice President)_ of Facility that I am authorized to contract on the behalf of Facility and that all information provided is accurate.

Signature: _Lisa Druien_     Name (Printed): Lise Druien     Date: 9-27-10

The above information is a: ☐ Bank Account Change     ☐ Facility Address Change     ☐ Facility Phone/Fax Change



CERTIFICATE OF TITLE

## STATE OF OKLAHOMA

VEHICLE IDENTIFICATION NUMBER
3GNEC12T04G171303

YEAR
2004

MAKE
CHEV

TITLE NO.
810006241985

BODY TYPE
PK

MODEL
CAV

DATE 1st SOLD
26-Jan-2009

DATE ISSUED
07-Jan-2019

AGENT NO.
M0923

APPLICATION DATE
04-Jan-2019

ODOMETER
Exempt

TYPE OF TITLE
Transfer

DATE INS.
LOSS OR SALVAGE

NAME AND ADDRESS OF VEHICLE OWNER

KELLY LONG
11713 NW 116TH ST
YUKON OK 73099-8107

THIS VEHICLE IS SUBJECT TO THE FOLLOWING LIEN(S):

EXHIBIT
A-9

*It is hereby certified that according to the records of the Oklahoma Tax Commission, the person named hereon is the owner of the vehicle described above which is subject to a lien(s) as shown; however, the vehicle may be subject to other liens or security interests.*

CONTROL NO.
46639629

(This is not a title number)

ASSIGNMENT OF TITLE BY REGISTERED OWNER    (If Dealer, List License # Here: _____)

IF REGISTERED OWNER (SELLER) IS A LICENSED DEALER, PLACE OKLAHOMA MOTOR VEHICLE TAX STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): Mainer Ford

Purchaser(s) Complete Address: PO Box 834
Okarche, OK 73762

Actual Purchase Price of Vehicle: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐ 1. The odometer has exceeded its mechanical limits.
(NO TENTHS) ☐ 2. The odometer reading is NOT the actual mileage. Warning — Odometer Discrepancy

Signature of Seller(s): _____     Printed Name of Seller(s): Kelly Long

Subscribed and Sworn to Before me this ___ 8 ___ Day of ___ June ___, 20 19

Notary Public: _____ Commission Expiration: _____

Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.

Signature of Buyer(s): _____     Printed Name of Buyer(s): CHRISTI SANDERS

KATHY MARTINE
NOTARY
# 00019494
EXP. 11/22/20
STATE OF OKLAHOMA
PUBLIC

VOID IF ALTERED

## Ownership Transfer Information

Federal and state law requires that the odometer reading and its accuracy be disclosed upon every transfer of ownership of a motor vehicle unless otherwise exempted. Failure to complete or providing false information may result in fines and/or imprisonment.

The presence of any lien or encumbrance on this vehicle is to be so noted where indicated on the bottom of this page.

State law requires a transfer of ownership to be completed within thirty (30) days of acquiring ownership. Failure to do so subjects the owner or possessor to the assessment of delinquent penalties, as provided by law.

**ALL SELLERS SIGNATURES ON THIS DOCUMENT MUST BE SWORN TO BEFORE A NOTARY PUBLIC.**

### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER: *UD 2133*



I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate

Purchaser(s) Name (Type or Print): *Rock Hill Used Cars*

Purchaser(s) Complete Address: *549 I-30 East   Sulphur Springs TX  75482*

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

*exempt* (NO TENTHS)

☐ 1. The odometer has exceeded its mechanical limits.

☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s): *Christi Sander*   Printed Name of Seller(s): *CHRISTI SANDERS*

Subscribed and Sworn to Before me this *12* Day of *July*, 20 *19*

Notary Public: *Kathy Martin* _____ Commission Expiration: _____

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): _____   Printed Name of Buyer(s): _____

---

### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER: _____

PLACE OKLAHOMA
MOTOR VEHICLE TAX
STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): _____

Purchaser(s) Complete Address: _____

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

(NO TENTHS)

☐ 1. The odometer has exceeded its mechanical limits.

☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s): _____   Printed Name of Seller(s): _____

Subscribed and Sworn to Before me this _____ Day of _____, 20 ____

Notary Public: _____ Commission Expiration: _____

*Affix Notary Seal / Stamp Here*

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): _____   Printed Name of Buyer(s): _____

---

### LIENHOLDER INFORMATION

Any active lien or encumbrance against this vehicle is to be described below. Any active lien reflected on the face of this certificate will carry forward to any subsequent Oklahoma title issued unless a proper release of lien has been executed.

LIENHOLDER NAME: _____   DATE OF LIEN: _____

LIENHOLDER ADDRESS / CITY / STATE / ZIP: _____

Appendix 67

Lawton Cache Auto Auction

**INVOICE & BILL OF SALE**
580-536-4645
Print Date: 8/15/2019
Print Time: 11:59 AM

1 Southwest 112th St.
Lawton, OK 73505

ANNOUNCED CONDITIONS OR COMMENTS:

UNIT#   010

| BUYER(Purchaser) :P-109420    376 | Seller    UD2133 | SALE#:    36483 |
|---|---|---|
| Mike   Garrison    903-440-5557 | UD2133 Mainer Ford | DATE:    8/14/19 |
| Rock Hill Used Cars | Christi Sanders | STATUS:    SLD |
| 549 Interstate 30 East | PO Box 834 | DRIVE:    Green |
| Sulphur Springs, TX 75482 | Okarche, OK 73762 | LANE |

**VEHICLE DESCRIPTION**

SERIAL   3GNEC12T04G171303    171303
ODOMETER STATUS
YEAR   2004    MAKE   CHEVROLE
MODEL   AVALANCHE    BODY   WAGON
COLOR   Blue    RADIO
LICENSE    FUEL   Diesel
TITLE    TRANS AUTO

| | SALE PRICE: | 11,000 |
|---|---|---|
| | BUYER FEE: | 230.00 |
| | DRAFT FEE: | |
| | SALES TAX | |
| | TOTAL DUE: | 11,230.00 |
| | PAID: | 11,230.00 |
| BALANCE: | | $0.00 |
| PD BY:FI NEXTGEAR | | |

ODOMETER DISCLOSURE STATEMENT

**Federal law (and state law, if applicable) requires**   that you state the
mileage upon transfer of ownership. Failure to complete or providing
a false statement may result in fines and/or imprisonment.

I _____   state that the odometer
*(Transferor's /seller hand printed name)*

(Of the vehicle herein described) now reads   **71430**   miles and to the
best of my knowledge, it reflects the actual mileage of the vehicle, unless
one of the following statements is checked.

☐ (1) I hereby certify that to the best of my knowledge the odometer reading
reflects the amount of mileage in excess of its mechanical limits.
☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.
**WARNING - ODOMETER DISCREPANCY.**

Transferor's (Seller) signature _____

Transferee's (buyer) signature _____

Transferee's (buyer) signature _____

Printed name of person(buyer) signing _____

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto
Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the
sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely
a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is
expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase.
The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller
warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree
that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.
Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with
cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total
daily.
.



LAWTON AUTO AUCTION
1 SW 112 St.
Lawton, OK 73505



OKLAHOMA CITY OK 730

15 AUG 2019 PM 4 L

Nextgear - Funding Service
1320 City Center Dr. Suite 100 A
Carmel, Indiana
46032

46032-381599

# CERTIFICATE OF TITLE

## STATE OF OKLAHOMA

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | | TITLE NO. |
|---|---|---|---|---|
| 1FDAF57R48EB34427 | 2008 | FORD | | 810006408904 |

| BODY TYPE | MODEL | | DATE 1st SOLD | DATE ISSUED |
|---|---|---|---|---|
| CB | F5D | | 18-Oct-2007 | 11-Mar-2019 |

| AGENT NO. | | APPLICATION DATE | ODOMETER | TYPE OF TITLE |
|---|---|---|---|---|
| M3219 | | 08-Mar-2019 | Exempt | Transfer |

DATE INS.
LOSS OR SALVAGE

NAME AND ADDRESS OF VEHICLE OWNER

MAINER FORD
PO BOX 3177
MCALESTER OK 74502-3177

THIS VEHICLE IS SUBJECT TO THE FOLLOWING LIEN (S):

*It is hereby certified that according to the records of the Oklahoma Tax Commission, the person named hereon is the owner of the vehicle described above which is subject to a lien(s) as shown; however, the vehicle may be subject to other liens or security interests.*

CONTROL NO.
46895304

(This is not a title number)

### ASSIGNMENT OF TITLE BY REGISTERED OWNER    (If Dealer, List License # Here: W23316    )

IF REGISTERED OWNER (SELLER) IS A LICENSED DEALER, PLACE OKLAHOMA MOTOR VEHICLE TAX STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): Big Dawg Motorz

Purchaser(s) Complete Address: 210 Main St. D Hotsprings AR, 7501

Actual Purchase Price of Vehicle: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐ 1. The odometer has exceeded its mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. Warning — Odometer discrepancy

₤ ¥ 5 m p T (NO TENTHS)

Signature of Seller(s): _____    Printed Name of Seller(s): Jason B_____

Subscribed and Sworn to before me this ___14___ Day of ___March___, 20_19_

Notary Public: Bri D Choggins    Commission Expiration: _____

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): Kyle ur    Printed Name of Buyer(s): Kyle ur A5

BRI SCHOGGINS
NOTARY
# 14006526
EXP. 07/24/22
PUBLIC
STATE OF OKLAHOMA

**VOID IF ALTERED**

Appendix 70

## Ownership Transfer Information

Federal and state law requires that the odometer reading and its accuracy be disclosed upon every transfer of ownership of a motor vehicle unless otherwise exempted. Failure to complete or providing false information may result in fines and/or imprisonment.

The presence of any lien or encumbrance on this vehicle is to be so noted where indicated on the bottom of this page.

State law requires a transfer of ownership to be completed within thirty (30) days of acquiring ownership. Failure to do so subjects the owner or possessor to the assessment of delinquent penalties, as provided by law.

**ALL SELLERS SIGNATURES ON THIS DOCUMENT MUST BE SWORN TO BEFORE A NOTARY PUBLIC.**

### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER: 1WD3316

OKLAHOMA
MOTOR VEHICLE
$3.50
TAX STAMP
2288787

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): Foothill Used Cars

Purchaser(s) Complete Address: 519  I-30 Sulphur Springs TX 75482

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

[ 1 4 5 4 0 1 ]   (NO TENTHS)

[ ] 1. The odometer has exceeded its mechanical limits.
[ ] 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s): _____   Printed Name of Seller(s): Shawn Bail

Subscribed and Sworn to Before me this  15  Day of  April , 20 19

Notary Public: Ben Schoggins  Commission Expiration: _____

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

BEN SCHOGGINS
NOTARY
# 14096528
EXP 07/24/22
Notary Seal
STATE OF OKLAHOMA
PUBLIC

Signature of Buyer(s): _____   Printed Name of Buyer(s): _____

### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER: _____

PLACE OKLAHOMA
MOTOR VEHICLE TAX
STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): _____

Purchaser(s) Complete Address: _____

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

[ ][ ][ ][ ][ ][ ]   (NO TENTHS)

[ ] 1. The odometer has exceeded its mechanical limits.
[ ] 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s): _____   Printed Name of Seller(s): _____

Subscribed and Sworn to Before me this _____ Day of_____, 20_____

Notary Public: _____ Commission Expiration: _____

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Affix
Notary Seal / Stamp
Here

Signature of Buyer(s): _____   Printed Name of Buyer(s): _____

### LIENHOLDER INFORMATION

Any active lien or encumbrance against this vehicle is to be described below. Any active lien reflected on the face of this certificate will carry forward to any subsequent Oklahoma title issued unless a proper release of lien has been executed.

LIENHOLDER NAME: _____   DATE OF LIEN: _____

LIENHOLDER ADDRESS / CITY / STATE / ZIP: _____

Lawton Cache Auto Auction

**INVOICE & BILL OF SALE**
580-536-4645
Print Date:  10/17/2019
Print Time:  1:57 PM

1 Southwest 112th St.
Lawton, OK 73505

ANNOUNCED CONDITIONS OR COMMENTS:

UNIT#    030

| BUYER(Purchaser) :P-109420    376 | Seller        M-7119 | SALE#:       37723 |
|---|---|---|
| Mike  Garrison                903-440-5557 | M-7119  Big Dawg Motors | DATE:      10/16/19 |
| Rock Hill Used Cars | Kyle Way | STATUS:       SLD |
| 549 Interstate 30 East | 236 Main St | DRIVE:      Yellow |
| Sulphur Springs, TX 75482 | Hot Springs, AR | LANE |

**VEHICLE DESCRIPTION**

ODOMETER DISCLOSURE STATEMENT

SERIAL   1FDAF57R48EB34427        B34427
ODOMETER STATUS
YEAR     2008              MAKE   FORD
MODEL    SUPER DUTY F BODY
COLOR    White             RADIO
LICENSE                    FUEL    Diesel
TITLE                      TRANS  AUTO

**Federal law (and state law, if applicable) requires**   that you state the
mileage upon transfer of ownership. Failure to complete or providing
a false statement may result in fines and/or imprisonment.

I _____ state that the odometer
*(Transferor's /seller hand printed name)*

(Of the vehicle herein described) now reads   **199211**   miles and to the
best of my knowledge, it reflects the actual mileage of the vehicle, unless
one of the following statements is checked.

| | SALE PRICE:    28,500 |
|---|---|
| | BUYER FEE:    490.00 |
| | DRAFT FEE: |
| | SALES TAX |
| | TOTAL DUE:   28,990.00 |
| | PAID: |
| | BALANCE:   $28,990.00 |
| | PD BY: |

☐ (1) I hereby certify that to the best of my knowledge the odometer reading
reflects the amount of mileage in excess of its mechanical limits.
☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.
**WARNING - ODOMETER DISCREPANCY.**

Transferor's (Seller) signature _____

Transferee's (buyer) signature _____

Transferee's (buyer) signature _____

Printed name of person(buyer) signing _____

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase. The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.
Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total daily.



**LAWTON AUTO AUCTION**
1 SW 112 St.
Lawton, OK 73505



OKLAHOMA CITY
OK 730
18 OCT '19
PM 5 L



Next gear
1320 City Center Drive, Ste100A
Carmel, IN 46032

46032-381599



# CERTIFICATE OF TITLE

## STATE OF OKLAHOMA

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | TITLE NO. |
|---|---|---|---|
| 1GDJ5C1114F500844 | 2004 | GMC | 726304117001A |

| BODY TYPE | MODEL | DATE 1st SOLD | DATE ISSUED |
|---|---|---|---|
| CB | C5C | 03/31/2004 | 07/24/2004 |

| AGENT NO. | ODOMETER | TYPE OF TITLE |
|---|---|---|
| 7263 | 900 | TRANSFER |
| | ACTUAL | |

DATE INS.
LOSS OR SALVAGE

NAME AND ADDRESS OF VEHICLE OWNER

ROBERT J. &/OR JEAN A. JOHNSON
DBA/JOHNSON MACHINE INC.
PO BOX 324
OWASSO         OK  74055-0324

THIS VEHICLE IS SUBJECT TO THE FOLLOWING LIEN(S):

04/01/2004 09:25 GMAC

*It is hereby certified that according to the records of the Oklahoma Tax Commission, the person named hereon is the owner of the vehicle described above which is subject to a lien(s) as shown; however, the vehicle may be subject to other liens or security interests.*

CONTROL NO.          042067263A3397

25422260
(This is not a title number)

VOID IF ALTERED

Federal law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement ma[...] [...] in fines or imprisonment.

**IMPORTANT NOTICE**

Each person, except a licensed used car dealer, is required by law to obtain a transfer title in his name within THIRTY days after acquiring ownership or possession of this vehicle. Failure to do so subjects the owner or possessor to a fine and a penalty.

Assignment below positively must be signed and sworn to before a NOTARY PUBLIC.

**ASSIGNMENT OF TITLE BY REGISTERED OWNER**

USE ONLY IF DEALER ASSIGNMENT

PLACE OKLAHOMA MOTOR VEHICLE TAX STAMP IN THIS SPACE

I/we hereby assign and warrant title of the vehicle described on the reverse side of this certificate subject to the following liens or encumbrances, if any, and none other.

PURCHASERS NAME (TYPE OR PRINT) BIG DAWG MOTOrS

PURCHASERS ADDRESS 22 mAin ST HoT SPrings AR, CITY ST ZIP

LIEN HOLDER DATE OF LIEN

LIEN HOLDER ADDRESS     CITY     ST.     ZIP

I certify to the best of my knowledge that the ODOMETER READING is the ACTUAL MILEAGE of the vehicle unless one of the following statements is checked:

ODOMETER READING: E X E , M A T   ☐ NO TENTHS

☐ 1. The amount of mileage stated is in excess of mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. WARNING-ODOMETER DISCREPANCY.

**ACTUAL SELLING PRICE** $

SIGNATURE(S) of Buyer(s): _____ of Seller(s) _____
PRINTED NAME: of Buyer(s): Kyle wny    of Seller(s) Robert Jomes

Subscribed and sworn to before me this _____ day of _____

My Commission Expires _____

NOTARY PUBLIC

**RE-ASSIGNMENT BY OKLAHOMA DEALER**

NO. _____

PLACE OKLAHOMA MOTOR VEHICLE TAX STAMP IN THIS SPACE

I/we hereby assign and warrant title of the vehicle described on the reverse side of this certificate subject to the following liens or encumbrances, if any, and none other.

PURCHASERS NAME (TYPE OR PRINT) ROCK Hill USED CARS

PURCHASERS ADDRESS 1-30 Sulphur Springs TX 75482 CITY ST ZIP

LIEN HOLDER     DATE OF LIEN

LIEN HOLDER ADDRESS     CITY     ST.     ZIP

I certify to the best of my knowledge that the ODOMETER READING is the ACTUAL MILEAGE of the vehicle unless one of the following statements is checked:

ODOMETER READING: E X E , M P T   ☐ NO TENTHS

☐ 1. The amount of mileage stated is in excess of mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. WARNING-ODOMETER DISCREPANCY.

**ACTUAL SELLING PRICE** $

SIGNATURE(S) of Buyer(s): _____ of Seller(s) Kyle wny
PRINTED NAME: of Buyer(s): _____ of Seller(s) Kyle WAy

Subscribed and sworn to before me this _____ day of _____

My Commission Expires _____

NOTARY PUBLIC

**RE-ASSIGNMENT BY OKLAHOMA DEALER**

NO. _____

PLACE OKLAHOMA MOTOR VEHICLE TAX STAMP IN THIS SPACE

I/we hereby assign and warrant title of the vehicle described on the reverse side of this certificate subject to the following liens or encumbrances, if any, and none other.

PURCHASERS NAME (TYPE OR PRINT)

PURCHASERS ADDRESS     CITY     ST.     ZIP.

LIEN HOLDER     DATE OF LIEN

LIEN HOLDER ADDRESS     CITY     ST.     ZIP

I certify to the best of my knowledge that the ODOMETER READING is the ACTUAL MILEAGE of the vehicle unless one of the following statements is checked:

ODOMETER READING: _____ , _____   ☐ NO TENTHS

☐ 1. The amount of mileage stated is in excess of mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. WARNING-ODOMETER DISCREPANCY.

**ACTUAL SELLING PRICE** $

SIGNATURE(S) of Buyer(s): _____ of Seller(s) _____
PRINTED NAME: of Buyer(s): _____ of Seller(s) _____

Subscribed and sworn to before me this _____ day of _____

My Commission Expires _____

NOTARY PUBLIC

Appendix 76

| DEBTOR NAMES AND ADDRESSES *(Last Name First)* | SECURED PARTY NAME AND ADDRESS | OKLAHOMA TAX COMMISSION USE ONLY |
|---|---|---|

Johnson, Jean A.
304 E. 19th
Owasso, OK    74055

Rush Truck Center
6015 S. 49th W. Ave.
Tulsa, OK    741072

MOTOR LICENSE AGENT USE ONLY

| DATE L.E.F. RECEIVED | TIME RECEIVED | ☒ A.M. |
|---|---|---|
| 4 1 2004 | ☒ 9:25 | ☐ P.M. |

**THIS LIEN FORM COVERS THE FOLLOWING VEHICLE:**

RECEIPT NUMBER

040927251A5188

| DATE OF SECURITY AGREEMENT | ORIGINAL OKLAHOMA TITLE NO. | VEHICLE IDENTIFICATION NO. (V.I.N.) |
|---|---|---|
| 03/31/04 | MSO | 1GDJ5C1114F500844 |

MOTOR LICENSE AGENT *(Identification/Signature)*

040927251A5188

| MODEL YEAR | MAKE AND MODEL | | BODY TYPE |
|---|---|---|---|
| 2004 | GMC | TC5C042 | Regular Cab |

BILLIE GIVENS 7251PJ

**DEAR CUSTOMER:**

We have released the lien on your vehicle described above, as of the "Release Effective Date" shown by my signature, and have advised the Oklahoma Tax Commission of this Release. To obtain a new Certificate of Title, with our lien omitted, please take this Release and your present Title to you local Motor License Agent. The Motor License Agent will issue a new Certificate of Title to you, for which there will be a small fee.

Please call if you should have any questions concerning this Release.

REPRESENTING THE SECURED PARTY

GMAC

RELEASE EFFECTIVE DATE

1/20/09

X _____

ASSIGNEE OF SECURED PARTY AND ADDRESS

GMAC
P.O. Box 8102
Cockeysville, MD    21030

**ENCLOSURES**

☐ CERTIFICATE OF TITLE
☐ APPLICATION FOR TITLE
☐ MANUFACTURER'S STATEMENT OF ORIGIN (M.S.O.)
☐ FEE

**SECURED PARTY/ASSIGNEE SIGNATURES**

Rush Truck Center

By: _____
Representing Secured Parties or Assignee

Date Executed

03/31/04

**LIEN ENTRY FORM — MOTOR VEHICLE — OKLAHOMA**

COPY 4: LIEN RELEASE - FROM SECURED PARTY TO DEBTOR

Form Approved by Oklahoma Tax Commission 7/79

Appendix 77

'Lawton'Cache Auto Auction

*Title*

**INVOICE & BILL OF SALE**
580-536-4645
Print Date: 10/22/2019
Print Time: 2:22 PM

1 Southwest 112th St.
Lawton, OK 73505

ANNOUNCED CONDITIONS OR COMMENTS:

UNIT#   009

| BUYER(Purchaser) :P-109420   376 | Seller     P-109420 | SALE#:   37728 |
|---|---|---|
| Mike  Garrison          903-440-5557 | P-109420  Rock Hill Used Cars | DATE:   10/16/19 |
| Rock Hill Used Cars | Mike Garrison | STATUS:   SLD |
| 549 Interstate 30 East | 549 Interstate 30 East | DRIVE:   Green |
| Sulphur Springs, TX 75482 | Sulphur Springs, TX 75482 | LANE |

**VEHICLE DESCRIPTION**

ODOMETER DISCLOSURE STATEMENT

SERIAL   1CDJ5C1114F500844          500844
ODOMETER STATUS

| YEAR | 2004 | MAKE | GMC |
|---|---|---|---|
| MODEL | C5C | BODY | |
| COLOR | WHITE | RADIO | |
| LICENSE | | FUEL | Diesel |
| TITLE | | TRANS | AUTO |

**Federal law (and state law, if applicable) requires** that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I _____ state that the odometer
*(Transferor's /seller hand printed name)*

(Of the vehicle herein described) now reads   62400     miles and to the best of my knowledge,  it reflects the actual mileage of the vehicle, unless one of the following statements is checked.

| | SALE PRICE: | 33,900 |
|---|---|---|
| | BUYER FEE: | 570.00 |
| | DRAFT FEE: | |
| | SALES TAX | |
| | TOTAL DUE: | 34,470.00 |
| | PAID: | 34,470.00 |
| | BALANCE: | $0.00 |
| | PD BY:FI NEXT | |

☐ (1) I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.
☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.
**WARNING - ODOMETER DISCREPANCY.**

Transferor's (Seller) signature _____

Transferee's (buyer) signature _____

Transferee's (buyer) signature _____

Printed name of person(buyer) signing _____

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase. The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.
Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total daily.
.

# TEXAS CERTIFICATE OF TITLE

VEHICLE TITLES AND REGISTRATION DIVISION

91914519

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 1FTSX20R19EA01706 | 2009 | FORD | PK |

TITLE/DOCUMENT NUMBER     DATE TITLE ISSUED

16300140021141318   08/13/2009

| MODEL | MFG. CAPACITY IN TONS | WEIGHT | LICENSE NUMBER |
|---|---|---|---|
|  | 3/4 | 6800 | 0564AD |

PREVIOUS OWNER

CHAPARRAL FORD INC DEVINE TX

ODOMETER READING

322

OWNER      REMARK(S)

W M LEASING OF TEXAS, L.P.
10701 TODD RD
HOUSTON, TX 77002

ACTUAL MILEAGE
DIESEL

X _____

SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE.

| DATE OF LIEN | 1ST LIENHOLDER |
|---|---|

**NONE**

1ST LIEN RELEASED _____

BY _____
AUTHORIZED AGENT

| DATE OF LIEN | 2ND LIENHOLDER |
|---|---|

2ND LIEN RELEASED _____
DATE

BY _____
AUTHORIZED AGENT

| DATE OF LIEN | 3RD LIENHOLDER |
|---|---|

3RD LIEN RELEASED _____
DATE

BY _____
AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS.

**RIGHTS OF SURVIVORSHIP AGREEMENT**
WE, THE PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY, AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE AGREEMENT, THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S).

| SIGNATURE | DATE |
|---|---|
| SIGNATURE | DATE |
| SIGNATURE | DATE |

FORM 30-C REV. 6/2009     DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.

Appendix 81

**WHEN VEHICLE IS SOLD, TITLE HOLDER MUST ASSIGN AND FURNISH THIS TITLE, CURRENT LICENSE RECEIPT, AND SIGNED APPLICATION FOR TITLE (FORM 130-U) INDICATING DATE OF SALE AND SALES PRICE TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR-COLLECTOR WITHIN 20 WORKING DAYS TO AVOID PENALTY.**

► **FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.**

**ASSIGNMENT OF TITLE**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Frontera Truck Parts & Equipment, Inc   3116 S Hwy 77   Waxahachie TX 75165
Name of Purchaser                          Street            City            State      Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
330,337
OODMETER READING (No Tenths)    ☐ 1. The mileage stated is in excess of its mechanical limits.
                                ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale  11.26.18

Signature of Seller/Agent                   Robert C Ivan
                                            Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Kalien Thomas
Signature of Buyer/Agent                     Kalien Thomas
                                            Printed Name (same as signature)

**FIRST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Frontera Vehicle Sales & Parts Inc   3030 S Hwy 77   Waxahachie TX 70167
Name of Purchaser                       Street           City           State     Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
330,337
ODOMETER READING (No Tenths)    ☐ 1. The mileage stated is in excess of its mechanical limits.
                                ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale  11.26.18   Frontera Truck Parts & Equipment, Inc   Dealer No. P121786
                         Dealer's Name

Kalien Thomas
Agent's Signature                            Kalien Thomas
                                            Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent                     Printed Name (same as signature)

**SECOND REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Rock Hill Used Cars
Name of Purchaser          Street            City           State     Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
330469
ODOMETER READING (No Tenths)    ☐ 1. The mileage stated is in excess of its mechanical limits.
                                ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale  5/3/19   Frontera Vehicle Sales & Parts Inc   Dealer No. 148883
                       Dealer's Name

Klaus
Agent's Signature                            Klaus
                                            Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent                     Printed Name (same as signature)

**THIRD REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser          Street            City           State     Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
ODOMETER READING (No Tenths)    ☐ 1. The mileage stated is in excess of its mechanical limits.
                                ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale                                              Dealer No.
                            Dealer's Name

Agent's Signature                            Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent                     Printed Name (same as signature)

**LIEN**

LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
1ST LIEN IN FAVOR OF (NAME & ADDRESS)

Appendix 82

*Title*

Lawton Cache Auto Auction

**INVOICE & BILL OF SALE**
580-536-4645
Print Date:  10/22/2019
Print Time:  2:04 PM

1 Southwest 112th St.
Lawton, OK 73505

ANNOUNCED CONDITIONS OR COMMENTS:

UNIT#   010

| BUYER(Purchaser) :P-109420     376 | Seller        P148883 | SALE#:    37729 |
|---|---|---|
| Mike  Garrison                    903-440-5557 | P148883  Frontera Vehicle Sales & Parts | DATE:    10/16/19 |
| Rock Hill Used Cars | Charles Klaus | STATUS:    SLD |
| 549 Interstate 30 East | 3030 S Hwy 77 | DRIVE:    Green |
| Sulphur Springs, TX 75482 | Waxahachie, TX 75165 | LANE |

**VEHICLE DESCRIPTION**

SERIAL   1FTSX20R19EA01706        A01706
ODOMETER STATUS
YEAR     2009          MAKE   FORD
MODEL    F250SD        BODY   SUPERC
COLOR    WHITE         RADIO
LICENSE                FUEL   Diesel
TITLE                  TRANS  AUTO

| | SALE PRICE: | 16,000 |
|---|---|---|
| | BUYER FEE: | 280.00 |
| | DRAFT FEE: | |
| | SALES TAX | |
| | TOTAL DUE: | 16,280.00 |
| | PAID: | 16,280.00 |
| | BALANCE: | $0.00 |
| | PD BY:FI NEXT | |

ODOMETER DISCLOSURE STATEMENT

**Federal law (and state law, if applicable) requires**   that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I _____ state that the odometer
*(Transferor's /seller hand printed name)*

(Of the vehicle herein described) now reads   **330469**   miles and to the best of my knowledge,  it reflects the actual mileage of the vehicle, unless one of the following statements is checked.

☐ (1) I hereby certify that to the best of my knowledge the odometer reading
        reflects the amount of mileage in excess of its mechanical limits.
☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.
        **WARNING - ODOMETER DISCREPANCY.**

Transferor's (Seller) signature _____

Transferee's (buyer) signature _____

Transferee's (buyer) signature _____

Printed name of person(buyer) signing _____

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase. The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller warrants that he/she has good negotiable title and that it is free and clear of all items or and encumbrances. Signatory parties agree that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser. Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total daily.

# CERTIFICATE OF TITLE

## STATE OF OKLAHOMA

| | | | |
|---|---|---|---|
| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | TITLE NO. |
| 1GNSCDFJ5BR260679 | 2011 | CHEV | 810006768663 |

| BODY TYPE | MODEL | | DATE 1st SOLD | DATE ISSUED |
|---|---|---|---|---|
| UT | CTA | | 27-Sep-2011 | 11-Jun-2019 |

| AGENT NO. | APPLICATION DATE | ODOMETER | TYPE OF TITLE |
|---|---|---|---|
| M8832 | 08-Jun-2019 | 118245 | Transfer |
| | | Actual | DATE INS. |
| | | | LOSS OR SALVAGE |

NAME AND ADDRESS OF VEHICLE OWNER

MAINER FORD OF BRISTOW
PO BOX 834
OKARCHE OK 73762-0834

THIS VEHICLE IS SUBJECT TO THE FOLLOWING LIEN(S):

*It is hereby certified that according to the records of the Oklahoma Tax Commission, the person named hereon is the owner of the vehicle described above which is subject to a lien(s) as shown; however, the vehicle may be subject to other liens or security interests.*

CONTROL NO.
47272167

(This is not a title number)

---

**ASSIGNMENT OF TITLE BY REGISTERED OWNER**  (If Dealer, List License # Here: UD 2133 )

OKLAHOMA
MOTOR VEHICLE
**$3.50**
TAX STAMP
2601424

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): Rock Hill Used Cars

Purchaser(s) Complete Address: 549 I-30 East   Sulphur Springs TX 75482

Actual Purchase Price of Vehicle: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

1 1 9 1 0 1 (NO TENTHS)

☐ 1. The odometer has exceeded its mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s): _Chris Sander_   Printed Name of Seller(s) CHRISN SANDERS

Subscribed and Sworn to Before me this _17_ Day of _June_, 20 _19_

Notary Public: _Kathy Martin_  Commission Expiration: _____

*Notarization required only if seller's signature(s). Affix notary seal/stamp to the right.*

KATHY MARTIN
NOTARY
# 06019494
EXP: 11/22/20
PUBLIC
OF OKLA

Signature of Buyer(s): _____   Printed Name of Buyer(s): _____

VOID IF ALTERED

Appendix 85

## Ownership Transfer Information

Federal and state law requires that the odometer reading and its accuracy be disclosed upon every transfer of ownership of a motor vehicle unless otherwise exempted. Failure to complete or providing false information may result in fines and/or imprisonment.

The presence of any lien or encumbrance on this vehicle is to be so noted where indicated on the bottom of this page.

State law requires a transfer of ownership to be completed within thirty (30) days of acquiring ownership. Failure to do so subjects the owner or possessor to the assessment of delinquent penalties, as provided by law.

**ALL SELLERS SIGNATURES ON THIS DOCUMENT MUST BE SWORN TO BEFORE A NOTARY PUBLIC.**

### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER:_____

| PLACE OKLAHOMA MOTOR VEHICLE TAX STAMP HERE | I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate. |

Purchaser(s) Name (Type or Print):_____

Purchaser(s) Complete Address:_____

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in:_____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐ 1. The odometer has exceeded its mechanical limits.
(NO TENTHS) ☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s):_____ Printed Name of Seller(s):_____

Subscribed and Sworn to Before me this _____ Day of_____, 20_____

Notary Public: _____ Commission Expiration:_____

| | Affix Notary Seal / Stamp Here |

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): _____ Printed Name of Buyer(s):_____

### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER:_____

| PLACE OKLAHOMA MOTOR VEHICLE TAX STAMP HERE | I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate. |

Purchaser(s) Name (Type or Print):_____

Purchaser(s) Complete Address:_____

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in:_____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐ 1. The odometer has exceeded its mechanical limits.
(NO TENTHS) ☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s):_____ Printed Name of Seller(s):_____

Subscribed and Sworn to Before me this _____ Day of_____, 20_____

Notary Public: _____ Commission Expiration:_____

| | Affix Notary Seal / Stamp Here |

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): _____ Printed Name of Buyer(s):_____

### LIENHOLDER INFORMATION

Any active lien or encumbrance against this vehicle is to be described below. Any active lien reflected on the face of this certificate will carry forward to any subsequent Oklahoma title issued unless a proper release of lien has been executed.

LIENHOLDER NAME: _____ DATE OF LIEN:_____

LIENHOLDER ADDRESS / CITY / STATE / ZIP:_____

Lawton Cache Auto Auction

**INVOICE & BILL OF SALE**
580-536-4645
Print Date:  11/05/2019
Print Time: 10:15 AM

1 Southwest 112th St.
Lawton, OK 73505

ANNOUNCED CONDITIONS OR COMMENTS:

UNIT#   034

| BUYER(Purchaser) :P-109420   376 | Seller   **UD2133** | SALE#:   38052 |
|---|---|---|
| Mike  Garrison                903-440-5557 | UD2133 Mainer Ford | DATE:   10/30/19 |
| Rock Hill Used Cars | Christi Sanders | STATUS:   SLD |
| 549 Interstate 30 East | PO Box 834 | DRIVE:   Green |
| Sulphur Springs, TX 75482 | Okarche, OK 73762 | LANE |

**VEHICLE DESCRIPTION**

ODOMETER DISCLOSURE STATEMENT

SERIAL   1GNSCDFJ5BR260679        260679
ODOMETER STATUS
YEAR     2011              MAKE   CHEVROLE'
MODEL    TAHOE             BODY   4D UTI
COLOR    Silver            RADIO
LICENSE                    FUEL   Diesel
TITLE                      TRANS  AUTO

| | SALE PRICE: | 25,500 |
|---|---|---|
| | BUYER FEE: | 440.00 |
| | DRAFT FEE: | |
| | SALES TAX | |
| | TOTAL DUE: | 25,940.00 |
| | PAID: | 25,940.00 |
| | BALANCE: | $0.00 |
| | PD BY:FI NEXT | |

**Federal law (and state law, if applicable) requires**   that you state the
mileage upon transfer of ownership. Failure to complete or providing
a false statement may result in fines and/or imprisonment.

I _____   state that the odometer
*(Transferor's /seller hand printed name)*

(Of the vehicle herein described) now reads   **118245**   miles and to the
best of my knowledge, it reflects the actual mileage of the vehicle, unless
one of the following statements is checked.

☐ (1) I hereby certify that to the best of my knowledge the odometer reading
    reflects the amount of mileage in excess of its mechanical limits.
☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.
    **WARNING - ODOMETER DISCREPANCY.**

Transferor's (Seller) signature _____

Transferee's (buyer) signature _____

Transferee's (buyer) signature _____

Printed name of person(buyer) signing _____

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto
Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the
sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely
a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is
expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase.
The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller
warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree
that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.
Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with
cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total
daily.

## STATE OF CALIFORNIA

### CERTIFICATE OF TITLE

VEHICLE HISTORY

·56316082725

COMMERCIAL

| VEHICLE ID NUMBER | | | YR MODEL | MAKE | PLATE NUMBER |
|---|---|---|---|---|---|
| 1FTSW31P04EA21086 | | | 2004 | FORD | 7H58975 |

| BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
|---|---|---|---|---|---|---|
| PK | 2 | 06781 | D | | $36 | 12/31/2018 |

| | YR 1ST SOLD | CLASS | *YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
|---|---|---|---|---|---|---|
| | 2003 | LQ | 2004 | ZV | | 08/27/18 |

MOTORCYCLE ENGINE NUMBER

ODOMETER DATE: 12/07/2003
ODOMETER READING: 53 MI
ACTUAL MILEAGE

REGISTERED OWNER(S)
MONTANARO DAVID J
1664 QUIET OAKS DR
ARROYO GRANDE CA 93420

I certify (or declare) under penalty of perjury under the laws of the State of California that THE SIGNATURE(S) BELOW RE ... S INTEREST IN THE VEHICLE.
1a. 8/29/18 DATE     X _Kira _____ SIGNATURE OF REGISTERED OWNER _Montanaro___

1b. _____ DATE     X _____ SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads ☐☐☐☐☐☐ (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

WARNING ☐ Odometer reading is not the actual mileage. ☐ Mileage exceeds the odometer mechanical limits.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S) |
|---|---|---|---|
| 8/29/18 | X _David Montanaro_ | | X |
| PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY | David J Montanaro | PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY | Rock Hill USED CARS |

#### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

2. X _____
Signature releases interest in vehicle. (Company names must be countersigned)
Release Date _____

012484   CA 183492167
REG. 17.30RS (REV 02/2016)

### KEEP IN A SAFE PLACE - VOID IF ALTERED

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW.

Appendix 88

## APPLICATION FOR TRANSFER BY NEW OWNER *(Please print or type.)*

Any change of registered owner or lienholder must be recorded with the Department of Motor Vehicles (DMV) within ten (10) days. The title, transfer fee and in most instances, use tax and a smog certificate must be presented to DMV to record the ownership change.

**NEW REGISTERED OWNER**

3a. TRUE FULL NAME(S) OF NEW REGISTERED OWNER(S) (LAST, FIRST, MIDDLE) AS IT APPEARS ON DRIVER'S LICENSE OR I.D. CARD

3b. ☐ AND   ☐ OR   (LAST, FIRST, MIDDLE)

4. RESIDENCE OR BUSINESS STREET ADDRESS                          APT./SP./STE. NUMBER

5. CITY                                                          STATE   ZIP CODE

6. COUNTY OF RESIDENCE OR COUNTY WHERE VEHICLE IS PRIMARILY GARAGED-OR-FOR TRAILER COACHES,ADDRESS OR LOCATION WHERE KEPT

7. MAILING ADDRESS STREET OR P.O. BOX NUMBER (DO NOT COMPLETE IF SAME AS RESIDENCE ABOVE)

8. CITY                                                          STATE   ZIP CODE

**OWNER**

If there is a mailing address entered on this form it is a valid, existing and accurate address. I consent to receive service of process at this mailing address pursuant to Code of Civil Procedure Sections 415.20(b), 415.30(a) and 416.90.
I declare under penalty of perjury under the laws of the State of California that the information entered on this application is true and correct.

| | | DRIVER LICENSE OR ID CARD NO. | PURCHASE DATE |
|---|---|---|---|
| 9a. DATE | SIGNATURE OF NEW REGISTERED OWNER X | | |
| 9b. DATE | SIGNATURE OF NEW REGISTERED OWNER X | DRIVER LICENSE OR ID CARD NO. | PURCHASE PRICE OR IF GIFT/SO STATE |

**LEASED VEH. ONLY**

10. ADDRESS OF NEW LESSEE IF DIFFERENT FROM LINE 4 ABOVE (WILL NOT BE PRINTED ON TITLE)

**NEW LIENHOLDER**

11. NAME OF LIENHOLDER – FIRM OR INDIVIDUAL HOLDING SECURITY INTEREST (IF NO LIEN, WRITE "NONE") DO NOT ENTER NAME OF REGISTERED OWNER(S) ABOVE ELECTRONIC LIENHOLDER ID

ELT #

12. STREET ADDRESS OR P.O. BOX NUMBER

13. CITY                                                         STATE   ZIP CODE

### TITLE REASSIGNMENTS BY LICENSED CALIFORNIA DEALERS

FEDERAL LAW REQUIRES that you state the mileage upon transfer of ownership. Failure to complete or making a false statement may result in fines and / or imprisonment.
The signature below releases my interest in this vehicle, acknowledges the odometer mileage recorded by the seller, and certifies to the odometer reading entered above my signature in compliance with Federal law.

**DEALER**

14. Odometer now reads: ☐☐☐,☐☐☐ (no tenths) miles, and to the best of my knowledge reflects the actual mileage of the vehicle unless one of the following statements is checked: **WARNING -** Mileage ☐ is not the actual mileage. ☐ exceeds the odometer mechanical limits.
I declare under penalty of perjury under the laws of the State of California that the information entered on this application is true and correct.

R/S NUMBER

| DATE | SIGNATURE OF AUTHORIZED AGENT X | PRINTED NAME OF AGENT | DEALER NAME | DEALER NUMBER |
|---|---|---|---|---|
| DATE | BUYER'S SIGNATURE, ACKNOWLEDGES ODOMETER READING X | PRINTED NAME OF BUYER OR AGENT | | SALESPERSON'S NUMBER |

**TRANSACTIONS ONLY**

| SOLD THROUGH AUCTION IF APPLICABLE | DATE OF AUCTION | AUCTION NAME | | DEALER NUMBER |
|---|---|---|---|---|

15. Odometer now reads: ☐☐☐,☐☐☐ (no tenths) miles, and to the best of my knowledge reflects the actual mileage of the vehicle unless one of the following statements is checked: **WARNING -** Mileage ☐ is not the actual mileage. ☐ exceeds the odometer mechanical limits.
I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

R/S NUMBER

| DATE | SIGNATURE OF AUTHORIZED AGENT X | PRINTED NAME OF AGENT | DEALER NAME | DEALER NUMBER |
|---|---|---|---|---|
| DATE | BUYER'S SIGNATURE, ACKNOWLEDGES ODOMETER READING X | PRINTED NAME OF BUYER OR AGENT | | SALESPERSON'S NUMBER |

16. Odometer now reads: ☐☐☐,☐☐☐ (no tenths) miles, and to the best of my knowledge reflects the actual mileage of the vehicle unless one of the following statements is checked: **WARNING -** Mileage ☐ is not the actual mileage. ☐ exceeds the odometer mechanical limits.
I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

R/S NUMBER

| DATE | SIGNATURE OF AUTHORIZED AGENT X | PRINTED NAME OF AGENT | DEALER NAME | DEALER NUMBER |
|---|---|---|---|---|
| DATE | BUYER'S SIGNATURE, ACKNOWLEDGES ODOMETER READING X | PRINTED NAME OF BUYER OR AGENT | | SALESPERSON'S NUMBER |

Appendix 89

Lawton Cache Auto Auction

**INVOICE & BILL OF SALE**
580-536-4645
Print Date: 11/25/2019
Print Time: 1:08 PM

1 Southwest 112th St.
Lawton, OK 73505

| ANNOUNCED CONDITIONS OR COMMENTS: | | UNIT# | 010 |
|---|---|---|---|

| BUYER(Purchaser) :P-109420   376 | Seller   **MO** | SALE#:   38501 |
|---|---|---|
| Mike  Garrison   903-440-5557 | MO  David Montanaro | DATE:   11/20/19 |
| Rock Hill Used Cars | David Montanaro | STATUS:   SLD |
| 549 Interstate 30 East | 1664 Quite Oaks Dr | DRIVE:   Yellow |
| Sulphur Springs, TX 75482 | Arroyo Grande Oaks Dr, CA 93420 | LANE |

| VEHICLE DESCRIPTION | ODOMETER DISCLOSURE STATEMENT |
|---|---|
| SERIAL   1FTSW31P04EA21086   A21086 | **Federal law (and state law, if applicable) requires**   that you state the |
| ODOMETER STATUS | mileage upon transfer of ownership. Failure to complete or providing |
| YEAR   2004   MAKE  FORD | a false statement may result in fines and/or imprisonment. |
| MODEL   F350 SUPER D   BODY   QUAD P | I _____   state that the odometer |
| COLOR   White   RADIO | *(Transferor's /seller hand printed name)* |
| LICENSE   FUEL   Diesel | (Of the vehicle herein described) now reads   137331   miles and to the |
| TITLE   TRANS  AUTO | best of my knowledge,  it reflects the actual mileage of the vehicle, unless |

| | | one of the following statements is checked. |
|---|---|---|
| | SALE PRICE:   16,500 | ☐ (1) I hereby certify that to the best of my knowledge the odometer reading |
| | BUYER FEE:   280.00 | reflects the amount of mileage in excess of its mechanical limits. |
| | DRAFT FEE: | ☐ (2) I hereby certify that the odometer reading is NOT the actual mileage. |
| | SALES TAX | **WARNING - ODOMETER DISCREPANCY.** |
| | | Transferor's (Seller) signature _____ |
| | TOTAL DUE:   16,780.00 | |
| | PAID:   16,780.00 | Transferee's (buyer) signature _____ |
| | BALANCE:   $0.00 | Transferee's (buyer) signature _____ |
| | PD BY:FI   NEXT | Printed name of person(buyer) signing _____ |

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase. The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.
Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total daily.

# CERTIFICATE OF TITLE

## STATE OF OKLAHOMA

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | TITLE NO. |
|---|---|---|---|
| 1H9CE53311A263507 | 2001 | HDAB | 810006948052 |

| BODY TYPE | MODEL | | DATE 1st SOLD | DATE ISSUED |
|---|---|---|---|---|
| TRL | 53' | | | 16-May-2019 |

| AGENT NO. | | APPLICATION DATE | ODOMETER | TYPE OF TITLE |
|---|---|---|---|---|
| M1617 | | 15-May-2019 | 0 | Original |
| | | | | DATE INS. LOSS OR SALVAGE |

**NAME AND ADDRESS OF VEHICLE OWNER**

LAWTON AUTO AUCTION
1 SW 112TH ST
LAWTON OK 73505-9553

THIS VEHICLE IS SUBJECT TO THE FOLLOWING LIEN(S):

*It is hereby certified that according to the records of the Oklahoma Tax Commission, the person named hereon is the owner of the vehicle described above which is subject to a lien(s) as shown; however, the vehicle may be subject to other liens or security interests.*

CONTROL NO.
47176640
(This is not a title number)

**ASSIGNMENT OF TITLE BY REGISTERED OWNER** (If Dealer, List License # Here: UD 7857 )

IF REGISTERED OWNER (SELLER) IS A LICENSED DEALER PLACE OKLAHOMA MOTOR VEHICLE TAX STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): Rockhill Used Cars

Purchaser(s) Complete Address: _____

Actual Purchase Price of Vehicle: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐ 1. The odometer has exceeded its mechanical limits.

(NO TENTHS) ☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s): Emmet ___   Printed Name of Seller(s): Emmet Druien

Subscribed and Sworn to Before me this   21   Day of   May   , 20 19

Notary Public: _____   Commission Expiration:   4-19-22

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): _____   Printed Name of Buyer(s): _____

LISA DRUIEN
NOTARY
#10003225
EXP. 4/19/2022
PUBLIC
STATE OF OKLAHOMA

VOID IF ALTERED

## Ownership Transfer Information

Federal and state law requires that the odometer reading and its accuracy be disclosed upon every transfer of ownership of a motor vehicle unless otherwise exempted. Failure to complete or providing false information may result in fines and/or imprisonment.

The presence of any lien or encumbrance on this vehicle is to be so noted where indicated on the bottom of this page.

State law requires a transfer of ownership to be completed within thirty (30) days of acquiring ownership. Failure to do so subjects the owner or possessor to the assessment of delinquent penalties, as provided by law.

**ALL SELLERS SIGNATURES ON THIS DOCUMENT MUST BE SWORN TO BEFORE A NOTARY PUBLIC.**

### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER: _____

PLACE OKLAHOMA
MOTOR VEHICLE TAX
STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): _____

Purchaser(s) Complete Address: _____

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐☐☐☐☐☐ (NO TENTHS)

☐ 1. The odometer has exceeded its mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. **Warning—Odometer Discrepancy**

Signature of Seller(s): _____     Printed Name of Seller(s): _____

Subscribed and Sworn to Before me this _____ Day of _____, 20____

Notary Public: _____ Commission Expiration: _____

*Affix
Notary Seal / Stamp
Here*

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): _____     Printed Name of Buyer(s): _____

### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER: _____

PLACE OKLAHOMA
MOTOR VEHICLE TAX
STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): _____

Purchaser(s) Complete Address: _____

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐☐☐☐☐☐ (NO TENTHS)

☐ 1. The odometer has exceeded its mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. **Warning—Odometer Discrepancy**

Signature of Seller(s): _____     Printed Name of Seller(s): _____

Subscribed and Sworn to Before me this _____ Day of _____, 20____

Notary Public: _____ Commission Expiration: _____

*Affix
Notary Seal / Stamp
Here*

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): _____     Printed Name of Buyer(s): _____

### LIENHOLDER INFORMATION

Any active lien or encumbrance against this vehicle is to be described below. Any active lien reflected on the face of this certificate will carry forward to any subsequent Oklahoma title issued unless a proper release of lien has been executed.

LIENHOLDER NAME: _____ DATE OF LIEN: _____

LIENHOLDER ADDRESS / CITY / STATE / ZIP: _____

Lawton Cache Auto Auction

**INVOICE & BILL OF SALE**
580-536-4645
Print Date:  12/02/2019
Print Time:  3:37 PM

1 Southwest 112th St.
Lawton, OK 73505

| ANNOUNCED CONDITIONS OR COMMENTS: | UNIT# | 105 |
|---|---|---|

| BUYER(Purchaser) :P-109420    376 | Seller    **UD-7857** | SALE#:   38053 |
|---|---|---|
| Mike  Garrison          903-440-5557 | UD-7857  Lawton Cache Auto Auction | DATE:   11/20/19 |
| Rock Hill Used Cars | Emmett Druien | STATUS:   SLD |
| 549 Interstate 30 East | 1 SW 112th Street | DRIVE:   Green |
| Sulphur Springs, TX 75482 | Lawton, OK 73505 | LANE |

**VEHICLE DESCRIPTION**

ODOMETER DISCLOSURE STATEMENT

| SERIAL   1H9CE53311A263507   263507 |
|---|
| ODOMETER STATUS |
| YEAR   2001        MAKE  HDAB |
| MODEL  53'         BODY   TRAILE |
| COLOR   Black      RADIO |
| LICENSE            FUEL |
| TITLE              TRANS |

| SALE PRICE: | 27,000 |
|---|---|
| BUYER FEE: | 480.00 |
| DRAFT FEE: | |
| SALES TAX | |
| TOTAL DUE: | 27,480.00 |
| PAID: | 27,480.00 |
| BALANCE: | $0.00 |
| PD BY:FI NEXT | |

**Federal law (and state law, if applicable) requires** that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I _____ state that the odometer
*(Transferor's /seller hand printed name)*

(Of the vehicle herein described) now reads _____ miles and to the best of my knowledge, it reflects the actual mileage of the vehicle, unless one of the following statements is checked.

☐ (1) I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.
☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.
**WARNING - ODOMETER DISCREPANCY.**

Transferor's (Seller) signature _____

Transferee's (buyer) signature _____

Transferee's (buyer) signature _____

Printed name of person(buyer) signing _____

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase. The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.
Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total daily.

.

# TEXAS CERTIFICATE OF TITLE

TEXAS DEPARTMENT OF MOTOR VEHICLES

**TxDMV**

14226 1036

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 1GRAA922XSB029801 | 1995 | GDAN | RF |

TITLE/DOCUMENT NUMBER                    DATE: TITLE ISSUED

03200043348153204 09/14/2018

| MODEL | MFG. CAPACITY IN TONS | WEIGHT | LICENSE NUMBER |
|---|---|---|---|
| 1GR | | 15790 | TONLY09 |

ODOMETER READING

PREVIOUS OWNER

PPC TRANSPORTATION CO PITTSBURG TX

OWNER                                    REMARK(S)

RHORY CHEYENNE WILSON
3950   FM 1735
MT PLEASANT, TX 75455

X _____
        SIGNATURE OF OWNER OR AGENT MUST BE IN INK.

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN
THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE
INFORMATION ON A CERTIFICATE OF TITLE.

DATE OF LIEN                              1ST LIENHOLDER

**NONE**

1ST LIEN RELEASED _____ DATE

BY _____
AUTHORIZED AGENT

DATE OF LIEN                              2ND LIENHOLDER

2ND LIEN RELEASED _____ DATE

BY _____
AUTHORIZED AGENT

DATE OF LIEN                              3RD LIENHOLDER

3RD LIEN RELEASED _____ DATE

BY _____
AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER
OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS.

RIGHTS OF SURVIVORSHIP AGREEMENT
WE, THE MARRIED PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY
AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS
CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY,
AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE
AGREEMENT, THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S).

| SIGNATURE | DATE |
|---|---|
| SIGNATURE | DATE |
| SIGNATURE | DATE |

FORM 30-C REV. 05/2018          DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.

Appendix 96

**WHEN VEHICLE IS SOLD, TITLE HOLDER MUST ASSIGN AND FURNISH THIS TITLE INDICATING A DATE OF SALE TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR-COLLECTOR WITHIN 30 DAYS TO AVOID PENALTY.**

14226103б

► **FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.**

## ASSIGNMENT OF TITLE

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Rock Hill Used Cars    549 Interstate 30    Sulphur Springs TX 75482

Name of Purchaser          Street          City          State          Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

Exempt

ODOMETER READING (No Tenths)

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale 12-11-2018

Signature of Seller/Agent          Rhory Wilson

Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

_____          _____
Signature of Buyer/Agent          Printed Name (same as signature)

## FIRST REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser          Street          City          State          Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING (No Tenths)

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale          Dealer No.

Dealer's Name

_____          _____
Agent's Signature          Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

_____          _____
Signature of Buyer/Agent          Printed Name (same as signature)

## SECOND REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser          Street          City          State          Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING (No Tenths)

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale          Dealer No.

Dealer's Name

_____          _____
Agent's Signature          Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

_____          _____
Signature of Buyer/Agent          Printed Name (same as signature)

## THIRD REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser          Street          City          State          Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING (No Tenths)

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale          Dealer No.

Dealer's Name

_____          _____
Agent's Signature          Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

_____          _____
Signature of Buyer/Agent          Printed Name (same as signature)

## LIEN

LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
1ST LIEN IN FAVOR OF (NAME & ADDRESS) _____

Appendix 97

Lawton Cache Auto Auction

**INVOICE & BILL OF SALE**
580-536-4645
Print Date:  12/02/2019
Print Time:  3:18 PM

1 Southwest 112th St.
Lawton, OK 73505

| ANNOUNCED CONDITIONS OR COMMENTS: | | UNIT# | **109** |
|---|---|---|---|

| BUYER(Purchaser) :P-109420       376 | Seller       **RHOR** | SALE#:       38504 |
|---|---|---|
| Mike   Garrison                       903-440-5557 | RHOR  Rhory Cheyenne Wilson | DATE:       11/27/19 |
| Rock Hill Used Cars | Rhory Wilson | STATUS:       SLD |
| 549 Interstate 30 East | 3950 Fm 1735 | DRIVE: |
| Sulphur Springs, TX 75482 | Mt Pleasant, TX 75455 | LANE |

| VEHICLE DESCRIPTION | | ODOMETER DISCLOSURE STATEMENT |
|---|---|---|
| SERIAL   1GRAA922XSB029801       029801 | | **Federal law (and state law, if applicable) requires**    that you state the |
| ODOMETER STATUS | | mileage upon transfer of ownership. Failure to complete or providing |
| YEAR     1995           MAKE   Gdan | | a false statement may result in fines and/or imprisonment. |
| MODEL   1GR            BODY   TRAILE | | I _____ state that the odometer |
| COLOR   White         RADIO | | *(Transferor's /seller hand printed name)* |
| LICENSE                FUEL | | (Of the vehicle herein described) now reads _____ miles and to the |
| TITLE                  TRANS | | best of my knowledge,  it reflects the actual mileage of the vehicle, unless |

| | | one of the following statements is checked. |
|---|---|---|
| SALE PRICE: | 16,000 | ☐ (1) I hereby certify that to the best of my knowledge the odometer reading |
| BUYER FEE: | 280.00 | reflects the amount of mileage in excess of its mechanical limits. |
| DRAFT FEE: | | ☐ (2) I hereby certify that the odometer reading is NOT the actual mileage. |
| SALES TAX | | **WARNING - ODOMETER DISCREPANCY.** |
| TOTAL DUE: | 16,280.00 | Transferor's (Seller) signature) _____ |
| PAID: | 16,280.00 | Transferee's (buyer) signature) _____ |
| BALANCE: | $0.00 | Transferee's (buyer) signature) _____ |
| PD BY:FI         NEXT | | Printed name of person(buyer) signing _____ |

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase. The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.
Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total daily.
.

# CERTIFICATE OF TITLE

## STATE OF OKLAHOMA

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | TITLE NO. |
|---|---|---|---|
| 3D7MX48CX7G723854 | 2007 | DODG | 251207026002B |

| BODY TYPE | MODEL | DATE 1st SOLD | DATE ISSUED |
|---|---|---|---|
| PK | SQ3 | 12/28/2006 | 12/07/2011 |

| AGENT NO. | ODOMETER | TYPE OF TITLE |
|---|---|---|
| 4918 | 162384 | TRANSFER |

DATE INS.
LOSS OR SALVAGE

NAME AND ADDRESS OF VEHICLE OWNER

INDUSTRIAL MAINTENANCE INC
330 S MILL ST
PRYOR          OK  74361-5218

THIS VEHICLE IS SUBJECT TO THE FOLLOWING LIEN(S):

*It is hereby certified that according to the records of the Oklahoma Tax Commission, the person named hereon is the owner of the vehicle described above which is subject to a lien(s) as shown; however, the vehicle may be subject to other liens or security interests.*

CONTROL NO. 113414918A7084

36123505

(This is not a title number.)

---

**ASSIGNMENT OF TITLE BY REGISTERED OWNER**   (If Dealer, List License # Here: *U-6026* )

IF REGISTERED OWNER (SELLER) IS A LICENSED DEALER, PLACE OKLAHOMA MOTOR VEHICLE TAX STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): *Pryor Consignment + Auto Sales*

Purchaser(s) Complete Address: *100 N Mill, Pryor Ok 74361*

Actual Purchase Price of Vehicle: *$5,000*

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐ 1. The odometer has exceeded its mechanical limits.

*Exempt* (NO TENTHS)   ☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s): *Chud Pt*   Printed Name of Seller(s): *Chud Peters (Bracket)*

Subscribed and Sworn to Before me this *22nd* Day of *November*, 20 *19*

Notary Public: *Katie Lanf*   Commission Expiration: *May 8, 2021*

KATIE LANTZ
Notary Public - State of Oklahoma
Commission Number 09008483
My Commission Expires May 8, 2021

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): *Chud Pt*   Printed Name of Buyer(s): *Chud Peters (Owners)*

## VOID IF ALTERED

Appendix 100

**Ownership Transfer Information**

Federal and state law requires that the odometer reading and its accuracy be disclosed upon every transfer of ownership of a motor vehicle unless otherwise exempted. Failure to complete or providing false information may result in fines and/or imprisonment.

The presence of any lien or encumbrance on this vehicle is to be so noted where indicated on the bottom of this page.

State law requires a transfer of ownership to be completed within thirty (30) days of acquiring ownership. Failure to do so subjects the owner or possessor to the assessment of delinquent penalties, as provided by law.

**ALL SELLERS SIGNATURES ON THIS DOCUMENT MUST BE SWORN TO BEFORE A NOTARY PUBLIC.**

**REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER:** _____

I/we hereby assign and warrant ownership of the vehicle described in this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

**Purchaser(s) Name** (Type or Print): *Rock Hill Used Cars*

**Purchaser(s) Complete Address:** _____

**Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in:** _____

OKLAHOMA MOTOR VEHICLE $3.50 TAX STAMP 2795425

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

E X E M P T  (NO TENTHS)

☐ 1. The odometer has exceeded its mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

**Signature of Seller(s):** _____   **Printed Name of Seller(s):** *Chad Peters*

Subscribed and Sworn to Before me this *22nd* Day of *November* 20 *19*

**Notary Public:** *Katie Lantz*   Commission Expiration: *May 8, 2021*

KATIE LANTZ
Notary Public in State of Oklahoma
Commission Number 09004093
My Commission Expires May 8, 2021

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

**Signature of Buyer(s):** _____   **Printed Name of Buyer(s):** _____

**REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER:** _____

PLACE OKLAHOMA MOTOR VEHICLE TAX STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described in this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

**Purchaser(s) Name** (Type or Print): _____

**Purchaser(s) Complete Address:** _____

**Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in:** _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

(NO TENTHS)

☐ 1. The odometer has exceeded its mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

**Signature of Seller(s):** _____   **Printed Name of Seller(s):** _____

Subscribed and Sworn to Before me this _____ Day of _____, 20 _____

**Notary Public:** _____   Commission Expiration: _____

*Affix Notary Seal / Stamp Here*

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

**Signature of Buyer(s):** _____   **Printed Name of Buyer(s):** _____

**LIENHOLDER INFORMATION**

Any active lien or encumbrance against this vehicle is to be described below. Any active lien reflected on the face of this certificate will carry forward to any subsequent Oklahoma title issued unless a proper release of lien has been executed.

**LIENHOLDER NAME:** _____   **DATE OF LIEN:** _____

**LIENHOLDER ADDRESS / CITY / STATE / ZIP:** _____

AFFIDAVIT OF FACT

TO WHOM IT MAY CONCERN:

YEAR _2007_ MAKE _Dodge_ MODEL _SD3_

TITLE # _251207026002B_ VIN # _3D7mx48cx7G723854_

REASON FOR ERROR

____ Seller signed name incorrectly

____ Seller signed title in wrong area

____ Seller assigned title to himself/herself

____ Purchaser name misspelled. Should be_____

____ Address was placed in lien holder's section

____ Seller placed name in lien holder's section. Seller has no security interest on this vehicle.

____ Assignment was placed in re-assignment section

____ Sale between _____ & _____ never took place. NO FRAUD INTENDED.

____ Date of sale was recorded in error. Correct date of sale should read _____.

____ OTHER _Address on 1st assignment entered in error with a mark over. Address should read- 111 N. Mill  Pryor, OK. 74361  No fraud intended_

DATE _11/22/19_ SIGNATURE(WITNESS) _Linda Carroll_

Subscribed and sworn to me before this _22_ day of _November, 2019_.

My commission expires _____ NOTARY _Mikki Cruz_

(SEAL)

Lawton Cache Auto Auction

**INVOICE & BILL OF SALE**
580-536-4645

1 Southwest 112th St.
Lawton, OK 73505

*Title*

Print Date:  12/05/2019
Print Time:  1:51 PM

| ANNOUNCED CONDITIONS OR COMMENTS: | | UNIT#    010 |
| --- | --- | --- |

| **BUYER(Purchaser) :**P-109420      376 | Seller        **UD-6026** | SALE#:     38711 |
| --- | --- | --- |
| Mike  Garrison                      903-440-5557 | UD-6026  Pryer Consignment & Auto Sales | DATE:    12/04/19 |
| Rock Hill Used Cars | Chad Peterson | STATUS:     SLD |
| 549 Interstate 30 East | 111 N Mill | DRIVE:     Green |
| Sulphur Springs, TX 75482 | Pryor, OK 79361 | LANE |

| **VEHICLE DESCRIPTION** | ODOMETER DISCLOSURE STATEMENT |
| --- | --- |
| SERIAL   3D7MX48CX7G723854      723854 | **Federal law (and state law, if applicable) requires**   that you state the |
| ODOMETER STATUS | mileage upon transfer of ownership. Failure to complete or providing |
| YEAR    2007        MAKE   DODGE | a false statement may result in fines and/or imprisonment. |
| MODEL   RAM 3500 QUA BODY   QUAD P | I _____ state that the odometer |
| COLOR    Black      RADIO | *(Transferor's /seller hand printed name)* |
| LICENSE              FUEL   Diesel | (Of the vehicle herein described) now reads   163406      miles and to the |
| TITLE                TRANS  AUTO | best of my knowledge,  it reflects the actual mileage of the vehicle, unless |

| | | |
| --- | --- | --- |
| | SALE PRICE:      19,000 | one of the following statements is checked.<br>☐ (1) I hereby certify that to the best of my knowledge the odometer reading |
| | BUYER FEE:        320.00 | reflects the amount of mileage in excess of its mechanical limits.<br>☐ (2) I hereby certify that the odometer reading is NOT the actual mileage. |
| | DRAFT FEE: | **WARNING - ODOMETER DISCREPANCY.** |
| | SALES TAX | Transferor's (Seller) signature _____ |
| | TOTAL DUE:   19,320.00 | Transferee's (buyer) signature _____ |
| | PAID:      19,320.00 | |
| | BALANCE:        $0.00 | Transferee's (buyer) signature _____ |
| | PD BY:FI<br>        NEXTGEAR | Printed name of person(buyer) signing _____ |

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase. The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.
Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total daily.
.

# CERTIFICATE OF TITLE

## STATE OF OKLAHOMA

| | | | |
|---|---|---|---|
| **VEHICLE IDENTIFICATION NUMBER**<br>1FT8W3DT0FEA26911 | **YEAR**<br>2015 | **MAKE**<br>FORD | **TITLE NO.**<br>810006944313 |
| **BODY TYPE**<br>PK | **MODEL**<br>F350 | **DATE 1st SOLD**<br>23-Jul-2014 | **DATE ISSUED**<br>23-May-2019 |
| **AGENT NO.**<br>M1612 | **APPLICATION DATE**<br>22-May-2019 | **ODOMETER**<br>5666<br>Actual | **TYPE OF TITLE**<br>Repo |
| | | | **DATE INS.<br>LOSS OR SALVAGE** |

**NAME AND ADDRESS OF VEHICLE OWNER**

SOUTHWEST OKLAHOMA FCU
1806 NW LIBERTY AVE
LAWTON OK 73507-5027

**THIS VEHICLE IS SUBJECT TO THE FOLLOWING LIEN(S):**

*It is hereby certified that according to the records of the Oklahoma Tax Commission, the person named hereon is the owner of the vehicle described above which is subject to a lien(s) as shown; however, the vehicle may be subject to other liens or security interests.*

**CONTROL NO.**
47202686
(This is not a title number)

---

**ASSIGNMENT OF TITLE BY REGISTERED OWNER**   (If Dealer, List License # Here: _____)

| IF REGISTERED OWNER (SELLER) IS A LICENSED DEALER, PLACE OKLAHOMA MOTOR VEHICLE TAX STAMP HERE | I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate. |
|---|---|

**Purchaser(s) Name** (Type or Print): Rock Hill Used Cars 5

**Purchaser(s) Complete Address:** 549 Interstate 30 East Sulphur Springs TX 75182

**Actual Purchase Price of Vehicle:** _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

| 1 | 4 | 4 | 8 | 8 | 3 | (NO TENTHS) |

☐ 1. The odometer has exceeded its mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

**Signature of Seller(s):** Lisa K Flores for SWOFCU   **Printed Name of Seller(s):** LISA K FLORES for SWOFCU

**Subscribed and Sworn to Before me this** 28 **Day of** June, 20 19

**Notary Public** Stephanie Jarvis **Commission Expiration** October 1, 2020

NOTARY PUBLIC State of Okla.
Stephanie R. Jarvis
Comm. # 12009310

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

**Signature of Buyer(s):** _____   **Printed Name of Buyer(s):** _____

**VOID IF ALTERED**

### Ownership Transfer Information

Federal and state law requires that the odometer reading and its accuracy be disclosed upon every transfer of ownership of a motor vehicle unless otherwise exempted. Failure to complete or providing false information may result in fines and/or imprisonment.

The presence of any lien or encumbrance on this vehicle is to be so noted where indicated on the bottom of this page.

State law requires a transfer of ownership to be completed within thirty (30) days of acquiring ownership. Failure to do so subjects the owner or possessor to the assessment of delinquent penalties, as provided by law.

**ALL SELLERS SIGNATURES ON THIS DOCUMENT MUST BE SWORN TO BEFORE A NOTARY PUBLIC.**

### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER: _____

PLACE OKLAHOMA
MOTOR VEHICLE TAX
STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): _____

Purchaser(s) Complete Address: _____

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐☐☐☐☐☐   (NO TENTHS)

☐ 1. The odometer has exceeded its mechanical limits.

☐ 2. The odometer reading is NOT the actual mileage. **Warning—Odometer Discrepancy**

Signature of Seller(s): _____         Printed Name of Seller(s): _____

Subscribed and Sworn to Before me this _____ Day of _____, 20____

Notary Public: _____ Commission Expiration: _____

*Affix Notary Seal / Stamp Here*

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): _____         Printed Name of Buyer(s): _____

### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER: _____

PLACE OKLAHOMA
MOTOR VEHICLE TAX
STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): _____

Purchaser(s) Complete Address: _____

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐☐☐☐☐☐   (NO TENTHS)

☐ 1. The odometer has exceeded its mechanical limits.

☐ 2. The odometer reading is NOT the actual mileage. **Warning—Odometer Discrepancy**

Signature of Seller(s): _____         Printed Name of Seller(s): _____

Subscribed and Sworn to Before me this _____ Day of _____, 20____

Notary Public: _____ Commission Expiration: _____

*Affix Notary Seal / Stamp Here*

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): _____         Printed Name of Buyer(s): _____

### LIENHOLDER INFORMATION

Any active lien or encumbrance against this vehicle is to be described below. Any active lien reflected on the face of this certificate will carry forward to any subsequent Oklahoma title issued unless a proper release of lien has been executed.

LIENHOLDER NAME: _____ DATE OF LIEN: _____

LIENHOLDER ADDRESS / CITY / STATE / ZIP: _____

Lawton Cache Auto Auction

**INVOICE & BILL OF SALE**
580-536-4645
Print Date: 12/19/2019
Print Time: 12:45 PM

1 Southwest 112th St.
Lawton, OK 73505

| ANNOUNCED CONDITIONS OR COMMENTS: | UNIT#   036 |
| --- | --- |
| | B01-000000-L |

| **BUYER(Purchaser) :**P-109420   376 | Seller     **UD-8299** | SALE#:   39043 |
| --- | --- | --- |
| Mike  Garrison   903-440-5557 | UD-8299  Southern Oklahoma Auto | DATE:   12/18/19 |
| Rock Hill Used Cars | Larry Berryhill | STATUS:   IN |
| 549 Interstate 30 East | 5625 W.Bdwy | DRIVE: |
| Sulphur Springs, TX 75482 | Ardmore, OK 73401 | LANE |

| **VEHICLE DESCRIPTION** | | ODOMETER DISCLOSURE STATEMENT |
| --- | --- | --- |
| SERIAL   1FT8W3DT0FEA26911   A26911 | | **Federal law (and state law, if applicable) requires**   that you state the |
| ODOMETER STATUS | | mileage upon transfer of ownership. Failure to complete or providing |
| YEAR   2015   MAKE  FORD | | a false statement may result in fines and/or imprisonment. |
| MODEL  F350SD   BODY  CREW C | | I _____   state that the odometer |
| COLOR   White   RADIO | | *(Transferor's /seller hand printed name)* |
| LICENSE   FUEL   Diesel | | (Of the vehicle herein described) now reads  **144823**   miles and to the |
| TITLE   TRANS AUTO | | best of my knowledge,  it reflects the actual mileage of the vehicle, unless |

| | SALE PRICE:   23,500 |
| --- | --- |
| | BUYER FEE:   440.00 |
| | DRAFT FEE: |
| | SALES TAX |
| | TOTAL DUE:  23,500.00 |
| | PAID:   23,500.00 |
| | BALANCE:   $0.00 |
| | PD BY:FI |
| | NEXT |

one of the following statements is checked.

☐ (1) I hereby certify that to the best of my knowledge the odometer reading
reflects the amount of mileage in excess of its mechanical limits.

☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.
**WARNING - ODOMETER DISCREPANCY.**

Transferor's (Seller) signature _____

Transferee's (buyer) signature _____

Transferee's (buyer) signature _____

Printed name of person(buyer) signing _____

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase. The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.

Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total daily.

.

Appendix 108

# CERTIFICATE OF TITLE

## STATE OF OKLAHOMA

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | | TITLE NO. |
|---|---|---|---|---|
| 3B7KC23C92M236518 | 2002 | DODG | | 810007855013 |

| BODY TYPE | MODEL | | DATE 1st SOLD | DATE ISSUED |
|---|---|---|---|---|
| PK | RAM 2500 | | | 17-Dec-2019 |

| AGENT NO. | COLOR | APPLICATION DATE | ODOMETER | TYPE OF TITLE |
|---|---|---|---|---|
| M8812 | Silver | 16-Dec-2019 | Exempt | Original |

DATE INS.
LOSS OR SALVAGE

NAME AND ADDRESS OF VEHICLE OWNER

CHACO'S AUTO SALES
244 S QUADRUM DR
OKLAHOMA CITY OK 73108-1101

THIS VEHICLE IS SUBJECT TO THE FOLLOWING LIEN(S):

*It is hereby certified that according to the records of the Oklahoma Tax Commission, the person named hereon is the owner of the vehicle described above which is subject to a lien(s) as shown; however, the vehicle may be subject to other liens or security interests.*

CONTROL NO.

**48030221**

(This is not a title number)

---

**ASSIGNMENT OF TITLE BY REGISTERED OWNER**   (If Dealer, List License # Here: _4399_   )

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

OKLAHOMA
MOTOR VEHICLE
**$3.50**
TAX STAMP
**2364646**

Purchaser(s) Name (Type or Print): *Rock Hill Used Cars*

Purchaser(s) Complete Address: *519 I·30 E    Sulphur Springs, TX*
*75483*

Actual Purchase Price of Vehicle: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

*exempt* (NO TENTHS)

☐ 1. The odometer has exceeded its mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s): _Mur ast_   Printed Name of Seller(s): *Matt Rene...*

Subscribed and Sworn to Before me this _31_ Day of _Dec._ , 20_19_

Notary Public: *Sandra Patton*   Commission Expiration: _11-20-19_

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): _____   Printed Name of Buyer(s): _____

SANDRA PATTON
NOTARY PUBLIC
STATE OF OKLAHOMA

**VOID IF ALTERED**

### Ownership Transfer Information

Federal and state law requires that the odometer reading and its accuracy be disclosed upon every transfer of ownership of a motor vehicle unless otherwise exempted. Failure to complete or providing false information may result in fines and/or imprisonment.

The presence of any lien or encumbrance on this vehicle is to be so noted where indicated on the bottom of this page.

State law requires a transfer of ownership to be completed within thirty (30) days of acquiring ownership. Failure to do so subjects the owner or possessor to the assessment of delinquent penalties, as provided by law.

**ALL SELLERS SIGNATURES ON THIS DOCUMENT MUST BE SWORN TO BEFORE A NOTARY PUBLIC.**

### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER:_____

PLACE OKLAHOMA
MOTOR VEHICLE TAX
STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print):_____

Purchaser(s) Complete Address:_____

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in:_____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐☐☐☐☐☐☐  (NO TENTHS)

☐ 1. The odometer has exceeded its mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. **Warning—Odometer Discrepancy**

Signature of Seller(s):_____   Printed Name of Seller(s):_____

Subscribed and Sworn to Before me this _____ Day of_____, 20_____

Notary Public:_____ Commission Expiration:_____

*Affix Notary Seal / Stamp Here*

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s):_____   Printed Name of Buyer(s):_____

### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER:_____

PLACE OKLAHOMA
MOTOR VEHICLE TAX
STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print):_____

Purchaser(s) Complete Address:_____

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in:_____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐☐☐☐☐☐☐  (NO TENTHS)

☐ 1. The odometer has exceeded its mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. **Warning—Odometer Discrepancy**

Signature of Seller(s):_____   Printed Name of Seller(s):_____

Subscribed and Sworn to Before me this _____ Day of_____, 20_____

Notary Public:_____ Commission Expiration:_____

*Affix Notary Seal / Stamp Here*

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s):_____   Printed Name of Buyer(s):_____

### LIENHOLDER INFORMATION

Any active lien or encumbrance against this vehicle is to be described below. Any active lien reflected on the face of this certificate will carry forward to any subsequent Oklahoma title issued unless a proper release of lien has been executed.

LIENHOLDER NAME:_____   DATE OF LIEN:_____

LIENHOLDER ADDRESS / CITY / STATE / ZIP:_____

Lawton Cache Auto Auction

**INVOICE & BILL OF SALE**
580-536-4645
Print Date: 1/06/2020
Print Time: 3:01 PM

1 Southwest 112th St.
Lawton, OK 73505

| ANNOUNCED CONDITIONS OR COMMENTS: | UNIT# | 024 |
|---|---|---|

| BUYER(Purchaser) :P-109420   376 | Seller   **UD-4299** | SALE#: | 39209 |
|---|---|---|---|
| Mike  Garrison   903-440-5557 | UD-4299  Chaco's Auto Sales | DATE: | 1/03/20 |
| Rock Hill Used Cars | Issac Machado | STATUS: | SLD |
| 549 Interstate 30 East | 1310 Sw 29th | DRIVE: | Green |
| Sulphur Springs, TX 75482 | Oklahoma City, OK 73119 | LANE | |

**VEHICLE DESCRIPTION**

ODOMETER DISCLOSURE STATEMENT

SERIAL   3B7KC23C92M236518   **236518**

**Federal law (and state law, if applicable) requires**   that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

ODOMETER STATUS

| YEAR | 2002 | MAKE | DODGE |
|---|---|---|---|
| MODEL | RAM 2500 QUA | BODY | QUAD C |
| COLOR | Silver | RADIO | |
| LICENSE | | FUEL | Diesel |
| TITLE | | TRANS | AUTO |

I _____   state that the odometer

*(Transferor's /seller hand printed name)*

(Of the vehicle herein described) now reads   **175468**   miles and to the best of my knowledge, it reflects the actual mileage of the vehicle, unless one of the following statements is checked.

| | SALE PRICE: | 14,900 |
|---|---|---|
| | BUYER FEE: | 270.00 |
| | DRAFT FEE: | |
| | SALES TAX | |
| | TOTAL DUE: | 15,170.00 |
| | PAID: | 15,170.00 |
| | BALANCE: | $0.00 |
| | PD BY:FI NEXT | |

☐ (1) I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.

☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.

**WARNING - ODOMETER DISCREPANCY.**

Transferor's (Seller) signature _____

Transferee's (buyer) signature _____

Transferee's (buyer) signature _____

Printed name of person(buyer) signing _____

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase. The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.
Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total daily.



# CERTIFICATE OF TITLE

## STATE OF OKLAHOMA

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | TITLE NO. |
|---|---|---|---|
| 1GCJK33D46F252242 | 2006 | CHEV | 810004540833 |

| BODY TYPE | MODEL | | |
|---|---|---|---|
| PK | SK3 | | |

**DATE 1st SOLD** 18-Jul-2006

**DATE ISSUED** 21-Dec-2017

AGENT NO.
M6114

ODOMETER

Exempt

TYPE OF TITLE
Transfer

DATE INS.
LOSS OR SALVAGE

NAME AND ADDRESS OF VEHICLE OWNER

JARED L LATTY
PO BOX 126
KIOWA OK 74553-0126

THIS VEHICLE IS SUBJECT TO THE FOLLOWING LIEN(S):

12/1/2017          THE BANK N.A.

*It is hereby certified that according to the records of the Oklahoma Tax Commission, the person named hereon is the owner of the vehicle described above which is subject to a lien(s) as shown; however, the vehicle may be subject to other liens or security interests.*

CONTROL NO.
45128527
(This is not a title number.)

ASSIGNMENT OF TITLE BY REGISTERED OWNER     (If Dealer, List License # Here: _____)

IF REGISTERED OWNER (SELLER) IS A LICENSED DEALER, PLACE OKLAHOMA MOTOR VEHICLE TAX STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): *Nix Auto Center*

Purchaser(s) Complete Address: *PO Box 1590 McAlester, OK 74502*

Actual Purchase Price of Vehicle: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐☐☐☐☐☐ (NO TENTHS)
☐ 1. The odometer has exceeded its mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s): *Jared Latty*          Printed Name of Seller(s): *Jared Latty*

Subscribed and Sworn to before me this ___3___ Day of _December_ , 20 _19_

JAY GIACOMO
Notary Public, State of Oklahoma

Notary Public: _____   Commission Expiration: _1-27-20_

Commission # 16001023
My Commission Expires Jan. 27, 202_

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): *Melinda Nix*          Printed Name of Buyer(s): *Melinda Nix*

## VOID IF ALTERED

Appendix 114

## Ownership Transfer Information

Federal and state law requires that the odometer reading and its accuracy be disclosed upon every transfer of ownership of a motor vehicle unless otherwise exempted. Failure to complete or providing false information may result in fines and/or imprisonment.

The presence of any lien or encumbrance on this vehicle is to be so noted where indicated on the bottom of this page.

State law requires a transfer of ownership to be completed within thirty (30) days of acquiring ownership. Failure to do so subjects the owner or possessor to the assessment of delinquent penalties, as provided by law.

**ALL SELLERS' SIGNATURES ON THIS DOCUMENT MUST BE SWORN TO BEFORE A NOTARY PUBLIC.**

REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER: _W02815_

> PLACE OKLAHOMA
> MOTOR VEHICLE TAX
> STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): _Rockhill Used Cars_

Purchaser(s) Complete Address: _549 I 30 East Sulfer Springs Tx 75482_

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐ 1. The odometer has exceeded its mechanical limits.

(NO TENTHS) ☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s): _Melinda_   Printed Name of Seller(s): _Melinda Nix_

Subscribed and Sworn to Before me this _23_ Day of _Dec_, 20 _19_

Notary Public _Jay Giacomo_ Commission Expiration: _1-27-20_

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

> JAY GIACOMO   Affix
> Notary Public, State of Oklahoma
> Commission # 16001023
> My Commission Expires Jan. 27, 2020

Signature of Buyer(s): _____   Printed Name of Buyer(s): _____

REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER: _____

> PLACE OKLAHOMA
> MOTOR VEHICLE TAX
> STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): _____

Purchaser(s) Complete Address: _____

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐ 1. The odometer has exceeded its mechanical limits.

(NO TENTHS) ☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s): _____   Printed Name of Seller(s): _____

Subscribed and Sworn to Before me this _____ Day of _____, 20 _____

Notary Public _____ Commission Expiration: _____

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

> Affix
> Notary Seal / Stamp
> Here

Signature of Buyer(s): _____   Printed Name of Buyer(s): _____

## LIENHOLDER INFORMATION

Any active lien or encumbrance against this vehicle is to be described below. Any active lien reflected on the face of this certificate will carry forward to any subsequent Oklahoma title issued unless a proper release of lien has been executed.

LIENHOLDER NAME: _____   DATE OF LIEN: _____

LIENHOLDER ADDRESS / CITY / STATE / ZIP: _____

OKLAHOMA TAX COMMISSION

LIEN HOLDERS RELEASE FORMS

L1924613344



VIN: 1GCJK33D46F252242

VEHYR: 2006    MAKE: CHEV    MODEL: SK3    BODY: PK

AGNT #: M6114

LIEN DATE: 12/01/2017

LIEN DEBTOR: LATTY,JARED L

LATTY,JARED L
367 CASON RD
KIOWA OK 74553

LIEN HOLDER: THE BANK N.A.

THE BANK N.A.
PO BOX 1067
MCALESTER OK 74502-1067

REF#: L1924613344

TO:    OKLAHOMA TAX COMMISSION
       MOTOR VEHICLE DIVISION
       P.O. BOX 269061
       OKLAHOMA CITY OK 73126



TO WHOM IT MAY CONCERN: WE HAVE RELEASED OUR SECURITY INTEREST IN THE MOTOR VEHICLE
DESCRIBED ABOVE, EFFECTIVE ON THE DATE WHICH APPEARS BY MY SIGNATURE. PLEASE REVISE YOUR
RECORDS TO REFLECT THIS RELEASE.
SIGNATURE OF REPRESENTATIVE OF SECURED PARTY

X _____*Christia Norton*_____          DATE _*12/6/19*_

**LENDER: TO ENSURE PROPER PROCESSING OF YOUR COMPLETED LIEN RELEASE,
PLEASE NOTE THE FOLLOWING.**

DO NOT ALTER THIS DOCUMENT

NO STAPLES

NO TAPE

NO FOREIGN FIXTURES OR ATTACHMENTS

NO WRITING OR MARKING
(OTHER THAN SIGNATURE AND DATE FOR RELEASE)

DO NOT ALTER THE SIZE OF THIS DOCUMENT

Lawton Cache Auto Auction

**INVOICE & BILL OF SALE**
580-536-4645
Print Date:  1/09/2020
Print Time:  3:51 PM

1 Southwest 112th St.
Lawton, OK 73505

| ANNOUNCED CONDITIONS OR COMMENTS: | UNIT# | 114 |
|---|---|---|

| BUYER(Purchaser) :P-109420    376 | Seller    **UD-2515** | SALE#:    39380 |
|---|---|---|
| Mike  Garrison              903-440-5557 | UD-2515  Nix Auto Center | DATE:    1/08/20 |
| Rock Hill Used Cars | Ruthie Fulton | STATUS:    SLD |
| 549 Interstate 30 East | P O Box 1590 | DRIVE: |
| Sulphur Springs, TX 75482 | Mcalester, OK 74802 | LANE |

**VEHICLE DESCRIPTION**

ODOMETER DISCLOSURE STATEMENT

SERIAL    1GCJK33D46F252242    **252242**

ODOMETER STATUS

| YEAR    2006 | MAKE    CHEVROLE |
|---|---|
| MODEL    SILVERADO | BODY    QUAD P |
| COLOR    Blue | RADIO |
| LICENSE | FUEL    Gas |
| TITLE | TRANS  AUTO |

**Federal law (and state law, if applicable) requires**    that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I _____ state that the odometer
*(Transferor's /seller hand printed name)*

(Of the vehicle herein described) now reads    **244120**    miles and to the best of my knowledge,  it reflects the actual mileage of the vehicle, unless one of the following statements is checked.

☐ (1) I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.

☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.
**WARNING - ODOMETER DISCREPANCY.**

| SALE PRICE: | 21,500 |
|---|---|
| BUYER FEE: | 440.00 |
| DRAFT FEE: | |
| SALES TAX | |
| TOTAL DUE: | 21,940.00 |
| PAID: | |
| BALANCE: | $21,940.00 |
| PD BY: | Next |

Transferor's (Seller) signature _____

Transferee's (buyer) signature _____

Transferee's (buyer) signature _____

Printed name of person(buyer) signing _____

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase. The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.
Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total daily.
.

# CERTIFICATE OF TITLE

| | | | |
|---|---|---|---|
| MVD-10030 REV. 02/06 | VEHICLE IDENTIFICATION NUMBER | TYPE OF TITLE<br>ORIGINAL | TITLE NUMBER |
| | **3D7TT2CT2BG511932** | | **13113703A602681** |

| | ENGINE OR OTHER I.D. NUMBER | PREVIOUS TITLE NUMBER AND STATE | 1ST REG. | DATE OF ISSUE |
|---|---|---|---|---|
| | | 110520GFE004911  NM | 2011 | 04/23/2013 |

| YEAR | MAKE | MODEL | BODY | CYLS. | DGVW | WT./WHEELS | TYPE OF FUEL | LIENS |
|---|---|---|---|---|---|---|---|---|
| 2011 | DODG | RPC | CW | 08 | 8510 | 6232 | GASOLINE | 1 |

| 1st LIENHOLDER (OR OWNER(S) IF NO LIEN) | LICENSE PLATE NUMBER(S) |
|---|---|
| MEMBERS FINANCIAL FCU | 825PKW |

| | | |
|---|---|---|
| PO BOX 9609<br>MIDLAND  TX  79708 | VEHICLE CLASS<br>TRUCK | CLERK<br>SLP |

| FILE DATE | MATURITY DATE | *ODOMETER & CODE | MH SIZE | CNTY. |
|---|---|---|---|---|
| 04/23/2013 | 06/26/2017 | 000005 AM | 00*000 | 00 |

REGISTERED OWNER(S)

MUNOZ JESSE

1106 E FIESTA

CARLSBAD  NM  88220

SECOND LIENHOLDER

00000

LOCATION OF MANUFACTURED HOME

*ODOMETER CODES: AM = ACTUAL VEHICLE MILEAGE. EL = MILEAGE IN EXCESS OF MECHANICAL LIMITS OR NM = NOT ACTUAL MILEAGE.WARNING-ODOMETER DISCREPANCY

**NOT A TITLE NO.**

**19602681**

| FILE DATE | MATURITY DATE |
|---|---|

DO NOT CARRY IN VEHICLE - KEEP IN SAFE PLACE. IMPORTANT: THERE IS AN ADDITIONAL STATUTORY FEE FOR FAILURE BY PURCHASER TO APPLY FOR TRANSFER WITHIN 30 DAYS FROM DATE OF SALE.

**DIRECTOR MVD**

**RELEASE OF LIEN** — I hereby certify, that interest in the vehicle described above on this Certificate of Title is hereby released.

Name of Lienholder:  **Members Financial FCU**

Full Signature of Authorized Agent

Date 5-12-2017

This Certificate of Title is evidence of legal ownership of the vehicle described above. Upon sale of this vehicle, this certificate must be properly assigned below and presented by the purchaser to the Motor Vehicle Division for transfer. The Division is not responsible for false or fraudulent statements made in connection with this Certificate of Title or held liable for recording errors.

**IMPORTANT:** Buyer (except for dealer) must apply to the Motor Vehicle Division within 30 days for transfer of title and registration. Federal and state law requires the seller (including dealers) to state the odometer mileage upon transfer of ownership. ANYONE CONVICTED OF A FALSE ODOMETER STATEMENT WILL BE SUBJECT TO FINES AND/OR IMPRISONMENT.

ASSIGNMENT OF TITLE FOR THE EXACT AMOUNT OF $ _____ I (we) hereby sell, assign,

transfer and convey this _17_ day of _July_ , YR _2019_ to

Buyer's Name(s) _Tate Branch Dodge_

Address _919 S First Street   Artesia NM 88210_

the vehicle described on the front side of this Certificate of title and warrant it at time of delivery to be free of any liens or encumbrances unless specified below.
IF NO LIEN, WRITE WORD "NONE".

Name & Address of Lienholder _NONE_

Lienholder No. (if any) _____ File Date _____ Maturity Date _____

ODOMETER DISCLOSURE STATEMENT: I (we) hereby certify that the ODOMETER READING of this vehicle is: _104352_ (NO TENTHS) miles and that stated mileage is (check one of the following): A ☐ the actual mileage OR B ☐ Mileage in excess of mechanical limits OR C ☐ NOT the actual mileage: WARNING-ODOMETER DISCREPANCY.

| Signature(s) | X _Jesse Munoz by PDH_ | Printed Name _Jesse Munoz by PDH_ |
|---|---|---|
| of Seller(s) | X | Printed Name |
| Signature(s) | X _____ AGT | Printed Name _Vincent Salas AGT_ |
| of Buyer(s) | X | Printed Name |

# NEW MEXICO MOTOR VEHICLE DIVISION

**NEW MEXICO MOTOR VEHICLE DIVISION** *(left vertical margin)*

**NEW MEXICO MOTOR VEHICLE DIVISION** *(right vertical margin)*

**FIRST REASSIGNMENT BY DEALER: FOR VALUE RECEIVED,** I hereby sell, reassign, transfer and convey this _26_ day of _Sept_ Yr. _2019_ to
Buyer's Name(s): _Austin Financial Services_
Address: _549 Interstate Highway 30   Sulphur Springs TX   75482_
the vehicle described on the front side of the Certificate of Title and warrant it at time of delivery to be free of any liens or encumbrances unless specified below. IF NO LIEN, WRITE WORD "NONE"

Name & Address
of Lienholder: _NONE_
Lienholder No. (if any)_____ File Date_____ Maturity Date_____
**ODOMETER DISCLOSURE STATEMENT:** I (we) hereby certify that the ODOMETER READING of this vehicle is _104354_ (NO TENTHS) miles and that stated mileage is (check one of the following): A.☐ The actual mileage OR B.☐ Mileage in excess of mechanical limits OR C.☐ NOT the actual mileage: WARNING ODOMETER DISCREPANCY.
Name of Dealership: _Lake Branch Dodge_
Signature of
Authorized Agent X_____ Printed Name _Vincent Sales_
Buyer's Signature X_____ Printed Name _JR Huff_

**SECOND REASSIGNMENT BY DEALER: FOR VALUE RECEIVED,** I hereby sell, reassign, transfer and convey this _28_ day of _Sept_ Yr. _2019_ to
Buyer's Name(s): _HiA DAWG MOTORS_
Address: _210 MAiN St   Hot springs AR_
the vehicle described on the front side of the Certificate of Title and warrant it at time of delivery to be free of any liens or encumbrances unless specified below. IF NO LIEN, WRITE WORD "NONE"

Name & Address
of Lienholder: _None_
Lienholder No. (if any)_____ File Date_____ Maturity Date_____
**ODOMETER DISCLOSURE STATEMENT:** I (we) hereby certify that the ODOMETER READING of this vehicle is _104354_ (NO TENTHS) miles and that stated mileage is (check one of the following): A.☐ The actual mileage OR B.☐ Mileage in excess of mechanical limits OR C.☐ NOT the actual mileage: WARNING ODOMETER DISCREPANCY.
Name of Dealership: _Austin Finansic)_
Signature of
Authorized Agent X_JR Huff_ Printed Name _JR HUFF_
Buyer's Signature X_Kyle Way_ Printed Name _Kyle WAy_

**THIRD REASSIGNMENT BY DEALER: FOR VALUE RECEIVED,** I hereby sell, reassign, transfer and convey this _____ day of _____ Yr. _____ to
Buyer's Name(s): _ROCK Hill USED CARS_
Address:_____
the vehicle described on the front side of the Certificate of Title and warrant it at time of delivery to be free of any liens or encumbrances unless specified below. IF NO LIEN, WRITE WORD "NONE"

Name & Address
of Lienholder:_____
Lienholder No. (if any)_____ File Date_____ Maturity Date_____
**ODOMETER DISCLOSURE STATEMENT:** I (we) hereby certify that the ODOMETER READING of this vehicle is _104360_ (NO TENTHS) miles and that stated mileage is (check one of the following): A.☐ The actual mileage OR B.☐ Mileage in excess of mechanical limits OR C.☐ NOT the actual mileage: WARNING ODOMETER DISCREPANCY.
Name of Dealership:_____
Signature of
Authorized Agent X_Kyle Way_ Printed Name _Kyle WAy_
Buyer's Signature X_____ Printed Name_____

**FOURTH REASSIGNMENT BY DEALER: FOR VALUE RECEIVED,** I hereby sell, reassign, transfer and convey this_____ day of_____ Yr._____ to
Buyer's Name(s):_____
Address:_____
the vehicle described on the front side of the Certificate of Title and warrant it at time of delivery to be free of any liens or encumbrances unless specified below. IF NO LIEN, WRITE WORD "NONE"

Name & Address
of Lienholder:_____
Lienholder No. (if any)_____ File Date_____ Maturity Date_____
**ODOMETER DISCLOSURE STATEMENT:** I (we) hereby certify that the ODOMETER READING of this vehicle is_____ (NO TENTHS) miles and that stated mileage is (check one of the following): A.☐ The actual mileage OR B.☐ Mileage in excess of mechanical limits OR C.☐ NOT the actual mileage: WARNING ODOMETER DISCREPANCY.
Name of Dealership:_____
Signature of
Authorized Agent X_____ Printed Name_____
Buyer's Signature X_____ Printed Name_____

**FIFTH REASSIGNMENT BY DEALER: FOR VALUE RECEIVED,** I hereby sell, reassign, transfer and convey this_____ day of_____ Yr._____ to
Buyer's Name(s):_____
Address:_____
the vehicle described on the front side of the Certificate of Title and warrant it at time of delivery to be free of any liens or encumbrances unless specified below. IF NO LIEN, WRITE WORD "NONE"

Name & Address
of Lienholder:_____
Lienholder No. (if any)_____ File Date_____ Maturity Date_____
**ODOMETER DISCLOSURE STATEMENT:** I (we) hereby certify that the ODOMETER READING of this vehicle is_____ (NO TENTHS) miles and that stated mileage is (check one of the following): A.☐ The actual mileage OR B.☐ Mileage in excess of mechanical limits OR C.☐ NOT the actual mileage: WARNING ODOMETER DISCREPANCY.
Name of Dealership:_____
Signature of
Authorized Agent X_____ Printed Name_____
Buyer's Signature X_____ Printed Name_____

**SIXTH REASSIGNMENT BY DEALER: FOR VALUE RECEIVED,** I hereby sell, reassign, transfer and convey this_____ day of_____ Yr._____ to
Buyer's Name(s):_____
Address:_____
the vehicle described on the front side of the Certificate of Title and warrant it at time of delivery to be free of any liens or encumbrances unless specified below. IF NO LIEN, WRITE WORD "NONE"

Name & Address
of Lienholder:_____
Lienholder No. (if any)_____ File Date_____ Maturity Date_____
**ODOMETER DISCLOSURE STATEMENT:** I (we) hereby certify that the ODOMETER READING of this vehicle is_____ (NO TENTHS) miles and that stated mileage is (check one of the following): A.☐ The actual mileage OR B.☐ Mileage in excess of mechanical limits OR C.☐ NOT the actual mileage: WARNING ODOMETER DISCREPANCY.
Name of Dealership:_____
Signature of
Authorized Agent X_____ Printed Name_____
Buyer's Signature X_____ Printed Name_____

**ANY ALTERATIONS OR ERASURES WILL VOID THIS TITLE**

Appendix 121

DEAL # 52975
STK # A1038                    CUST # 104170

## POWER OF ATTORNEY
## TO DISCLOSE MILEAGE AND ASSIGN TITLE

This form may only be used by dealers accepting a trade-in or to apply for a duplicate title. The original Power of Attorney must accompany the title and be submitted to the New Mexico Motor Vehicle Division or applicable state having jurisdiction. Failure to do so may result in fines and/or imprisonment. Dealer must retain a copy for five (5) years.

I/WE        Jessie  Munoz Hernandez

APPOINT,   (PRINT NAME OF ATTORNEY-IN-FACT)        Tate Branch Dodge Chrysler Jeep

WHOSE ADDRESS IS:   919 South First Street          Artesia           NM          88210
                    Street                          City              State       Zip Code

AS MY ATTORNEY-IN-FACT TO DISCLOSE THE MILEAGE ON THE VEHICLE DESCRIBED HEREIN AND ASSIGN TITLE TO DEALER INDICATED BELOW. THE POWER GRANTED BY THIS INSTRUMENT WILL BE REVOKED WHEN THE VEHICLE IS SOLD AT RETAIL.

| VEHICLE IDENTIFICATION NUMBER (VIN) | YEAR |
|---|---|
| 3D7TT2CT2BG511932 | 2011 |

| MAKE | MODEL | BODY TYPE |
|---|---|---|
| Ram | 2500 | Crew Cab 4WD |

## ODOMETER DISCLOSURE STATEMENT

**FEDERAL AND STATE LAW REQUIRES THE TRANSFEROR (SELLER) OF A VEHICLE TO STATE THE ODOMETER MILEAGE UPON TRANSFER OF OWNERSHIP. ANYONE CONVICTED OF A FRAUDULENT ODOMETER STATEMENT WILL BE SUBJECT TO FINES AND/OR IMPRISONMENT.**

I hereby certify that the odometer currently reads    104352    (no tenths) miles and to the best of my knowledge reflects the actual mileage (Code AM) of the vehicle described above unless one of the following is checked:   ☐ Mileage in excess of mechanical limits (Code EL) or   ☐ WARNING! Not the actual mileage - Odometer Discrepancy (Code NM).

Jessie  Munoz Hernandez          X                              07/17/2019
Printed Name of First Seller          Signature of First Seller          Date

                                 X
Printed Name of Second Seller (if Joint Ownership)    Signature of Second Seller       Date

1106 E Fiesta Dr                 Carlsbad          NM          88210
Sellers Street Address           City              State       Zip Code

OFFICIAL SEAL
SUBSCRIBED AND SWORN BEFORE ME THIS   17th   DAY OF   July   20 19
Isabel Vargas
NOTARY PUBLIC-State of New Mexico
My Commission Expires   10-10   20 21
MY COMMISSION EXPIRES              NOTARY PUBLIC

I certify that the mileage stated in this Power of Attorney Disclosure is greater than the mileage previously stated on the Certificate of Title.

Tate Branch Dodge Chrysler Jeep                              07/17/2019
PRINT DEALERSHIP NAME       SIGNATURE OF DEALER OR AUTHORIZED AGENT          DATE

WHITE COPY: New Mexico Motor Vehicle Division or applicable state having jurisdiction.   YELLOW COPY: Seller   PINK COPY: Dealer

ILAW   FORM NO. LAWNM-POA-CO (REV. 2/18)      THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR
The Reynolds and Reynolds Company   TO ORDER: www.reysource.com; 1-800-344-0996; fax 1-800-531-9055      FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

Appendix 122



Lawton Cache Auto Auction

**INVOICE & BILL OF SALE**
580-536-4645
Print Date:  1/09/2020
Print Time:  3:50 PM

1 Southwest 112th St.
Lawton, OK 73505

| ANNOUNCED CONDITIONS OR COMMENTS: | | UNIT#   150 |
|---|---|---|

| BUYER(Purchaser) :P-109420      376 | Seller      **M-7119** | SALE#:      39379 |
|---|---|---|
| Mike   Garrison                        903-440-5557 | M-7119  Big Dawg Motors | DATE:      1/08/20 |
| Rock Hill Used Cars | Kyle Way | STATUS:      SLD |
| 549 Interstate 30 East | 236 Main St | DRIVE: |
| Sulphur Springs, TX 75482 | Hot Springs, AR | LANE |

| VEHICLE DESCRIPTION | ODOMETER DISCLOSURE STATEMENT |
|---|---|

**VEHICLE DESCRIPTION**

SERIAL   3D7TT2CT2BG511932      **511932**
ODOMETER STATUS
YEAR     2011                  MAKE   DODGE
MODEL    RAM 2500              BODY   CREW C
COLOR    Gray                  RADIO
LICENSE                        FUEL   Gas
TITLE                          TRANS  AUTO

| | SALE PRICE:      22,500 |
|---|---|
| | BUYER FEE:      440.00 |
| | DRAFT FEE: |
| | SALES TAX |
| | TOTAL DUE:   22,940.00 |
| | PAID: |
| | BALANCE:     $22,940.00 |
| PD BY:   *Next* | |

**ODOMETER DISCLOSURE STATEMENT**

**Federal law (and state law, if applicable) requires**   that you state the
mileage upon transfer of ownership. Failure to complete or providing
a false statement may result in fines and/or imprisonment.

I _____  state that the odometer
*(Transferor's /seller hand printed name)*

(Of the vehicle herein described) now reads   **104360**   miles and to the
best of my knowledge,  it reflects the actual mileage of the vehicle, unless
one of the following statements is checked.

☐ (1) I hereby certify that to the best of my knowledge the odometer reading
        reflects the amount of mileage in excess of its mechanical limits.
☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.
        **WARNING - ODOMETER DISCREPANCY.**

Transferor's (Seller) signature _____

Transferee's (buyer) signature _____

Transferee's (buyer) signature _____

Printed name of person(buyer) signing _____

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto
Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the
sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely
a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is
expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase.
The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller
warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree
that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.
Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with
cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total
daily.





TEXAS CERTIFICATE OF TITLE

TEXAS DEPARTMENT OF MOTOR VEHICLES

127338295

**TxDMV**

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 1FT7W2BTXFEC10911 | 2015 | FORD | PK |

TITLE/DOCUMENT NUMBER          DATE TITLE ISSUED

05771342458104429  04/08/2016

| MODEL | MFG. CAPACITY IN TONS | WEIGHT | LICENSE NUMBER |
|---|---|---|---|
| | | 7500 | FFX7166 |

PREVIOUS OWNER

ODOMETER READING

**JOE COOPER FORD MIDW**

5

OWNER                                                    REMARK(S)

**ENVIRO CLEAN SERVICES LLC**
**PO BOX 721090**
**OKLAHOMA CITY, OK 73172**

**ACTUAL MILEAGE**
**DIESEL**

X

SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN
THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE
INFORMATION ON A CERTIFICATE OF TITLE.

DATE OF LIEN                               1ST LIENHOLDER

1ST LIEN RELEASED    8/1/18
                                                          DATE

**04/15/2015  TEXAS CAPITAL BANK, NATIONAL**
**ASSOCIATION**
**2350 LAKESIDE BLVD. STE 800**
**RICHARSON, TX 75082**

BY
AUTHORIZED AGENT

DATE OF LIEN                               2ND LIENHOLDER

**Steve Moon, SVP**
2ND LIEN RELEASED
**Texas Capital Bank**

BY
AUTHORIZED AGENT

DATE OF LIEN                               3RD LIENHOLDER

3RD LIEN RELEASED
                                                          DATE

BY

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER
OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS.

AUTHORIZED AGENT

RIGHTS OF SURVIVORSHIP AGREEMENT
WE, THE MARRIED PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY
AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS
CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY,
AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE
AGREEMENT, THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S).

SIGNATURE                          DATE

SIGNATURE                          DATE

SIGNATURE                          DATE

FORM 30-C REV. 03/2015          DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.

**WHEN VEHICLE IS SOLD, TITLE HOLDER MUST ASSIGN AND FURNISH THIS TITLE INDICATING A DATE OF SALE TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR-COLLECTOR WITHIN 30 DAYS TO AVOID PENALTY.**

▶ **FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.**

## ASSIGNMENT OF TITLE

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

ROCK Hill USED CARS   519130 E   Sulphur Sprgs TX 75482

Name of Purchaser / Street / City / State / Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
- ☐ 1. The mileage stated is in excess of its mechanical limits.
- ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING (No Tenths) 258603

Date of Sale 12-20-19

Signature of Seller/Agent     Jessica Presley     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

## FIRST REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser / Street / City / State / Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
- ☐ 1. The mileage stated is in excess of its mechanical limits.
- ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING (No Tenths)

Date of Sale     Dealer No.

Dealer's Name

Agent's Signature     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

## SECOND REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser / Street / City / State / Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
- ☐ 1. The mileage stated is in excess of its mechanical limits.
- ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING (No Tenths)

Date of Sale     Dealer No.

Dealer's Name

Agent's Signature     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

## THIRD REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser / Street / City / State / Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
- ☐ 1. The mileage stated is in excess of its mechanical limits.
- ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING (No Tenths)

Date of Sale     Dealer No.

Dealer's Name

Agent's Signature     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

## LIEN

LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
1ST LIEN IN FAVOR OF (NAME & ADDRESS)

Appendix 127

Lawton Cache Auto Auction

**INVOICE & BILL OF SALE**
580-536-4645
Print Date:  1/23/2020
Print Time: 12:21 PM

1 Southwest 112th St.
Lawton, OK 73505

| ANNOUNCED CONDITIONS OR COMMENTS: | | UNIT#   027 |
|---|---|---|

| BUYER(Purchaser) :P-109420     376 | Seller     **A32814** | SALE#:     39647 |
|---|---|---|
| Mike   Garrison                        903-951-8597 | A32814  ENVIROCLEAN | DATE:     1/22/20 |
| Rock Hill Used Cars | Cat Lard | STATUS:     SLD |
| 549 Interstate 30 East | Po Box 721090 | DRIVE:     Green |
| Sulphur Springs, TX 75482 | Oklahoma City, OK 73172 | LANE |

**VEHICLE DESCRIPTION**

ODOMETER DISCLOSURE STATEMENT

SERIAL   1FT7W2BTXFEC10911   **C10911**
ODOMETER STATUS
YEAR   <u>2015</u>        MAKE   <u>FORD</u>
MODEL   <u>F250SD</u>        BODY   <u>CREW C</u>
COLOR   <u>White</u>        RADIO
LICENSE        FUEL   <u>Diesel</u>
TITLE        TRANS   <u>AUTO</u>

**Federal law (and state law, if applicable) requires**   that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I _____ state that the odometer
*(Transferor's /seller hand printed name)*

(Of the vehicle herein described) now reads   **123863**     miles and to the best of my knowledge, it reflects the actual mileage of the vehicle, unless one of the following statements is checked.

☐ (1) I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.
☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.
    **WARNING - ODOMETER DISCREPANCY.**

| | SALE PRICE:   26,500 |
|---|---|
| | BUYER FEE:   470.00 |
| | DRAFT FEE: |
| | SALES TAX |
| | TOTAL DUE:  26,970.00 |
| | PAID:   26,970.00 |
| | BALANCE:   $0.00 |
| | PD BY:FI         NEXTGEAR |

Transferor's (Seller) signature _____

Transferee's (buyer) signature _____

Transferee's (buyer) signature _____

Printed name of person(buyer) signing _____

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase. The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.
Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total daily.





LAWTON AUTO AUCTION
1 SW 112 St.
Lawton, OK 73505

Nextgear
1320 City Center Dr, Ste 100A
Carmel, IN 46032

46032-381599





TEXAS CERTIFICATE OF TITLE

TEXAS DEPARTMENT OF MOTOR VEHICLES

1084711172

TxDMV

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 3D7KR28C65G706682 | 2005 | DODG | PK |

TITLE/DOCUMENT NUMBER          DATE TITLE ISSUED

24300241232104800  12/04/2012

| MODEL | MFG. CAPACITY IN TONS | WEIGHT | LICENSE NUMBER |
|---|---|---|---|
| | 3/4 | 5500 | BX76515 |

PREVIOUS OWNER

PRUITT FORD BURKBURNETT TX

ODOMETER READING
153361
REMARK(S)

OWNER

TOMMY  A GRUBER
1674 PETERSON RD N
IOWA PARK, TX 76367

ACTUAL MILEAGE
DIESEL

X
SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN
THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE
INFORMATION ON A CERTIFICATE OF TITLE.

| DATE OF LIEN | 1ST LIENHOLDER |
|---|---|
| 11/14/2012 | WICHITA FALLS TEACHER FCU |
| | P O BOX 4516 |
| | WICHITA FALLS, TX 76308 |

1ST LIEN RELEASED

AUTHORIZED AGENT

| DATE OF LIEN | 2ND LIENHOLDER |
|---|---|

2ND LIEN RELEASED _____ DATE

BY _____
AUTHORIZED AGENT

| DATE OF LIEN | 3RD LIENHOLDER |
|---|---|

3RD LIEN RELEASED _____ DATE

BY _____
AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER
OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS.

RIGHTS OF SURVIVORSHIP AGREEMENT
WE, THE MARRIED PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY
AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS
CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY,
AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE
AGREEMENT, THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S).

| SIGNATURE | DATE |
|---|---|
| SIGNATURE | DATE |
| SIGNATURE | DATE |

FORM 30-C REV. 04/2012          DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.

Appendix 132

**WHEN VEHICLE IS SOLD, TITLE HOLDER MUST ASSIGN AND FURNISH THIS TITLE, CURRENT LICENSE RECEIPT, AND SIGNED APPLICATION FOR TITLE (FORM 130-U) INDICATING DATE OF SALE AND SALES PRICE TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR-COLLECTOR WITHIN 30 DAYS TO AVOID PENALTY.**

► **FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.**

**ASSIGNMENT OF TITLE**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Wichita Falls Ford Lincoln          5401 Kell Blvd, Wichita Falls, Tx 76310

Name of Purchaser / Street / City / State / Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING (No Tenths)

Date of Sale

Signature of Seller/Agent     Tommy A Gruber     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Jennifer Burdette, Agent

Signature of Buyer/Agent     Printed Name (same as signature)

**FIRST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Rock Hill Used Cars

Name of Purchaser / Street / City / State / Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

243095  ODOMETER READING (No Tenths)

Date of Sale 1/15/20     Wichita Falls Ford Linc. P43086     Dealer No.

Dealer's Name     Jennifer Burdette, Agent

Agent's Signature     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

**SECOND REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser / Street / City / State / Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING (No Tenths)

Date of Sale     Dealer No.

Dealer's Name

Agent's Signature     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

**THIRD REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser / Street / City / State / Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING (No Tenths)

Date of Sale     Dealer No.

Dealer's Name

Agent's Signature     Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

**LIEN**

LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE
1ST LIEN IN FAVOR OF (NAME & ADDRESS)

Appendix 133

## State of Texas

### Power of Attorney for Transfer of Ownership to a Motor Vehicle

Federal and state law require that you state the mileage upon transfer of ownership. This form may only be used when title is held by lienholder or is lost. Providing a false statement or failure of the person granted the power of attorney to submit this form to the State may result in fines and/or imprisonment.

### Vehicle Description

| Vehicle Identification Number | Year | Make | Body Style | Model |
|---|---|---|---|---|
| 3D7KR28C65G706682 | 2005 | Dodge | PK | 2500 |

### Part A. Power of Attorney to Transfer Ownership and to Disclose Mileage

**Transferor**

First Name (or Entity Name): Tommy — Middle Name: A — Last Name: Gruber — Suffix (if any):

Entity's Authorized Agent First Name (if applicable) — Middle Name — Last Name — Suffix (if any):

Address: 1674 Peterson Rd N — City: Iowa Park — State: TX — Zip: 76367

**Transferee**

First Name (or Entity Name): Wichita Falls Ford Lincoln — Middle Name — Last Name — Suffix (if any):

Entity's Authorized Agent Name (First, Middle, Last, Suffix) (if applicable): Jennifer Burdette, Agent — Dealer License Number (if applicable): P43086

Address: 5401 Kell Blvd, Wichita Falls, Tx 76310 — City — State — Zip

I, the transferor listed above, appoint the transferee listed above as my attorney-in-fact, to complete all documents necessary to transfer and disclose the mileage on the title for the vehicle described above exactly as stated in the following disclosure. I, the transferor, certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the statements below is checked:

Odometer Reading (no tenths): 243078

☐ Mileage Exceeds Mechanical Limits
☐ Not Actual Mileage (WARNING – ODOMETER DISCREPANCY)

I am aware of the odometer certification made by the transferor/agent (seller).

X Signature of Transferor/Agent (Seller) — Date 10/20

Signature of Transferee/Agent (Purchaser) — Date 10/20

### Part B. Power of Attorney to Review Title Documents and Acknowledge Disclosure – if applicable (requires Part A)

**Transferee**

First Name (or Entity Name) — Middle Name — Last Name — Suffix (if any)

Entity's Authorized Agent First Name (if applicable) — Middle Name — Last Name — Suffix (if any)

Address — City — State — Zip

**Transferor**

Dealership Name — Dealer License Number

Authorized Agent First Name — Middle Name — Last Name — Suffix (if any)

Address — City — State — Zip

I, the transferee listed above, appoint the transferor listed above as my attorney-in-fact, to complete all documents necessary to transfer and disclose the mileage on the title for the vehicle described above exactly as stated in the following disclosure. I, the transferor, certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the statements below is checked:

Odometer Reading (no tenths)

☐ Mileage Exceeds Mechanical Limits
☐ Not Actual Mileage (WARNING – ODOMETER DISCREPANCY)

I am aware of the odometer certification made by the transferor/agent (seller).

Signature of Transferor/Agent (Seller) — Date

Signature of Transferee/Agent (Purchaser) — Date

### Part C. Dealership Certification (Part B Transferor) – Required and valid only if Parts A and B are used

Dealership Name — Dealer License Number

Authorized Agent First Name — Middle Name — Last Name — Suffix (if any)

Address — City — State — Zip

I, the individual listed above exercising powers of attorney, hereby certify that the mileage I have disclosed on the title document is consistent with the mileage provided to me in this power of attorney. Further, upon examination of the title and any reassignment documents for the vehicle described above, the mileage disclosure I have made on the title pursuant to the power of attorney is greater than that previously stated on the title and reassignment documents. This certification is not intended to create, nor does it create, any new or additional liability under federal or state law.

Signature of Transferor/Agent — Printed Name (Same as Signature) — Date

Form VTR-271-A (Rev 10/18) — **THIS DOCUMENT IS VOID IF ALTERED.** — 31952814

## Information

Federal law specifies a motor vehicle is subject to odometer disclosure when it is self-propelled, less than 10 years old, and has a gross vehicle weight of 16,000 pounds or less.  United States Code of Federal Regulations, Title 49, Part 580, provides the rules relative to the Truth in Mileage Act, which dictates when use of a power of attorney is permissible in conjunction with odometer disclosure.  Further, federal law requires the odometer disclosure for used vehicles to be made on a certificate of title or a secure power of attorney.  Federal law specifies use of a power of attorney is strictly limited to when the title is lost or held by a lienholder, and the only acceptable power of attorney is a secure power of attorney issued by the state.  The *Power of Attorney for Transfer of Ownership to a Motor Vehicle* (Form VTR-271-A) is the only acceptable secure power of attorney issued by the State of Texas.

Form VTR-271-A can only be used when the title is lost or held by a lienholder.  Proper use of Form VTR-271-A consists of completing Part A when transferring a motor vehicle.  **Parts B and C may only be used by a licensed motor vehicle dealer.**  If the motor vehicle is transferred by a licensed motor vehicle dealer and the certificate of title is still held by a lienholder, Parts B and C must be completed.  If the certificate of title is not held by a lienholder, Parts B and C <u>cannot</u> be used; instead, a certified copy of title (or duplicate title) must be obtained prior to subsequent transfer, and the subsequent purchaser is <u>required</u> to acknowledge the odometer on the certified copy of title (or duplicate title).

If the transferor (owner listed on the title who is selling, donating, gifting, trading, etc.) or transferee (person/entity taking ownership) is unable to complete this form, only a general power of attorney may be used to complete this form for the transferor or transferee.  A limited power of attorney cannot be used to complete this form on someone else's behalf.  If the transferee or transferor is not an individual, but rather an entity or trust, an agent of that entity or a trustee must complete this form.

Unauthorized printing or reproduction of this document is prohibited.  Photocopies may be made only as a completed document for record-keeping purposes by the parties named herein.

## Instructions

Part A is required to be completed by both the transferor (owner listed on the title who is selling, donating, gifting, trading, etc.) and the transferee (person/entity taking ownership) if the title is lost or held by a lienholder.  **All signatures must be original signatures.  It is strongly advised the duplicate power of attorney also contain original signatures.**

- Upon obtaining the certificate of title or certified copy of title, the transferee in Part A must complete the "assignment of title" and odometer disclosure on the certificate of title or certified copy of title.  Any transferee, other than a licensed motor vehicle dealer, is then required to obtain a certificate of title in the name of the transferee supported by this power of attorney.

Part B may only be used by a licensed motor vehicle dealer.  Further, Part B may only be used if the motor vehicle is transferred while the certificate of title is <u>held by a lienholder</u>.  **Part B cannot be used if the title is lost; instead, a certified copy of title (or duplicate title) must be obtained.**  This form may be used to obtain a certified copy of title.  In Part B, the transferee (purchaser) acknowledges the odometer disclosed by the transferor (licensed motor vehicle dealer), and grants power of attorney to the transferor to complete the odometer disclosure in the "first reassignment" on the certificate of title as reflected in Part B and to sign on behalf of the transferee (purchaser).  **Part B may only be used to appoint the same licensed motor vehicle dealer listed as appointed in Part A.**

- Upon securing the certificate of title, the licensed motor vehicle dealer must complete the "assignment of title" (as recorded in Part A) and "first reassignment" (as recorded in Part B).

Part C must be completed by the licensed motor vehicle dealer if both Parts A and B are completed after the licensed motor vehicle dealer has transferred the assignment (from Part A) and the reassignment (from Part B) to the certificate of title.  **Part C must not be completed if Part B is not used.**

## Returning this Power of Attorney

Federal law requires this power of attorney be returned to the issuing state.  This can be accomplished as follows:

- When the vehicle is sold to a Texas retail purchaser, the original power of attorney with original signatures must accompany the purchaser's application for Texas title.  Dealers are required to maintain the duplicate power of attorney and a copy of the front and back of the certificate of title for five years in accordance with 49 C.F.R. §580.8.  Other individuals or entities are not subject to a retention requirement but are encouraged to maintain the duplicate power of attorney and a copy of the front and back of the certificate of title.
- When the vehicle is sold to any dealer (Texas or out of state) or an out of state purchaser, the original power of attorney with original signatures must accompany the title transaction.  The duplicate power of attorney and a copy of the front and back of the certificate of title shall be returned by the individual or entity granted power of attorney in Part A (and Part B, if applicable) to:

    Texas Department of Motor Vehicles
    Vehicle Titles and Registration Division
    P.O. Box 26470
    Austin, TX  78755-0470

Lawton Cache Auto Auction

1 Southwest 112th St.
Lawton, OK 73505

Title

**INVOICE & BILL OF SALE**
580-536-4645
Print Date:  1/28/2020
Print Time:  3:04 PM

ANNOUNCED CONDITIONS OR COMMENTS:

UNIT#   094

| BUYER(Purchaser) :P-109420       376 | Seller        P-43086 | SALE#:        39652 |
|---|---|---|
| Mike  Garrison                903-951-8597 | P-43086 Wichita Falls Ford Lincoln Inc | DATE:        1/22/20 |
| Rock Hill Used Cars | Charles Franser | STATUS:        SLD |
| 549 Interstate 30 East | 5401 Kell Blvd | DRIVE:        Green |
| Sulphur Springs, TX 75482 | Wichita Falls, TX 76310 | LANE |

**VEHICLE DESCRIPTION**

ODOMETER DISCLOSURE STATEMENT

SERIAL    3D7KR28C65G706682        706682
ODOMETER STATUS
YEAR      2005                    MAKE    DODGE
MODEL    RAM 2500 QUA  BODY    QUAD P
COLOR    White            RADIO
LICENSE                  FUEL    Diesel
TITLE                    TRANS  AUTO

**Federal law (and state law, if applicable) requires**   that you state the
mileage upon transfer of ownership. Failure to complete or providing
a false statement may result in fines and/or imprisonment.

I _____ state that the odometer
*(Transferor's /seller hand printed name)*

(Of the vehicle herein described) now reads   **243095**   miles and to the
best of my knowledge,  it reflects the actual mileage of the vehicle, unless
one of the following statements is checked.

| | SALE PRICE:        14,000 |
|---|---|
| | BUYER FEE:        270.00 |
| | DRAFT FEE: |
| | SALES TAX |
| | TOTAL DUE:    14,270.00 |
| | PAID:        14,270.00 |
| | BALANCE:        $0.00 |
| | PD BY:FI NEXT |

☐ (1) I hereby certify that to the best of my knowledge the odometer reading
        reflects the amount of mileage in excess of its mechanical limits.
☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.
        **WARNING - ODOMETER DISCREPANCY.**

Transferor's (Seller) signature _____

Transferee's (buyer) signature _____

Transferee's (buyer) signature _____

Printed name of person(buyer) signing _____

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto
Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the
sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely
a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is
expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase.
The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller
warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree
that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.
Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with
cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total
daily.

Appendix 136



LAWTON AUTO AUCTION
1 SW 112 St.
Lawton, OK 73505



OKLAHOMA CITY OK 730

29 JAN 2020 PM 3 L

FOREVER / USA

Nextgear - Funding Servi.
1320 City Center Dr. Suit 100A
Carmel, Indiana
46032

46032-381599

# CERTIFICATE OF TITLE

## STATE OF OKLAHOMA

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | | TITLE NO. |
|---|---|---|---|---|
| 2FMDA5148TBB47033 | 1996 | FORD | | 810006996409 |

| BODY TYPE | MODEL | | DATE 1st SOLD | DATE ISSUED |
|---|---|---|---|---|
| SV | WWG | | | 14-Jun-2019 |

| AGENT NO. | | APPLICATION DATE | ODOMETER | TYPE OF TITLE |
|---|---|---|---|---|
| M8832 | | 13-Jun-2019 | | Original |
| | | | Exempt | DATE INS. |
| | | | | LOSS OR SALVAGE |

NAME AND ADDRESS OF VEHICLE OWNER

MAINER FORD
PO BOX 834
OKARCHE OK 73762-0834

THIS VEHICLE IS SUBJECT TO THE FOLLOWING LIEN(S):

*It is hereby certified that according to the records of the Oklahoma Tax Commission, the person named hereon is the owner of the vehicle described above which is subject to a lien(s) as shown; however, the vehicle may be subject to other liens or security interests.*

CONTROL NO.
47288110

(This is not a title number)

**ASSIGNMENT OF TITLE BY REGISTERED OWNER**  (If Dealer, List License # Here: UD2133 )

**OKLAHOMA MOTOR VEHICLE**
**$3.50**
**TAX STAMP**
**2598505**

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): Rock Hill Used Cars

Purchaser(s) Complete Address: 549 I-30 East Sulphur Springs TX 75482

**Actual Purchase Price of Vehicle:**

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐ 1. The odometer has exceeded its mechanical limits.

(NO TENTHS) ☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s): Christi Sandu _____ Printed Name of Seller(s) CHRISTI SANDERS

Subscribed and Sworn to Before me this 12 Day of July , 20 19

Notary Public: Kathy Martin _____ Commission Expiration:

NOTARY
#00019494
EXP. 31/22/20
PUBLIC
OF OKLA

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): _____ Printed Name of Buyer(s): _____

VOID IF ALTERED

Appendix 138



## Ownership Transfer Information

Federal and state law requires that the odometer reading and its accuracy be disclosed upon every transfer of ownership of a motor vehicle unless otherwise exempted. Failure to complete or providing false information may result in fines and/or imprisonment.

The presence of any lien or encumbrance on this vehicle is to be so noted where indicated on the bottom of this page.

State law requires a transfer of ownership to be completed within thirty (30) days of acquiring ownership. Failure to do so subjects the owner or possessor to the assessment of delinquent penalties, as provided by law.

**ALL SELLERS SIGNATURES ON THIS DOCUMENT MUST BE SWORN TO BEFORE A NOTARY PUBLIC.**

### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER:_____

PLACE OKLAHOMA
MOTOR VEHICLE TAX
STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print):_____

Purchaser(s) Complete Address:_____

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in:_____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

(NO TENTHS)

☐ 1. The odometer has exceeded its mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s):_____     Printed Name of Seller(s):_____

Subscribed and Sworn to Before me this _____ Day of_____, 20_____

Notary Public:_____ Commission Expiration:_____

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Affix
Notary Seal / Stamp
Here

Signature of Buyer(s):_____     Printed Name of Buyer(s):_____

### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER:_____

PLACE OKLAHOMA
MOTOR VEHICLE TAX
STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print):_____

Purchaser(s) Complete Address:_____

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in:_____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

(NO TENTHS)

☐ 1. The odometer has exceeded its mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s):_____     Printed Name of Seller(s):_____

Subscribed and Sworn to Before me this _____ Day of_____, 20_____

Notary Public:_____ Commission Expiration:_____

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Affix
Notary Seal / Stamp
Here

Signature of Buyer(s):_____     Printed Name of Buyer(s):_____

### LIENHOLDER INFORMATION

Any active lien or encumbrance against this vehicle is to be described below. Any active lien reflected on the face of this certificate will carry forward to any subsequent Oklahoma title issued unless a proper release of lien has been executed.

LIENHOLDER NAME:_____     DATE OF LIEN:_____

LIENHOLDER ADDRESS / CITY / STATE / ZIP:_____

Lawton Cache Auto Auction

**INVOICE & BILL OF SALE**
580-536-4645
Print Date:  2/04/2020
Print Time:  1:27 PM

1 Southwest 112th St.
Lawton, OK 73505

ANNOUNCED CONDITIONS OR COMMENTS:

UNIT#   082

| BUYER(Purchaser) :P-109420    376 | Seller      **UD2133** | SALE#:    39779 |
|---|---|---|
| Mike  Garrison                903-951-8597 | UD2133  Mainer Ford | DATE:    1/29/20 |
| Rock Hill Used Cars | Christi Sanders | STATUS:    SLD |
| 549 Interstate 30 East | PO Box 834 | DRIVE:    Green |
| Sulphur Springs, TX 75482 | Okarche, OK 73762 | LANE |

| **VEHICLE DESCRIPTION** | ODOMETER DISCLOSURE STATEMENT |
|---|---|

SERIAL   2FMDA5148TBB47033      B47033

ODOMETER STATUS

| YEAR | 1996 | MAKE | FORD |
|---|---|---|---|
| MODEL | WINDSTAR | BODY | SPORT |
| COLOR | White | RADIO | |
| LICENSE | | FUEL | Diesel |
| TITLE | | TRANS | AUTO |

| | SALE PRICE: | 8,000 |
|---|---|---|
| | BUYER FEE: | 190.00 |
| | DRAFT FEE: | |
| | SALES TAX | |
| | TOTAL DUE: | 8,190.00 |
| | PAID: | 8,190.00 |
| | BALANCE: | $0.00 |
| | PD BY:FI NEXT | |

**Federal law (and state law, if applicable) requires**   that you state the
mileage upon transfer of ownership. Failure to complete or providing
a false statement may result in fines and/or imprisonment.

I _____   state that the odometer
*(Transferor's /seller hand printed name)*

(Of the vehicle herein described) now reads   **42387**   miles and to the
best of my knowledge,  it reflects the actual mileage of the vehicle, unless
one of the following statements is checked.

☐ (1) I hereby certify that to the best of my knowledge the odometer reading
reflects the amount of mileage in excess of its mechanical limits.

☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.
**WARNING - ODOMETER DISCREPANCY.**

Transferor's (Seller) signature _____

Transferee's (buyer) signature _____

Transferee's (buyer) signature _____

Printed name of person(buyer) signing _____

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto
Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the
sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely
a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is
expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase.
The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller
warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree
that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.
Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with
cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total
daily.



**LAWTON AUTO AUCTION**
1 SW 112 St.
Lawton, OK 73505

OKLAHOMA CITY OK 730

30 FEB 2020 PM 7 L

Nextgear - Funding Servic
1320 City Center Dr Siul 100A
Carmel, Indiana

46032-381599

# CERTIFICATE OF TITLE

## STATE OF OKLAHOMA

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | | TITLE NO. |
|---|---|---|---|---|
| 1N4BA41E46C810994 | 2006 | NISS | | 810007013704 |

| BODY TYPE | MODEL | | DATE 1st SOLD | DATE ISSUED |
|---|---|---|---|---|
| SD | MAXIMA | | | 21-Jun-2019 |

| AGENT NO. | | APPLICATION DATE | ODOMETER | TYPE OF TITLE |
|---|---|---|---|---|
| M8832 | | 20-Jun-2019 | Exempt | Original |
| | | | | DATE INS. LOSS OR SALVAGE |

NAME AND ADDRESS OF VEHICLE OWNER

MAINER FORD
PO BOX 834
OKARCHE OK 73762-0834

THIS VEHICLE IS SUBJECT TO THE FOLLOWING LIEN(S):

*It is hereby certified that according to the records of the Oklahoma Tax Commission, the person named herein is the owner of the vehicle described above which is subject to a lien(s) as shown; however, the vehicle may be subject to other liens or security interests.*

CONTROL NO.
47316219
(This is not a title number)

**ASSIGNMENT OF TITLE BY REGISTERED OWNER** (If Dealer, List License # Here: UD2133 )

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): Rock Hill Used Cars

Purchaser(s) Complete Address: 549 I-30 East Sulphur Springs TX 75482

Actual Purchase Price of Vehicle: _____

OKLAHOMA
MOTOR VEHICLE
$3.50
TAX STAMP
2598513

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐ (NO TENTHS)
☐ 1. The odometer has exceeded its mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. Warning — Odometer Discrepancy

Signature of Seller(s): Christi Sanders     Printed Name of Seller(s): CHRISTI SANDERS

Subscribed and Sworn to Before me this 12 Day of July , 20 19

Notary Public: Kathy Martin     Commission Expiration: _____

*Notarization required only if seller's signature(s). Affix notary seal/stamp to the right.*

KATHY MARTIN
NOTARY
#00019494
EXP. 11/22/20
STATE OF OKLAHOMA
PUBLIC

Signature of Buyer(s): _____     Printed Name of Buyer(s): _____

VOID IF ALTERED



## Ownership Transfer Information

Federal and state law requires that the odometer reading and its accuracy be disclosed upon every transfer of ownership of a motor vehicle unless otherwise exempted. Failure to complete or providing false information may result in fines and/or imprisonment.

The presence of any lien or encumbrance on this vehicle is to be so noted where indicated on the bottom of this page.

State law requires a transfer of ownership to be completed within thirty (30) days of acquiring ownership. Failure to do so subjects the owner or possessor to the assessment of delinquent penalties, as provided by law.

**ALL SELLERS SIGNATURES ON THIS DOCUMENT MUST BE SWORN TO BEFORE A NOTARY PUBLIC.**

### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER:_____

PLACE OKLAHOMA
MOTOR VEHICLE TAX
STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print):_____

Purchaser(s) Complete Address:_____

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in:_____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐ 1. The odometer has exceeded its mechanical limits.

(NO TENTHS)  ☐ 2. The odometer reading is NOT the actual mileage. **Warning—Odometer Discrepancy**

Signature of Seller(s):_____  Printed Name of Seller(s):_____

Subscribed and Sworn to Before me this _____ Day of_____, 20____

Notary Public:_____ Commission Expiration:_____

*Affix Notary Seal / Stamp Here*

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s):_____  Printed Name of Buyer(s):_____

### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER:_____

PLACE OKLAHOMA
MOTOR VEHICLE TAX
STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print):_____

Purchaser(s) Complete Address:_____

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in:_____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐ 1. The odometer has exceeded its mechanical limits.

(NO TENTHS)  ☐ 2. The odometer reading is NOT the actual mileage. **Warning—Odometer Discrepancy**

Signature of Seller(s):_____  Printed Name of Seller(s):_____

Subscribed and Sworn to Before me this _____ Day of_____, 20____

Notary Public:_____ Commission Expiration:_____

*Affix Notary Seal / Stamp Here*

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s):_____  Printed Name of Buyer(s):_____

### LIENHOLDER INFORMATION

Any active lien or encumbrance against this vehicle is to be described below. Any active lien reflected on the face of this certificate will carry forward to any subsequent Oklahoma title issued unless a proper release of lien has been executed.

LIENHOLDER NAME:_____  DATE OF LIEN:_____

LIENHOLDER ADDRESS / CITY / STATE / ZIP:_____

Lawton Cache Auto Auction

**INVOICE & BILL OF SALE**
580-536-4645
Print Date:  2/04/2020
Print Time:  1:26 PM

1 Southwest 112th St.
Lawton, OK 73505

ANNOUNCED CONDITIONS OR COMMENTS:

UNIT#   **074**

| BUYER(Purchaser) :P-109420     376 | Seller     **UD2133** | SALE#:     39778 |
|---|---|---|
| Mike  Garrison                903-951-8597 | UD2133  Mainer Ford | DATE:     1/29/20 |
| Rock Hill Used Cars | Christi Sanders | STATUS:     SLD |
| 549 Interstate 30 East | PO Box 834 | DRIVE:     Green |
| Sulphur Springs, TX 75482 | Okarche, OK 73762 | LANE |

| **VEHICLE DESCRIPTION** | ODOMETER DISCLOSURE STATEMENT |
|---|---|

SERIAL   1N4BA41E46C810994     **810994**
ODOMETER STATUS
YEAR     2006           MAKE   NISSAN
MODEL   MAXIMA        BODY   SEDAN
COLOR   Maroon         RADIO
LICENSE                   FUEL   Diesel
TITLE                      TRANS  AUTO

| | SALE PRICE:     7,000 |
| | BUYER FEE:     180.00 |
| | DRAFT FEE: |
| | SALES TAX |
| | TOTAL DUE:   7,180.00 |
| | PAID:     7,180.00 |
| | BALANCE:     $0.00 |
| | PD BY:FI     NEXT |

**Federal law (and state law, if applicable) requires**   that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I _____ state that the odometer
*(Transferor's /seller hand printed name)*

(Of the vehicle herein described) now reads  **39463**    miles and to the best of my knowledge,  it reflects the actual mileage of the vehicle, unless one of the following statements is checked.

☐ (1) I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.
☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.
     **WARNING - ODOMETER DISCREPANCY.**

Transferor's (Seller) signature _____

Transferee's (buyer) signature _____

Transferee's (buyer) signature _____

Printed name of person(buyer) signing _____

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase. The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.
Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total daily.

**LAWTON AUTO AUCTION**
1 SW 112 St.
Lawton, OK 73505



OKLAHOMA CITY OK 730

SO FEB 2022 PM 7 L

FOREVER USA

Nextgear - Funding Service
1320 City Center Dr Sud 100A.
Carmel, Indiana

46032-381599



# CERTIFICATE OF TITLE

## STATE OF OKLAHOMA

| | | | |
|---|---|---|---|
| VEHICLE IDENTIFICATION NUMBER 1FTWW33R09EA44875 | YEAR 2009 | MAKE FORD | TITLE NO. 810007133215 |
| BODY TYPE CW | MODEL F3D | DATE 1st SOLD | DATE ISSUED 03-Jul-2019 |
| AGENT NO. M6911 | COLOR Gray | APPLICATION DATE 02-Jul-2019 | ODOMETER | TYPE OF TITLE Original |
| | | | Exempt | DATE INS. LOSS OR SALVAGE |

NAME AND ADDRESS OF VEHICLE OWNER

BEST TOWING & RECOVERY LLC
502 S 7TH ST
DUNCAN OK 73533-5123

THIS VEHICLE IS SUBJECT TO THE FOLLOWING LIEN(S):

*It is hereby certified that according to the records of the Oklahoma Tax Commission, the person named hereon is the owner of the vehicle described above which is subject to a lien(s) as shown; however, the vehicle may be subject to other liens or security interests.*

CONTROL NO.
47363631
(This is not a title number)

### ASSIGNMENT OF TITLE BY REGISTERED OWNER   (If Dealer, List License # Here: UD             )

IF REGISTERED OWNER (SELLER) IS A LICENSED DEALER, PLACE OKLAHOMA MOTOR VEHICLE TAX STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): *Todd Mikel Motors*

Purchaser(s) Complete Address: *3983 N Hwy 81, #8, Duncan, OK 73533*

Actual Purchase Price of Vehicle:

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐ 1. The odometer has exceeded its mechanical limits.

☐ 2. The odometer reading is NOT the actual mileage. Warning — Odometer Discrepancy

*exempt* (TENTHS)

Signature of Seller(s): _____ mgr    Printed Name of Seller(s): *WM Buckhout*

Subscribed and Sworn to before me this _____ 12th _____ Day of _____ July _____, 20 19

Notary Public: _____    Commission Expiration: *10/28/19*

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): *Rebecca L. Gordon*    Printed Name of Buyer(s): *Rebecca L. Gordon*

### VOID IF ALTERED

## Ownership Transfer Information

Federal and state law requires that the odometer reading and its accuracy be disclosed upon every transfer of ownership of a motor vehicle unless otherwise exempted. Failure to complete or providing false information may result in fines and/or imprisonment.

The presence of any lien or encumbrance on this vehicle is to be so noted where indicated on the bottom of this page.

State law requires a transfer of ownership to be completed within thirty (30) days of acquiring ownership. Failure to do so subjects the owner or possessor to the assessment of delinquent penalties, as provided by law.

**ALL SELLERS SIGNATURES ON THIS DOCUMENT MUST BE SWORN TO BEFORE A NOTARY PUBLIC.**

### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER: UD 5750

PLACE OKLAHOMA MOTOR VEHICLE TAX

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): Rock Hill Used Cars

Purchaser(s) Complete Address: 549 Interstate 30 East Sulpher Springs Tx

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-In:

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

exempt (NO TENTHS)

☐ 1. The odometer has exceeded its mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s): Blaine Miko      Printed Name of Seller(s): Blaine Miko

Subscribed and Sworn to Before me this 25th Day of July, 2019

Notary Public _____ Commission Expiration: 10/19/19

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): _____ Printed Name of Buyer(s): _____

### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER: _____

PLACE OKLAHOMA MOTOR VEHICLE TAX STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): _____

Purchaser(s) Complete Address: _____

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

(NO TENTHS)

☐ 1. The odometer has exceeded its mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s): _____ Printed Name of Seller(s): _____

Subscribed and Sworn to Before me this _____ Day of _____, 20 ____

Notary Public: _____ Commission Expiration: _____

Affix Notary Seal / Stamp Here

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): _____ Printed Name of Buyer(s): _____

### LIENHOLDER INFORMATION

Any active lien or encumbrance against this vehicle is to be described below. Any active lien reflected on the face of this certificate will carry forward to any subsequent Oklahoma title issued unless a proper release of lien has been executed.

LIENHOLDER NAME: _____ DATE OF LIEN: _____

LIENHOLDER ADDRESS / CITY / STATE / ZIP: _____

Appendix 149

Lawton Cache Auto Auction

**INVOICE & BILL OF SALE**
580-536-4645
Print Date:  2/04/2020
Print Time:  1:25 PM

1 Southwest 112th St.
Lawton, OK 73505

ANNOUNCED CONDITIONS OR COMMENTS:

UNIT#    **008**

| BUYER(Purchaser) :P-109420       376 | Seller        **UD-5750** | SALE#:       39777 |
|---|---|---|
| Mike  Garrison                903-951-8597 | UD-5750  Todd Mikel Motors | DATE:        1/29/20 |
| Rock Hill Used Cars | Todd Mikel | STATUS:      SLD |
| 549 Interstate 30 East | 2537 N Hwy 81 | DRIVE:       Green |
| Sulphur Springs, TX 75482 | Duncan, OK 73533 | LANE |

**VEHICLE DESCRIPTION**

ODOMETER DISCLOSURE STATEMENT

SERIAL   1FTWW33R09EA44875        A44875

**Federal law (and state law, if applicable) requires**    that you state the

ODOMETER STATUS

mileage upon transfer of ownership. Failure to complete or providing

| YEAR | 2008 | MAKE | FORD |
| MODEL | F350SD | BODY | CREW C |
| COLOR | Grey | RADIO | |
| LICENSE | | FUEL | Diesel |
| TITLE | | TRANS | AUTO |

a false statement may result in fines and/or imprisonment.

I _____    state that the odometer

*(Transferor's /seller hand printed name)*

(Of the vehicle herein described) now reads   **244950**    miles and to the

best of my knowledge,  it reflects the actual mileage of the vehicle, unless
one of the following statements is checked.

| SALE PRICE: | 19,500 |
|---|---|
| BUYER FEE: | 320.00 |
| DRAFT FEE: | |
| SALES TAX | |
| TOTAL DUE: | 19,820.00 |
| PAID: | 19,820.00 |
| BALANCE: | $0.00 |
| PD BY:FI NEXT | |

☐ (1) I hereby certify that to the best of my knowledge the odometer reading
     reflects the amount of mileage in excess of its mechanical limits.
☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.
     **WARNING - ODOMETER DISCREPANCY.**

Transferor's (Seller) signature _____

Transferee's (buyer) signature _____

Transferee's (buyer) signature _____

Printed name of person(buyer) signing _____

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto
Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the
sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely
a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is
expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase.
The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller
warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree
that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.
Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with
cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total
daily.



LAWTON AUTO AUCTION
1 SW 112 St.
Lawton, OK 73505

OKLAHOMA CITY OK 73◊

◊◊ FEB 2021 PM 7 L

Nextgear - Funding Serine
1320 City Center Dr Suid 100A
Carmel, Indiana
46032-381599

# CERTIFICATE OF TITLE

## STATE OF OKLAHOMA

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | TITLE NO. |
|---|---|---|---|
| 3FRXF75S95V156426 | 2005 | FORD | 810004186186 |

| BODY TYPE | MODEL | | DATE 1st SOLD | DATE ISSUED |
|---|---|---|---|---|
| ST | F750 | | | 20-Sep-2017 |

| AGENT NO. | | ODOMETER | TYPE OF TITLE |
|---|---|---|---|
| M7275 | | | Transfer |
| | | Exempt | DATE INS. LOSS OR SALVAGE |

NAME AND ADDRESS OF VEHICLE OWNER

MONTE FREEMAN
13204 S 118TH EAST AVE
BROKEN ARROW OK 74011

THIS VEHICLE IS SUBJECT TO THE FOLLOWING LIEN(S):

8/11/2017     MABREY BANK

*It is hereby certified that according to the records of the Oklahoma Tax Commission, the person named hereon is the owner of the vehicle described above which is subject to a lien(s) as shown; however, the vehicle may be subject to other liens or security interests.*

CONTROL NO.
44785584
(This is not a title number.)

---

**ASSIGNMENT OF TITLE BY REGISTERED OWNER**     (If Dealer, List License # Here: _____ )

IF REGISTERED OWNER (SELLER) IS A LICENSED DEALER, PLACE OKLAHOMA MOTOR VEHICLE TAX STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print) Rock Hill Used Cars

Purchaser(s) Complete Address: _____, TX

Actual Purchase Price of Vehicle: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

Exempt (NO TENTHS)

☐ 1. The odometer has exceeded its mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s): _Monte_     Printed Name of Seller(s): MONTE FREEMAN

Subscribed and Sworn to Before me this ___6___ Day of _August_, 20_19_

Notary Public _Kade_     Commission Expiration: _2-15-20_

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): _____     Printed Name of Buyer(s): _____

KRATTEN CODE
NOTARY
Notary Seal / Stamp
# 12007499
EXP. 02/15/20
PUBLIC
STATE OF OKLAHOMA

VOID IF ALTERED



Lawton Cache Auto Auction

**INVOICE & BILL OF SALE**
580-536-4645
Print Date:  2/20/2020
Print Time:  1:06 PM

1 Southwest 112th St.
Lawton, OK 73505

| ANNOUNCED CONDITIONS OR COMMENTS: | | |
|---|---|---|
| | UNIT# | **118** |

| BUYER(Purchaser) :P-109420      376 | Seller       **156426** | SALE#:      40116 |
|---|---|---|
| Mike   Garrison      903-951-8597 | 156426  Monte Freeman | DATE:      2/19/20 |
| Rock Hill Used Cars | Monte Freeman | STATUS:      SLD |
| 549 Interstate 30 East | 13204 S 118th East Ave | DRIVE:      Green |
| Sulphur Springs, TX 75482 | Broken Arrow, OK 74011 | LANE |

| VEHICLE DESCRIPTION | | |
|---|---|---|
| SERIAL   3FRXF75S95V156426      156426 | | |
| ODOMETER STATUS | | |
| YEAR     2005 | MAKE   FORD | |
| MODEL   F750 | BODY   2DR | |
| COLOR   White | RADIO | |
| LICENSE | FUEL   Diesel | |
| TITLE | TRANS  AUTO | |

ODOMETER DISCLOSURE STATEMENT

**Federal law (and state law, if applicable) requires**   that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I _____ state that the odometer
*(Transferor's /seller hand printed name)*

(Of the vehicle herein described) now reads   **236400**   miles and to the best of my knowledge,  it reflects the actual mileage of the vehicle, unless one of the following statements is checked.

☐ (1) I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.
☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.
**WARNING - ODOMETER DISCREPANCY.**

| SALE PRICE: | 29,500 |
|---|---|
| BUYER FEE: | 490.00 |
| DRAFT FEE: | |
| SALES TAX | |
| TOTAL DUE: | 29,990.00 |
| PAID: | |
| BALANCE: | $29,990.00 |
| PD BY: | |

Transferor's (Seller) signature _____

Transferee's (buyer) signature _____

Transferee's (buyer) signature _____

Printed name of person(buyer) signing _____

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase. The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.
Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total daily.

**LAWTON AUTO AUCTION**
1 SW 112 St.
Lawton, OK 73505

OKLAHOMA CITY OK 730

21 FEB 2020 PM 4 L

FOREVER USA

Nextgear Capital
1320 City Center DR, Ste 100A
Carmel, IN. 46032

46032-381625



# CERTIFICATE OF TITLE

## STATE OF OKLAHOMA

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | TITLE NO. |
|---|---|---|---|
| 1FTNW21F42EA39984 | 2002 | FORD | 810006533852 |

| BODY TYPE | MODEL | | DATE 1st SOLD | DATE ISSUED |
|---|---|---|---|---|
| PK | F2S | | | 10-Apr-2019 |

| AGENT NO. | APPLICATION DATE | ODOMETER | TYPE OF TITLE |
|---|---|---|---|
| M8804 | 09-Apr-2019 | Exempt | Original |
| | | | DATE INS. LOSS OR SALVAGE |

NAME AND ADDRESS OF VEHICLE OWNER

KEVIN VANZANT
PO BOX 1384
MUSTANG OK 73064-8384

THIS VEHICLE IS SUBJECT TO THE FOLLOWING LIEN(S):

*It is hereby certified that according to the records of the Oklahoma Tax Commission, the person named hereon is the owner of the vehicle described above which is subject to a lien(s) as shown; however, the vehicle may be subject to other liens or security interests.*

CONTROL NO.
47022872

(This is not a title number)

### ASSIGNMENT OF TITLE BY REGISTERED OWNER   (If Dealer, List License # Here: _____)

IF REGISTERED OWNER (SELLER) IS A LICENSED DEALER, PLACE OKLAHOMA MOTOR VEHICLE TAX STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate

Purchaser(s) Name (Type or Print): Rock Hill Used Cars

Purchaser(s) Complete Address: 519 I 30 E. Sulphur Springs, TX 75482

Actual Purchase Price of Vehicle: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

exempt (NO TENTHS)

☐ 1. The odometer has exceeded its mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. Warning — Odometer Discrepancy

Signature of Seller(s): _____

Printed Name of Seller(s): Kevin VanZant

Subscribed and Sworn to Before me this 20th Day of Feb , 20__

Notary Public: _____   Commission Expiration: _____

*Notarization required only on seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): _____   Printed Name of Buyer(s): _____

MARSIE DAVIS
NOTARY PUBLIC IN AND FOR
#14005426
EXP. 06/16/22
STATE OF OKLAHOMA

VOID IF ALTERED

## Ownership Transfer Information

Federal and state law requires that the odometer reading and its accuracy be disclosed upon every transfer of ownership of a motor vehicle unless otherwise exempted. Failure to complete or providing false information may result in fines and/or imprisonment.

The presence of any lien or encumbrance on this vehicle is to be so noted where indicated on the bottom of this page.

State law requires a transfer of ownership to be completed within thirty (30) days of acquiring ownership. Failure to do so subjects the owner or possessor to the assessment of delinquent penalties, as provided by law.

**ALL SELLERS SIGNATURES ON THIS DOCUMENT MUST BE SWORN TO BEFORE A NOTARY PUBLIC.**

**REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER:**_____

PLACE OKLAHOMA
MOTOR VEHICLE TAX
STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

**Purchaser(s) Name** (Type or Print):_____

**Purchaser(s) Complete Address:**_____

**Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in:**_____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐ 1. The odometer has exceeded its mechanical limits.
(NO TENTHS) ☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

**Signature of Seller(s):**_____ **Printed Name of Seller(s):**_____

Subscribed and Sworn to Before me this _____Day of_____, 20_____

Notary Public:_____ Commission Expiration:_____

*Affix Notary Seal / Stamp Here*

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

**Signature of Buyer(s):**_____ **Printed Name of Buyer(s):**_____

---

**REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER:**_____

PLACE OKLAHOMA
MOTOR VEHICLE TAX
STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

**Purchaser(s) Name** (Type or Print):_____

**Purchaser(s) Complete Address:**_____

**Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in:**_____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐ 1. The odometer has exceeded its mechanical limits.
(NO TENTHS) ☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

**Signature of Seller(s):**_____ **Printed Name of Seller(s):**_____

Subscribed and Sworn to Before me this _____Day of_____, 20_____

Notary Public:_____ Commission Expiration:_____

*Affix Notary Seal / Stamp Here*

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

**Signature of Buyer(s):**_____ **Printed Name of Buyer(s):**_____

---

## LIENHOLDER INFORMATION

Any active lien or encumbrance against this vehicle is to be described below. Any active lien reflected on the face of this certificate will carry forward to any subsequent Oklahoma title issued unless a proper release of lien has been executed.

**LIENHOLDER NAME:**_____ **DATE OF LIEN:**_____

**LIENHOLDER ADDRESS / CITY / STATE / ZIP:**_____

Lawton Cache Auto Auction

**INVOICE & BILL OF SALE**
580-536-4645
Print Date:  2/26/2020
Print Time:  3:24 PM

1 Southwest 112th St.
Lawton, OK 73505

ANNOUNCED CONDITIONS OR COMMENTS:

UNIT#    **020**

| BUYER(Purchaser) :P-109420     376 | Seller        **UD-8759** | SALE#:     40217 |
|---|---|---|
| Mike  Garrison                   903-951-8597 | UD-8759  Kevin Jones Auto Sales | DATE:     2/26/20 |
| Rock Hill Used Cars | Kevin Jones | STATUS:     SLD |
| 549 Interstate 30 East | 530 E.Jones | DRIVE:     Green |
| Sulphur Springs, TX 75482 | Hollis, OK 73550 | LANE |

**VEHICLE DESCRIPTION**

SERIAL   1FTNW21F42EA89984      **A89984**
ODOMETER STATUS
YEAR      2002                MAKE    FORD
MODEL    F250 SUPER D    BODY    QUAD P
COLOR    Red                    RADIO
LICENSE                          FUEL    Diesel
TITLE                            TRANS  AUTO

| | SALE PRICE:     23,500 |
| | BUYER FEE:     440.00 |
| | DRAFT FEE: |
| | SALES TAX |
| | TOTAL DUE:   23,940.00 |
| | PAID: |
| | BALANCE:   $23,940.00 |
| | PD BY: |

ODOMETER DISCLOSURE STATEMENT

**Federal law (and state law, if applicable) requires**   that you state the
mileage upon transfer of ownership. Failure to complete or providing
a false statement may result in fines and/or imprisonment.

I _____   state that the odometer
*(Transferor's /seller hand printed name)*

(Of the vehicle herein described) now reads   **210105**    miles and to the
best of my knowledge,  it reflects the actual mileage of the vehicle, unless
one of the following statements is checked.

☐ (1) I hereby certify that to the best of my knowledge the odometer reading
reflects the amount of mileage in excess of its mechanical limits.
☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.
**WARNING - ODOMETER DISCREPANCY.**

Transferor's (Seller) signature _____

Transferee's (buyer) signature _____

Transferee's (buyer) signature _____

Printed name of person(buyer) signing _____

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto
Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the
sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely
a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is
expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase.
The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller
warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree
that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.
Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with
cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total
daily.



# CERTIFICATE OF TITLE

## STATE OF OKLAHOMA

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | TITLE NO. |
|---|---|---|---|
| 1FTEX15N9RKA15724 | 1994 | FORD | 810002503424 |

| BODY TYPE | MODEL | DATE 1st SOLD | DATE ISSUED |
|---|---|---|---|
| PK | F15 | 11/1/1993 | 8/25/2016 |

| AGENT NO. | ODOMETER | TYPE OF TITLE |
|---|---|---|
| M2515 | Exempt | Original |

DATE INS.
LOSS OR SALVAGE

NAME AND ADDRESS OF VEHICLE OWNER

SETH WADLEY AUTO GROUP
PO BOX 650
PAULS VALLEY OK 73075-0650

THIS VEHICLE IS SUBJECT TO THE FOLLOWING LIEN(S):

*It is hereby certified that according to the records of the Oklahoma Tax Commission, the person named hereon is the owner of the vehicle described above which is subject to a lien(s) as shown; however, the vehicle may be subject to other liens or security interests.*

CONTROL NO.
43181283
(This is not a title number)

### ASSIGNMENT OF TITLE BY REGISTERED OWNER   (If Dealer, List License # Here: UD2430 )

**OKLAHOMA MOTOR VEHICLE $3.50 TAX STAMP**
1391008

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): *Rock Hill Used Cars*
Purchaser(s) Complete Address: *519 I-30 E. Sulphur Spring TX 75482*
Actual Purchase Price of Vehicle: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

*EXEMPT* (NO TENTHS)
☑ 1. The odometer has exceeded its mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. Warning — Odometer Discrepancy

Signature of Seller(s): _____   Printed Name of Seller(s): _____

Subscribed and Sworn to Before me this 21 Day of February 20 20

Notary Public: _____   Commission Expiration: _____

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): _____   Printed Name of Buyer(s): _____

## VOID IF ALTERED

### Ownership Transfer Information

Federal and state law requires that the odometer reading and its accuracy be disclosed upon every transfer of ownership of a motor vehicle unless otherwise exempted. Failure to complete or providing false information may result in fines and/or imprisonment.

The presence of any lien or encumbrance on this vehicle is to be so noted where indicated on the bottom of this page.

State law requires a transfer of ownership to be completed within thirty (30) days of acquiring ownership. Failure to do so subjects the owner or possessor to the assessment of delinquent penalties, as provided by law.

**ALL SELLERS SIGNATURES ON THIS DOCUMENT MUST BE SWORN TO BEFORE A NOTARY PUBLIC.**

#### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER: _____

PLACE OKLAHOMA
MOTOR VEHICLE TAX
STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

**Purchaser(s) Name** (Type or Print): _____

**Purchaser(s) Complete Address:** _____

**Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in:** _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐ 1. The odometer has exceeded its mechanical limits.

(NO TENTHS)      ☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

**Signature of Seller(s):** _____      **Printed Name of Seller(s):** _____

Subscribed and Sworn to Before me this _____ Day of _____, 20 ____

Notary Public: _____ Commission Expiration: _____

*Affix*
*Notary Seal / Stamp*
*Here*

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

**Signature of Buyer(s):** _____      **Printed Name of Buyer(s):** _____

#### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER: _____

PLACE OKLAHOMA
MOTOR VEHICLE TAX
STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

**Purchaser(s) Name** (Type or Print): _____

**Purchaser(s) Complete Address:** _____

**Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in:** _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐ 1. The odometer has exceeded its mechanical limits.

(NO TENTHS)      ☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

**Signature of Seller(s):** _____      **Printed Name of Seller(s):** _____

Subscribed and Sworn to Before me this _____ Day of _____, 20 ____

Notary Public: _____ Commission Expiration: _____

*Affix*
*Notary Seal / Stamp*
*Here*

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

**Signature of Buyer(s):** _____      **Printed Name of Buyer(s):** _____

#### LIENHOLDER INFORMATION

Any active lien or encumbrance against this vehicle is to be described below. Any active lien reflected on the face of this certificate will carry forward to any subsequent Oklahoma title issued unless a proper release of lien has been executed.

**LIENHOLDER NAME:** _____      **DATE OF LIEN:** _____

**LIENHOLDER ADDRESS / CITY / STATE / ZIP:** _____

Lawton Cache Auto Auction

*Title*

**INVOICE & BILL OF SALE**
580-536-4645
Print Date:  3/05/2020
Print Time:  12:08 PM

1 Southwest 112th St.
Lawton, OK 73505

| ANNOUNCED CONDITIONS OR COMMENTS: | UNIT#  010 |
|---|---|

| BUYER(Purchaser) :P-109420      376 | Seller      **UD2430** | SALE#:      40375 |
|---|---|---|
| Mike   Garrison                                  903-951-8597 | UD2430  Seth Wadley Auto Group | DATE:      3/04/20 |
| Rock Hill Used Cars | Sam Cash | STATUS:      SLD |
| 549 Interstate 30 East | PO Box 650 | DRIVE:      Green |
| Sulphur Springs, TX 75482 | Pauls Valley, OK 73075 | LANE |

**VEHICLE DESCRIPTION**

SERIAL   1FTEX15N9RKA15724      A15724
ODOMETER STATUS

| YEAR    1994 | MAKE   FORD |
|---|---|
| MODEL   F150 | BODY   SUPER |
| COLOR   WHITE | RADIO |
| LICENSE | FUEL   Diesel |
| TITLE | TRANS  AUTO |

| | SALE PRICE: | 8,800 |
|---|---|---|
| | BUYER FEE: | 190.00 |
| | DRAFT FEE: | |
| | SALES TAX | |
| | TOTAL DUE: | 8,990.00 |
| | PAID: | |
| | BALANCE: | $8,990.00 |
| PD BY: | | |

**ODOMETER DISCLOSURE STATEMENT**

**Federal law (and state law, if applicable) requires**     that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I _____ state that the odometer
*(Transferor's /seller hand printed name)*

(Of the vehicle herein described) now reads   143260     miles and to the best of my knowledge,  it reflects the actual mileage of the vehicle, unless one of the following statements is checked.

☐ (1) I hereby certify that to the best of my knowledge the odometer reading
    reflects the amount of mileage in excess of its mechanical limits.
☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.
    **WARNING - ODOMETER DISCREPANCY.**

Transferor's (Seller) signature _____

Transferee's (buyer) signature _____

Transferee's (buyer) signature _____

Printed name of person(buyer) signing _____

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase. The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.
Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total daily.

.



46032-381599
NextGear
1320 City Center Dr, Ste 100A
Carmel, IN 46032
OKLAHOMA CITY OK 730
05 MAR 2020 PM 5 L
LAWTON AUTO AUCTION
1 SW 112 St.
Lawton, OK 73505

1893I5B

# CERTIFICATE OF TITLE

## STATE OF OKLAHOMA

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | TITLE NO. |
|---|---|---|---|
| 1FDXE4FSXFDA07194 | 2015 | FORD | 810008029229 |

| BODY TYPE | MODEL | | DATE 1st SOLD | DATE ISSUED |
|---|---|---|---|---|
| YY | ECONOLINE | | | 12-Feb-2020 |

| AGENT NO. | COLOR | APPLICATION DATE | ODOMETER | TYPE OF TITLE |
|---|---|---|---|---|
| M5116 | White | 11-Feb-2020 | 96604 Actual | Original |

DATE INS.
LOSS OR SALVAGE

NAME AND ADDRESS OF VEHICLE OWNER

TOMMY NIX AUTO GROUP LLC
PO BOX 1736
TAHLEQUAH OK 74465-1736

THIS VEHICLE IS SUBJECT TO THE FOLLOWING LIEN(S):

*It is hereby certified that according to the records of the Oklahoma Tax Commission, the person named hereon is the owner of the vehicle described above which is subject to a lien(s) as shown; however, the vehicle may be subject to other liens or security interests.*

CONTROL NO.
48244734
(This is not a title number)

---

**OKLAHOMA MOTOR VEHICLE**
**$3.50**
**TAX STAMP**
2903751

**ASSIGNMENT OF TITLE BY REGISTERED OWNER**   (If Dealer, List License # Here: _UD2804_ )

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): _Rock Hill Used Cars_

Purchaser(s) Complete Address: _____

Actual Purchase Price of Vehicle: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

9 6 8 3 1 (NO TENTHS)

☐ 1. The odometer has exceeded its mechanical limits.
☐ 2. The odometer reading is NOT the actual mileage. Warning — Odometer Discrepancy

Signature of Seller(s): _Laura Jenkins_   Printed Name of Seller(s): _Laura Jenkins_

Subscribed and Sworn to Before me this _10th_ Day of _March_, 20 _20_

Notary Public _Brittany Schnitzer_   Commission Expiration: _April 25, 2023_

BRITTANY SCHNITZER
Notary Public, State of Oklahoma
Commission # 15003835
My Commission Expires 04-25-2023

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): _____   Printed Name of Buyer(s): _____

## VOID IF ALTERED

## Ownership Transfer Information

Federal and state law requires that the odometer reading and its accuracy be disclosed upon every transfer of ownership of a motor vehicle unless otherwise exempted. Failure to complete or providing false information may result in fines and/or imprisonment.

The presence of any lien or encumbrance on this vehicle is to be so noted where indicated on the bottom of this page.

State law requires a transfer of ownership to be completed within thirty (30) days of acquiring ownership. Failure to do so subjects the owner or possessor to the assessment of delinquent penalties, as provided by law.

**ALL SELLERS SIGNATURES ON THIS DOCUMENT MUST BE SWORN TO BEFORE A NOTARY PUBLIC.**

### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER: _____

PLACE OKLAHOMA MOTOR VEHICLE TAX STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): _____

Purchaser(s) Complete Address: _____

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐ 1. The odometer has exceeded its mechanical limits.

(NO TENTHS)     ☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s): _____     Printed Name of Seller(s): _____

Subscribed and Sworn to Before me this _____ Day of_____, 20_____

Notary Public: _____ Commission Expiration: _____

*Affix Notary Seal / Stamp Here*

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): _____     Printed Name of Buyer(s): _____

### REASSIGNMENT OF TITLE BY LICENSED DEALER NUMBER: _____

PLACE OKLAHOMA MOTOR VEHICLE TAX STAMP HERE

I/we hereby assign and warrant ownership of the vehicle described on this certificate to the following, subject only to the liens or encumbrances, if any, properly noted on this certificate.

Purchaser(s) Name (Type or Print): _____

Purchaser(s) Complete Address: _____

Actual Purchase Price of Vehicle, Excluding Credit for Any Trade-in: _____

I certify to the best of my knowledge that the ODOMETER READING reflected on the vehicle's odometer and listed below is the ACTUAL MILEAGE of the vehicle UNLESS one of the accompanying statements is checked:

☐ 1. The odometer has exceeded its mechanical limits.

(NO TENTHS)     ☐ 2. The odometer reading is NOT the actual mileage. **Warning — Odometer Discrepancy**

Signature of Seller(s): _____     Printed Name of Seller(s): _____

Subscribed and Sworn to Before me this _____ Day of_____, 20_____

Notary Public: _____ Commission Expiration: _____

*Affix Notary Seal / Stamp Here*

*Notarization required only of seller's signature(s). Affix notary seal/stamp to the right.*

Signature of Buyer(s): _____     Printed Name of Buyer(s): _____

### LIENHOLDER INFORMATION

Any active lien or encumbrance against this vehicle is to be described below. Any active lien reflected on the face of this certificate will carry forward to any subsequent Oklahoma title issued unless a proper release of lien has been executed.

LIENHOLDER NAME: _____ DATE OF LIEN: _____

LIENHOLDER ADDRESS / CITY / STATE / ZIP: _____

Lawton Cache Auto Auction

*Title*

**INVOICE & BILL OF SALE**
580-536-4645
Print Date: 3/13/2020
Print Time: 10:31 AM

1 Southwest 112th St.
Lawton, OK 73505

ANNOUNCED CONDITIONS OR COMMENTS:

UNIT#  142

| BUYER(Purchaser) :P-109420    376 | Seller    **UD-2804** | SALE#:    40490 |
|---|---|---|
| Mike  Garrison                903-951-8597 | UD-2804 Tommy Nix Auto Group | DATE:    3/11/20 |
| Rock Hill Used Cars | Shagla Nix | STATUS:    SLD |
| 549 Interstate 30 East | PO Box 1736 | DRIVE: |
| Sulphur Springs, TX 75482 | Tahlequah, OK 74485 | LANE |

**VEHICLE DESCRIPTION**

ODOMETER DISCLOSURE STATEMENT

| SERIAL  1FDXE4FSXFDA07194    A07194 | | |
|---|---|---|
| ODOMETER STATUS | | |
| YEAR    2015 | MAKE  FORD | |
| MODEL  ECONOLINE | BODY  2DR | |
| COLOR    White | RADIO | |
| LICENSE | FUEL  Gas | |
| TITLE | TRANS AUTO | |

| | SALE PRICE:    25,000 |
|---|---|
| | BUYER FEE:    440.00 |
| | DRAFT FEE: |
| | SALES TAX |
| | TOTAL DUE:  25,440.00 |
| | PAID: |
| | BALANCE:    $25,440.00 |
| | PD BY: |

**Federal law (and state law, if applicable) requires** that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I _____ state that the odometer
*(Transferor's /seller hand printed name)*

(Of the vehicle herein described) now reads  **96831**    miles and to the best of my knowledge, it reflects the actual mileage of the vehicle, unless one of the following statements is checked.

☐ (1) I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.
☐ (2) I hereby certify that the odometer reading is NOT the actual mileage.
    **WARNING - ODOMETER DISCREPANCY.**

Transferor's (Seller) signature _____

Transferee's (buyer) signature _____

Transferee's (buyer) signature _____

Printed name of person(buyer) signing _____

ALL SALES FINAL DAY OF SALE. It is understood and agreed, between the consignor, the purchaser and Lawton Cache Auto Auction is not responsible for fire, theft, or damage to the above described vehicle while on the premises before, during or after the sale. LAWTON CACHE AUTO AUCTION DOES NOT HAVE INSURANCE COVERING ANY VEHICLE. "This sale is solely a transaction between the buyer and the seller parties" ~ Subject to final handing and approving of the Auction. The buyer is expected to pay for any vehicle which he/she buys unless excused by the Auction. Please clear all items promptly after purchase. The Auction does not guarantee the mileage, year, model or factory warranty on any vehicle sold through this auction. Seller warrants that he/she has good negotiable title and that it is free and clear of all items and or encumbrances. Signatory parties agree that sale transaction is not complete until all drafts or checks have cleared and title is assigned to purchaser.
Effective IMMEDIATELY, AS OF TODAY January 17, 2018, ALL SALES MUST be paid for the night of the Auction, with cash, check or a floor plan company.  If NO payment is here at the time title arrives, a fee of $25.00 will be added to your total daily.

.

Appendix 170

LAWTON AUTO AUCTION
1 SW 112 St.
Lawton, OK 73505



Next gear Capital
1320 City Center DR, Ste 100A
Carmel, IN 46032

Appendix 172